UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRED L. NANCE, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 6316 |
| v. ) | |
| ) | Judge Alonso |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANT'S
MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT**

**Introduction**

Plaintiff Fred L. Nance, Jr., claims that he was in a "partnership/collaboration" with EMAGES, Inc., a private, not-for-profit treatment agency that had a Department of Justice grant to conduct a prison-related program under the "Second Chance Act" when EMAGES terminated him, supposedly with the assistance of DOJ. Defendant EMAGES, Inc., terminated its grant award from DOJ because of financial challenges caused by the Covid-19 pandemic. While much of Nance's complaint involves various claims against EMAGES, including whistleblower, tort, and employment claims, his *pro se* complaint seems to present a single claim against DOJ under the Federal Tort Claims Act. Nance's FTCA claims should be dismissed if for no other reason than because he failed to exhaust his administrative remedies. If any of his remaining claims are meant to be against DOJ, they should be dismissed because he was never employed by the Department of Justice, or any other federal agency, and the only statutes that his claims could depend upon do not apply, including his whistleblower claims, which can only apply, if at all, against his former employer, EMAGES, not the Department of Justice. Accordingly, the court should dismiss the complaint against the Department of Justice, or alternatively grant it summary judgment.

**Facts**

Plaintiff Fred Nance was employed by co-defendant Establishing Managing and Generating Effective Services Inc. ("EMAGES, Inc."), a not-for-profit social service organization that received a grant award in 2018 from DOJ's Office of Justice Programs and the Bureau of Justice Assistance for a prison-related program under the "Second Chance Act" ("SCA"). Defendant's Rule 56.1 Statement of Material Facts ("DSF"), ¶ 1. EMAGES was the applicant to the grant program (there were no "co-applicants") and, accordingly, had primary responsibility for funding and managing the program. Exhibit B, EMAGES Award; DSF ¶ 2. As part of the SCA grant program, DOJ made 26 grant awards in fiscal year 2018 totaling more than $20.5 million, one of which was a $500,000 award to EMAGES. DSF ¶ 3. The EMAGES award was scheduled to start on October 1, 2018, and conclude three years later on September 30, 2021. DSF ¶ 4.

Through the grant solicitation, DOJ notified interested entities that an applicant had to be a single entity. DSF ¶ 5. The applicant had to be the entity that would have primary responsibility for carrying out the award, including administering the funding and managing the entire program. *Id*. Accordingly, in agreement with the eligibility requirement, DOJ considered only one applicant entity, EMAGES, for the award in question, not Nance or his company, and therefore the grant was awarded to EMAGES. DSF ¶ 6.

Under the relevant grant requirements, recipients were permitted to terminate awards by providing written notice to the awarding agency. DSF ¶ 7; *see* 2 C.F.R. §§ 200.339-343. Accordingly, in September 2020, Hattie Wash, the founder and CEO of EMAGES, informed DOJ that she was terminating the EMAGES award because of, among other things, the COVID-19 pandemic and COVID-related restrictions. DSF ¶¶ 8, 9. At or about the time Wash initiated the grant termination process, she apparently terminated Nance's employment with EMAGES. Compl. at 2.

Plaintiff Fred Nance claims that because he assisted in, among other things, developing the abstract and proposal that were submitted as part of the EMAGES grant application, he was a "partner on the grant." Compl. at 2. Nance alleges that since he and Wash "entered into a partnership/collaboration [by] submitting an abstract and proposal" for the grant award, he *and* Wash "received this grant on October 1, 2018." *Id*.

Nance, who apparently did not believe the grant award should have been terminated, earlier pursued a "whistleblower complaint" claiming "possible fraud or misappropriation of funds" concerning the EMAGES award, alleging that EMAGES misappropriated the grant award. DSF ¶¶ 10 - 12. Nance pursued his "whistleblower" complaints through the U.S. Office of Special Counsel, which denied his complaints, noting that it lacked jurisdiction over individuals who are not federal employees or applicants for federal employment. *Id*.

