April 17, 2020

Bureau of Justice Programs
Ms. Tracey Willis, BJA State Policy Advisor
Mr. Andre Bethea, Policy Advisor, Corrections

Ms. Willis:

I, Dr. Fred L. Nance Jr., am the author of this writing. I want to report possible fraud or misappropriation of funds regarding Grant #2018-CY-BX-0025. In order to protect this grant and myself, I want to invoke the NDAA Whistleblower Matters The National Defense Authorization Act of 2013 (NDAA), which include a provision that makes it illegal for an employee of a Federal contractor, subcontractor, or grantee to be discharged, demoted, or otherwise discriminated against for making a protected whistleblower disclosure. Under NDAA, the DOJ OIG has jurisdiction to investigate allegations of reprisal for whistleblowing by employees of DOJ contractors, subcontractors, and award recipients. As a peer reviewer for 10 years and instead of reporting this to the OIG, I thought we may be able to resolve this issue at this level with an **external** audit and future guidelines to follow. This is a whistleblower complaint.

The reasoning for writing this report at this time is because of what I discovered in April of 2020 and having working knowledge of the event being described. I am not part of any fraudulent scheme. I received a copy of our Second Chance Act drawdown report, dated March 30, 2020, which listed Dorothy Collins, a clerk who resigned on or about January 16, 2020. When I inquired of Dr. Wash about drawing down monies for someone who did not work for the program, she insulted and demeaned me as she stated I knew nothing about accounting. I reported my finding to our Accountant, Mr. Tom Bradley, CPA. I asked Mr. Bradley for an explanation and report. I have noted these conversations via emails to Dr. Wash and Mr. Bradley. I am attaching supporting documentation with this writing via email to you.

This writing is a result to protect my integrity and ethics being a partner to this Grant. In the first instance of our initial proposal submitted on May 1, 2018 for this grant it reports, "EMAGES, in collaboration with C.L.I.C.K. Services, NFP…." Dr. Hattie Wash is President and CEO of EMAGES. Dr. Wash handles the fiduciary part of the Grant. I am the President and CEO of C.L.I.C.K. Services, NFP. I handle the day-to-day operation as the Program Director. Therefore, I have an obligation and responsibility to report the appearance of irregularities with this Grant.

We received funding for our Grant, in late February 2019. When Dr. Wash conducts her drawdowns, I would be given a copy of the drawdown with numbers for total cost. I requested to get line-item cost for the total cost. I did not receive my first "line-item" cost until October 2019. Since receiving funding in February 2019, I had been complaining about not receiving a laptop computer to perform my duties. I requested the laptop because I had been using my personal laptop to perform my task during the implementation stage of the grant period. Instead of providing me with a laptop, Dr. Wash bought a desktop, which was placed in an office where we were not working. All work during the implementation stage was done in Dr. Wash's office as we worked in concert developing our curricula and other duties related to the implementation stage. When Dr. Wash bought the desktop, I asked her how were we supposed to use the desktop

if we are working in her office. I received a laptop computer and other office material in October of 2019, which was requested in February 2019. The laptop did not come with virus protection. Virus protection was provided from an EMAGES existing program. This virus protection ended in February of 2020. I requested new virus protection, verbally, for weeks before requesting it in writing. I received virus protection for the laptop on April 10, 2020.

At every turn, I argued or advocated for a program need strongly suggesting the use of SCA funding; Dr. Wash would tell me "this is my company!" When Dr. Wash would make this statement, I consistently reminded her "Yes, EMAGES is your company but this SCA grant is not EMAGES alone." When the need was not met and became more important, I would continue to request it. Dr. Wash would give me some partial supplies she had laying around stating "I will order your supplies." I constantly rejected partial supplies. Dr. Wash would respond in a condescending manner. I responded "I am not your employee. I am your partner."

Nevertheless, pursuant to DOJ Grant Financial Management Training II, **Payroll and Benefit Services** – Award recipients must refer to program guidelines, award special conditions, Part 200 Uniform requirement, and their approved budget to determine the permissibility of compensation charges. **Allowability** – Charges made to Federal awards for salaries, wages, and fringe benefits must be based on records that accurately reflect the work performed under each specific grant award, and conform to the established written policies of the organization consistently applied to both federal and non-federal activities. See 2 C.F.R. 200.430 The allowability criteria for compensation for personal services are as follows: (1) The compensation must be for work performed during the performance period; and (2) The compensation is not a retroactive payment for a prior performance period. Dorothy Collins was not employed during the time frame listed in the drawdown document.

**Material Misstatements Including Failure to Adequately Document the Use of Funds**
Recipients must establish and maintain an adequate accounting system and, when requested, be able to provide sufficient documentation to prove that all grant drawdowns were for allowable, allocable and reasonable expenses. **Reporting Obligations** 2 C.F.R. Part 200.113 "Mandatory Disclosures" specifically requires that "The non-Federal entity or applicant for a Federal award must disclose, in a timely manner, in writing to the Federal awarding agency or pass-through entity all violations of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Failure to make required disclosures can result in any of the remedies described in § 200.338 Remedies for noncompliance, including suspension or debarment. (See also 2 C.F.R. Part 180 and 31 U.S.C. 3321)." Award recipients are required to use federal funds in the best interest of their program and ensure their decisions related to the use of the funds are free of personal and organizational conflicts of interest. 2 C.F.R. 200.112

Respectfully submitted

/s/Dr. Fred L. Nance Jr., Ph.D.
Human Services/Social Policy Analysis and Planning
Program Director – Grant #2018-CY-BX-0025
frednance@clickservices.org
708-921-1395