# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Fred L. Nance Jr. | |
| *Plaintiff,* | Case No. 1:20-cv-06316 |
| v. | Hon. Jorge L. Alonso |
| Department of Justice, Bureau of Justice Assistance, Office of Justice Programs, EMAGES, Inc., Hattie Wash, Thomas Bradley, et al., | Magistrate Judge Beth W. Jantz |
| *Defendants.* | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF COMBINED MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION FOR A MORE DEFINITE STATEMENT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6) AND 12(E)

Defendant, Thomas Bradley ("Bradley"), by and through his undersigned counsel, hereby moves to dismiss Plaintiff, Fred L. Nance Jr.'s ("Plaintiff") Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Defendants, EMAGES, Inc. ("EMAGES") and Dr. Hattie Wash ("Dr. Wash") (collectively, "Defendants"), by and through their undersigned counsel, move this Court to dismiss Counts VI and VII of the Complaint with prejudice, pursuant to Rule 12(b)(6). Defendants also move this Court to order Plaintiff to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) ("Rule 12(e)"). In support thereof, Bradley and Defendants state as follows:

## FACTUAL BACKGROUND

EMAGES is a physiological counseling and social service agency. (Dkt. 5, Compl. at 6.) Dr. Wash serves as EMAGES' CEO and president, while Bradley is a certified public accountant ("CPA"). (*Id.*) Plaintiff is the president and CEO of C.L.I.C.K. Services, NFP. (*Id.* at 5.) In May

2018, Dr. Wash and Plaintiff drafted and submitted a proposal for a Second Chance Act Community-Based Program grant (the "Grant") to the U.S. Department of Justice, Bureau of Justice Assistance, Office of Justice Programs ("DOJ, BJA, OJP"). (*Id.* at 7.) The Grant was awarded to EMAGES in September 2018, with Dr. Wash serving as the Grant's fiduciary partner, while Plaintiff was appointed program director. (*Id.* at 2, 6.)

In or around February 2020, EMAGES received approval from DOJ, BJA, OJP to drawdown funds on a monthly basis for rendering services related to the Grant. (*Id.* at 8, 11.) That same month, Plaintiff alleges he became aware that EMAGES had drawn down funds for an employee who no longer worked for the company. (*Id.* at 8-9.) According to Plaintiff, he raised this issue with Dr. Wash, but no further action was taken by anyone at EMAGES. (*Id.* at 9, 12.) Plaintiff also voiced his concerns to Bradley, who informed Plaintiff that any issues related to the Grant needed to be discussed with Dr. Wash. (*Id.* at 13.) However, Plaintiff refused to do so, stating that "[Dr. Wash] was not listening to him about the misappropriation of funds and fraud, and that [Plaintiff] was going to report this to DOJ, BJA, OJP representatives." (*Id.* at 13.)

Thereafter, on or about April 18, 2020, Plaintiff submitted his first of three "whistleblower complaints" to DOJ, BJA, OJP reporting "the appearance of misappropriation of funds and/or fraud." (*Id.* at 13.) Plaintiff filed his second whistleblower complaint to DOJ, BJA, OJP on August 28, 2020, reiterating the same alleged wrongdoing. (*Id.* at 17.)[1] Therein, Plaintiff also stated that Dr. Wash was removing Plaintiff as the "[point of contact] of this grant" and that "[DOJ, BJA, JOP] limited my [*sic*] performing my duties and allowed Dr. Wash to retaliate against me." (*Id.*) Plaintiff filed his third and final whistleblower complaint on September 13, 2020. (*Id.* at 16.)

---

[1] Plaintiff filed a revised copy of the second complaint the following day. (*Id.* at 17.)