Nance then pursued his "whistleblower complaint" with the Office of the Inspector General, where he repeated his allegation that EMAGES drew down grant funds for an ex-employee, and claimed that Wash retaliated against him for reporting the questioned drawdowns by removing him as the point of contact for the grant award and that Wash reduced Nance's salary under the grant. DSF ¶¶ 12, 13. The OIG rejected Nance's complaint stating, "We do not believe that you have alleged that you suffered a reprisal in violation of [41 U.S.C.] § 4712(a)." DSF ¶ 14. OIG further found that Nance's complaint failed to allege that he made a protected disclosure (*i.e*., a communication that, among other things, reasonably evidenced gross mismanagement of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal contract (including the competition for or negotiation of a contract) or grant) and that "significant doubt surrounds whether your complaint alleges that you suffered a personnel action, as contemplated under § 4712(a)." *Id*. After the grant was terminated,

3

based on EMAGES' termination request, Nance filed this complaint alleging various claims including his FTCA claim against the Department of Justice and his whistleblower, tort, employment, and other claims against EMAGES and its officers.

## Argument

Nance alleges several causes of action, all centered around his false contention that a grant award was unlawfully terminated in alleged retaliation for his supposed whistleblowing complaints: (1) violation of his whistleblower rights under the National Defense Authorization Act of 2013; (2) violation of 41 U.S.C. § 4712 in connection with EMAGES' request to terminate its grant award; (3) violation of the Illinois Whistleblower Act; (4) retaliation; (5) hostile work environment; (6) emotional distress; and (7) a claim for "special damages." Compl. at 23 – 27. But it does not appear that Nance is suing the DOJ other than under the Federal Tort Claims Act, as this statement on the first page of his complaint indicates:

> Pro se Plaintiff Fred L. Nance Jr. (hereinafter, "Plaintiff") pursuant to the Federal Tort Claims Act (FTCA) and files suit against the Department of Justice (DOJ) . . . under FTCA; and plaintiff injured by the tortious actions of nonemployees EMAGES, Inc. (hereinafter, "EMAGES"), Hattie Wash (hereinafter, "Hattie") and Thomas Bradley (hereinafter, "Bradley") may sue nonemployees individually under ordinary principles of state tort law, even though plaintiff may not sue the individuals Michael Dever (hereinafter "Dever"), Andre Bethea (hereinafter, "Bethea"), and Tracey Willis (hereinafter, "Willis") who are government employees, yet perpetrated the tortious acts under the color of government employees of the United States under the FTCA.

Compl. at p. 1; *see also* "Jurisdiction and Venue" section, Compl. at 4-5. Nance's FTCA claim should be dismissed in the first instance because he failed to exhaust his administrative remedies, a prerequisite to suit. To the extent that any other claims are directed at the federal defendant, they should be dismissed largely because he was never employed by the Department of Justice, and the only statutes that his claims could depend upon in that regard do not apply.

4

I.  **Nance Failed to Exhaust his Administrative Remedies under the FTCA.**

Nance's Federal Tort Claims Act claims should be dismissed for failure to exhaust administrative remedies as required by the Act, 28 U.S.C. § 2675(a). The FTCA is the "exclusive" jurisdictional basis for a common law tort claim against the United States or any United States employee "while acting within the scope of his office or employment." 28 U.S.C. §§ 1346(b), 2679(b)(1); *Duffy v. United States*, 966 F.2d 307, 313 (7th Cir. 1992). No FTCA action can be initiated against the United States until the plaintiff has presented a claim to the appropriate federal agency and that agency has denied the claim or has failed to issue a final decision within six months of the date that the claim was presented. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106 (1993); *Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997) ("No one may file suit under the Federal Tort Claims Act without first making an administrative claim."); *Erxleben v. United States*, 668 F.2d 268, 270 (7th Cir. 1981). The administrative exhaustion requirement is a prerequisite that cannot be waived. *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir. 1972); *see United States v. Kwai Fun Wong,* 575 U.S. 402, 411-12 (2015) (indicating that the requirement is jurisdictional). Nance did not submit an FTCA claim, so his FTCA claims should be dismissed.

Here, Nance's complaint does not allege that he ever presented the administrative claim required by the FTCA, and a search of DOJ's computerized database of administrative tort claims reveals that Nance has not filed an administrative tort claim with the Department. DSF ¶ 16; Exhibit J, Declaration of Elijah Jenkins. "A claim has been presented to a federal agency once the plaintiff submits 'an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain.'" *Chronis v. United States*, 932 F.3d 544, 546–47 (7th Cir. 2019), citing 28 C.F.R. § 14.2(a). There are four required elements of an FTCA claim: "(1) notification of the incident; (2) demand for a sum certain; (3) title or capacity

5

of the person signing; and (4) evidence of the person's authority to represent the claimant." *Id.* As the Jenkins declaration shows, Nance did not submit an FTCA claim to the Department of Justice. Nance seems to confuse the administrative whistleblower process with the FTCA administrative claim requirement, as he alleges that he "exhausted all administrative relief," after discussing his "whistleblower" referral to the OIG. Dkt. 1, Compl., at pp. 4-5, 7.