28860540v1

In late September 2020, Dr. Wash sent a company-wide email to staff, relaying that EMAGES was giving up the Grant, due to business constraints imposed by COVID-19. (*Id.* at 16, 19.) Plaintiff, however, allegedly believed that Dr. Wash and EMAGES surrendered the Grant due to his filing of the whistleblower complaints. (*Id.* at 10.) Accordingly, Plaintiff filed all three complaints with the U.S. Office of Special Counsel on or about September 29, 2020. (*Id.* at 20.) Then, on October 13, 2020, Plaintiff received correspondence informing him that his whistleblower complaints were denied, and rejecting his claims of retaliation. (*Id.* at 21.)

On October 26, 2020, Plaintiff filed a seven-count Complaint against EMAGES, Dr. Wash, Bradley, and DOJ, BJA, OJP. Plaintiff alleges violations of the National Defense Authorization Act of 2013 ("NDAA"), 41 U.S.C. § 4712, the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1 *et seq.*, and the Federal Tort Claims Act, all in connection with his alleged retaliatory discharge due to the whistleblower complaints. (Dkt. 5, Compl. at 2.) Plaintiff also asserts claims for "retaliation," "hostile work environment," "emotional distress," and "special damages." (*Id.* at 24-26). However, Plaintiff's claims against Bradley are entirely baseless, while Plaintiff's allegations against Defendants are vague and ambiguous. The Court should dismiss Bradley from this case, and order Plaintiff to provide a more definite statement regarding his alleged claims as to the remaining Defendants.

## ARGUMENT

### I. Legal Standard for Motions to Dismiss Under Rule 12(b)(6).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 n.4 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the claim must comply with Federal Rule of Civil Procedure 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief,"

28860540v1

such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level." *Id.* "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Moreover, dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief[.]" *Twombly*, 550 U.S. at 558.

## II. Plaintiff's Complaint Should Be Dismissed with Prejudice in its Entirety as to Bradley, Because Plaintiff Fails to State a Claim Upon Which Relief May Be Granted.

Plaintiff's claims against Bradley all fail for the straightforward reason that he was not, and has never been, a contractor, subcontractor, grantee, or subgrantee of the Grant, nor was he Plaintiff's employer. Rather, Bradley acts as EMAGES' CPA, and did not have final decision-making authority with respect to the Grant. Even accepting Plaintiff's allegations as true, the Complaint is utterly devoid of any factual or legal basis to hold Bradley liable. Therefore, the Court should dismiss Bradley from this suit.

### A. Plaintiff's NDAA (Count I) and 41 U.S.C. § 4712 (Count II) claims should be dismissed because Bradley was not a contractor, subcontractor, grantee, or subgrantee of the Grant, nor was he Plaintiff's employer.

Section 828 of the NDAA, codified as 41 U.S.C. § 4712, protects employees of a contractor, subcontractor, or grantee from being retaliated or discriminated against when an employee discloses information that they "reasonably believe[] is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, or an abuse of authority relating to a Federal contract or grant[.]" 41 U.S.C. § 4712(a)(1). To bring a viable claim under the NDAA, a plaintiff must allege that: "(1) she was an employee of a government

4

contractor, (2) she disclosed information that she reasonably believed was evidence of a rule violation related to a federal contract to the required person, and (3) her disclosure was a contributing factor in the action taken against her." *Omwenga v. United Nations Found.*, No. 15-cv-786 (TSC), 2019 WL 4860818, at *12 (D.D.C. Sept. 30, 2019) (internal quotation omitted).

Assuming a plaintiff exhausts the administrative remedies provided for under the NDAA, the plaintiff-employee "may bring a de novo action at law or equity *against the contractor, subcontractor, grantee, or subgrantee* to seek compensatory damages and other relief available under this section." 41 U.S.C. § 4712(c)(2) (emphasis added). For purposes of the NDAA, a "contractor is the person to whom the contract is awarded." *Armstrong v. Arcanum Grp. Inc.*, No. 16-CV-1015-MSK-CBS, 2017 WL 4236315, at *8 (D. Colo. Sept. 25, 2017) (citing 41 U.S.C. § 4705(a)(1)-(2)). The NDAA does not provide for any right of action against those who are not a contractor, subcontractor, grantee, or subgrantee. *See* 41 U.S.C. § 4712(c)(2).