Even if Nance had exhausted his administrative remedies, which he did not, an FTCA claim can be brought only against the United States, not the DOJ. *E.g.*, *Quinlan by Cecola v. U.S. Postal Serv.*, No. 89 C 5748, 1989 WL 88255, at *1 (N.D. Ill. July 31, 1989) ("Section 1346(b) calls for the action to be brought against the United States itself and not against the federal agency, and that is confirmed by Section 2679(a)."). Nance's claim that DOJ employees "perpetrated [] tortious acts under the color of government employees of the United States under the FTCA," and his claim of infliction of emotional distress, should be dismissed for failure to exhaust administrative remedies and for naming a defendant not subject to suit. Compl. at 1, 6.

## II. Claims under the National Defense Authorization Act and 41 U.S.C. § 4712.

If any of Nance's other claims are intended to be against the United States (which is not likely) Nance's claim under the National Defense Authorization Act of 2013 ("NDAA"), 10 U.S.C. § 2409, and 41 U.S.C. § 4712, fails for at least two reasons. First, the Department of Justice is not his employer. *Delebreau v. Danforth*, 743 F. App'x 43, 44 (7th Cir. 2018) ("The statute prohibits reprisals by an employer . . ."). Nance was employed by EMAGES, not the Department of Justice, and therefore his claim fails "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Similarly, section 828 of the NDAA amended Title 41 of the U.S. Code by adding section 4712, which provides protections for employees of contractors, subcontractors, grantees, or subgrantees or personal services contractors for disclosing (to specified persons or bodies)

6

information that the employee reasonably believes is evidence of "gross mismanagement" of a contract or grant, a "gross waste" of federal funds, an "abuse of authority" relating to a contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a contract or grant. 41 U.S.C. § 4712(a). The provision holds that such employees "may not be discharged, demoted, or otherwise discriminated against as a reprisal" for covered disclosures. *Id*.

Again, Nance does not allege how the *Department of Justice*, which was not his employer, unlawfully discharged, demoted, or otherwise discriminated against him pursuant to 41 U.S.C. § 4712; DSF ¶ 15. His general claim that Wash and EMAGES (private entities) discriminated against him with the supposed "assistance" of DOJ is unsupported, as DOJ simply awarded a grant to EMAGES, *not* to Nance, and when EMAGES initiated the grant termination process, DOJ properly processed EMAGES's request, as it was required to do under 2 CFR 200.340. DSF ¶¶ 5 – 8; Compl. at 2. Accordingly, 41 U.S.C. § 4712 is inapplicable in this case.

Second, even if Nance were employed by the Department of Justice, which he was not, section 2409 provides protections for such employees who disclose to particular individuals a "substantial and specific danger to public health or safety," or "gross mismanagement," "gross waste," "abuse of authority," or "a violation of law, rule, or regulation" relating to a DoD or NASA contracts or grants. 10 U.S.C. § 2409(a). Here, Nance does not allege a "gross mismanagement" or "gross waste" of federal funds that would constitute a protected disclosure as contemplated in 41 U.S.C. § 4712. He alleges that EMAGES drew down $880 in grant award funds for an ex-employee. DSF ¶ 13. This small amount represents less than two-tenths of one percent of the entire $500,000 grant award. *Id*. He also alleges that EMAGES improperly drew down $2,800 each month from March to July 2020 when Nance had only submitted a payroll of $2,600 for March; $2,100 for April; $1,800 for May; $2,300 for June; and $2,100 for July. *Id*; Complaint at

7

10. That total alleged discrepancy is $3,100 (i.e., a $200 overcharge in March; $700 in April; $1,000 in May; $500 in June; and $700 in July). *Id.*; Compl. at 15. Nance's allegation does not rise to the level of gross waste or mismanagement that would constitute a protected disclosure under 41 U.S.C. § 4712, which is one reason why the Department's OIG declined to open an investigation into Nance's allegations. DSF ¶ 14.