As Plaintiff acknowledges in the Complaint, Bradley is a CPA for EMAGES. (Dkt. 5, Compl. at 6.) Plaintiff does not, and cannot allege that Bradley himself was the contractor, subcontractor, grantee, or subgrantee of the Grant at issue. In fact, Plaintiff alleges that he and Dr. Wash submitted and eventually received the Grant, *not* Bradley. (*Id.* at 10.) Thus, even accepting the allegations in the Complaint as true, Plaintiff fails to state a claim against Bradley that entitles him to relief. Accordingly, Counts I and II of the Complaint must be dismissed.

**B. Plaintiff's whistleblower (Count III) and retaliation claims (Count IV) should be dismissed because Bradley is not an employer and does not have final decision-making authority.**

The IWA provides that "[a]n *employer may not retaliate against an employee* for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."

5

740 ILCS 174/15 (emphasis added).[2] The IWA only applies to an employer, which, in the individual context, is defined as "an individual . . . that has one or more employees in this State . . . and any person acting within the scope of his or her authority express or implied on behalf of [previously described] entities in dealing with its employees." 740 ILCS 174/5. Courts have further limited the scope of individual liability under the IWA by requiring that an individual defendant have "some form of supervisory role over [the plaintiff] with a level of final decision-making authority." *Wheeler v. Piazza*, 364 F. Supp. 3d 870, 884 (N.D. Ill. 2019).[3]

Here, the Complaint does not, and cannot allege that Bradley had any form of decision-making authority over Plaintiff or the Grant. As previously noted, Bradley was the CPA for EMAGES, and his responsibility for the Grant was limited to an accounting role. (Dkt. 5, Compl. at 6.) Bradley had no authority to make decisions regarding whether the Grant was surrendered, or whether Plaintiff would remain as program director. These shortcomings are fatal to Plaintiff's IWA claim. Thus, Counts III and IV must also be dismissed as to Bradley.

### C. Plaintiff's hostile work environment claim (Count V) should be dismissed because Bradley is not an employer.

The Illinois Human Rights Act ("HRA"), 775 ILCS 5/2-101 *et seq.*, forbids employment discrimination, and allows employees to assert claims for harassment that create a hostile work environment. 775 ILCS 5/2-102(A). To this end, the HRA provides that "[i]t is a civil rights

---

[2] The IWA also states that "[a]n *employer* may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency if the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/10 (emphasis added).

[3] Whether the IWA even permits individual liability is an open question within this District. *Compare Hernandez v. Sheriff of Cook Cnty.*, No. 13 C 7163, 2014 WL 1339686, at *3 (N.D. Ill. Apr. 3, 2014) (explaining that the IWA does not permit a claim against individuals), *and Parker v. Ill. Human Rights Comm'n*, No. 12 C 8275, 2013 WL 5799125, at *9–10 (N.D. Ill. Oct. 25, 2013) (same), *with Mack v. City of Chicago*, No. 16 C 7807, 2017 WL 951369, at *6 (N.D. Ill. Mar. 10, 2017) (allowing an IWA claim against individuals), *and Hower v. Cook Cnty. Sheriff's Off.*, No. 15 C 6404, 2016 WL 612862, at *3 (N.D. Ill. Feb. 16, 2016) (same), and *Bello v. Vill. of Skokie*, No. 14 C 1718, 2014 WL 4344391, at *9 (N.D. Ill. Sept. 2, 2014) (same).

28860540v1

violation for any *employer* to refuse to hire, to segregate, [and] to engage in harassment . . ." 775 ILCS 5/2-102 (emphasis added). Harassment is defined under the statute as:

> Any unwelcome conduct on the basis of an individual's actual or perceived race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, pregnancy, unfavorable discharge from military service, or citizenship status that has the purpose or effect of substantially interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment.