Even if the court were to address the merits of Nance's claim that the grant was improperly terminated, his claim is off the mark mostly because, as set forth above, EMAGES's CEO, Wash, the authorized representative of EMAGES, properly initiated termination of the award under the grant termination guidelines established in Part 200, Uniform Administrative Requirements, that applied to the EMAGES's grant award. *See* 2 C.F.R. § 200.340(a)(4)(providing that a Federal award may be terminated "upon sending to the Federal awarding agency or pass-through entity written notification setting forth the reasons for such termination, the effective date, and, in the case of partial termination, the portion to be terminated"). DSF ¶¶ 5 - 8. In the written notice provided to DOJ, Wash stated that COVID-19 and related restrictions created financial instability for EMAGES and "prevented EMAGES from fulfilling the [p]erformance measures of the Second Chance grant" and that although telehealth services permitted EMAGES to continue providing services to some individuals, the "[s]helter in [p]lace mandate for the State of Illinois has prevented us from collecting data inside Cook County Jail and the Illinois Department of Correction." DSF ¶ 9. EMAGES provided the required written notice, the reasons for the termination, and an effective date of October 1, 2020, which initiated the termination process for the EMAGES award. *Id*. DOJ reasonably relied upon these representations and processed the termination according to 2 C.F.R. § 200.340.

In any event, because Nance was not the authorized representative of the grant recipient EMAGES, Nance cannot initiate or otherwise alter the termination process for the EMAGES

8

award. DOJ likewise cannot compel a grant recipient that terminated its award to continue project activities under an award. Once a grantee initiates an award termination, DOJ processes the termination, which is followed by the closeout process, as described at 2 C.F.R. § 200.344.

Regardless, DOJ was not Nance's employer, nor did it retaliate against Nance or "assist EMAGES in discriminating or retaliating against Nance; rather, DOJ simply processed a grant termination request by a grantee, EMAGES, in the ordinary course of business. DOJ could not force EMAGES to continue to accept the DOJ grant. DSF ¶¶ 7 – 9; 2 C.F.R. § 200.340. Besides, as set forth above, Nance's claims do not did not rise to the level of a protected disclosure as contemplated in 41 U.S.C. § 4712. Accordingly, his claims under the 2013 NDAA and 41 U.S.C. § 4712 should be dismissed.

### III. DOJ Is Not Liable Under the Illinois Whistleblower Act.

DOJ would not be liable under the Illinois Whistleblower Act (if Nance were suing DOJ on that claim) because the United States has not waived its sovereign immunity for such claims. It is well settled that sovereign immunity bars suits against the United States, its agencies, and its officers in their official capacities, absent a congressional waiver of such immunity. *FDIC v. Meyer*, 510 U.S. 471, 475, 485-86 (1994); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992) ("waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed"). This claim is barred unless Nance could point to an "unequivocally expressed" waiver of sovereign immunity. *United States v. King*, 395 U.S. 1, 4 (1969). Nance has not done so and cannot do so.

Even if the United States had waived its sovereign immunity under the state act, the Department of Justice would not be liable under that act because Nance was never a DOJ

9

employee. The Illinois Act provides, generally, that *employers* may not retaliate against an employee for disclosing information where an employee "has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15. Accordingly, since Nance was never a DOJ employee, the Illinois Whistleblower Act would not apply in this case even if the United States were subject to it. DSF ¶ 15.

### IV. Nance's Employment-Related Claims Should Be Dismissed.

Nance's "hostile work environment" and "retaliation" claim are employment-related claims that should be dismissed because, again, Nance was never a DOJ employee. DSF ¶ 15. Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 835 (1976). And Title VII provides remedies for *employees* of federal agencies (and applicants for such employment). 42 U.S.C. § 2000e–16(a). Here, DOJ was never Nance's employer and therefore Nance cannot pursue a hostile work environment or a retaliation claim against it, at least under Title VII. Nance has also not alleged harassment by DOJ based on any alleged membership in a protected class, alleged any conduct by DOJ that was severe or pervasive, or alleged an adverse employment action that was based on prior protected activity. *Id.*; *Mendenhall*, 419 F.3d at 691 (7th Cir. 2005). Accordingly, Nance's hostile work environment and retaliation claims should be dismissed against DOJ (if they were meant to be against DOJ). Also, Nance's claim for "special damages" relates to his alleged damages, and it is therefore not a cognizable cause of action. Compl. at 25; *Id*.

### Conclusion

For the foregoing reasons, this court should dismiss the claims against the Department of Justice in their entirety, or alternatively grant it summary judgment.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Kurt N. Lindland
    KURT N. LINDLAND
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-4163
    kurt.lindland@usdoj.gov

11