775 ILCS 5/2-101(E-1).

An actionable claim for harassment or hostile work environment must allege that: (1) the employee was subject to unwelcome harassment; (2) the harassment was based on a reason forbidden by anti-discrimination laws; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment; and (4) there is a basis for employer liability. *Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 560 (7th Cir. 2019).[4] A defendant's status as an "employer" is an essential element of the cause of action. *Aero Servs. Int'l, Inc. v. Human Rights Comm'n*, 684 N.E.2d 446, 453 (Ill. App. Ct. 1997).

As an initial matter, Bradley is not an "employer," which is fatal to Plaintiff's claim. Relevant here, the HRA defines an employer as "[a]ny person employing one or more employees within Illinois during 20 or more calendar weeks within the calendar year of or preceding the alleged violation." 775 ILCS 5/2-101(B)(1). Bradley, as a CPA for EMAGES, does not employ anyone, nor does Plaintiff allege as much. Rather, Bradley is an *employee* of EMAGES and does not have the authority to make decisions related to the Grant, or Plaintiff's status as program director. Thus, Bradley is not an employer under the HRA, and Plaintiff cannot bring a claim against him.

---

[4] "Illinois courts look to Title VII law to determine whether a hostile work environment exists under the [HRA]." *Abney v. Bd. of Educ.*, No. 20 C 3621, 2021 WL 268210, at *2 (N.D. Ill. Jan. 27, 2021) (citing *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017)).

28860540v1

Moreover, Plaintiff fails to satisfy other basic pleading requirements for a hostile work environment claim under the HRA. Plaintiff has not alleged any unwelcomed conduct that would rise to the level of harassment. *See Blackford v. Fed. Express Corp.*, 80 F. Supp. 3d 809, 816 (N.D. Ill. 2015) (quoting *Gentry v. Export Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001) (plaintiff must show "that her work environment was both subjectively and objectively offense, 'one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'")). Plaintiff merely alleges that the Grant was returned as a result of his whistleblower complaints. These allegations do not meet the "high bar" required for hostile work environment claims. *See Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018). Plaintiff's HRA claim must also be rejected on this basis. For these reasons, the Court should dismiss Count V of the Complaint with prejudice as to Bradley.

III. **Counts VI and VII of the Complaint Should Be Dismissed with Prejudice as to Bradley and Defendants, Because Those Claims Fail to Allege a Recognized Cause of Action.**

Plaintiff's final two 'causes of action' are standalone claims titled "Emotional Distress" and "Special Damages."[5] (Dkt. 5, Compl. at 24-25.) However, it is well established that neither emotional distress nor special damages represent independent claims, but are forms of relief that must be founded upon underlying causes of action. *See Indemnified Capital Invs., SA v. R.J. O'Brien & Assocs., Inc.*, 12 F.3d 1406, 1413 (7th Cir. 1993) (quoting *McGrew Heinold Commodities, Inc.*, 497 N.E.2d 424, 429 (Ill. App. Ct. 1986) ("punitive damages represent a type of relief rather than an independent cause of action.")); *Clark v. Child.'s Mem'l Hosp.*, 955 N.E.2d

---

[5] Plaintiff's claim for "special damages" is equivalent to punitive damages, which, under Illinois law, may be awarded in retaliatory discharge cases under limited circumstances. *See Kritzen v. Flender Corp.*, 589 N.E.2d 909, 918-19 (Ill. App. Ct. 1992) (discussing award of punitive damages for retaliation).

1065, 1087 (Ill. 2011) (recognizing that emotional distress is a particular type of injury, for which damages may be awarded under certain circumstances, as opposed to a freestanding claim).

These so-called claims, therefore, must fail. *See Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 893 (N.D. Ill. 2014) (dismissing standalone claim for punitive damages, and noting it "necessarily fails under Rule 12(b)(6) because it does not state a claim upon which relief can be granted."); *see also Carlen v. Coloplast Corp.*, No. 3:19-cv-1304-GCS, 2020 WL 3050752, at *2 n.1 (S.D. Ill. Jun. 8, 2020) (noting that punitive damages "do not raise a standalone claim for relief."). Accordingly, the Court should dismiss Counts VI and VII with prejudice as to Bradley and Defendants.

**IV.     Legal Standard for Motions for a More Definite Statement Under Rule 12(e).**

Rule 12(e) allows any party to move for a more definite statement when a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The Federal Rules of Civil Procedure require a plaintiff to provide a plain statement of the claim "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. Accordingly, a complaint must contain enough information as to "all the material elements to sustain a recovery under *some* viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (emphasis in original).

A Rule 12(e) motion "is appropriate '[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice.'" *Smith v. Univ. of Chi. Med. Ctr.*, No. 20-CV-03536, 2021 WL 54026, at *2 (N.D. Ill. Jan. 6, 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 514 (2002)). To this end, courts have acknowledged that Rule 12(e) "is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief." *Reed v. Palmer*, 906 F.3d 540, 554 (7th Cir. 2018); *see Chapman v. Yellow Cab Coop.*, 875 F.3d

846, 849 (7th Cir. 2017) (motion for a more definite statement "is the right way to ask plaintiffs to lay out details that enable the defendants to respond intelligently and the court to handle the litigation effectively.")

**V.    The Complaint is Vague and Ambiguous, Because Plaintiff Simultaneously Alleges That He Was and Was Not an Employee of EMAGES, Which Prevents Defendants From Preparing an Appropriate Response**.

In the Complaint, Plaintiff inconsistently alleges that, on the one hand, he is an employee of EMAGES, while on the other, he is not. (*See* Dkt. 5, Compl. at 14 n.17.) The viability of Plaintiff's claims all hinge on an employer-employee relationship with Defendants. (*See* §§ II(A)-(C), *supra*.) Because the Complaint is muddled with paradoxical allegations regarding Plaintiff's employment status with EMAGES, Defendants are unable to effectively prepare a response to the Complaint. The Court should therefore order Plaintiff to provide a more definite statement to clarify this critical issue.

For instance, in some places, Plaintiff alleges that he was employed by EMAGES:

> [W]hen plaintiff received retaliation and was *terminated from employment* . . . (Dkt. 5, Compl. at 6) (emphasis added).
>
> \*    \*    \*
>
> Defendants, DOJ … allowed defendant "Hattie" to give the grant back; thus allowing 'Hattie' to retaliate against plaintiff and *terminate plaintiff's employment* for filing 3 Whistleblower complaints. (*Id.* at 2) (emphasis added).
>
> \*    \*    \*
>
> Plaintiff quotes a statute that provides "an employee of a contractor, subcontractor, grantee. . . may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body. . ." (*Id.* at 3.)
>
> \*    \*    \*
>
> Defendant 'Hattie' never informed staff of the information regarding Contractor Employee Whistleblower Rights and Requirement to Inform Employees of Whistleblower Rights. (*Id.* at 23.)

10

Conversely, Plaintiff also expressly claims that he is *not* an employee, but rather a partner or collaborator of EMAGES:

> We are partners with this SCA grant. *I am not an employee of EMAGES.*" (*Id.* at 14 n.17) (emphasis added).
>
> * * *
>
> Plaintiff and defendant "Hattie" entered into a *partnership/collaboration* submitting an abstract proposal . . . (*Id.* at 2) (emphasis added).
>
> * * *
>
> Plaintiff *and* defendant "Hattie" received this grant on October 1, 2018 . . . (*Id.* at 2) (emphasis added).
>
> * * *
>
> When plaintiff claimed he was a *partner* on Grant. . . and the Grant should be given to him if 'Hattie' was giving it up, DOJ, BJA, OJP. . . informed plaintiff he was an employee of EMAGES, and not a partner on the grant. *Plaintiff referenced the abstract and proposal to substantiate plaintiff's claim he was a partner.* (*Id.* at 2) (emphasis added).
>
> * * *
>
> Plaintiff is the President & CEO of CLICK. *Plaintiff is employed through and by CLICK, Services, NFP pursuant to the abstract and proposal submitted to the Department of Justice* . . . and approved by DOJ. (*Id.* at 5) (emphasis added).
>
> * * *
>
> Principal Defendants are: Defendant Hattie Wash, President & CEO of EMAGES, Inc. and Fiduciary partner for Grant . . . (*Id.* at 6.)
>
> * * *
>
> Defendant 'Hattie' was the fiduciary for the grant. . . Plaintiff receives a copy of all monthly drawdowns being the Program Director and *partner of the grant*. (*Id.* at 8) (emphasis added).
>
> * * *
>
> The Second Chance Act I have partnering with Emages, Inc. is not working out. Emages is the fiduciary part of the grant *and my company CLICK Services, NFP, hires me as the Program Director* . . . (*Id.* at 14) (emphasis added).
>
> * * *
>
> On September 27, 2020 defendant 'Hattie' admits *plaintiff's company CLICK Services, NFP partnered with EMAGES*, Inc. when she ask 'Is this the grant we applied for?' (*Id.* at 20) (emphasis added).

11

Plaintiff's contradictory allegations regarding his employment, or lack thereof, prevent Defendants from appropriately responding to the Complaint, and require a more definite statement. *Compare Mitchell v. Elec. Beach Tanning Salon Ltd.*, No. 18 C 7475, 2019 WL 1077127, at *1-2 (N.D. Ill. Mar. 7, 2019) (granting motion for a more definite statement based on inconsistent allegations throughout complaint), *with Tolston-Allen v. City of Chicago*, No. 12 CV 7601, 2014 WL 1202742, at *6 (N.D. Ill. Mar. 2014) (denying motion for a more definite statement where allegations in the complaint were not "inconsistent or unclear."). Though Plaintiff's Complaint provides adequate factual details as to most of the alleged events, the glaring inconsistencies relating to his employment status renders crucial portions of the Complaint unintelligible.

In sum, Plaintiff's allegations are vague and/or intentionally imprecise—but in any event his Complaint cannot stand as pled. Plaintiff's allegations related to his employment status are essential to his claims—Plaintiff must pick a path. Defendants cannot frame a proper response without clarity on this issue. Accordingly, Plaintiff should be ordered to provide a more definite statement pursuant to Rule 12(e), to give Defendants adequate notice regarding Plaintiff's claims for relief, and also to allow the Court to effectively manage this litigation.

## CONCLUSION

For these reasons, Defendants, EMAGES, Inc., Dr. Hattie Wash, and Thomas Bradley, respectfully request that this Court enter an Order:

1. Dismissing the Complaint with prejudice in its entirety as to Bradley;

2. Dismissing Counts VI and VII of the Complaint with prejudice as to EMAGES and Dr. Wash;

3. Granting Defendants' Motion for a More Definite Statement, directing Plaintiff to clarify whether he claims that he was or was not an employee of EMAGES; and

4. Granting such other and further relief that this Court deems fair, necessary, and just.

12

Dated: February 12, 2021                    Respectfully submitted,

**EMAGES, INC., DR. HATTIE WASH, AND THOMAS BRADLEY**

By:   /s/ *Derrick M. Thompson Jr.*
      One of their Attorneys

Derrick M. Thompson Jr. (ARDC No. 6287536)
Adam W. Decker (ARDC No. 6332612)
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601
Telephone:     (312) 527-4000
Email: dthompson@taftlaw.com
       adecker@taftlaw.com

Janica A. Pierce Tucker
TAFT STETTINIUS & HOLLISTER LLP
65 E. State St., Suite 1000
Columbus, OH 43215
Telephone:     (614) 221-2838
Email: jpierce@taftlaw.com
*Admitted pro hac vice*