

# DOJ Grants
# Financial Guide







**UNITED STATES**
**DEPARTMENT OF JUSTICE**

OFFICE OF JUSTICE PROGRAMS
OFFICE ON VIOLENCE AGAINST WOMEN
COMMUNITY ORIENTED POLICING SERVICES

# EXHIBIT 25

**FOREWORD** ........................................................................................................ II

**I. GENERAL INFORMATION** ............................................................................... 1
1.1 Users ........................................................................................................... 1
1.2 Resources .................................................................................................... 3

**II. PREAWARD REQUIREMENTS** ......................................................................... 5
2.1 Application Process ...................................................................................... 5
2.2 Acceptance of Award and Award Conditions ............................................ 16
2.3 Standards For Financial Management Systems ........................................ 21

**III. POSTAWARD REQUIREMENTS** ..................................................................... 27
3.1 Payments .................................................................................................... 27
3.2 Period of Availability of Funds ................................................................... 33
3.3 Matching or Cost Sharing Requirements .................................................. 38
3.4 Program Income ......................................................................................... 43
3.5 Adjustments to Awards .............................................................................. 48
3.6 Costs Requiring Prior Approval .................................................................. 53
3.7 Property Standards ..................................................................................... 57
3.8 Procurement Under Awards of Federal Assistance ................................... 64
3.9 Allowable Costs .......................................................................................... 70
3.10 OJP/COPS Office Conference Approval, Planning, and Reporting ......... 77
3.11 Indirect Costs ........................................................................................... 100
3.12 OJP's Confidential Funds ......................................................................... 104
3.13 Unallowable Costs ................................................................................... 111
3.14 Subrecipient Management and Monitoring ............................................. 115
3.15 Reporting Requirements .......................................................................... 121
3.16 Retention and Access Requirements for Records ................................... 126
3.17 Remedies for Noncompliance ................................................................. 128
3.18 Closeout ................................................................................................... 130
3.19 Audit Requirements .................................................................................. 134
3.20 Grant Fraud, Waste, and Abuse .............................................................. 141
3.21 OJP's Payment Programs ........................................................................ 146
3.22 Financial Management Training Requirements ........................................ 151

**IV. ORGANIZATION STRUCTURE** ....................................................................... 152
4.1 Organization Charts ................................................................................... 152

**V. APPENDICES** ................................................................................................. 153
5.1 Acronyms .................................................................................................... 153
5.2 Glossary of Terms ...................................................................................... 155
5.3 Appendices I and II ..................................................................................... 160

# Welcome to the *DOJ Grants Financial Guide*

### Foreword

## EXHIBIT 25

We hope you find this guide useful and informative. If you have any questions or comments, please contact your appropriate DOJ Funding Source.

---

**TOP 10 TOPICS**

1. Financial Management Systems
2. Allowable Costs
3. Unallowable Costs
4. Federal Financial Reports
5. Progress and Performance Reports

6. Audit Requirements
7. Conference Costs
8. Adjustments to Awards
9. Accounting by Approved Budget Category
10. Subrecipient Monitoring

---

The Department of Justice (DOJ) has three primary grant-making components, the Office of Justice Programs (OJP), the Office on Violence Against Women (OVW) and the Office of Community Oriented Policing Services (COPS Office). The mission of OJP is to provide innovative leadership to federal, state, local, and tribal justice systems by disseminating state-of-the-art knowledge and practices across America, and providing grants for the implementation of these crime fighting strategies. The mission of OVW is to provide federal leadership in developing the national capacity to reduce violence against women, and administer justice for and strengthen services to victims of domestic violence, dating violence, sexual assaults, and stalking. The mission of the COPS Office is to advance the practice of community policing by the nation's state, local, territory, and tribal law enforcement agencies through information and resources.

These three grant-making components provide Federal leadership in developing the nation's capacity to prevent and control crime, administer justice, and assist crime victims. They also provide policy guidance, financial control, and support services to their recipients in the areas of grants, accounting, and financial management. Each grant-making component conducts programmatic monitoring through site visits and desk reviews, and provides technical assistance and training to recipients. Additionally, OJP's Office of the Chief Financial Officer (OCFO) conducts financial monitoring through site visits and desk reviews, and provides training to OJP's recipients in the quarterly Grants Financial Management Training Seminars.

---

**ⓘ FINANCIAL MANAGEMENT TIP**

The DOJ Grants Financial Management Online Training is available to all DOJ grant-making component recipients.

---

The *DOJ Grants Financial Guide* (the "*Guide*") serves as the primary reference manual to assist OJP, OVW, and COPS Office award recipients in fulfilling their fiduciary responsibility to safeguard grant funds and ensure funds are used for the purposes for which they were awarded. It compiles a variety of laws, rules and regulations that affect the financial and administrative management of your award. There may be instances where the requirements may differ among the three grant-making components; to the extent possible, those differences are spelled out throughout this *Guide*. However, recipients (and subrecipients) should refer to their award terms and conditions to determine the specific requirements that apply to their award. We have provided references to the underlying laws and regulations as much as possible.

Foreword                        EXHIBIT 25

This *Guide* should be the starting point for all recipients and subrecipients of DOJ grants and cooperative agreements in ensuring the effective day-to-day management of awards. **The provisions of this *Guide* apply to Department of Justice awards made after December 26, 2014.**

For additional information on grants management, please visit the website of the Council on Financial Assistance Reform at https://cfo.gov//grants/. The Government Printing Office also maintains electronic copies of the Code of Federal Regulations at https://www.gpo.gov/fdsys/browse/collectionCfr.action?collectionCode=CFR and e-CFR at https://www.ecfr.gov/cgi-bin/ECFR?page=browse.

We are pleased to respond to any questions not covered by this *Guide* and welcome suggestions to improve the utility of the *Guide* and its content. Please feel free to contact the OCFO's Customer Service Center at 1-800-458-0786, OVW Grants Financial Management Division at 1-888-514-8556, or COPS Office Response Center at 1-800-421-6770 with any financial management questions or suggested revisions. In addition, questions and comments can also be directed to the OCFO via e-mail at ask.ocfo@usdoj.gov, OVW via email at OVW.GFMD@usdoj.gov, or COPS Office via email at askCopsRC@usdoj.gov.

Phil Keith                      Matt M. Dummermuth            Katharine Sullivan
Director, COPS Office           Principal Deputy Assistant     Principle Deputy Director, OVW
                                Attorney General, OJP

I. General Information    EXHIBIT 25

## 1.1 USERS

This *Guide* is provided for the use of all recipients and subrecipients of Federal grant programs administered by the three primary Department of Justice (DOJ) grant-making components. The *Guide* was developed to serve as a compilation of the various laws and regulations governing DOJ grants financial management and administration.

### Recipients

- A recipient is a non-Federal entity that receives a Federal award directly from a Federal awarding agency to carry out an activity under a Federal program.
- Recipients are required to adhere to the applicable law of their jurisdiction, and the financial and administrative rules in this *Guide*. However, other programmatic and technical requirements (for example, as set out in award conditions or contained in program-specific guidelines) may also apply.
- Recipients are required to adhere to all applicable uniform (grants) administrative requirements, cost principles, and audit requirements set forth in 2 C.F.R. Part 200 and other applicable law.

### Subrecipients

- A subrecipient is a non-Federal entity that receives a subaward from a pass-through entity to carry out part of a Federal program, but does not include an individual that is a beneficiary of such program.
- Subrecipients are required to adhere to the applicable law of their jurisdiction and the financial and administrative rules in this *Guide*. The pass-through entity may also impose additional financial and administrative requirements.
- Subrecipients are also required to adhere to all applicable uniform (grant) administrative requirements, cost principles, and audit requirements set forth in 2 C.F.R. Part 200 and other applicable law.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> When determining whether an entity receiving federal award funds from the recipient is a subrecipient or a contractor, the legal document executed between the recipient and the entity receiving federal award funds from the recipient is NOT the driving determinant. See 2 C.F.R. § 200.22 and 2 C.F.R. § 200.92. The substance of the activity that has been contracted or subawarded will be the major factor considered. If program activities are delegated to another entity that delegation will generally be considered a subaward. On the other hand, if goods or services are purchased or procured from another entity for the non-Federal entity's own use, that activity will generally be considered a contract. For additional information on this topic, please refer to 2 C.F.R. § 200.330, subrecipient and contractor determination.

# I. General Information

## 1.1 USERS

### Individuals

- Any individual who works for a recipient or subrecipient should use this *Guide* as a reference for financial and administrative management of DOJ-funded grant programs or projects.

- These individuals may include administrators, financial management specialists, grants management specialists, accountants, and auditors.

- This *Guide* also may be used as a training resource for new employees.

### For-Profit (or Commercial) Entities

In accordance with [2 C.F.R. § 200.101(c)](#), OJP/OVW applies 2 C.F.R. Part 200, subparts A through D (excluding 2 C.F.R. § 200.317 through 200.326), to for-profit (or commercial) entities. However, for-profit (or commercial) entities receiving funding through the COPS Office must comply with 2 C.F.R. Part 200, subparts A through E.  In addition, in accordance with 2 C.F.R. § 200.400(g), the grantee may not earn or keep a profit as a result of the award unless expressly authorized by the specific terms and conditions of the award.

To the extent allowable and consistent with applicable law, and unless expressed explicitly otherwise herein, this *Guide* applies to any recipient or subrecipient that is a for-profit (or commercial) entity. As used throughout the *Guide*, the term "non-federal entity(ies)" includes for-profit entities.

# I. General Information

## 1.2 RESOURCES

### Introduction

This *Guide* includes references to the policies and guidance issued by the Office of Management and Budget (OMB). The largest division of the Executive Office of the President, OMB is responsible for implementing and enforcing the President's policies across the entire Federal Government.

On December 26, 2013, OMB issued guidance that provides a government-wide framework for grants management (Federal Register, 12/26/2013). The new guidance, the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (2 C.F.R. Part 200), streamlines the Federal Government's administrative, cost, and audit requirements, and has been implemented by DOJ via DOJ regulation at 2 C.F.R. Part 2800.

The guidance superseded the following OMB requirements:

- OMB Circular A-21, Cost Principles for Educational Institutions;
- OMB Circular A-87, Cost Principles for State, Local, and Indian Tribal Governments;
- OMB Circular A-89, Federal Domestic Assistance Program Information;
- OMB Circular A-102, Grant Awards and Cooperative Agreements with State and Local Governments (Common Rule);
- OMB Circular A-110, Uniform Administrative Requirements for Awards and other Agreements, Institutions of Higher Education, Hospitals and other Non-Profit Organizations;
- OMB Circular A-122, Cost Principles for Non-Profit Organizations;
- OMB Circular A-133, Audits of States, Local Governments, and Non-Profit Organizations; and
- Sections of OMB Circular A-50, Audit Follow-up.

---

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> These requirements, as implemented by DOJ, apply to Federal awards made after December 26, 2014, and the audit requirements apply to audits for fiscal years beginning on or after December 26, 2014.

---

For Federal awards made before December 26, 2014, absent an agreement otherwise in a Federal award issued after that date, the requirements in place at the time of award continue to apply. These prior requirements may include those above, as well as 28 C.F.R. Parts 66 or 70, and the prior guidance issued by the specific grant-making component (i.e., OJP Financial Guide, OVW Financial Grant Management Guide, COPS Office Grant and Award Owner's Manuals).

The following requirements remain in place:

- Government-wide Debarment and Suspension (Nonprocurement) is codified at 2 C.F.R. Part 180, with DOJ-specific rules at 2 C.F.R. Part 2867.
- Government-wide Requirements for Drug-Free Workplace (Grants) is codified at 28 C.F.R. Part 83.
- Restrictions on lobbying are codified at 28 C.F.R. Part 69.

# I. General Information

## 1.2 RESOURCES

For additional information on grants management, please visit the Council on Financial Assistance Reform at https://cfo.gov/COFAR/. The most recently updated version of the CFR can be found on the U.S. Government Printing Office's website at FDsys - Code of Federal Regulations.

### Office of the Inspector General Fraud Hotline

Recipients should report any allegations of fraud, waste, and abuse of grant funds to the appropriate DOJ grant-making component. In addition to or instead of reporting allegations to the grant-making component, allegations may be reported to the DOJ Office of the Inspector General at (800) 869-4499 (phone), (202) 616-9881 (fax), or by mail:

U.S. Department of Justice
Office of the Inspector General
Investigations Division
1425 New York Avenue N.W., Suite 7100
Washington, DC 20530

### Other Available Resources

- *Procurement Procedures for Recipients of DOJ Grants* [PDF - 700 Kb]
- *Postaward Instructions* [PDF - 559 Kb] for OJP grant recipients and subrecipients.
- OVW Post Award Instructions available at https://www.justice.gov/ovw/grantees.
- Federal grant information is available at http://www.grants.gov.
- Federal Government regulation information is accessible at http://www.regulations.gov.
- Grants Management System (GMS) Training and Technical Assistance can be found at https://ojp.gov/training/gmstraining.htm.
- The OJP GMS HelpDesk is available via email at GMS.HelpDesk@usdoj.gov or phone at 202-514-2024.
- The OVW GMS Helpdesk is available via email at OVW.GMSSupport@usdoj.gov or phone at 1-866-655-4482.
- The COPS Office Response Center is available at askCopsRC@usdoj.gov or phone at 1-800-421-6770.
- The Federal Funding Accountability and Transparency Act (FFATA) is available at https://www.fsrs.gov.

# II. Preaward Requirements

## 2.1 APPLICATION PROCESS

### Eligible Recipients

Eligibility requirements for block, formula, and discretionary awards can be found in the grant program solicitations contained in awarding agency program announcements, notices of funding opportunities (i.e., discretionary grant program solicitations), or other awarding agency program documents.

- **Block and formula awards:** Generally, States, territories, and sometimes Indian tribes and units of local government are eligible for awards under the Department of Justice's (DOJ's) various block and formula grant programs. Specific eligibility criteria for each program are set forth in the program's governing statute and rules.

- **Discretionary awards:** DOJ may award funds under its discretionary grant programs to some or all of the following types of recipients, depending on authorizing legislation and selected program strategies: States; units of local government; Indian tribes and tribal organizations; institutions of higher education; hospitals; nonprofit organizations; for-profit organizations; and (in limited circumstances) individuals.

- **OVW Eligibility Guide:** The OVW Program Plan Chart is intended to assist potential OVW applicants to identify programs for which they are eligible to apply. Application packages can be found at Grants.gov application download. Applications that are submitted by non-eligible entities will be removed from consideration during the initial review process.

### Program Announcements

For programmatic and technical requirements relating to block and formula award applications, contact the DOJ grant-making component to request program guidelines.

DOJ grant-making components announce competitive discretionary and formula/block program funding opportunities via Grants.gov. Applications for competitive discretionary programs are submitted through Grants.gov; however, the COPS Office has an additional step where their applications are submitted directly in the COPS Office Online Application System. Applications for OJP and OVW non-competitive discretionary and formula/block opportunities are directly submitted to the Grants Management System (GMS). A collection of available assistance programs can be found in the Catalog of Federal Domestic Assistance published by the U.S. General Services Administration. To view each grant-making component's available programs, visit the websites below:

OJP — http://ojp.gov/funding/Explore/CurrentFundingOpportunities.htm
OVW — http://www.justice.gov/ovw/open-solicitations
COPS Office — http://www.cops.usdoj.gov/Default.asp?Item=46

### Nondiscrimination Requirements

**Non-discrimination assurance:** Applicants must assure and certify, on the applicable awarding agency assurance form, compliance with all civil rights nondiscrimination requirements. These assurances and certifications are made by signing an assurances form that addresses various cross-cutting federal requirements, including those prohibiting unlawful discrimination. The applicable form typically is referenced in the program solicitation, and signed during the application process (electronically for most programs).

## II. Preaward Requirements

### 2.1 APPLICATION PROCESS

**Office for Civil Rights:** The DOJ Office for Civil Rights (OCR) ensures that recipients of financial assistance from OJP, OVW, and COPS Office comply with federal laws that prohibit discrimination in both employment and the delivery of services or benefits based on race, color, national origin, sex, religion, and disability. In addition, federal law prohibits recipients of federal financial assistance from discriminating on the basis of age in the delivery of services or benefits. Recipients of financial assistance from OVW are prohibited from discriminating on the basis of sexual orientation or gender identity, either in employment or in the delivery of services or benefits. For more information see the OCR website http://ojp.gov/about/offices/ocr.htm.

**Discrimination findings:** In the event of a finding of discrimination, send a copy of the hearing findings to OCR. This applies to recipients of Federal funds if a Federal or State court or administrative agency finds through a due process hearing that a recipient, subrecipient, or contractor, has unlawfully discriminated.

Other civil rights requirements: Depending on the size of the organization, how much federal funding is received, and the program under which funds are received, recipients (and subrecipients in certain cases) may be required to submit an Equal Employment Opportunity Plan to OCR. If awarded Federal funds more specific information on civil rights compliance, including requirements regarding submission of an Equal Employment Opportunity Plan will be provided in the award documents. For additional information see www.ojp.usdoj.gov/about/ocr/eeop.htm.

### Intergovernmental Review

Intergovernmental review is a process described in Executive Order 12372 [PDF - 12 Kb], through which governments at the State and local levels coordinate in the review of proposed Federal financial assistance and direct Federal development.

For those DOJ grant programs that are subject to Executive Order 12372, applicants must access the Intergovernmental Review Single Point of Contact List ("SPOC List") to find out about and, as applicable, comply with the applicant's State process under Executive Order 12372. As part of the grant application process, to complete the SF-424, applicants must make the appropriate selection (and provide any required information) in response to the question, "Is Application Subject to Review by State Under Executive Order 12372 Process?"

To determine if a DOJ program is subject to Executive Order 12372, look in the notice of funding opportunity (program solicitation) or program announcement, check the program's CFDA entry, or contact the DOJ awarding agency.

### Application Submittal

Applicants for DOJ funding can submit applications online through either the federal grants portal Grants.Gov (www.grants.gov), the DOJ's Grants Management System (GMS) (https://grants.ojp.usdoj.gov/gmsexternal/), or the COPS Office Agency Portal (https://portal.cops.usdoj.gov). Each program solicitation will specify which system should be used for that program, and will contain detailed technical instructions on how to register with the system and apply for funding. Applicants for OJP and OVW formula/block funding, earmarked funding, and some continuation (supplemental) funding, are generally required to register and create a profile in GMS.

## II. Preaward Requirements

### 2.1 APPLICATION PROCESS

Applicants for competitive funding are generally required to register in Grants.Gov. It is best to register well in advance of the application deadline, as processing registration into these systems may take some time (in most cases, approximately one week).

Most DOJ discretionary grant solicitations require, at a minimum, a number of elements. These generally include the Standard Form 424 (SF-424 - Application for Federal Assistance), a program narrative, budget detail worksheet and budget narrative. There also are a number of certifications that may be required, and other elements as specified in the program announcement.

> ▶ **COPS OFFICE SPECIFIC TIP**
>
> The COPS Office might not require a budget detail worksheet with the application submittal process. Refer to the specific award program Application Guide.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> • **Note regarding SF-424 question regarding determination of applicant type:** Applicants must specify what type of entity they are on the SF-424. Generally, applicants for DOJ grants are one of the following types of entities: States, units of local government, Indian tribes or units of tribal government, nonprofit organizations, for-profit organizations, institutions of higher education, and (in limited circumstances) individuals. It is possible to select other applicant types, as appropriate.

### Application Review

DOJ awarding agencies are required to ensure that awards meet certain legislative, regulatory, and administrative requirements. This requires that each DOJ awarding agency review and assess each application to determine the following:

- The applicant is eligible for the specified program.
- The costs and activities in the application are for allowable, allocable, necessary, and reasonable costs.
- The applicant possesses the responsibility, financial management, fiscal integrity, and financial capability to administer Federal funds adequately and appropriately.

### Applicant Type

Examples of types of applicants include, but are not limited to:

- Nonprofit organization – Some DOJ programs may require that an organization have 501(c)(3) status (as described in the U.S. Internal Revenue Code)
- For-profit organization (including organizations designated as small businesses)
- State
- Unit of local government
- Tribe

## II. Preaward Requirements

### 2.1 APPLICATION PROCESS

- Institution of higher education
- Courts
- Individuals (in limited circumstances)

**Pre-Award Risk Assessment**

DOJ is required to review and assess the potential risks presented by applicants for Federal grants prior to making an award (2 C.F.R. § 200.205). DOJ will use a variety of factors which may include financial capabilities and past performance in a risk-based approach. To facilitate part of the risk assessment, DOJ applicants (other than an individual) may be required to complete a questionnaire to assess their financial capability and submit it to DOJ before they can be approved for an award.

**DOJ High-Risk Grantee Designation**

The DOJ's High-Risk Grantee Designation Policy was formally approved on January 6, 2012, and was adopted by its three primary grant-making components: the Office of Justice Programs (OJP), the Office of Community Oriented Policing Services (COPS Office), and the Office on Violence Against Women (OVW). OJP's Office of Audit, Assessment, and Management (OAAM) is charged with administering the high-risk grantee process on behalf of DOJ. When an applicant is designated as high-risk by the OAAM, all DOJ grant-making components must consider the applicant as high-risk.

The purpose of the high-risk policy is to provide DOJ with a means of continuing to fund much needed criminal justice programs benefiting communities across the U.S., while maintaining proper stewardship of Federal funds and mitigating risk in the administration of DOJ-funded grant programs. It is important to note that high-risk grantees are not prohibited from applying for or receiving new awards from DOJ. However, high-risk grantees are managed and monitored closely, and any new awards these grantees receive are subject to additional restrictions, typically imposed through the inclusion of high-risk special conditions. Such conditions may be imposed not just at the beginning of a grant, but at any time throughout the period of the grant, if appropriate.

In general, a recipient may be designated as high-risk if any of the following apply to the recipient:

- Has a history of unsatisfactory performance;
- Is not financially stable;
- Has a management system that does not meet the standards set forth in 2 C.F.R. Part 200 (Subpart D-Post Federal Award Requirements (Standards for Financial and Program Management));
- Has not conformed to the terms and conditions of previous awards; or
- Is otherwise not responsible.

Under DOJ's policy, recipients may be designated as high-risk automatically, or as a result of a referral to OAAM from sources such as a DOJ grant-making component or other federal grant-making organization.

- High-risk referrals can be made by any DOJ personnel who works with grants, and can result from a wide variety of reasons, including, but not limited to:
  - ▸ issues identified during grant programmatic or financial monitoring reviews, budget reviews, financial capability reviews, etc.;
  - ▸ concerns noted during the routine administration of grants;

## II. Preaward Requirements

### 2.1 APPLICATION PROCESS

  - ▸ audits/investigative issues;
  - ▸ complaints by recipient personnel, third parties, and/or the media, etc.
- ■ Automatic high-risk designations are made by DOJ if any of the following conditions apply:
  - ▸ Recipient has audit reports with recommendation(s) that have been open for more than one year, and has not submitted documentation adequate to close the recommendation(s).
  - ▸ Recipient has not provided a corrective action plan to the DOJ within 105 days of transmission of the audit report to the recipient.
  - ▸ Recipient has audit reports with questioned costs in excess of $500,000 (regardless of the amount of time the audit report has been open).
  - ▸ Recipient has been referred to the Department of Treasury for collection because of their failure to timely repay funds owed on a DOJ award.
  - ▸ Recipient has been placed on the COPS Office Restricted Grantees List due to non-compliance with a previous COPS Office award(s).
  - ▸ Recipient has been recommended for government-wide suspension or debarment by a DOJ office or component.

If high-risk grantees do not comply with the additional conditions/restrictions imposed, or fail to make timely progress in addressing the issues that resulted in their high-risk designation, DOJ can consider more substantial sanctions, such as: freezing funds on current DOJ awards; termination of existing awards; barring the grantee from receiving future DOJ grants; and/or recommending the grantee for (non-procurement) government-wide suspension or debarment.

### Audit Issues

- ■ DOJ may choose not to approve an applicant for an award if the applicant has an overdue audit report, an open audit report that has not been responded to, or if the applicant has not tried to resolve the issues identified in the audit.
- ■ Failure to comply with audit requirements may cause an application to be rejected, or funds to be withheld until audit compliance is achieved.

### Verification of Taxpayer Identification Number

- ■ DOJ may verify the employer identification number (EIN) provided on the application.
- ■ DOJ may assign a vendor number very similar to the recipient's EIN. This is done to ensure that a sub-agency within a governmental organization which receives awards directly will have a separate identifier from that of the parent agency.
  - ▸ For example, a State government has an EIN that is 123456777. A police department within the State applies for and receives an award from DOJ. Since the EIN is the same, a DOJ vendor number of 123456778 will be assigned in order to make the police department identifiable as a sub-agency within that State government.

## II. Preaward Requirements

### 2.1 APPLICATION PROCESS

**Review of Applicant Federal Debt**

The SF-424 asks if the applicant is delinquent on any Federal debt.

- The applicant is the organization that is requesting Federal assistance, not the person who signs the application as the authorized representative of the organization.
- Federal debt includes delinquent audit disallowances, loans, taxes, and any outstanding debts with the Treasury.

**Confirmation of Dun & Bradstreet Data Universal Numbering System Number**

All recipients must have a Data Universal Numbering System (DUNS) number when applying for Federal awards and cooperative agreements (initial or supplemental awards) (2 C.F.R. Part 25 - Universal Identifier and System of Award Management).

- An organization can obtain a DUNS number at no cost by calling the toll-free DUNS number request line at 1-866-705-5711.
- Individuals who apply for grant awards or cooperative agreements from the Federal Government are exempt from this requirement.

**Confirmation of Listing in System for Award Management**

The System for Award Management (SAM) is the Official U.S. Government system that consolidated the capabilities of the Central Contractor Registration (CCR), Federal Agency Registration (FedReg), the Online Representations and Certifications Application (ORCA), and the Excluded Parties List System (EPLS). It became operational in August 2012. Recipients must have registered their DUNS in https://www.sam.gov/portal/SAM/ in order to receive an award.

- SAM collects, validates, stores, and disseminates data on organizations to help agencies in their acquisition missions, including Federal agency contract and assistance awards. The term "assistance awards" includes grants, cooperative agreements, and other forms of Federal assistance.
- SAM registrations must be updated or renewed at least once per year to maintain an active status. SAM will send notifications to the registered user via email 60, 30, and 15 days prior to the expiration of the record.
- It takes 2 to 3 days for SAM to complete record updates. Notification will be made via email when the process is complete and the record is active in SAM.
- If an organization is new to doing business with the Federal Government, the initial registration in SAM takes up to 5 days to become active. Registration with SAM requires a DUNS number and the entity's Tax ID number (TIN).
- Organizations must maintain an "active" registration in https://www.sam.gov/portal/SAM/ for the entire period of the award.

## II. Preaward Requirements

### 2.1 APPLICATION PROCESS

#### Financial Analysis

DOJ will complete a financial review of the grant application to ensure that recipients are financially capable and have the financial integrity to administer Federal funds. As part of this review, each grant-making component will take all of the following steps:

- Perform a cost analysis of the project (may not be applicable to some formula programs).
  - Obtain cost breakdowns, verify cost data, evaluate specific elements of cost, and examine data to determine the necessity, reasonableness, allowability, allocability, and appropriateness of the proposed cost.

- Review the current indirect cost rates approved by DOJ or rates approved by other Federal agencies.
  - If the indirect cost rate has expired, the rate must be renegotiated with the cognizant Federal agency. A current negotiated cost rate may be extended for up to four years. Once the cognizant agency has approved the extension, the rate must be used for the entire agreed-upon time period. No further negotiations regarding indirect cost rates may occur until the extension has expired. At the end of the extension period a new indirect cost rate must be negotiated. Subsequent one time extensions for up to four years are permitted if a renegotiation is completed between each extension request.
  - Non-Federal entities that have never received a negotiated indirect cost rate, except for those non-Federal entities described in Appendix VII to 2 C.F.R. Part 200—States and Local Government and Indian Tribe Indirect Cost Proposals, may elect to negotiate a rate or, if eligible, charge a de minimis rate of 10% of modified total direct costs (MTDC) which may be used indefinitely.

- Determine the adequacy of the accounting system and operations to ensure that Federal funds, if awarded, will be expended in a reasonable manner.
  - Non-Federal entities that have not received an award within the past 3 years may require an additional financial review.

- Review the status of any Federal debt that the applicant may have to ensure the debt is not delinquent, and other prescreening information, including checking SAM to ensure the organization is not suspended or debarred from receiving Federal funds.

#### Certifications

DOJ requires all award applicants to certify certain conditions prior to submitting an application or before accepting an award. In order to comply with the certification requirements provided in the common rules, OJP/OVW applicants must complete and submit Form 4061/6 [PDF - 17 kb] entitled "Certification Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; Federal Taxes and Assessments; Drug-Free Workplace Requirements. For the COPS Office applicants must complete and submit the "COPS Office Certification" entitled "Certification Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; Federal Taxes and Assessments; Drug-Free Workplace Requirements; and Coordination with Affected Agencies."

#### Debarment and Suspension Certification

Debarment and suspension certification requires that agencies establish and implement procedures to ensure that Federal assistance is not awarded to entities that are prohibited from receiving Federal funds. Those procedures should include a review of information in SAM regarding exclusion status. Such procedures help the Federal government and recipients to conduct business only with responsible persons.

## II. Preaward Requirements

### 2.1 APPLICATION PROCESS

- This certification must be completed and submitted to each grant-making component during the application review process.
- The Government-wide guidelines for debarment and suspension are codified in 2 C.F.R. Part 180 and adopted by DOJ, via 2 C.F.R. Part 2867, in subparts A through I, as its policies and procedures for non-procurement debarment and suspension.
- Debarment or suspension of a participant in a program by one agency has a Government-wide effect.

**Responsibilities for prospective block/formula recipients:**

- Recipients are responsible for monitoring subrecipient submissions of the OJP Form 4061/1, "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion—Lower Tier Covered Transactions (Sub-Recipient)," and for maintaining these submissions at the State level.

**Responsibilities for individuals or corporations with critical influence or high levels of control over the prospective award:**

- Recipients that fall into this category must complete OJP Form 4061/6 [PDF - 17 kb] (or a similar form).
- Recipients are responsible for monitoring the submission and maintaining the official subrecipient certifications.
- Subrecipients are not required to complete certification if their subaward is less than $100,000.

**Drug-Free Workplace Certification**

All applicants must meet the requirements in Title 28 C.F.R. Part 83 in order to receive Federal funds. Title 28 C.F.R. Part 83 implements the statutory requirements of the Drug-Free Workplace Act of 1988.

Organizations applying for a Federal award must certify that a drug-free workplace will be maintained. Organizations that make a false certification are subject to suspension, termination, and debarment. All applicants are required to certify, regardless of award amount.

**Additional requirements:**

- Direct recipients of Federal discretionary awards must certify compliance with the Drug-Free Workplace Act of 1988.
- State agencies that administer block/formula awards:
  - Must submit this certification to the awarding agency.
  - Must obtain certification from each State agency that is subawarded funds.
  - Subrecipients that are not a State agency are not required to submit the certification.
- Applicants with more than one prospective award are required to submit a certification for each award.
- There is one exception to the rule: a State, including a State agency, may submit a single annual certification to each awarding agency rather than one for each award.

**There are different certifications for individuals and organizations:**

- **Individuals** must certify that engagement in the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance in conducting any activity with the award will not occur.

# II. Preaward Requirements

## 2.1 APPLICATION PROCESS

- **Organizations** must certify that a drug-free workplace will be provided by ensuring the following:
  - Publish a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or uses of a controlled substance are prohibited in the workplace and specify that actions will be taken against employees for violation of such prohibition.
  - Establish a drug-free awareness program to make employees aware of:
    - The dangers of drug abuse in the workplace;
    - The policy of maintaining a drug-free workplace;
    - Any available drug counseling, rehabilitation, and employee assistance programs; and
    - The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace.
  - Require that each employee engaged in the performance of the award be given a copy of the employer's statement about drugs in the workplace.
  - Notify the employee that, as a condition of employment under the award, he or she must:
    - Abide by the terms of the statement; and
    - Notify the employer of any criminal drug statute conviction for a violation occurring in the workplace not later than 5 days after such conviction.
  - Notify the awarding agency within 10 days after receiving notice from an employee or otherwise receiving actual notice of such conviction.
  - Take one of the following actions, within 30 days of receiving notice, with respect to any employee who is so convicted:
    - Take appropriate personnel action against such an employee, up to and including termination; or
    - Require the employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency.

## Lobbying Certification

This certification must be completed prior to submitting an application or before accepting an award. Guidance on lobbying certification and restrictions can be found in Title 28 C.F.R. Part 69. These restrictions on lobbying apply to all recipients and subrecipients.

Additional restrictions on lobbying applicable to all recipients and subrecipients are:

- 18 United States Code (U.S.C.) 1913
- Interim Financial Guidance for New Restrictions on Lobbying [PDF - 34 Kb]
- Lobbying Disclosure Act of 1995

In addition to the restrictions above, recipients are required to adhere to restrictions on lobbying included in 31 U.S.C. § 1352. These restrictions include the following:

- Recipients of a Federal grant, cooperative agreement, or contract cannot use Federal funds to pay a person for influencing or attempting to influence an officer or employee of any agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with any of the following covered Federal actions:
  - The awarding of any Federal contract;

# II. Preaward Requirements

## 2.1 APPLICATION PROCESS

- ▸ The making of any Federal grant;
- ▸ The entering into of any cooperative agreement;
- ▸ The extension, continuation, renewal, amendment, or modification of any Federal contract, grant, or cooperative agreement.
- ■ Individuals who receive an initial Federal grant, contract, or cooperative agreement of more than $100,000, must submit a Lobbying Certification to that awarding agency certifying that:
  - ▸ Payments have not been made and will not be made for a lobbying activity;
  - ▸ If non-Federal funds have been used or will be used to pay anyone for lobbying activities, then a Disclosure of Lobbying Activities form will be submitted;
  - ▸ The information from this certification will be included in the award documents for all subawards at all tiers (including subcontracts, subawards and contracts under awards, and cooperative agreements), and all subrecipients must provide certification and disclosure;
  - ▸ The disclosure form will be submitted to the awarding agency;
  - ▸ Recipients and subrecipients are responsible for reporting lobbying activities of employees if the employee's tenure is less than 130 working days within 1 year immediately preceding the date the application or proposal submission; and
  - ▸ Subrecipients who request or receive Federal funds exceeding $100,000 will submit a certification and a disclosure form to the awarding agency.

All certifications will be maintained by the awarding agency and all disclosure forms will be forwarded from tier to tier until received by DOJ.

The disclosure form must contain the following information:

- ■ Name and address of reporting entity;
- ■ Federal program name;
- ■ Federal award number;
- ■ Federal award amount;
- ■ Name and address of lobbying registrant.

If an event occurs that requires disclosure or materially affects the accuracy of the information contained in any disclosure form previously filed, then a disclosure form must be filed at the end of each quarter. The following examples of such events are provided below:

- ■ A cumulative increase of $25,000 or more in the amount paid or expected to be paid for influencing or attempting to influence a covered Federal action.
- ■ A change in the person(s) or individual(s) influencing or attempting to influence a covered Federal action.
- ■ A change in the officer(s), employee(s), or member(s) contacted to influence or attempt to influence a covered Federal action.

Penalties and enforcement of lobbying restrictions will be as follows:

- ■ Organizations making an expenditure prohibited by the restrictions on lobbying will be subject to a civil penalty of $10,000 to $100,000 for each expenditure.

## II. Preaward Requirements

### 2.1 APPLICATION PROCESS

- Failure to file or amend the disclosure form as required will result in a civil penalty of $10,000 to $100,000 for each such failure.

See Chapter 13: Unallowable Costs for cost restrictions relating to lobbying.

### Seat Belt Use by Government Contractors, Subcontractors, and Grantees

Federal Government contractors, subcontractors, award recipients, or subrecipients are encouraged to enforce policies that require employees, contractors, or subrecipients to wear seat belts when driving company-owned, rented, or personal vehicles while on the job. For the Federal policy on seat belt use, refer to the Highway Safety Act.

### Text Messaging While Driving by Government Contractors, Subcontractors, Award Recipients, and Subrecipients

Federal Government contractors, subcontractors, award recipients, or subrecipients are encouraged to enforce policies that ban text messaging while driving company-owned, rented, or Government-owned vehicles; while driving privately owned vehicles when on official Government business; or when performing any work for or on behalf of the Government. For more on this topic, see the Federal policy on reducing text messaging while driving [PDF - 57 Kb].

### Tribal Eligibility—Government Discount Airfare

Tribal organizations carrying out a contract, grant, or cooperative agreement are eligible to have access to Federal sources of supply, including lodging providers, airlines, and other transportation providers.

Section 201(a) of the Federal Property and Administrative Services Act of 1949, 40 U.S.C. 481(a), indicates that employees of tribal organizations are eligible to have access to sources of supply on the same basis as employees of an executive agency if a request is made by the tribal organization.

## II. Preaward Requirements

### 2.2 ACCEPTANCE OF AWARD AND AWARD CONDITIONS

#### Award Notification and Acceptance Procedures

After applications have gone through the review process and have been approved, the next step in this process is award notification. Here are the details:

- The Office of Justice Programs (OJP) and the Office on Violence Against Women (OVW) send award notifications by email through the Grants Management System (GMS) to the individuals listed in the application as the point of contact and the authorizing official.
- GMS automatically issues the notifications at 9:00 p.m. eastern time on the award date.
- The email notification includes detailed instructions on how to access and view the award documents and how to accept the award in GMS.
- The Office of Community Oriented Policing Services (COPS Office) sends award notifications by email to the law enforcement and government executives (and financial official if applicable) listed in the application.
- The email notification contains information on how to access and view the award on the COPS Agency Portal.
- The COPS Office provides detailed instructions for accepting the award in the COPS Grant and Award Owner's Manuals available through the COPS Office website.

The award document serves as the official document binding the recipient and DOJ to the grant agreement. A sample award document is included in Appendix I. It includes the name of the recipient, project title, award period, budget period, type of Federal funds (grants and cooperative agreements), amount of Federal funds, award number, and special conditions that must be met during the award period.

> ☑ **ACTION ITEM**
>
> Recipients have 45 days from the award date to accept the OJP or OVW award document or the award may be rescinded. The COPS Office awards have a 90-day acceptance time frame.
>
> To accept an award from OJP or OVW, log into GMS and designate a Financial Point of Contact (FPOC). Instructions for designating a FPOC can be found in the GMS User Guide.

Here are some important points about the FPOC:

- The FPOC must be the individual(s) the recipient has designated as responsible for the financial administration of the award.
- He or she may be the same as the Point of Contact (POC). Alternatively, the FPOC may be one or more separate individuals designated by the recipient.
- The designation of the FPOC must be completed in GMS before the award acceptance documents can be printed.

Once the FPOC has been designated, recipients should:

- Print and read the award document carefully.

## II. Preaward Requirements

### 2.2 ACCEPTANCE OF AWARD AND AWARD CONDITIONS

- Have the award document signed and dated by the authorized recipient official designated in the application to indicate full acceptance of all terms and conditions. The name of this person is preprinted on the award document. An electronic signature will not be accepted.

- The authorized recipient official should also initial the bottom right corner of each page of the special conditions to signify agreement.

To accept an award from the COPS Office, log into the COPS Agency Portal, located on the *Account Access* tab on the COPS Office website at www.cops.usdoj.gov, to retrieve the award package. Follow the instructions for accepting and signing an award.

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> - For OJP or OVW, if the name of the person accepting the award is not the name preprinted on the award document, then the recipient must submit a Grant Adjustment Notice (GAN) to explain the reason for the change. Submission of the GAN is done through the GMS. The award acceptance document will be rejected if it is signed by anyone other than the authorizing recipient official named on the award document unless a GAN has been approved.
>
> - If the signature on the award document is not legible enough to tell that the signature is that of the authorized recipient official, it will delay final award document acceptance, and may even cause rejection of the award document.
>
> - For the COPS Office, if the name of the person accepting the award is not the name preprinted on the award document, then the recipient will need to submit a Change of Information form in the COPS Agency Portal and notify their program manager or grant program specialist, who will regenerate the award document.

**Do not make any changes to the award document! Doing so will make it null and void.**

To accept an OJP award, the signed award document and the special conditions should be submitted to the OCFO Control Desk using any of the following methods:

- Email a scanned copy to acceptance@usdoj.gov
- Toll-free fax to 866-388-3055
- Local fax (Washington, DC) to 202-354-4081
- Alternate fax to 202-353-8475

To accept an OVW award, the signed award document and the special conditions should be submitted by using one of the following methods:

- Email a scanned copy to OVW.Acceptance@usdoj.gov
- Fax to 202-514-7045

## II. Preaward Requirements

### 2.2 ACCEPTANCE OF AWARD AND AWARD CONDITIONS

To accept an award from the COPS Office, the signed award document and the special conditions must be signed electronically in the COPS Agency Portal.

---

☑ **ACTION ITEM**

Select **only one** submission method to avoid duplicate submissions. The original signed award document should be retained by the award recipient in its official award file.

---

To decline the award, please contact the program manager identified in the award to discuss the reasons for this decision. No Federal funds will be disbursed to a recipient until DOJ has received the signed award document indicating acceptance of the award and all special conditions.

---

ⓘ **FINANCIAL MANAGEMENT TIP**

Direct questions concerning award notification and acceptance to the appropriate DOJ contact(s).

---

### Special Conditions

Special conditions are terms and conditions that are included with the award. Special conditions may include additional requirements covering areas such as programmatic and financial reporting, prohibited uses of Federal funds, consultant rates, changes in key personnel, and proper disposition of program income.

Some special conditions may be based on the program or the nature of the award itself. Regardless of the program office or the award, there are several mandatory special conditions that will be included on any DOJ award. A list of all the mandatory special conditions for each DOJ grant-making component is available at the following links:

- OJP – http://ojp.gov/funding/Explore/SolicitationRequirements/MandatoryTermsConditions.htm
- OVW – standard special conditions are available on OVW's website at http://www.justice.gov/ovw/grantees
- The COPS Office – standard award conditions are available in the Grant Owner's Manual or Award Owner's Manual on the COPS Office website.

---

ⓘ **FINANCIAL MANAGEMENT TIP**

Failure to comply with special conditions may result in withholding of funds, suspension, or termination, as appropriate.

---

## II. Preaward Requirements

### 2.2 ACCEPTANCE OF AWARD AND AWARD CONDITIONS

#### Federal Obligation Process

When an award is approved, the Federal agency that is granting the award will reserve (set aside) the amount of the money provided under the award and record the obligation in its accounting system. Any funds or monies that are set-aside funds are reserved against the award until all of these funds are spent.

If the funds are not used within statutory or other time limits, the funds that were set aside will revert back to DOJ or the awarding agency through de-obligation of the unused balance.

Funding process:

- On the award date, notification is made of award approval and obligation, as described previously.
- Once an award has been accepted, in order to receive payment of funds obligated in DOJ's accounting system, recipients must be in compliance with the special conditions listed in the award document as well as with all reporting requirements.
- All recipients are required to submit the SF-425 (also known as the Federal Financial Report or FFR) for each award on a quarterly basis for the life of the grant. A copy of the FFR is located in Appendix II.
- All recipients are required to submit performance/progress reports. Recipients should review their award conditions to determine the frequency.
- Funds will not be disbursed if reports are delinquent.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> If the award date is after the start date of the award period, the first FFR submitted to DOJ should cover the time period from the actual start date of the award to the end of the calendar quarter. Recipients will be required to submit FFRs for all due dates which have passed upon acceptance of the award. For example, an award's period of performance is October 1, 2017 to September 30, 2018. The recipient is awarded the grant on October 20, 2017. The first FFR covers the period from October 1, 2017 to December 31, 2017, even if the accounting system will only show activity from October 20, 2017 to December 31, 2017.

#### Automated Clearinghouse Enrollment

Before starting to draw down and spend the award funds, an Automated Clearinghouse (ACH) form must be completed and submitted. This form will have banking information on it, which enables award funds to be electronically transferred to the recipient's bank account.

> ☑ **ACTION ITEM**
>
> The completed ACH form that is required to be submitted must have the original signature of the authorized official of the financial institution. ACH forms can be found at http://ojp.gov/funding/Apply/Resources/ACHVendor.pdf, along with instructions on where to submit the original, signed document.

## II. Preaward Requirements

**2.2 ACCEPTANCE OF AWARD AND AWARD CONDITIONS**

The U.S. Department of the Treasury uses the ACH information to transmit payment data using electronic funds transfer to the recipient's designated financial institution. Payments cannot be made without a current, valid, and complete ACH form on file.

Chapter 3.1 of this *Guide* provides additional information on payments and the Grants Payment Request System (GPRS).

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> A new ACH form does not have to be submitted for each new award. However, if the current banking information needs to be revised, then a new ACH form must be submitted.

## II. Preaward Requirements

### 2.3 STANDARDS FOR FINANCIAL MANAGEMENT SYSTEMS

#### Accounting System

All recipients and subrecipients are required to establish and maintain adequate accounting systems and financial records and to accurately account for funds awarded to them. Recipients must have a financial management system in place that is able to record and report on the receipt, obligation, and expenditure of grant funds. Keep detailed accounting records and documentation to track all of the following information:

- Federal funds awarded
- Federal funds drawn down
- Matching funds of State, local, and private organizations, when applicable
- Program income
- Subawards (amount, purpose, award conditions, and current status)
- Contracts expensed against the award
- Expenditures

Please consult Subpart D of 2 C.F.R. Part 200, including 2 C.F.R. § 200.302, for more information.

> **▶ OJP SPECIFIC TIP**
>
> For the OVC Victim Compensation Program, there is no financial requirement to identify the source of individual payments to crime victims as either federal or state dollars, nor is there any requirement that restitution recoveries or other refunds be tracked to federal or state dollars paid out to victims. However, the state agency administering funds under this program must have in place an adequate accounting system to capture and track all financial transactions related to the victim compensation grant; and upon request, must provide authorized representatives with access to and the right to examine all records, books, paper or documents related to the victim compensation grant per the VOCA Victim Compensation Program Guidelines – 66 Fed. Reg. 27158 (May 16, 2001), Sections V.G and IX.A.

#### What Is An Adequate Accounting System?

- An adequate accounting system can be used to generate reports required by award and Federal regulations. The system must support all of the following:
  - Financial reporting that is accurate, current, complete, and compliant with all financial reporting requirements of the award or subaward.
  - Recipients must establish reasonable procedures to ensure the receipt of reports on subrecipients' cash balances and cash disbursements in sufficient time to enable them to prepare complete and accurate cash transactions reports to the awarding agency.
  - Accounting systems should be able to account for award funds separately (no commingling of funds).
- An adequate accounting system allows recipients to maintain documentation to support all receipts and expenditures and obligations of Federal funds.
- An adequate accounting system collects and reports financial data for planning, controlling, measuring, and evaluating direct and indirect costs.

## II. Preaward Requirements

### 2.3 STANDARDS FOR FINANCIAL MANAGEMENT SYSTEMS

- The system should have all of the following capabilities:
  - ▶ **Internal control.** The system should allow for effective control and accountability for all grant and subgrant cash, real and personal property, and other assets. Recipients and subrecipients must adequately safeguard all such property and assure that it is used solely for authorized purposes. Please consult 2 C.F.R. § 200.303 for additional information.
  - ▶ **Budget control.** The system should compare actual expenditures or outlays with budgeted amounts for each award and subaward. It also must relate financial information to performance or productivity data, including the development of unit cost information whenever appropriate or specifically required in the award or subaward agreement.
  - ▶ **Allowable cost.** The system should support making sure that Federal cost principles, agency program regulations, and the terms of grant and subgrant agreements are followed in determining the reasonableness, allowability, and allocability of costs.
  - ▶ **Source documentation.** The system should require support for accounting records with source documentation (e.g., canceled checks, paid bills, payrolls, time and attendance records, and contract and subgrant award documents).
  - ▶ **Cash management.** An adequate system will require following procedures for minimizing the time between the transfer of funds from the U.S. Department of the Treasury and disbursement by recipients and subrecipients whenever advance payment procedures are used. Also, when advances are made by electronic funds transfer, or EFT methods, the system should help to make draw downs as close as possible to the time of making disbursements.
  - ▶ **Subrecipient monitoring support.** The system should involve monitoring of cash draw downs by subrecipients to assure that they conform substantially to the same standards of timing and amount as apply to advances to the direct recipient.
- An adequate accounting system for a recipient must be able to accommodate a fund and account structure to separately track receipts, expenditures, assets, and liabilities for awards, programs, and subrecipients.

The adequacy of the financial management system may be reviewed as part of the application process or at any time subsequent to the award. For additional information see Subpart D of 2 C.F.R. Part 200.

### Separate Tracking of Awards

To properly account for all awards, recipients should establish and maintain program accounts which will enable separate identification and accounting for:

- Block and formula grant funds expended through subrecipients
- Formula funds utilized to develop a State plan and to pay that portion of expenditures necessary for administration
- Receipt and disposition of all funds (including program income)
- Funds applied to each budget category included within the approved award
- Expenditures governed by any special and general provisions
- Non-Federal matching contribution, if required

For additional information see Subpart D of 2 C.F.R. Part 200.

## II. Preaward Requirements

### 2.3 STANDARDS FOR FINANCIAL MANAGEMENT SYSTEMS

#### Total Project Cost Budgeting and Accounting

To ensure adequate fiscal administration, accounting, and auditability of all Federal funds received, records should be established using the Federal agency "total project cost". This includes all of the following types of funding sources:

- Federal funds
- State funds
- Match
- Program income
- Any other funds received for the program

Budgets should be based upon the total estimated costs for the project including all funding sources. List anticipated expenditures according to the funding source from which they will be paid. The example below displays one sheet of a sample budget; additional back-up pages will further break out personnel and other costs, as well as the anticipated source(s) for match and program income.

| Budget Categories | Federal Award | Non-Federal Amount | Total |
|---|---|---|---|
| Personnel/Direct Labor | $69,732 | $22,145 | $91,877 |
| Fringe @ 33% Actual | $23,012 | $7,308 | $30,320 |
| **Subtotal** | **$92,744** | **$29,453** | **$122,197** |
| Travel | $4,620 | — | $4,620 |
| Equipment | — | — | — |
| Supplies | $2,970 | — | $2,970 |
| Consultants/Contracts | $4,000 | — | $4,000 |
| Other | $2,618 | — | $2,618 |
| Total Direct Costs | $106,952 | $29,453 | $136,405 |
| | — | — | — |
| Indirect @ 10% Modified Direct Costs (MTDC) | $10,695 | $2,945 | $13,640 |
| **Total Project Costs** | **$117,647** | **$32,398** | **$150,045** |

#### Commingling of Funds

Although Federal regulations do not require physical segregation of cash deposits, the accounting systems of all recipients and subrecipients must ensure that agency funds are not commingled with funds from other Federal or private agencies.

- Recipients and subrecipients must account for each award separately.
- Recipients and subrecipients are prohibited from commingling funds on either a program-by-program or project-by-project basis.
- Funds specifically budgeted and/or received for one project may not be used to support another.
- If the recipient's or subrecipient's automated general ledger accounting system cannot comply with this requirement, a system should be established to adequately track funds according to each budget category.

## II. Preaward Requirements

### 2.3 STANDARDS FOR FINANCIAL MANAGEMENT SYSTEMS

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> Some programs, such as the Justice Assistance Grant program, require the deposit of funds into a trust fund. In addition, sometimes a high-risk designation will require a recipient to segregate awards into separate bank accounts.

If the recipient's or subrecipient's accounting system does not make it possible to identify funds and expenditures with a particular program (with the identification supported by source documentation), a site visit or an audit of that program may result in those costs being questioned or disallowed.

### Recipient and Subrecipient Accounting Responsibilities

- Direct recipients must have established written policies on subrecipient monitoring (2 C.F.R. § 200.331). Please refer to Chapter 3.14 for additional information about subrecipient monitoring.

#### Reviewing Financial Operations

- Direct recipients should be familiar with, and periodically monitor, their subrecipients' financial operations, records, systems, and procedures.
- Recipients should direct particular attention to the subrecipient's maintenance of current financial data.

#### Recording Financial Activities

- The recipient should record in its financial records in summary form the subrecipient's award or contract obligation, as well as cash advances and other financial activities.
- The recipient should record in its records the expenditures of its subrecipients. Alternatively the subrecipient may file report forms for tracking of its financial activities.
- Non-Federal contributions applied to programs or projects by subrecipients should likewise be recorded, as should any program income resulting from program operations.

#### Budgeting and Budget Review

- The recipient should ensure that each subrecipient prepares an adequate budget on which its award commitment will be based.
- The detail of each project budget should be kept on file by the recipient.

#### Accounting for Non-Federal Contributions

- Non-Federal contributions may include in-kind services (donated services such as volunteered time) or cash.
- Recipients should ensure that the requirements, limitations, and regulations pertinent to non-Federal contributions are applied.

#### Ensuring Subrecipients Meet All Grant Requirements

- Recipients must ensure that subrecipients have met the necessary audit requirements contained in this *Guide* (see Chapter 3.19: Audit Requirements). For additional information, see 2 C.F.R. § 200.331(f).

## II. Preaward Requirements

### 2.3 STANDARDS FOR FINANCIAL MANAGEMENT SYSTEMS

| ☑ ACTION ITEM |
|---|
| Where the conduct of a program or one of its components is delegated to a subrecipient, the direct recipient is responsible for all aspects of the program including proper accounting and financial recordkeeping by the subrecipient. The recipient is responsible for the accounting of receipts and expenditures, cash management, maintenance of adequate financial records, and refunding of expenditures disallowed by audits. |

**Reporting Irregularities**

- Recipients and their subrecipients are responsible for promptly notifying the awarding agency and the Federal cognizant audit agency of any illegal acts, irregularities, and/or proposed or actual actions.
- Illegal acts and irregularities include conflicts of interest, falsification of records or reports, and misappropriation of funds or other assets.
- Please notify the appropriate DOJ awarding agency of any irregularities that occur.

**Avoiding Business with Debarred and Suspended Organizations**

- Recipients and subrecipients must not award or permit any award at any level to any party which is debarred or suspended from participation in Federal assistance programs.

For details regarding debarment procedures, see the government-wide guidelines for debarment and suspension codified in 2 C.F.R. Part 180, and 2 C.F.R. Part 2867, which adopts the OMB guidance in subparts A through I of Title 2 C.F.R .Part 180, as supplemented by Title 2 Part 2867, as the DOJ policies and procedures for non-procurement debarment and suspension.

**Bonding**

- The awarding agency may require adequate fidelity bond coverage where a recipient lacks sufficient coverage to protect the Federal Government interest (see 2 C.F.R. § 200.304 ).

## Contracting with Small and Minority Businesses

Consistent with the national goal of expanding the opportunities for women-owned and minority-owned business enterprises, recipients must take all necessary affirmative steps to ensure that women's business enterprises, minority businesses and labor surplus area firms are used when possible. For more information see 2 C.F.R. § 200.321.

## II. Preaward Requirements

### 2.3 STANDARDS FOR FINANCIAL MANAGEMENT SYSTEMS

#### Supplanting

Federal funds must be used to **supplement** existing State and local funds for program activities and must not supplant (replace) those funds that have been appropriated for the same purpose.

- Supplanting will be reviewed during post-award monitoring and audit.
- If reviewers think that supplanting may have occurred, then the recipient will be required to supply documentation demonstrating that the reduction in non-Federal resources occurred for reasons other than the receipt or expected receipt of Federal funds.
- For certain programs, a written certification may be requested by the awarding agency or recipient agency stating that Federal funds will not be used to supplant State or local funds.

**Example**

**To help clarify the difference between supplementing and supplanting, we provide the following example:**

State funds are appropriated to hire 50 new police officers, and Federal funds are awarded for hiring 60 new police officers. At the end of the year, the State has hired 60 new police officers, and the Federal funds have been exhausted. The State has not used its funds towards hiring new officers, but instead reduced its appropriation for that purpose and assigned or appropriated the funds to another purpose. In this case, the State has supplanted its appropriation with the Federal funds. If supplanting had not occurred, 110 new officers would have been hired using Federal funds for 60 officers and State funds for 50 officers.

> ▶ **COPS OFFICE SPECIFIC TIP**
>
> For COPS hiring grant programs it is also important to track reductions-in-force and vacancies of locally budgeted positions during the grant award implementation.
>
> Reduction-in-Force – Contact the COPS Office for guidance.
>
> Vacancies – Maintain job announcements and other documentation that demonstrates the recipient took active and timely steps to backfill locally funded positions. As a general rule, when both locally budgeted vacancies and COPS funded positions are vacant, hire officers on a 1:1 ratio. Example: hire one COPS funded position for each local position hired to avoid potential supplanting issues and to help ensure timely implementation of the COPS hiring grant. For any questions on complying with the nonsupplanting requirement, please contact the COPS Office Response Center at 800-421-6770.

# III. Postaward Requirements

## 3.1 PAYMENTS

### Using the Grant Payment Request System

| Frequently Asked Questions | |
|---|---|
| Q | What is meant by the term "draw down"? |
| A | "Draw down" is the term used to describe the process when a recipient requests and receives money under an award agreement. |
| Q | How does the money reach our organization? |
| A | Electronic funds transfer from the U.S. Department of the Treasury based on the information you provided on the Automated Clearinghouse (ACH) form. |
| Q | How do I request payment for my organization's award? |
| A | Through the Grant Payment Request System, or GPRS. |
| Q | I tried to draw down funds but the system will not let me. What do I do? |
| A | We suggest that you follow up in one or more of the following ways:<br>• Check for any error messages you may have received in GPRS and document the error message. Sometimes minor data entry errors will cause error messages. Also, if you need to call Customer Service, having the error messages will assist us in determining how to resolve your issues.<br>• Check to see if all award special conditions, including high-risk special conditions, if applicable, have been met. Many special conditions lead to the withholding of funds until the conditions have been met and cleared through either a Grant Adjustment Notice (GAN) or Grant Program Specialist/program manager for COPS Office awards.<br>• Check to see that all Federal Financial Reports (FFRs) and Progress Reports have been submitted. The system has automatic verification features in place that prevent drawdowns if all the required reports have not been submitted.<br>• Call Customer Service. |
| Q | What if I am not a Financial Point of Contact (FPOC) in the Grants Management System (GMS)? Can I still register for GPRS? |
| A | No. You must first register in GMS as an FPOC. (Not applicable to COPS Office awards). |
| Q | How do I register as a FPOC in GMS? |
| A | Please go to the GMS website at https://grants.ojp.usdoj.gov/gmsexternal to register. Also visit Chapter 2.2: Acceptance of Award and Award Conditions for additional information. |

GPRS is the system for requesting payment of award funds. It is an online system that allows viewing of active award balances and history of drawdowns to date. GPRS can be accessed at https://grants.ojp.usdoj.gov/gprs/welcome. The GPRS User Guide [PDF - 2.05 MB] provides information on using GPRS.

Some highlights of the GPRS:

- Ability to view and print a transaction history report for each award
- Access to award information summary
- Ability to view available funds to include any holds
- View date of last submission of Standard Form 425 (SF-425)
- Ability to cancel pending payment request
- Secure individual login

# III. Postaward Requirements

## 3.1 PAYMENTS

The username and password used to access GPRS will vary based on the Federal organization that issued the award.

If the award was issued by the Office of Justice Programs (OJP) or the Office on Violence Against Women (OVW), only user(s) within the organization that has been designated as the FPOC for the award in GMS may access GPRS.

- To log in and submit payment requests, the FPOC must first register in GPRS.
- To complete the GPRS registration, the FPOC will need their GMS username and password.
- Once the registration has been successfully submitted, the information will be verified against GMS.
- During this time, the FPOC will not be able to log into GPRS until receipt of an email from GPRS approving his or her access.
- After the FPOC receives the approval email, he or she may log into GPRS using his or her existing GMS username and password.

If the award was issued by the Office of Community Oriented Policing Services (COPS Office) and a preregistration email has been received from GPRS, then log into GPRS using the username and temporary password provided in the email. If a preregistration email has not been received, then the person(s) within the organization responsible for payment requests must register in GPRS.

- To register in GPRS for COPS Office awards, follow these steps:
  - ▸ Click on the following GPRS link: https://grants.ojp.usdoj.gov/gprs/welcome
  - ▸ Select the option for "New GPRS User Registration for COPS"
  - ▸ Enter a unique username and response to a secret question
  - ▸ Enter Name and contact information
  - ▸ Enter the Vendor number found through the COPS Office Agency Portal
- Indicate the awards to which access for submitting payment requests is being requested.
  *Note: It only will be possible to submit payment requests for the COPS Office awards selected.*
- Once the registration has been successfully submitted, the user and award information will be verified by the COPS Office. During this time, it will not be possible to log into GPRS until receipt of an approval email from GPRS with the login information. The approval email will also list the COPS Office awards to which access has been given. If access was denied for any award selected during registration, the rejection reason will be included in the GPRS email.
- After the approval email is received, log into GPRS using the username and temporary password provided in the email within 72 hours and change the temporary password to a permanent password.

---

ⓘ **FINANCIAL MANAGEMENT TIP**

Recipients with both OJP/OVW and COPS Office awards will be required to maintain two separate accounts in GPRS.

For questions on GPRS, please contact the appropriate grant-making component.

---

# III. Postaward Requirements

## 3.1 PAYMENTS

### Payment Transaction Timeline

| Top Ten Tips for the GPRS Process | |
|---|---|
| 1 | Make sure the grant award document has been signed and returned. |
| 2 | Be current on all required reports (i.e., FFRs, Progress, etc.). |
| 3 | Make sure all special conditions affecting payment have been met. |
| 4 | Make sure a signed ACH Enrollment form with current banking information has been submitted. |
| 5 | If registering with OJP/OVW, the FPOC in GMS must have the GMS login ID and password. |
| 6 | If registering with the COPS Office, provide the assigned vendor number and select the award number(s) for access. |
| 7 | Know if the request is for an advance or reimbursement, advances must be spent within 10 days of receipt. |
| 8 | Confirm the expenditure dates (the funding request cannot overlap dates used previously). |
| 9 | Know the amount being requested. |
| 10 | Pay attention to any error messages. |

The GPRS process and timeline for payment transactions is as follows:

- Recipients access GPRS via the web to request payment of funds.
- Once a request has been made, GPRS checks several items, including but not limited to:
  - Whether funds are available to be drawn on the award;
  - Whether all withholding special conditions have been met; and
  - Whether all required reports have been filed.
- Once GPRS has approved the payment, the information is transmitted to the U.S. Department of the Treasury (Treasury).
- Payment is electronically deposited into the recipient's bank account, typically within 72 hours.

The Debt Collection Improvement Act of 1996 states that all eligible recipients of Federal payments must receive funds electronically. In addition to the payment, the bank also receives what is called an addendum record which provides payment information and gives details necessary for accurate posting into the correct account.

The Treasury uses ACH information to transmit payment data using electronic funds transfer to the recipient's designated financial institution. Without a current, valid and complete ACH form on file, payment requests for the same grant on the same day must be less than $10 million.

With a current, valid and complete ACH form on file, payment requests for the same grant on the same day must be less than $100 million. For questions regarding ACH information on file with DOJ, please contact the OCFO Customer Service Center at 1-800-458-0786 or by email at ask.ocfo@usdoj.gov.

In order to timely close out financial records at the end of each month, DOJ does not process payment requests during the last 5 business days of each month. Payment requests submitted during the last 5 business days will be processed on the first business day of the following month.

# III. Postaward Requirements

## 3.1 PAYMENTS

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> • Treasury will deposit payments into the bank account designated on the signed and filed ACH form.
>
> • Remember that FFRs and Progress Reports must be current in order to draw down funds.

> **☑ ACTION ITEM**
>
> • Please contact the bank to arrange access to addendum records for bank accounts.
>
> • DOJ strongly suggests that recipients make payment requests before the last 5 working days of each month.
>
> • At the end of the award period, please request draw down for any allowable expenses within 90 days!

## Understanding the Withholding of Funds

Under certain circumstances, a grant recipient may be unable to access or draw down funds on an award. The awarding agency may withhold funds from the organization if any of the following conditions exist:

- Program or project goals have not been timely met.
- Cash has been drawn down in excess of immediate needs for disbursement.
- Award special conditions or guidelines have not been met.
- Programmatic/financial monitoring, Office of the Inspector General Audits, or single audits revealed serious concerns regarding the administration of the award, subawards, or contracts.
- FFRs, Progress Reports, and/or Audit Reports have not been submitted by the due date.
- A closeout of the award has not been initiated within 90 days of the end of the project period.
- The recipient has been designated as a DOJ high-risk grantee.

## Draw Only What is Needed

Organizations should request funds based upon immediate disbursement/reimbursement requirements. Funds will not be paid in a lump sum, but rather disbursed over time as project costs are incurred or anticipated.

Draw down requests should be timed to ensure that Federal cash on hand is the minimum needed for disbursements/reimbursements to be made immediately or within 10 days. If not spent or disbursed within 10 days, funds must be returned to the awarding agency.

Fund requests from subrecipients create a continuing cash demand on award balances of the recipient. Recipients should keep in mind that idle funds in the hands of subrecipients will impair the goals of effective cash management.

# III. Postaward Requirements

## 3.1 PAYMENTS

Develop written procedures for cash management of funds to ensure that Federal cash on hand is kept at or near zero. DOJ periodically conducts financial reviews to ensure that this requirement is met.

> **▶ OJP SPECIFIC TIP**
>
> A few block grant programs may be drawn down or paid out in a lump sum. Program examples include the Byrne Justice Assistance Grant [JAG] Program, Juvenile Accountability Block Grant [JABG] Program, and State Criminal Alien Assistance Program [SCAAP] awards.

### Managing Interest Earned

Both recipients and subrecipients should minimize the time elapsed between receiving Federal funds and the disbursement of those funds to pay for program expenses. Various laws and regulations affect how interest income earned on Federal funds should be accounted for, used, and returned to the Federal Government.

Interest earned amounts up to $500 per year may be retained by the non-Federal entity for administrative expense. Any additional interest earned on Federal advance payments deposited in interest-bearing accounts must be remitted annually to the Department of Health and Human Services Payment Management System (PMS) through an electronic medium using either the Automated Clearing House (ACH) network or a Fedwire Funds Service payment. Remittances must include pertinent information of the payee and nature of payment in the memo area (often referred to as "addenda records" by financial institutions) to assist in the timely posting of interest earned on federal funds. Pertinent details include the Payee Account Number (PAN) if the payment originated from PMS, or Agency information if the payment originated from ASAP, NSF, or another federal agency payment system. Please refer to the How to Manage Interest Income table at the end of this chapter for remittance instructions.

### Understanding the Cash Management Improvement Act of 1990

The Cash Management Improvement Act of 1990 (Public Law No. 101-453) was an amendment to the Intergovernmental Cooperation Act of 1968 (31 USC § 6503). Under the CMIA, States are no longer exempt from returning interest to the Federal Government for drawing down funds prior to the need to pay off obligations incurred. Rather, States are required to pay interest in the event that the State draws down funds before the funds are needed to pay for program expenses.

Recipients and subrecipients that administer confidential funds may establish different procedures for administering confidential funds to provide quick access to funds to meet the needs of the project. Written policies and procedures must be in place to address confidential funds. Chapter 3.12: OJP's Confidential Funds defines and discusses confidential funds.

The Cash Management Improvement Act of 1990 and other laws will have different impacts on different kinds of award recipients.

# III. Postaward Requirements

## 3.1 PAYMENTS

### How to Manage Interest Income

| Award Type | Regulatory Reference | How to Manage Interest Income | Where to Send Interest Income |
|---|---|---|---|
| **Non Federal Entities** | | | |
| All Entities | Cash Management Improvement Act of 1990, an amendment to the Intergovernmental Cooperation Act of 1968, 31 U.S.C. 6503. | Up to $500 in interest may be retained for administrative purposes.<br><br>Return interest income in excess of $500. | U.S. Department of Health and Human Services.<br>For ACH Returns:<br>RN: 051036706<br>Acct. #: 303000<br>Bank Name and Location:<br>Credit Gateway—ACH Receiver<br>St. Paul, MN<br><br>For FedWire Returns:<br>RN: 021030004<br>Acct. #: 75010501<br>Bank Name and Location:<br>Federal Reserve Bank<br>Treasury NYC/Funds<br>Transfer Division New York, NY<br>(Organizations may incur a charge for this time of payment)<br><br>Non electronic remittance capability / make check payable to:<br>The Department of Health and Human Services<br>HHS Program Support Center<br>P.O. Box 530231<br>Atlanta, GA 30353-0231 |
| JAG JABG (OJP only) | Cash Management Improvement Act of 1990, an amendment to the Intergovernmental Cooperation Act of 1968, 31 U.S.C. 6503–42 U.S.C. 3757. | Account for and report as program income.<br><br>Use for program purposes.<br><br>Return unused interest income. | Office of Justice Programs<br>Office of the Chief Financial Officer<br>Attn: Accounting Control Branch<br>Washington, D.C. 20531 |

## III. Postaward Requirements

## 3.2 PERIOD OF AVAILABILITY OF FUNDS

### Availability of Funds

The Department of Justice (DOJ) makes awards for a specified period of time, usually referred to as the award or project period. The award period is established for each award and is included in the award document. Award periods generally range from 12 to 36 months (the period can be shorter or longer depending on the specific program). Review the award document in detail and pay particular attention to the project start and end dates. In some cases, award periods may be extended if specific criteria are met. See the discussion of no-cost extensions in the Criteria for Award Extension section for more information.

---

**▶ OJP SPECIFIC TIP**

Some block/formula awards administered by the Bureau of Justice Assistance (BJA) and the Office of Juvenile Justice and Delinquency Prevention (OJJDP) are awarded for the federal fiscal year of the appropriation plus two additional federal fiscal years.

Some grants administered by the Office for Victims of Crime (OVC) are available for the federal fiscal year of the award plus the following three fiscal years. The Victims of Crime Act (VOCA) of 1984 states that VOCA funds are available during the federal fiscal year in which the award is actually made, plus the following three fiscal years. At the end of this period, VOCA funds will be deobligated. OJP has no discretion to permit extensions beyond the statutory period. (E.g., VOCA funds awarded in FY 2018, are available until the end of FY 2021).

---

### Obligation of Funds

An obligation is a binding agreement made during a given period that requires payment during the same or a future period. For example, if an order is placed for a piece of equipment to be purchased with award funds, the order is an obligation. See 2 C.F.R. § 200.71 (definition of "Obligations").

Obligations must occur during the project period stated on the award document. An obligation occurs when there is a binding agreement, such as in a valid purchase order or requisition, that covers the cost of purchasing an authorized item on or after the begin date and up to the last day of the award period. See 2 C.F.R. § 200.309 (Period of Performance).

---

**ⓘ FINANCIAL MANAGEMENT TIP**

Obligations must occur during the project period. If funds are obligated (e.g., enter into a contract) prior to the start of the project period, that obligation may not be an allowable expense, unless the award recipient notifies the awarding agency in advance in writing and receives prior written approval from the awarding agency.

---

Any funds not obligated by the recipient by the end of the award period will lapse and revert to the awarding agency. The obligation deadline is the last day of the grant award period unless otherwise stipulated. No additional obligations can be incurred after the end of the award. For example, if the award period is October 1, 2017 to September 30, 2019, the obligation deadline is September 30, 2019.

## III. Postaward Requirements

### 3.2 PERIOD OF AVAILABILITY OF FUNDS

#### Expenditure of Funds

An expenditure is a charge made by a recipient or subrecipient to a project or program for which a Federal award was received. Expenditures may be reported on a cash or accrual basis as long as the methodology is disclosed and consistently used. See 2 C.F.R. § 200.34 (definition of "Expenditure").

All obligations properly incurred by the end of the Federal award must be liquidated no later than **90 days** after the end date of the award. If the award has been properly obligated, the full liquidation period is available for remaining expenditures. Any funds not liquidated at the end of the **90-day period** will revert to the awarding agency.

The liquidation period exists to allow projects time to receive ordered goods and make final payments. No new obligations may be made during the liquidation period.

Disbursements made by recipients or subrecipients after the end of the award period but within the liquidation period MUST have documentation to demonstrate that the obligation was incurred BEFORE the end of the award period. For example, an invoice paid 25 days after the end of the award period must have an invoice date, purchase order date, or other documentation showing the date services were rendered prior to the end of the award period. Any funds not obligated by the recipient by the end of the award period will lapse and revert to the awarding agency.

> ► **OJP SPECIFIC TIP:**
>
> OJP recipients and subrecipients must complete performance during the award or obligation period. Performance as a result of a contract under a block/formula award may be completed during the liquidation period not to exceed 90 days after the end date of the award.

Example of Obligation, Expenditure, and Liquidation Periods

| Period | Example |
|---|---|
| Award/Obligation Period | 10/01/17 - 9/30/19 |
| Recipient's Books | 10/01/17 – 9/30/19 |
| Federal Books | 12/01/17 (Award Date) |
| Liquidation Period | |
| (90 days after award end date) | 10/01/19 – 12/29/19 |



## III. Postaward Requirements

## 3.2 PERIOD OF AVAILABILITY OF FUNDS

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> The Grant Payment Request System automatically freezes funds 90 days after the end of the award!

## Criteria for Award Extension

For OJP/OVW awards, requests for a no-cost extension of an award period must be submitted through the Grants Management System (GMS). Recipients are to use the Grant Adjustment Notice (GAN) module in GMS to request the extension.

For COPS Office awards, requests for a no-cost extension of an award period must be submitted through the COPS Agency Portal. Grant recipients may request a no-cost extension to receive additional time to implement the grant program. These extensions do not provide additional funding. Awards may be extended a maximum of 36 months beyond the award expiration date. Any request for an extension beyond 36 months will be evaluated on a case-by-case basis. Only those grantees that can provide a reasonable justification for delays will be granted no-cost extensions.

> **☑ ACTION ITEM**
>
> For OJP/OVW awards, recipients may request a no-cost extension by submitting a GAN at least 30 calendar days prior to the end of the award.
>
> The recipient should act as soon as possible to obtain their organization's approval to submit an extension request and ensure that they submit the GAN via GMS at least 30 days prior to the end of the award period, allowing the program office sufficient time to process the GAN.
>
> For COPS Office awards, a no-cost extension needs to be requested before the award end date, but cannot be requested prior to 90 days before the award end date.

> **▶ OJP SPECIFIC TIP**
>
> Most awards are eligible to be considered for an extension of the award period in response to a GAN request. The request for extension must justify the need for the extension and indicate the additional time required. The grant-making component's ability to grant an extension may be limited by statute for some programs. For example: Awards funded by the Office for Victims of Crime (OVC) (or any other OJP bureau/program office) under the provisions of the Victims of Crime Act (VOCA) of 1984, are available during the federal fiscal year of the award, plus the following three fiscal years. At the end of this period, VOCA funds will be deobligated. OVC/OJP bureaus/program offices have no discretion to permit extensions beyond the statutory period. (e.g., VOCA funds awarded in FY 2017 are available until the end of FY 2020).

# III. Postaward Requirements

## 3.2 PERIOD OF AVAILABILITY OF FUNDS

The criteria for extending the award period for a project or program include the following:

- All applicable Federal Financial Reports and Progress Reports must be on file and current.
- All special conditions attached to the award must be satisfied, except for those conditions that must be fulfilled in the remaining period of the award. This criteria also includes the performance and resolution of audits in a timely manner.
- A narrative justification must be submitted with the project or program extension request. Complete details must be provided, including the justification and the circumstances which require the proposed extension. The recipient must explain the effect a denial of the request will have on the project or program.
- A response should be received from the awarding agency within **15 working days** of receipt of the request.

---

ⓘ **FINANCIAL MANAGEMENT TIP**

NOTE: The award period will not be extended merely for the purpose of using unobligated funds.

---

▶ **COPS OFFICE SPECIFIC TIP**

Request to extend the grant period must be submitted through the COPS Agency Portal and received by the COPS Office before the official award end date. Additionally, the COPS Office will contact the recipient during the last quarter of the award period to determine whether a no-cost extension is needed; extensions will not be processed prior to 90 days of the grant end date.

---

▶ **OJP SPECIFIC TIP**

To avoid the need to make a request to extend the obligation or expenditure deadline of a block/formula program, it is recommended that all subawards should be completed at least six months prior to the end of the obligation deadline for the award. Justice Assistance Grant (JAG) Program awards, in which the total period of performance does not exceed 4 years, have specific requirements for requesting no-cost extensions. The recipient should contact the BJA grant manager for the additional requirements.

## Project Extension Guidance *

Generally, the following shall apply to all grants and cooperative agreements:

- no more than one no-cost extension may be made to an award;
- a no-cost extension may not exceed 12 months;
- a no-cost extension may be made only if the period of performance has not expired;
- a no-cost extension may be made only for award recipients that have no significant performance or compliance issues;

# III. Postaward Requirements

## 3.2 PERIOD OF AVAILABILITY OF FUNDS

- a no-cost extension may be made only if supported by a robust narrative justification establishing that the extension is for the benefit of the Federal government, and contains a plan and timeline for completion within the period of the no-cost extension;

- a no-cost extension may not be made merely for the benefit of the recipient or for the purpose of the enabling the recipient to use unobligated balances; and

- any provisions of the DOJ Grants Financial Guide relating to no-cost extensions shall be complied with (e.g., a no-cost extension must be requested via a Grant Adjustment Notice (GAN) in the grant system of records at least 30 calendar days before the project end date).

- Extension of the liquidation period may be allowable for awards if approved by the awarding agency (this includes the OVC State Victim Assistance Formula Grant Program and State Victim Compensation Formula Grant Program).

### Periods of Performance for Research, Evaluation, and Statistics Awards

Due to the nature of the work to be carried out by the recipient, the usual periods of performance may not routinely be appropriate for research, evaluation, and statistics awards. (For example, long-term research or data collection efforts require sufficient time for activities such as institutional review board and Office of Management and Budget reviews (as appropriate), staff training, field work, data collection and analysis, presentation of findings, archiving of data, and dissemination of findings.) Accordingly, a research, evaluation, or statistics award may exceed a 3-year initial period of performance (and/or a 5-year total period of performance, and more than two continuations awards), when appropriate under the particular circumstances of that project.

*Note: not applicable to COPS Office awards.

## III. Postaward Requirements

### 3.3 MATCHING OR COST SHARING REQUIREMENTS

#### Match Requirements

Matching or cost sharing means the portion of project costs not paid by Federal funds (unless otherwise authorized by Federal statute). See 2 C.F.R. § 200.29 (definition of "cost sharing or matching"). Matching requirements vary across the different Department of Justice (DOJ) programs. Recipients should read the award announcement and award notice carefully to understand the specific match requirements applicable to their award. Recipients unclear about the match requirements for their awards should contact their grant manager. For general government-wide rules regarding match, see 2 C.F.R. § 200.306.

Any departure from the program guidelines must receive prior written approval from the DOJ grant-making component.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Matching funds are restricted to the same use of funds as allowed for the Federal funds. If it is not allowable under the Federal award, it is **not allowable** as match.

> ▶ **OVW SPECIFIC TIP**
>
> The OVW STOP Program matching requirements are available under the Resources section at: https://www.justice.gov/ovw/grantees.
>
> Frequently Asked Questions (FAQs) are available under the Frequently Asked Questions section at: https://www.justice.gov/ovw/grantees.

#### Types of Match

Match requirements are typically stated as a percentage of the total project costs for an award. For example, a 20 percent (20%) match on a $100,000 project would be $20,000, where $80,000 is provided by the Federal Government and $20,000 is provided by the recipient.

There are two kinds of match:

- Cash match (hard) includes cash spent for project-related costs. An allowable cash match must include costs which are allowable with Federal funds, except acquisition of land, when applicable.
- Third party in-kind match (soft) includes, but is not limited to, the valuation of non-cash contributions. "In-kind" may be in the form of services, supplies, real property, and equipment.

For example, if in-kind match is permitted by law, then the value of donated services can be used to comply with the match requirement. Also, third party in-kind contributions may count toward satisfying match requirements, provided the recipient of the contributions expends them as allowable costs.

## III. Postaward Requirements

### 3.3 MATCHING OR COST SHARING REQUIREMENTS

Documentation supporting the market value of in-kind match must be maintained in the award recipient files. Valuation of in-kind match may take one of the following forms:

- Valuation of donated services. Volunteer services furnished by third-party professional and technical personnel, consultants, and other skilled and unskilled labor may be counted as cost sharing or matching if the service is an integral and necessary part of an approved project or program.

  - Volunteer services. Recipient or subrecipient rates for third-party volunteer services must be consistent with those rates ordinarily paid for similar work in the recipient's or subrecipient's organization. If the recipient or subrecipient does not have employees performing similar work, the rates will be consistent with those ordinarily paid by other employers for similar work in the same labor market. In either case, a reasonable amount for fringe benefits may be included in the valuation.

  - **Employees of other organizations.** When an employer other than a recipient or subrecipient furnishes free of charge the services of an employee in the employee's normal line of work, the services will be valued at the employee's regular rate of pay plus an amount of fringe benefits, but exclusive of overhead costs. For additional guidance on cost sharing or matching, please review 2 C.F.R. § 200.306.

- Valuation of third party donated supplies, equipment, or space.

  - If a third party donates supplies, equipment, or space, the value must not exceed the fair market value of the property at the time of donation.

- Valuation of third party donated equipment, buildings, and land.

  - If a third party donates equipment, buildings, or land, and title passes to a recipient or subrecipient, the treatment of the donated property will depend upon the purpose of the Federal award.

  - **Awards for capital expenditures.** If the purpose of the award is to assist the recipient or subrecipient in the acquisition of equipment, buildings or land, the aggregate value of the donated property may be counted as cost sharing or matching.

  - If the purpose of the award is to support activities that require the use of the property, normally only depreciation can be charged. However, the fair market value may be allowed, provided that the grant-making component has approved the charges.

Please refer to 2 C.F.R. § 200.306 for more information about types of match and match requirements.

**How to Calculate Match**

| Formula | | | | | |
|---------|---|---|---|---|---|
| Step 1 | Award Amount | ÷ | % of Federal Share | = | Total (Adjusted) Project Cost |
| Step 2 | Total (Adjusted) Project Cost | x | % of Recipient's Share | = | Required Match |
| **Example** | | | | | |
| Match Requirement - 80/20 (Federal/Recipient) Federal Award = $100,000 | | | | | |
| Step 1 | $100,000 | ÷ | 80% Federal Share | = | $125,000 |
| Step 2 | $125,000 | x | 20% Recipient's Share | = | $25,000 |

# III. Postaward Requirements

## 3.3 MATCHING OR COST SHARING REQUIREMENTS

> ▶ **COPS OFFICE SPECIFIC TIP**
>
> Recipients of COPS Hiring Grants are required to contribute a local match of at least 25% toward the total cost of the approved grant project, unless waived in writing by the COPS Office.
>
> The local match must be a cash match from funds not previously budgeted for law enforcement purposes and must be paid during the grant award period.

## Source and Type of Funds

Cash match (hard) may be applied from the following sources:

- Funds from States and units of local government that have a binding commitment of matching funds for programs or projects (meaning the State or unit of local government has legally appropriated and obligated the funds).
- Housing and Community Development Act of 1974, 42 U.S.C. 5301, et seq. (subject to the applicable policies and restrictions of the U.S. Department of Housing and Urban Development).
- Appalachian Regional Development Act of 1965, 40 U.S.C. 214.
- Equitable Sharing Program, 21 U.S.C. §881(e) (current guidelines developed by the U.S. Department of Justice Asset Forfeiture Office apply). Forfeited assets used as match from the Equitable Sharing Program would be adjudicated by a Federal court.
- Program income funds earned from seized assets and forfeitures (adjudicated by a State court, as State law permits).
- Funds contributed from private sources.
- Program income generated from projects and the related interest earned on that program income, provided these projects are identified and approved as part of the budget and award application.
- Funds appropriated by Federal law for the activities of any agency of a tribal government or the Bureau of Indian Affairs for performing law enforcement functions on tribal lands.
- Sources otherwise authorized by law.

## Timing of Matching Contributions

Matching contributions do not need to be applied at the exact time or in proportion to the obligation of the Federal funds. However, the full matching share must be contributed by the end of the award period.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Time-phased matching may be required as a special condition by the grant-making component on awards to nongovernmental recipients.

# III. Postaward Requirements

## 3.3 MATCHING OR COST SHARING REQUIREMENTS

> ▶ **COPS OFFICE SPECIFIC TIP**
>
> For COPS Office Hiring Grants, matching funds must be made on an increasing basis during each year of the three-year project with the federal share decreasing accordingly.
>
> The local match must be paid in full during the project period; payments made prior to or after the project period do not qualify as matching funds.
>
> It is highly recommended that cash matching funds are paid during each quarter of the award to ensure the required matching funds are fully paid by the end of the award.
>
> Agencies that must withdraw from the project prior to the project end date are responsible for ensuring that the federal share of funds expended is limited to a maximum of 75% of the total project costs expended.
>
> For any additional questions about the timing of match, please contact a COPS Office Staff Accountant at 800-421-6770.

## Records for Match

Recipients and subrecipients must maintain records which clearly show the source, amount, and timing for all matched contributions.

- In addition, if a recipient or subrecipient has included a match that exceeds the required matching portion within the approved budget, the records of those additional amounts must be included and maintained as if they are a part of the regular match amount.
- The award recipient has primary responsibility for meeting the match requirement and for ensuring subrecipient compliance with the match requirements.
- Recipients must maintain records that clearly demonstrate the amount, source, and when the funds were contributed.
- Recipients are required to report match on the quarterly Federal Financial Report (SF-425/line i)
- Supporting documentation does not have to be provided to DOJ, but such records must be available in the event of an audit or site visit.

> ☑ **ACTION ITEM**
>
> The most common error found during the final financial reconciliation and closeout of an award is the failure to properly report matching funds. The full matching share provided (both cash and in-kind) must be reported on the Federal Financial Report (FFR) submitted at the end of the award period. If the matching share is not reported, DOJ will assume the recipient did not meet the required match and will initiate collection of a cash match from the recipient.

## III. Postaward Requirements

### 3.3 MATCHING OR COST SHARING REQUIREMENTS

#### Waiver of Match

- For American Indian or Alaskan Native tribes that perform law enforcement functions (as determined by the Secretary of the Interior) for any program or project described in 42 U.S.C. §3752 of the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3750–3769 [PDF - 160 Kb] the Federal portion of grant awards shall be 100% of such cost.

- The grant-making component will waive any requirement for matching funds (including in-kind) under $200,000 for all awards made to American Samoa, Guam, U.S. Virgin Islands, and Northern Mariana Islands unless otherwise required by law to be provided; and may waive any requirement for matching funds equal to or over $200,000 for all awards made to those territories, or to the Trust Territory of the Pacific Islands. The $200,000 amount is determined on a grant-by-grant basis, not by the aggregate total of all matching requirements applicable to an insular area (48 U.S.C. § 1469a [PDF - 116 Kb]).

**Waivers specific to OJP:** The Office of Juvenile Justice and Delinquency Prevention Administrator may increase the Federal share of the project cost to the extent deemed necessary if:

- Recipients are part of an American Indian or Alaska Native tribe, and
- The tribe does not have sufficient funds to meet the local share of the cost of any program or project award to be funded under Title II of the Juvenile Justice Act.

**Waivers specific to COPS Office awards:** To maximize the number of communities that will be able to take advantage of COPS Office funding only a limited number of waiver requests (if any) will be granted to applicants who are able to demonstrate severe fiscal distress.

The COPS Office utilizes the "Fiscal Health" data provided in section 7 of the application with other applicant's waiver request to make a final decision.

**Waivers specific to OVW awards:** Match may be waived based on demonstration of financial hardship. In addition, awards to victim service providers for victim services or to tribes are subtracted from the Federal award amount for purposes of calculating required match. States may not require tribes or victim service providers to provide matching funds for their projects.

## III. Postaward Requirements

## 3.4 PROGRAM INCOME

### Introduction

Program income means gross income earned by the non-Federal entity that is directly generated by a supported activity or earned as a result of the Federal award during the period of performance. See 2 C.F.R. § 200.80 (definition of "Program Income"). Non-Federal entities are encouraged to earn income to defray program costs where appropriate. See 2 C.F.R. § 200.307(a).

- Depending on guidance provided by the DOJ grant-making component, award recipients can either use program income to advance program objectives or refund program income to the awarding agency. Most types of recipients, absent more specific guidance from the DOJ grant-making component, must use program income to offset total allowable costs, and reduce the Federal award and non-Federal entity contributions (i.e., the deduction method). Institutions of Higher Education (IHE) and non-profit research institutions, absent more specific guidance, may use program income to add to the total allowable costs for the project (i.e., the addition method). See 2 C.F.R. § 200.307(e).

- Program income may only be used for **allowable program costs** and must be **spent prior to draw downs**. See 2 C.F.R. § 200.305(b)5).

> ▶ **OJP SPECIFIC TIP**
>
> The draw down restriction **does not** apply to Juvenile Accountability Block Grant (JABG) and Justice Assistance Grant (JAG) awards.

> ▶ **OVW SPECIFIC TIP**
>
> Without prior approval from OVW, program income must be deducted from total allowable cost to determine the net allowable costs. In order to add program income to the OVW award, the recipient must seek approval from its program manager via a budget modification Grant Adjustment Notice (GAN) prior to generating any program income.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> If the cost is allowable under the program award, then it is allowable to apply program income to that cost.

### Accounting Processes for Program Income

If program income is earned, it must be accounted for up to the same ratio of Federal participation as funded in the project or program. For example:

- A discretionary award project funded with 100% Federal funds must account for and report on 100% of the total program income earned. If the total program income earned was $20,000, the recipient must account for and report the $20,000 as program income on the Federal Financial Report (FFR), SF-425.

## III. Postaward Requirements

### 3.4 PROGRAM INCOME

- If a recipient was funded by an award at 75% Federal funds and 25% non-Federal (match) funds, and the total program income earned by the grant was $100,000, then $75,000 must be accounted for and reported by the recipient as program income on the FFR.

Unless otherwise stipulated in the award, any program income earned during the project period but not utilized for the project must be refunded to the awarding agency. If authorized by the DOJ grant-making component, costs incidental to the generation of program income that have not been charged to the Federal award may be deducted from gross income to determine program income. See 2 C.F.R. § 200.307(b).

Program income that the non-Federal entity did not anticipate at the time of the Federal award must be used to reduce the Federal award and non-Federal entity contributions rather than to increase the funds committed to the project, unless otherwise specified in the agency regulations or the terms and conditions of the Federal award. (This does not apply to Institutions of Higher Education or non-profit research institutions, unless specified in other guidance or conditions). See 2 C.F.R. § 200.307(e).

Unless otherwise instructed by the DOJ grant-making component, there are no requirements on the disposition of program income earned after the end of the period of performance of the award.

### Examples of Program Income

#### Royalties

All royalties received from copyrights or other works developed under projects or from patents and inventions may be kept by the recipient unless the terms and conditions of the project provide otherwise, or a specific agreement governing such royalties has been negotiated between the awarding agency and the recipient. See 2 C.F.R. § 200.80.

#### Attorney's Fees and Costs

Income received after completion of the project related to a court-ordered award of attorney's fees or costs, is considered program income to the extent that it represents a reimbursement for attorney's fees and costs originally paid under the award. This type of program income is subject to the restrictions stated in the award. See 2 C.F.R.§ 200.80.

> ▶ **OVW SPECIFIC TIP**
>
> In the following circumstances, OVW recipients may accept attorney's fees as program income under 2 CFR 200.307(e)(2) and add them to the federal award: (1) Fees that are issued by a judge in an OVW-supported case without the request of the OVW-funded attorney. (2) Fees that are sought by the OVW-funded attorney for the purpose of deterring repeated or abusive filings by the offender of the domestic violence, dating violence, sexual assault, or stalking.
>
> In any other circumstances, recipients must seek approval from their OVW program manager via a Grant Adjustment Notice (GAN). Any program income added to the federal award must be used to support activities that were approved in the budget and follow the conditions of the OVW award. Any program income added to the federal award must also be approved via budget modification GAN by the end of the project period. If a recipient receives fees that do not fall within one of the circumstances above or does not receive prior approval via GAN, then the resulting program income must be deducted from the OVW award pursuant to 2 CFR 200.307(e)(1).

III. Postaward Requirements

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**3.4 PROGRAM INCOME**

**Registration/Tuition Fees**

These types of program income must be treated in accordance with the instructions stated in the project's terms and conditions. See 2 C.F.R. § 200.80.

**Asset Seizures and Forfeitures**

Program income from asset seizures and forfeitures is considered earned when the property has been adjudicated to the benefit of the plaintiff (i.e., law enforcement entity), and the seizure or forfeiture is directly generated or conducted as a result of the Federal award during the award period. Income received from the sale of seized and forfeited assets (personal or real property) or from seized and forfeited money must follow the "Addition Method" of handling program income unless an alternate method is designated in the recipient's award document. The following policies apply to program income from asset seizures and forfeitures:

- Subrecipient program income, with the approval of the recipient, may be retained by the entity organization earning the program income or used by the recipient for any purpose that furthers the objectives of the legislation under which the award was made.

- States or local units of government *may use program income funds from seized and forfeiture assets as match* when assets are given a ruling by a State court, in accordance with the State law. In addition, State and local units of government *may use cash* received under the equitable sharing program for the non-Federal portion (match) of program costs, as provided for in the guidelines established by the DOJ Asset Forfeiture Office, when the assets are judged by a Federal court organization.

> ▶ **OJP SPECIFIC TIP**
>
> Due to the unique nature of NIJ's DNA Capacity Enhancement and Backlog Reduction (DNA CEBR) and Forensic DNA Laboratory Efficiency Improvement and Capacity Enhancement (DNA EICE) Programs, award recipients of these programs <u>must follow</u> a more detailed program income policy that is available online at: https://nij.gov/documents/nij-dna-program-income-policy.pdf
>
> Award recipients generating program income under the referenced grant programs are *strongly encouraged* to use the program income calculator available at https://nij.gov/documents/dna-program-income-calculator.xlsx. Recipients that do not use this calculator *must* be able to demonstrate a consistent methodology for calculating program income that is transparent, justifiable, ensures costs are reasonable and allocable, and is consistent with the NIJ Program Income Policy and all applicable guidance referenced therein.

## III. Postaward Requirements

### 3.4 PROGRAM INCOME

> ▶ **OJP SPECIFIC TIP**
>
> **Interest Earned on JAG and JABG Funds**
>
> Unlike most DOJ funding, JAG and JABG income earned from advances of federal funds is considered program income. See 42 U.S.C. § 3757. Interest income earned should only be spent on allowable purpose areas under these programs. Recipients are required to use all funds within the fixed expenditure period. No extension to the project period will be approved. JAG and JABG recipients are not required to spend program income before spending Federal funds.

**Membership Fees**

If an organization's only source of income is Federal award funds, then when it receives membership fees, those fees will generally be considered program income.

- When an organization receives non-member income and uses that income to provide services to its members in addition to the federally funded services, then membership income may be considered program income. The amount of membership income considered program income will be in proportion to the amount of Federal and non-Federal funds that the organization receives.

- An organization need not report its membership fees as program income if the fees were received before the organization began to receive Federal award funds, or if they are used to provide member services that are separate and distinct from grant-funded services.



> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Fines as a result of law enforcement activities are not considered program income.

## Procedures for Recovery of Costs Incurred

In some instances, a State or local law enforcement agency provides information to the Internal Revenue Service (IRS) that substantially contributes to the recovery of Federal taxes owed, with respect to illegal drug-related activities (or money laundering in connection with such activities).

- In these cases, the IRS may reimburse the State or local law enforcement agency for costs incurred in the investigation (including but not limited to reasonable expenses, per diem, salary, and overtime). The total reimbursement will not exceed 10% of the amount recovered.

- State or local law enforcement agencies that provide such information to the IRS will receive notification from the IRS when monies have been recovered as a result of the information supplied. Following such notification, and based on documentation, the agency will be required to submit a statement detailing the investigative costs it incurred.

- If more than one State or local agency has provided information, the IRS shall equitably allocate investigative costs among the agencies not to exceed an aggregate amount of 10% of the taxes recovered.

- No State or local agency may receive reimbursement for investigative expenses under Internal Revenue Code Section 7624 if reimbursement has been received from another source, such as a Federal or State forfeiture program or under State revenue laws.

## III. Postaward Requirements

### 3.4 PROGRAM INCOME

- If the information/investigation is performed with awarding agency funds, the reimbursement received from the IRS is considered to be program income and subject to the aforementioned guidelines.

| ⓘ FINANCIAL MANAGEMENT TIP |
|---|
| 1. Spend program income prior to requesting additional award funds. |
| 2. With prior approval, supplement the award-supported project with program income dollars. |
| 3. Reduce project costs with program income. (Default rule for most entities.) |
| 4. Return any unused program income funds. |

## III. Postaward Requirements

### 3.5 ADJUSTMENTS TO AWARDS

#### Grant Adjustment Notice

For OJP and OVW, a Grant Adjustment Notice (GAN) is a request to make a programmatic, administrative, or financial change to a grant. GANs may be submitted by the recipient, grant manager, or automatically generated by the Grant Management System (GMS). All GANs must be submitted electronically through the GAN module in GMS.

For the COPS Office, grant recipients must request to make a programmatic, administrative, or financial Modification (MOD) through the COPS Agency Portal at https://cops.usdoj.gov. Recipients may not expend any award funds for a modification request before receiving written COPS Office approval. For additional information on submitting a grant modification request, recipients should contact their Grant Program Specialist/program manager at 800-421-6770.

Once OJP, OVW, or the COPS Office has made a decision on the proposed adjustment, the grantee is sent notification via GAN or MOD that becomes a permanent part of their award file, and the record is updated as appropriate.

Recipients are limited to specific grant award adjustment(s). The following sections describe situations in which recipients must or may initiate a GAN.

> ▶ **OJP/OVW COMPONENT SPECIFIC TIP**
>
> After submission of a GAN, OJP and OVW recipients should monitor the system for returned or change requested GANs in case additional information or changes are required. Untimely responses could delay the processing of the GAN. An untimely response may also result in the request being denied, and the grantee having to restart the GAN process. This can be a problem, especially if the request is to extend the grant period and the project end date is near.

> ▶ **COPS OFFICE SPECIFIC TIP**
>
> For COPS Office recipients, once a modification request is received, the COPS Office will evaluate the request and notify the recipient via the COPS Agency Portal at https://cops.usdoj.gov. Implementation of the modification may begin following written approval from the COPS Office. Please note that modification approvals for active grants will often be accompanied by a modified award document and/or a modified Financial Clearance Memorandum reflecting the approved changes. If applicable, the recipient is required to sign and submit the modified award document via the COPS Agency Portal link to officially accept the grant modification.

#### Budget Modifications

For OJP and OVW, a GAN may be initiated for a budget modification if the request is to modify an approved budget to reallocate funds among the budget categories. This type of GAN can also be used to de-obligate a portion of the award amount; however, the original award amount may not be *increased* by this procedure.

## III. Postaward Requirements

### 3.5 ADJUSTMENTS TO AWARDS

OJP and OVW award recipients **must** initiate a GAN for budget modification if:

- The proposed cumulative change is greater than 10% of the total award amount. The 10% rule does not apply to an award of less than $250,000 (increased from $150,000).

- The budget modification changes the scope of the project. Examples include altering the purpose of the project, authorizing use of a subcontractor or other organization that was not identified in the original approved budget, or contracting for or transferring of award-supported efforts.

- A budget adjustment affects a cost category that was not included in the original budget. For example, if the direct cost category "Travel" did not exist in the original budget, the adjustment to transfer funds from Equipment to Travel requires a GAN.

For COPS Office, budget modification requests for federal awards in excess of $250,000 (increased from $150,000) involving the reallocation of funding between budget categories that exceed or are expected to exceed 10 percent of the total approved budget require prior written approval by the COPS Office. The recipient must submit a formal budget modification through COPS Agency Portal.

> ► **OJP/COPS SPECIFIC TIP**
>
> OJP/COPS Office recipients must initiate a GAN or a budget modification if there is any dollar increase or decrease to the indirect cost category of an approved budget.

> ► **OJP/COPS SPECIFIC TIP**
>
> For recordkeeping purposes and audit documentation, it is advised to submit a GAN/MOD even if the proposed budget modification is less than 10% of the total award amount. This also provides the grant manager with notification.

**Changes in the Recipient's Authorized Signing Official and/or Official's Contact Information**

For OJP and OVW, a GAN must be initiated to make changes to the person who is responsible for authorizing and signing official documents (such as award documents, Standard 424 documents, etc.). The request must include the name, address, phone number, e-mail address, fax number, and title of the new Authorized Signing Official.

For the COPS Office, the authorized signing official and contact information may be updated in "Account Access" on the COPS Office website at https://cops.usdoj.gov or by calling the Response Center at 1-800-421-6770 for technical assistance.

> ☑ **ACTION ITEM**
>
> Many awards require **prior approval** for changes in key staff. See 2 C.F.R. § 200.308(c)(2) (requiring prior approval where key staff member is specified in the application or award documents).

## III. Postaward Requirements

## 3.5 ADJUSTMENTS TO AWARDS

### Changes to the Scope of the Award

Recipients must initiate a GAN or MOD for changes in scope, duration, activities, or other significant areas.

These changes include but are not limited to:

- Altering programmatic activities
- Changing the purpose of the project
- Changing the project site
- Experiencing or making changes to the organization or staff with primary responsibility for implementation of the award, contracting out, subawarding (if authorized by law), or otherwise obtaining the services of a third party to perform activities which are central to the purpose of the award
- Changes in scope that affect the budget

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> To determine if a change would be considered a change in scope, contact the grant manager.

### Change in Project Period

For OJP and OVW, a request to change the **start date** may be submitted by the recipient or the grant manager. This type of request is rarely approved except for programs that are, by statute, allowed to change the start date based on the draw down date. In general, in order for a Start Date GAN to be approved, there must not have been any draw down of funds.

For OJP and OVW, a request to change the project **end date** may be submitted by either the recipient or the grant manager no later than 30 calendar days before the project period end date. Any request to change the project end date after that time must be submitted by the grant manager.

For additional information on this topic, please refer to Project Extension Guidance section in Chapter 3.2.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Some awards have statutory maximum grant periods beyond which they cannot be extended.

# III. Postaward Requirements

## 3.5 ADJUSTMENTS TO AWARDS

### Changes to the Organization

For OJP and OVW:

- A GAN may be initiated to request a change to the organization's mailing address.
- A GAN may be initiated to request to change the name and contact information of the recipient or key recipient staff due to a permanent withdrawal, change in staff, or in case of a temporary absence.
- A request must be submitted to change the name of a recipient organization on record with DOJ.
- A GAN may not be initiated to request a change to the vendor number or the type of organization (e.g., profit vs. nonprofit). Please contact the grant manager regarding changes to the organization.

COPS Office recipients **may** request a change to the organization in the COPS Agency Portal or by calling the Response Center at 1-800-421-6770.

### Data Universal Numbering System, or DUNS, Changes

A GAN may be initiated to request a change to the recipient organization's DUNS number.

### Sole Source Approval

For OJP and OVW, a GAN must be initiated to request to enter into a non-competitive contractual relationship with a contractor under a grant where the contracted cost exceeds the simplified acquisition threshold. Please see Chapter 3.8: Procurement Under Awards of Federal Assistance for more information.

For the COPS Office, a request to enter into a non-competitive contractual relationship for equipment, technology, or services in excess of the simplified acquisition threshold must be submitted to the COPS Office in writing certifying that the award of a contract through full and open competition is infeasible.

## Prior Approval of Certain Costs

Written prior approval must be obtained for some costs, as specified in 2 C.F.R. Part 200 (specifically in 2 C.F.R. § 200.407) and as discussed in Chapter 3.6: Costs Requiring Prior Approval. The following are some examples of costs that require a GAN for prior approval:

- Compensation for consultant services in excess of the grant-making component's maximum hourly or daily rate for an 8-hour day - currently $650.
- Publication plans
- Costs incurred prior to the date of the subaward period
- Foreign travel

# III. Postaward Requirements

## 3.5 ADJUSTMENTS TO AWARDS

### Reprogramming of Funds

Recipients may not reprogram their awards to delete or add programs or program activities without prior approval. Moreover, with the exception of some formula awards, funds cannot be moved from one subrecipient to another without prior approval.

> ▶ **OJP SPECIFIC TIP**
>
> Retroactive approval will be considered only in extenuating circumstances. The awarding agency may question/disallow costs, or take other remedies, as appropriate, for unauthorized use of funds.

For general information concerning either the online processing for GANs or processing changes through the COPS Office online Agency Portal, please contact the appropriate grant-making agency.

OJP – email at GMS.helpdesk@usdoj.gov or by phone at 1-888-549-9901
OVW – email at OVW.GMSSupport@usdoj.gov or by phone at 1-866-655-4482
COPS Office – email Agency Portal at askCOPSRC@usdoj.gov or by phone at 1-800-421-6770

# III. Postaward Requirements

## 3.6 COSTS REQUIRING PRIOR APPROVAL

### Introduction

2 C.F.R. § 200.407 sets out costs that require prior, written approval. A list of the most common of these costs for DOJ grantees is also included below. Award recipients must obtain prior written approval for any of these costs. Recipients must also receive prior written approval for costs that contain special limitations (such as expenditure ceilings).

### Responsibility for Prior Approval

The DOJ grant-making component reviews all costs requiring prior approval when the recipient is incurring the cost. The direct recipient (or pass-through entity) reviews all costs requiring prior approval when the subrecipient is incurring the cost.

### Procedures for Requesting Prior Approval

In general, requests for costs requiring prior approval must be in writing and must include an explanation justifying the expenditure. Contact the DOJ grant-making component for specific guidance.

### Listing of Costs Requiring Prior Approval

#### Automatic Data Processing Equipment and Software

Requests to purchase Automatic Data Processing (ADP) equipment may be made; however, the application must be written in a manner consistent with maximum, open, free, and fair competition in the procurement of hardware and services.

Brand names should not be specified (see 2. C.F.R. § 200.319(a)(6)) when ADP equipment includes the following types and requirements:

- Digital, analog, or hybrid computer equipment and automated fingerprint equipment.
- Auxiliary or accessorial equipment, such as data communications terminals, source data automation recording equipment (e.g., optical character recognition equipment and other data acquisition devices), and data output equipment (e.g., digital plotters, computer output microfilms) to be used in support of digital, analog, or hybrid computer equipment, whether cable-connected, wire-connected, radio-connected, or self-standing, and whether selected or acquired with a computer or separately.
- Data transmission or communications equipment that is selected and acquired solely or primarily for use with a configuration of ADP equipment that includes a computer.
- Qualification and exclusions:
  - Analog computers are covered only when being used as support or assistance to a digital computer.
  - Items of ADP equipment that are (a) physically incorporated in a weapon or (b) manufactured under a development contract are excluded from the above definition.
  - Accessories, such as tape cleaners, tape testers, magnetic tapes, paper tapes, disk packs, or anything similar are also excluded.

## III. Postaward Requirements

### 3.6 COSTS REQUIRING PRIOR APPROVAL

**Equipment and Other Capital Expenditures**

If recipients or subrecipients have received prior approval for expenditures for equipment and other capital assets, including repairs which materially increase the useful life of equipment, then these expenditures are allowable. See 2 C.F.R. § 200.439.

- Expenditures for equipment must be fully justified in the budget and budget narrative; otherwise the grant-making component may require that the type, quantity estimated, unit, or other information be provided before the final budget can be issued.

- In reviewing equipment acquisition budgets and proposals, the following principles should be followed:
  - No other equipment owned by the recipient/subrecipient is suitable for the project;
  - No luxury vehicles will be approved;
  - If the vehicle request is approved, the vehicle should be reasonable, and the recipients must follow the Internal Revenue Service guidelines;
  - If the vehicle(s) was purchased as part of a unit of government fleet by the State or local central procurement activities, it is generally accepted as reasonable;
  - Federal funds are not used to provide reimbursement for the purchase of equipment already owned by the recipient/subrecipient; and
  - Equipment purchased and used commonly for two or more programs should be appropriately divided among each activity.

- An expenditure for equipment purchased for a common pool is generally allowable as a charge to the award at cost value.

- Equipment that has already been purchased and charged to other activities of the organization is not an allowable expense to the award.

**Pre-Award Costs**

Pre-award costs are costs incurred prior to the project begin date and in anticipation of the award where such costs are necessary for efficient and timely performance of the scope of the work. Costs are allowed only to the extent that they would be allowed if incurred after the start date of the Federal award and only with prior approval of the DOJ awarding agency. Prior approval is required for pre-award costs. Costs incurred prior to the start date of the award may be charged to the project only if the award recipient received written prior approval from the grant-making component. Direct recipients may approve pre-award costs for subrecipients if incurred after the start date of the Federal award.

Any and all costs in furtherance of a project which costs occur prior to an award date are at the sole risk of an applicant, and can only be reimbursed to the extent that there is prior approval.

**Proposal Costs**

Proposal costs are the costs of preparing bids, proposals, or applications on potential Federal and non-Federal awards or projects including the development of data necessary to support the non-Federal entity's bids or proposals. Proposal costs of the current accounting period of both successful and unsuccessful bids and proposals normally should be treated as indirect (F&A) costs, and allocated currently to all activities of the non-Federal entity. Such cost, where proposed as direct costs, require written prior approval from the grant-making component. No proposal costs of a past accounting period will be allocable to the current period. See 2 C.F.R. § 200.460.

# III. Postaward Requirements

## 3.6 COSTS REQUIRING PRIOR APPROVAL

### Consultant Rates

Compensation for individual consultant services is to be reasonable and consistent with that paid for similar services in the marketplace.

- Each grant-making component periodically establishes a prior approval threshold consultant rate. The current rate for each grant-making component is $650 per day or $81.25 per hour.

- This limit is specified in the terms and special conditions of the award.

- When the rate exceeds the limit for an 8-hour day, or a proportionate hourly rate (excluding travel and subsistence costs), a written prior approval is required from the grant-making component. Prior approval requests require additional justification.

- An 8-hour day may include preparation, evaluation, and travel time in addition to the time required for actual performance.

- Please note, however, that this does not mean that the rate can or should be the maximum limit for all consultants.

- Rates above the established maximum threshold rate will be reviewed on a case-by-case basis. Justification for exceeding the established maximum rate may include where a rate is established through a competitive bidding process.

- In order to calculate a rate of compensation for consultants associated with and employed by institutions of higher learning, divide the total compensation projected for 12 months by 260.
  - If the resulting rate of compensation exceeds the maximum consultant rate established by the grant-making component, written prior approval must be obtained.

- Compensation for consultants employed by State and local government will only be allowed when the unit of government will not provide these services without cost.
  - If a State or local government employee has been contracted to provide services that are related to his or her employment with the State or local government, the rate of compensation is not to exceed the daily salary rate for the employee paid by the unit of government.
  - If the State or local government employee has been contracted to provide services that are unrelated to his or her employment with the State or local government, then the rate of compensation is based on the necessary and reasonable cost principles which cannot exceed the maximum rate allowed by the awarding agency without prior written approval.

### Conference Costs

All conferences (defined broadly to include meetings, retreats, seminars, symposiums, events, and group training activity) conducted by Cooperative Agreement recipients or contractors funded by DOJ must receive written prior approval. An approved award budget is not a prior approval. All prior approval requests must be submitted within the required number of days (90 or 120) in advance of the start date. See Chapter 3.10: Conference Approval, Planning, and Reporting for more information.

## III. Postaward Requirements

### 3.6 COSTS REQUIRING PRIOR APPROVAL

#### Foreign Travel

Foreign travel is defined as any travel outside of the United States and its Territories and possessions. However, for organizations located in foreign countries, foreign travel means travel outside of the organization's country. Some requirements for foreign travel:

- Each separate foreign trip must be pre-approved.
- Direct charges for foreign travel costs are not allowable unless the travel has prior approval from the awarding agency.
- Indirect charges for foreign travel are allowable without prior approval from the awarding agency when they are included as part of a federally approved indirect cost rate and have a beneficial relationship to the project.

#### Moving Money between Categories

Moving monies into any budget category with a zero dollar amount is not allowable without prior approval from the grant-making component. A budget modification is required. See 2 C.F.R. § 200.308(e).

#### Confidential Funds

Confidential funds are subject to prior approval.

> ▶ **OJP SPECIFIC TIP**
>
> Recipients with a federally-approved indirect cost rate may not transfer funds into or out of the indirect cost category without prior approval. A budget modification is required as indicated in Chapter 3.5 Adjustment to Awards. A copy of the current approved indirect cost agreement from the Cognizant Federal Agency must be attached.

## III. Postaward Requirements

### 3.7 PROPERTY STANDARDS

#### General Principles for Property Acquisition and Management

Property includes both real property and *personal property*. Real property typically includes things like land and buildings. Personal property includes both *tangible personal property*, which is classified as either *equipment or supplies*; and *intangible personal property*, which includes things having no physical existence, like trademarks, copyrights, and patents. See definitions in 2 C.F.R. § 200.1. Each of these is addressed in further detail below.

DOJ expects recipients and subrecipients of Federal funds to use good judgment when purchasing, managing, and disposing of property paid for by Federal funds. If a recipient or subrecipient uses award funds to purchase new property when suitable property is already available within the relevant organization, this use will be considered an unnecessary expenditure.

---

ⓘ **FINANCIAL MANAGEMENT TIP**

Organizations may use their own capitalization policy for classification of equipment and supplies, but only where it is less than the Federal policy threshold of $5,000.

*Equipment* means tangible personal property (including information technology systems) having 1) a useful life of more than one year and 2) a per-unit acquisition cost of $5,000 or greater (or the organization's capitalization policy, if it is less than $5,000). If the organization does not have a capitalization policy in place, the Federal policy amount of $5,000 must be followed.

*Supplies* are all other items of tangible personal property that are not equipment. This includes computing devices that cost less than $5,000 per unit (or the organization's capitalization threshold, if that is less than $5,000).

---

#### Screening and Property Management Systems

Careful screening should take place before purchasing property to ensure that it is needed. Organizations should establish and maintain an effective property management system to avoid incurring property acquisition costs that are later disallowed by the awarding agency (e.g., acquiring unreasonable, duplicative, or unnecessary property). Recommended screening practices include:

- Take stock of the equipment that recipient or subrecipient already has and see if it meets the identified needs.
- Consider establishing a screening committee to make decisions about purchases.
- Utilize effective management techniques as a basis for determining that property/equipment is needed.
- Initiate a screening process to ensure that effective controls are in place for property management.

#### Equipment Ownership, Use, Management, and Disposition

DOJ recipients must follow the standards and procedures for ownership (title), use, management, and disposition of equipment set out below, with the exception of recipients and subrecipients of Byrne Justice Assistance Grant (JAG) Program formula grant funds from the Bureau of Justice Assistance. JAG award recipients must follow slightly different standards and procedures set out in 42 U.S.C. § 3789. (See the "Equipment and Supplies Acquired With Edward Byrne Memorial Justice Assistance Grant Program Funds" below).

# III. Postaward Requirements

## 3.7 PROPERTY STANDARDS

### Ownership of Equipment

Unless more specific rules are identified for a particular grant program, title to equipment acquired under a Federal award will vest in the recipient organization (or, in the case of a subaward, in the subrecipient's organization). The legal right of ownership and conditions for use, management, and disposal of equipment are set forth in 2 C.F.R. § 200.313, and are described below.

### Use of Equipment

A *State* must use equipment acquired under a Federal award in accordance with State laws and procedures. DOJ encourages the States to follow the procedures that are in this *Guide*.

*Recipients and subrecipients other than States* must use equipment acquired under an award (or subaward) for the authorized program or project purposes for which it was acquired as long as needed, whether or not the project or program continues to be supported by Federal funds. When no longer needed for the original program or project, the equipment may be used in other activities currently or previously supported by a Federal agency.

- *Use for other Federal projects*. Equipment must be made available for use on other projects or programs currently or previously supported by the Federal government, provided the use does not interfere with the work on the projects or programs for which it was originally acquired. First preference for other use should be given to other programs or projects supported by the awarding agency.

- *User fees*. User fees should be considered and treated as program income to the project, when appropriate. See 2 C.F.R. § 200.307 (Program Income). During the time the Federal government retains an interest in the equipment the non-Federal entities must not use equipment acquired with a Federal award to provide services for a fee that is less than private companies charge for equivalent services, unless doing so is specifically authorized by law. See 2 C.F.R. § 200.313(c)(3).

- *Replacement equipment*. When acquiring replacement equipment, recipients or subrecipients may use the equipment to be replaced as a trade-in, or may sell the equipment and use the proceeds to offset the cost of the replacement equipment, subject to the written approval of the awarding agency.

- *Encumbrances*. A non-federal entity must not encumber equipment acquired under a Federal award without approval of the awarding agency or pass-through entity.

### Management of Equipment

A *State* should ensure equipment acquired under a Federal award to the State is managed in accordance with State laws and procedures for property.

*Recipients and subrecipients other than States* must use procedures for managing equipment (including replacement equipment) acquired in whole or in part under a Federal award, until disposition takes place, that, at a minimum, meet the following requirements:

- ***Property records.*** Property records must be maintained to include all of the following information:

  - Description of the property

  - Serial number or other identification number

  - Source of the property, including the federal award identification number

  - Identification of the title holder

  - Acquisition date

# III. Postaward Requirements

## 3.7 PROPERTY STANDARDS

- ‣ Cost of the property
- ‣ Percentage of Federal participation in the cost of the property
- ‣ Location of the property
- ‣ Use and condition of the property
- ‣ Disposition data, including the date of disposal and sale price

- ■ **Inventory.** A physical inventory of the property must be taken and the results reconciled with the property records at least once every 2 years.

- ■ **Maintenance procedures.** Adequate maintenance procedures must be established and used to keep the property in good condition.

- ■ **Control system.** A control system must be in place with adequate safeguards to prevent loss, damage, and theft.
  - ‣ Promptly and properly investigate and fully document any loss, damage, or theft, and make the documentation part of the official project records. 2 C.F.R. § 200.313 (d)(3).
  - ‣ Provide at a minimum, the equivalent insurance coverage for equipment acquired with Federal funds that the non-Federal entity owns. Federally-owned equipment need not be insured unless required by the award. 2.C.F.R. § 200.310.
  - ‣ Non-federal entities are responsible for replacing or repairing property that is willfully or negligently lost, stolen, damaged, or destroyed.

- ■ **Proper sales procedures.** If authorized or required to sell the property, the recipient or subrecipient must establish proper sales procedures to ensure the highest possible return.

### Disposition of Equipment

A *State* recipient must dispose of equipment acquired under the award in accordance with State laws and procedures.

*Recipients and subrecipients other than States* must dispose of the equipment when original or replacement equipment acquired under the award or subaward is no longer needed for the original project, or for other activities currently or previously supported by a Federal awarding agency, as follows:

- ■ If the item to be disposed of has a current per-unit fair market value of $5,000 or less, the item may be retained, sold, or otherwise disposed of with no further obligation to the awarding agency.

- ■ If the item has a current per-unit fair market value of more than $5,000, the item may be retained or sold, but the awarding agency will have a right to a specific dollar amount. Calculate this amount by multiplying the current market value or proceeds from the item sale by the awarding agency's share of the equipment (i.e, the agency's percentage of participation in the cost of the original purchase). The seller is also eligible for limited sale and handling costs of $500 or 10% of the proceeds, whichever is less.

- ■ In cases where the recipient or subrecipient fails to take appropriate disposition actions, the awarding agency may direct other disposition actions.

## III. Postaward Requirements

### 3.7 PROPERTY STANDARDS

#### Equipment and Supplies Acquired With Edward Byrne Memorial Justice Assistance Grant Program Funds

Special rules, set out in [42 U.S.C. § 3789](#) (a provision of the Omnibus Crime Control and Safe Streets Act of 1968), apply to the ownership, use, and disposition of equipment and supplies purchased with Edward Byrne Memorial Justice Assistance Grant Program (Byrne JAG) funds awarded by the Bureau of Justice Assistance (BJA). These rules supersede any conflicting provision of 2 C.F.R. part 200. See [2 C.F.R. Part 2800](#).

- Title to all equipment and supplies purchased with Byrne JAG funds vests in the criminal justice agency or non-profit organization that purchased the property, if it certifies to the State Office that it will use the property for criminal justice purposes.

- If such certification is not made, title to the property shall vest in the State Office, which shall seek to have the property used for criminal justice purposes elsewhere in the State prior to using it or disposing of it in any other manner.

- When equipment is no longer needed for criminal justice purposes, a State should dispose of equipment (for both the State and subrecipients) in accordance with State procedures, with no further obligation to the awarding agency.

- The procedures on *use* and *management* of equipment set out above apply to the extent that they do not conflict with 42 U.S.C. § 3789.

#### Federal Equipment

When federally owned equipment is provided, the following requirements apply:

- Title remains vested in the Federal Government.

- The equipment must be managed in accordance with the grant-making component's rules and procedures and an annual inventory listing must be submitted.

- When the equipment is no longer needed, disposition instructions must be requested from the grant-making component.

#### Replacement of Equipment

When an item of property is no longer efficient or serviceable but continues to be needed in the program or project for which it was acquired, or other programs permitted under [2 C.F.R. § 200.313(c)](#), the property may be replaced through trade-in or sale and subsequent purchase of new property. In this case, the following conditions must be met:

- *Same function and character.* Replacement property must serve the same function as the original property and be of the same nature or character, although not necessarily of the same grade or quality.

- *Timing.* Purchase of replacement property must take place soon enough after the sale of the property to show that the sale and the purchase are related.

- *Trade-ins.* When acquiring replacement property, the recipient or subrecipient may use the property to be replaced as a trade-in. Value credited for the property, if the property is traded in, must be related to its fair market value. The recipient or subrecipient also may use the proceeds from the sale of the property to offset the cost of the new property.

- *Subrecipients of States.* State subrecipients must obtain the written permission of the State to use the provisions of this section prior to entering into negotiation for the replacement or trade-in of property.

# III. Postaward Requirements

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 3.7 PROPERTY STANDARDS

## Supplies

For supplies acquired under an award, the title to the supplies vests with the recipient upon acquisition. For supplies acquired under a subaward, the title vests with the subrecipient upon acquisition.

■ Recipients and subrecipients must compensate the grant-making component for its share of residual inventory of unused supplies if both of the following apply:

▶ The residual inventory of unused supplies exceeds $5,000 in total aggregate fair market value upon termination or completion of the funding support.

▶ The supplies are not needed for any other federally sponsored programs or projects.

● Compute the compensation amount in the same manner as for nonexpendable personal property or equipment.

Note: Special rules apply for supplies purchased with Byrne JAG funds – see previous discussion.

## Real Property Acquired With Federal Funds

***Real property*** means land, including land improvements, structures and appurtenances thereto, but excludes moveable machinery and equipment. See 2 C.F.R. § 200.85. DOJ funds generally cannot be used for land acquisition unless specifically permitted under the awarding program or terms of the award.

***Title.*** Subject to the obligations and conditions in the award, title to real property acquired or improved under an award or subaward vests upon acquisition in the recipient or subrecipient, as applicable.

***Use.*** Recipients and subrecipients may use real property acquired, in whole or in part, with Federal funds for the authorized purposes of the original award or subaward as long as needed for that purpose.

■ An inventory report should be maintained which identifies real property acquired, in whole or in part, with Federal funds.

■ Do not dispose of or encumber its title or other interests.

***Disposition.*** When real property is no longer needed for the original award purposes, the non-Federal entity should obtain disposition instructions from the grant-making component or pass-through entity, as appropriate. The instructions may allow one of the following:

■ ***Retain title after compensating the Federal awarding agency.*** The amount paid to the Federal awarding agency will be computed by applying the Federal awarding agency's percentage of participation in the cost of the original purchase (and costs of any improvements) to the fair market value of the property. However, in those situations where the non-Federal entity is disposing of real property acquired or improved with a Federal award and acquiring replacement real property under the same Federal award, the net proceeds from the disposition may be used as an offset to the cost of the replacement property.

■ ***Sell the property and compensate the Federal awarding agency.*** The amount due to the Federal awarding agency will be calculated by applying the Federal awarding agency's percentage of participation in the cost of the original purchase (and cost of any improvements) to the proceeds of the sale after deduction of any actual and reasonable selling and fixing-up expenses. If the Federal award has not been closed out, the net proceeds from sale may be offset against the original cost of the property. When the non-Federal entity is directed to

# III. Postaward Requirements

## 3.7 PROPERTY STANDARDS

sell property, sales procedures must be followed that provide for competition to the extent practicable and result in the highest possible return.

- ***Transfer title to the Federal awarding agency or to a third party designated/approved by the Federal awarding agency.*** The non-Federal entity is entitled to be paid an amount calculated by applying the non-Federal entity's percentage of participation in the purchase of the real property (and cost of any improvements) to the current fair market value of the property.

### Retention of Property Records

Records for equipment, nonexpendable personal property, and real property must be retained for a period of 3 years from the date of disposition, replacement, or transfer at the discretion of the grant-making component.

- If any litigation, claim, or audit is started before the expiration of the 3-year period, records must be retained until all litigation, claims, or audit findings involving the records have been resolved.

### Intangible Property

Intangible property means property having no physical existence, such as trademarks, copyrights, patents and patent applications and property, such as loans, notes and other debt instruments, lease agreements, stock and other instruments of property ownership (whether the property is tangible or intangible). 2 C.F.R. § 200.59.

***Title.*** Intangible property acquired under a Federal award vests upon acquisition in the non-Federal entity.

***Use.*** The non-Federal entity must use that property for the originally-authorized purpose, and must not encumber the property without approval of the Federal awarding agency.

***Disposition.*** When no longer needed for the originally authorized purpose, intangible property is treated similarly to equipment for disposition purposes. Disposition must occur in accordance with 2 C.F.R. § 200.313(e). In general, intangible property with a per-unit fair market value of $5,000 or less may be retained, sold, or otherwise disposed of with no further obligation to the grant-making component; while intangible property valued above $5,000 may be retained or sold, but the grant-making component is entitled to compensation for its share of participation in the cost of the original purchase, minus some selling and handling expenses. See the provisions for disposition of equipment (above) for a summary of these requirements.

See 2 C.F.R. § 200.315 for additional detailed rules regarding intangible property.

### Copyrights

The award recipient may copyright any work that is subject to copyright and was developed, or for which ownership was acquired, under a Federal award.

The grant-making component reserves a royalty-free, nonexclusive, and irrevocable right to reproduce, publish, or otherwise use, for Federal Government purposes (and to authorize others to do so), the following:

- Any work subject to copyright that was developed under an award or subaward; and
- Any work for which ownership was acquired under an award or subaward.

## III. Postaward Requirements

### 3.7 PROPERTY STANDARDS

#### Data Produced Under A Federal Award

With respect to data produced under a Federal award, the grant-making component has the right to do the following:

- Obtain, reproduce, publish, or otherwise use the data produced under an award; and
- Authorize others to receive, reproduce, publish, or otherwise use such data for Federal purposes.

***Freedom of Information Act.*** Under the Freedom of Information Act (FOIA), the Federal awarding agency may be required to publicly release certain research data related to published research findings produced under a Federal award that were publicly and officially cited by a Federal agency in support of an agency action that has the force and effect of law (e.g., a Federal regulation). In such cases, the Federal awarding agency must request, and the non-Federal entity must provide to the Federal awarding agency, within a reasonable time, the research data requested.

***Research data means the recorded factual material commonly accepted in the scientific community as necessary to validate research findings, but not any of the following:*** Preliminary analyses, drafts of scientific papers, plans for future research, peer reviews, communications with colleagues; trade secrets, commercial information, materials necessary to be held confidential by a researcher until they are published, or similar information which is protected under law; and personal and medical information and similar information the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, such as information that could be used to identify a particular person in a research study. This "recorded" material excludes physical objects (e.g., laboratory samples).

***Research data confidentiality provisions.*** DOJ regulations at 28 C.F.R. Part 22 set out data privacy and confidentiality requirements, and there may be other protections for research and statistical data in authorizing statutes for a specific program (e.g., 42 U.S.C. § 10604(d) for funds authorized under the Victims of Crime Act of 1984).

#### Patents, Patent Rights, and Inventions

The non-Federal entity is subject to applicable regulations governing patents and inventions, including government-wide regulations issued by the Department of Commerce at 27 C.F.R. Part 401, "Rights to Inventions Made by Nonprofit Organizations and Small Business Firms Under Government Awards, Contracts and Cooperative Agreements." 2 C.F.R. § 200.315(c).

# III. Postaward Requirements

## 3.8 PROCUREMENT UNDER AWARDS OF FEDERAL ASSISTANCE

### Procurement Standards—General Guidance

The Procurement Standards in the Uniform Guidance at 2 C.F.R. § 200.317 through 2 C.F.R. § 200.326 detail requirements and restrictions imposed on non-Federal entities (i.e., recipients and subrecipients) that use Federal assistance funds to procure property or services needed to carry out the grant-funded project.

For procurement transactions using Federal award funds, the non-Federal entity must use its own documented procurement procedures consistent with applicable State, local, and tribal laws and regulations. Procurement procedures must be formally documented by the non-Federal entity and periodically reviewed to ensure compliance with applicable regulations. A State must follow the same policies and procedures it uses for the State's procurement for its non-Federal funds.

Non-Federal entities must maintain written standards of conduct covering conflict of interest and employee participation in selection, award and administration of contracts. Recipients or subrecipients must also ensure that contractors perform in accordance with the terms, conditions and specifications of their awards. Contracts should only be awarded to responsible contractors possessing the ability to perform successfully under the terms and conditions of proposed procurements. Records that detail the history of all procurements must be maintained and should include, but not limited to:

- Rationale for the method of procurement;
- Selection of contract type;
- Contractor selection and/or rejection process; and
- Basis for the contract prices.

Non-Federal entities are responsible, in accordance with good administrative practice and sound business judgment, for the settlement of all contractual and administrative issues arising out of the procurement.

Award recipients and subrecipients must:

- Have a documented process to check for organizational conflict of interest with potential contractors;
- Have a process in place to ensure that contracts are not awarded to contractors or individuals on the List of Parties Excluded from Federal Procurement and Non-procurement Programs; and
- Perform a System for Award Management (SAM) review of potential contractors or individuals.

Non-Federal entities' procedures must avoid acquisition of unnecessary or duplicative items. Where appropriate, lease versus purchase analysis should be performed as well as other appropriate analysis for determining the most economical method for obtaining items or services. Recipients are encouraged to use Federal excess and surplus property when possible and to enter into inter-agency or inter-governmental agreements where appropriate to procure common or shared goods and services.

Non-Federal entities must include any applicable provisions found at 2 C.F.R. § 200 Appendix II ("Contract Provisions for Non-Federal Entity Contracts Under Federal Awards") in all contracts made by non-Federal entities (i.e., recipients and subrecipients) under the Federal grant award.

For additional guidance please see the DOJ Guide to Procurement Procedures [PDF - 700 Kb].

# III. Postaward Requirements

## 3.8 PROCUREMENT UNDER AWARDS OF FEDERAL ASSISTANCE

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> When conducting procurements using Federal award funds, a subrecipient of a State must use its own documented procurement procedures and must adhere to all applicable requirements found in 2 C.F.R. § 200.318 through 200.326 of the Procurement Standards.
>
> As used in this section (3.8) and elsewhere throughout the *Guide*, the term "non-Federal entity/entities" includes for-profit recipients and for-profit subrecipients of DOJ grant or cooperative agreement funds.
>
> As specified in this section (3.8) and as applied elsewhere throughout the Guide, the "simplified acquisition threshold" is $250,000 and the "micro-purchase threshold" is $10,000, for federal grants administrative purposes. See the provision under the heading, "DOJ Implementing Provision Regarding Financial Assistance Acquisition Threshold Changes in OMB M-18-18," below.

### Methods of Procurement

There are several methods of procurement that may be used by recipients and subrecipients including:

- Procurement by micro-purchase;
- Procurement by small purchase procedures;
- Procurement by sealed bids;
- Procurement by competitive proposals; and
- Procurement by noncompetitive proposal.

### Competition

Recipients and subrecipients must conduct all procurement transactions in a manner providing full and open competition consistent with the Procurement Standards in the Uniform Guidance. This requirement holds whether procurement transactions are negotiated or competitively bid, and without regard to dollar value. In order to avoid unfair competitive advantage, contractors that develop or draft specifications, requirements, statement of work, and invitations for bids or requests for proposals must be excluded from competing for such procurements.

The following situations are considered to be restrictive and should not take place:

- Placing unreasonable requirements on firms in order for them to qualify to do business;
- Requiring unnecessary experience or excessive bonding;
- Noncompetitive pricing practices between firms or between affiliated companies;
- Noncompetitive contracts to consultants that are on retainer contracts;
- Organizational conflicts of interest;
- Specifying a "brand name" product instead of allowing "an equal" product to be offered; and
- Any arbitrary action in the procurement process.

## III. Postaward Requirements

### 3.8 PROCUREMENT UNDER AWARDS OF FEDERAL ASSISTANCE

Written procedures for procurement transactions must ensure that all solicitations incorporate a clear and accurate description of the technical requirements of the material, product or service to be procured. Solicitations should also identify all requirements which offerors must fulfill and all other factors to be used in evaluating bids and proposals.

**Noncompetitive Practices**

Non-Federal entities may conduct noncompetitive proposals (or, "sole source" procurement), by procurement through solicitation from only one source when one or more of the following circumstances apply:

- The item or service is available only from a single source;
- The public exigency or emergency for the requirement will not permit a delay resulting from competitive solicitation;
- DOJ or the pass-through entity expressly authorizes noncompetitive proposals in response to a written request from the non-Federal entity; or
- After solicitation of a number of sources, competition is determined to be inadequate.

Sole Source procurement should be used only when use of competitive solicitation procedures like sealed bids, or competitive proposals are not applicable to the requirement or is impracticable.

All sole source procurements in excess of the simplified acquisition threshold must receive prior approval from the grant-making component before entering into the contract.

**DOJ Implementing Provision Regarding Financial Assistance Acquisition Threshold Changes in OMB M-18-18**

Notwithstanding any grant award term or condition specifying a different threshold (specifically including the award condition entitled, "Specific post-award approval required to use a noncompetitive approach in any procurement contract that would exceed $150,000"), and consistent with the provisions of an Office of Management and Budget memorandum, OMB M-18-18, dated June 20, 2018, and entitled, "Implementing Statutory Changes to the Micro-Purchase and the Simplified Acquisition Thresholds for Financial Assistance," DOJ will allow recipients (and any subrecipients) to use a simplified acquisition threshold of $250,000 and a micro-purchase threshold of $10,000, for federal grants administrative purposes.

Sole Source Justification Sample Outline

| Paragraph | Content |
|---|---|
| 1 | Brief description of program and the product or service being procured, to include the expected procurement amount. |
| 2 | Explanation of why it is necessary to contract non-competitively, including at least one of the four circumstances listed above. The justification may also include the following contractor qualities:<br>a. Organizational expertise<br>b. Management<br>c. Knowledge of the program<br>d. Responsiveness<br>e. Expertise of personnel |

## III. Postaward Requirements

### 3.8 PROCUREMENT UNDER AWARDS OF FEDERAL ASSISTANCE

| | |
|---|---|
| 3 | Description of and the results of any market survey or research conducted to help determine whether a full and open competition consistent with applicable law could be conducted (or, if no market survey or research was conducted, explain why not). |
| 4 | Statement of when contractual coverage is required and, if dates are not met, what impact it will have on the program (for example, how long it would take another contractor to reach the same level of competence). Make sure to include the financial impact in dollars. |
| 5 | Other points to "sell the case." |
| 6 | Declaration that this action is in the "best interest" of the grantor agency and/or the Federal Government. |
| 7 | Conflict of Interest Review |
| **Note:** Time constraints will not be considered a factor if the award recipient has not sought competitive bids in a timely manner. | |

The following "Do's and Don'ts" lists are non-exhaustive and highlight a few elements from the Procurement Standards. To help ensure that recipients conduct procurement transactions in full compliance with the Procurement Standards and other applicable law, the use of these highlights are considered as a starting point only, and should not be relied upon as though they fully cover all aspects of the law, rules, policies, or procurement procedures that may apply to procurement transactions conducted using Federal award funds.

#### Contracting Do's

1. Provide for full and open competition consistent with the Procurement Standards.
2. Develop and incorporate clear and accurate descriptions for technical requirements, specifications, statements of work, or other required documents used in procurement transactions.
3. Ensure any prequalified lists of persons, firms, or products used in acquiring goods and services are current and include enough qualified sources to ensure maximum open and free competition consistent with the Procurement Standards.
4. Only make procurement contracts to responsible contractors that can perform successfully in accordance with contract terms and conditions.
5. Maintain records sufficient to detail the history of any procurement action.

#### Contracting Don'ts

1. Don't include unreasonable (or otherwise unjustifiable) requirements that would be restrictive of competition.
2. Don't require unnecessary experience or other unnecessary criteria or elements that cannot be justified or supported with procurement procedures and the Procurement Standards.
3. Don't allow for, engage in, or facilitate noncompetitive pricing between firms or affiliated companies.
4. Don't forget to include all applicable contract provisions described in Appendix II to Part 200 in any procurement contracts.
5. Don't require unreasonable time frames or performance.

## III. Postaward Requirements

### 3.8 PROCUREMENT UNDER AWARDS OF FEDERAL ASSISTANCE

## OJP Construction Requirements

**Qualifications**

Recipients or subrecipients considering the use of federal grant award funds for construction must be aware of the following qualifications:

- Costs incurred as an incidental and necessary part of a program for renovation, remodeling, maintenance, and repair costs that do not constitute capital expenditures are generally allowable, but may be subject to provisions, including restrictions or limitations, contained in program-authorizing legislation.

- The total cost of a construction project includes the cost of site preparation and demolition of existing structures. Any proceeds (program income) realized for site preparation activities (e.g., salvage value of structures demolished or proceeds from the sale of timber) must be applied to the project. These proceeds should be used to reduce the total cost of the construction project.

- Relocation costs are paid in accordance with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601-4655.

- Funds will not be obligated for construction until OJP has been contacted and assisted in satisfactorily completing any applicable OJP procedures by complying with the National Historic Preservation Act, the National Environmental Policy Act, and other related Federal environmental impact analysis requirements.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> All income earned that is generated as a direct result of a federal-grant-funded project during the grant's period of performance is considered program income (see Chapter 3.4).

**Special Fiscal Conditions for Construction Projects**

The DOJ grant-making component or recipients (e.g., pass-through entities such as States) may accept the bonding policy and requirements of recipients or subrecipients, respectively, if they adequately protect the Federal interest. If DOJ or the pass-through entity determines that a recipient or subrecipient, as applicable, does not have adequate bonding policies and requirements that protect the Federal interest, the DOJ grant-making component or pass-through entity must require all of the following, consistent with 2 C.F.R. § 200.325:

- A bid guarantee equivalent to 5 percent of the bid price.
  - The bid guarantee must consist of a firm commitment—such as bid bond, certified check, or other negotiable instrument accompanying a bid—as assurance that the bidder will, upon bid acceptance, execute such contractual documents as may be required within the time specified after the forms are presented.
- A performance bond on the part of the contractor for 100 percent of the contract price.
  - A performance bond is a bond executed in connection with a contract to secure fulfillment of all the contractor's obligations under such a contract.
- A payment bond on the part of the contractor for 100 percent of the contract price.
  - A payment bond is a bond executed in connection with a contract to ensure payment as required by law of all persons supplying labor and material in the execution of the work provided for in the contract.

## III. Postaward Requirements

## 3.8 PROCUREMENT UNDER AWARDS OF FEDERAL ASSISTANCE

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> The customary fixed fee or profit allowance in cost-type contracts may not exceed 10 percent of the total estimated costs. This rule applies to procurement contracts executed under grants.

### Guarantee of Payment of Money

In situations where the Federal Government guarantees the payment of money borrowed by a recipient or subrecipient, the State may, at its discretion, require bonding and insurance to protect the interest of the Federal Government.

- If a project is considering construction of facility improvements for less than $100,000 and the subrecipient does not have any requirements for bid guarantees, performance bonds, and payments bonds, the subrecipient must meet the requirements of the State.

### Executive Order 13202

**Preservation of Open Competition and Government Neutrality Towards Contractors' Labor Relations on Federal and Federally Funded Construction Contracts.** These requirements apply to recipients and subrecipients of awards and cooperative agreements and to any manager of a construction project acting on their behalf. These individuals or employees of one of these organizations must ensure that the bid specifications, project agreements, and other controlling documents do not:

- Require or prohibit bidders, offerors, contractors, or subcontractors to enter into or adhere to agreements with one or more labor organizations, on the same or other related construction project(s); or

- Otherwise discriminate against bidders, offerors, contractors, or subcontractors for becoming or refusing to become or remain signatories, or otherwise to adhere to agreements with one or more labor organizations, on the same or other related construction project(s).

- Contractors or subcontractors are not prohibited from voluntarily entering into agreements with one or more labor organizations.

## III. Postaward Requirements

### 3.9 ALLOWABLE COSTS

#### Introduction

Allowable costs (for all non-Federal entities, other than for-profit entities and hospitals) are those costs consistent with the principles set out in the Uniform Guidance 2 C.F.R. § 200, Subpart E, and those permitted by the grant program's authorizing legislation. To be allowable under Federal awards, costs must be reasonable, allocable, and necessary to the project, and they must also comply with the funding statute and agency requirements. This chapter highlights certain elements of allowable costs. For more information about specific factors that affect whether costs are allowable, refer to 2 C.F.R. § 200, Subpart E, including the list of specific items of cost in 2 C.F.R. § 200.420 through 200.475.

Set out below is additional guidance on cost categories and selected items of cost that are often relevant to DOJ awards.

#### Compensation for Personal Services

**Limit on Use of Award Funds for Employee Compensation**

Federal grant funds may not be used to pay cash compensation (salary plus bonuses) to any employee at a rate that exceeds 110 percent of the annual maximum salary payable to a member of the Federal Government's Senior Executive Service (SES) at an agency with a Certified SES Performance Appraisal System for that year.

> ▶ **OJP SPECIFIC TIP**
>
> With respect to the limitation, compensation for salary plus bonuses are applicable to any award of more than $250,000.

The 2017 salary table for SES employees is available on the U.S. Office of Personnel Management's 2017 Executive and Senior Level Employee Pay Tables web page.

A recipient may compensate an employee at a higher rate, provided the amount in excess of the limitation is paid with non-Federal funds. For employees who charge only a portion of their time to an award, the allowable amount to be charged to that award is equal to the percentage of time worked on the grant times the maximum salary limit (110% of SES salary).

> ▶ **OJP SPECIFIC TIP**
>
> The Assistant Attorney General for OJP (or, for certain awards, the official listed in the applicable program solicitation) may exercise discretion to waive, on an individual basis, the limitation on compensation rates allowable under an award. An applicant requesting a waiver should include a detailed justification in the budget narrative of the application. Unless the applicant submits a waiver request and justification with the application, the applicant should anticipate that OJP will request the applicant to adjust and resubmit the budget. The justification should include the particular qualifications and expertise of the individual, the uniqueness of the service the individual will provide, the individual's specific knowledge of the program or project being undertaken with award funds, and a statement explaining that the individual's salary is commensurate with the regular and customary rate for an individual with his/her qualifications and expertise, and for the work to be done.

## III. Postaward Requirements

### 3.9 ALLOWABLE COSTS

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> Any additional compensation beyond 110 percent of the U.S. Government SES level will not be considered matching funds where matching requirements apply.

**Support of Salaries, Wages, and Fringe Benefits**

Charges made to Federal awards for salaries, wages, and fringe benefits must be based on records that accurately reflect the work performed and comply with the established policies and practices of the organization. See 2 C.F.R. § 200.430.

- Charges must be supported by a system of internal controls that provides reasonable assurance that the charges are accurate, allowable and properly allocated.

- Documentation for charges must be incorporated into the official records of the organization.

- Support must reasonably reflect the total activity for which the employee is compensated by the organization and cover both federally funded and all other activities. The records may include the use of subsidiary records as defined in the organization's written policies.

- Where grant recipients work on multiple grant programs or cost activities, documentation must support a reasonable allocation or distribution of costs among specific activities or cost objectives.

- In cases where two or more grants constitute one identified activity or program, salary charges to one grant may be allowable after written permission is obtained from the awarding agency.

- The recipient must complete and keep on file, as appropriate in accordance with Federal law, the U.S. Citizenship and Immigration Services' Employment Eligibility Verification Form I-9 for individuals working under the award. This form is to be used by recipients of Federal funds to verify that persons are eligible to work in the United States.

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> Examples of items that may support salaries and wages can include timesheets, time and effort reports, or activity reports that have been certified by the employee and approved by a supervisor with firsthand knowledge of the work performed. Payroll records should also reflect either after the fact distribution of actual activities or certifications of employee's actual work performed.

> **▶ OJP SPECIFIC TIP**
>
> • Added Work
>
> A recipient or subrecipient may employ a State or local government worker to complete tasks in addition to his or her full-time job, provided the work is performed on the employee's own time and:
>
> Compensation paid should be reasonable and consistent with that paid for similar work in other activities of State or local government;
>
> The employment arrangement is approved and proper under State or local regulations (e.g., no conflict of interest); and
>
> The time and/or services provided are supported by adequate documentation.

## III. Postaward Requirements

### 3.9 ALLOWABLE COSTS

**Overtime Compensation**

Unless specifically exempted under the Fair Labor Standards Act, recipient and subrecipient employees should be compensated with overtime payments for work performed in excess of the established work week (usually 40 hours).

- Payment of more than occasional overtime is subject to periodic review by the awarding agency.
- In addition, overtime compensation is typically reviewed during site visits and audits.

Executive, administrative and professional employees who meet the criteria for an exemption from the overtime requirements of the Fair Labor Standards Act may not be reimbursed for overtime under grants and cooperative agreements. More information on overtime exemptions under the Fair Labor Standards Act is available on the Department of Labor's website at https://www.dol.gov/whd/overtime_pay.htm.

---

ⓘ **FINANCIAL MANAGEMENT TIP**

In no case is dual compensation allowable. That is, an employee may not receive compensation from his/her organization AND from an award for a single period of time (e.g., 1 to 5 p.m.), even though such work may benefit both activities.

---

## Conferences and Workshops

Allowable costs for conferences **may** include amounts paid for the following:

- Conference or meeting arrangements
- Publicity
- Registration
- Salaries of personnel
- Rental of staff offices
- Conference space
- Recording or translation services
- Postage
- Telephone charges
- Travel expenses (this includes transportation and subsistence for speakers or participants)
- Lodging (restrictions apply—please see below)

## III. Postaward Requirements

**3.9 ALLOWABLE COSTS**

> ▶ **OJP SPECIFIC TIP**
>
> All contracts under an award funded by OJP awards for events that include 30 or more participants (both Federal and non-Federal) must ensure that lodging costs for any number of attendees do not exceed the prevailing Federal per diem rate for lodging. If the lodging rate is not the Federal per diem rate or less, none of the lodging costs associated with the event are allowable costs to the award. As a result, the recipient would be required to pay for all lodging costs for the event with non-award funds, not just the amount in excess of the Federal per diem. For example, if the Federal per diem for lodging is $78 per night, and the event lodging rate is $100 per night, the recipient would be required to pay the full $100 per night, not just the difference of $22 per night.

### Travel

Travel expenses are allowable costs for employees who are in travel status on official business related to the award. These costs must be reasonable and in accordance with the organization's established travel policy. In absence of an established travel policy, the organization must comply with the Federal travel regulations. See 2 C.F.R. § 200.474.

- The DOJ awarding agency reserves the right to determine the reasonableness of an organization's travel policy.
- Recipients and subrecipients must follow their own established travel policies.
- If a recipient or subrecipient does not have an established travel policy, they must abide by the Federal travel policy including per diem rates.
- The current travel policy and per diem rate information is available at the Per Diem rates section of the U.S. General Services Administration (GSA) website.

Foreign travel is defined as any travel outside of the United States and its Territories and possessions.

- For an award recipient or subrecipient located outside the United States and its Territories and possessions, foreign travel means travel outside that country.
- Prior approval is required for all foreign travel (see Chapter 3.6).

### Project Site

The cost of space in privately or publicly owned buildings used for the benefit of the project is allowable subject to the conditions stated below:

- The total cost of space does not exceed the rental cost of comparable space and facilities in a privately owned building in the same locality.
- The cost of space procured for project usage is not charged to the program for periods of non-occupancy without authorization of the grant making component.
- The rental cost for space in a privately owned building is allowable. Rental costs may not be charged to the grant if the recipient owns the building or has a financial interest in the property. However, the cost of ownership is an allowable expense.

## III. Postaward Requirements

### 3.9 ALLOWABLE COSTS

- Cost of ownership expenses for a publicly owned building are allowable where "rental rate" systems, or equivalent systems that adequately reflect actual costs, are employed.
- Ownership expenses must be determined on the basis of actual cost (including depreciation based on the useful life of the building, operation and maintenance, and other allowable costs). Where these costs are included in rental charges, they may not be charged elsewhere.
- Rental costs may not be charged for building purchases or construction originally financed by the Federal Government.
- Costs for rental of any property (to include commercial or residential real estate) owned by individuals or entities affiliated with the recipient or subrecipient for purposes such as the home office workspace, are unallowable. The cost of related utilities is also unallowable.

The cost of utilities, insurance, security, janitorial services, elevator service, upkeep of grounds, normal repairs and maintenance, and the like are allowable to the extent they are not otherwise included in rental or other charges for space.

Costs incurred for rearrangement and alteration of facilities required specifically for the award program, or that materially increase the value or useful life of the facility, are allowable when specifically approved by the awarding agency. See 2 C.F.R. § 200.462.

Depreciation or use allowance on idle or excess facilities is NOT ALLOWABLE, except when specifically authorized by the Federal awarding agency. See 2 C.F.R. § 200.446.

The cost of space procured under rental-purchase or a lease-with-option to purchase agreement is allowable when specifically approved by the awarding agency. This type of arrangement may require application of special matching share requirements under construction programs.

### Printing

The cost of electronic and print media, including distribution, promotion, and general handling, are allowable. If these costs are not identifiable with a particular project or cost activity, the costs should be allocated as indirect costs to all benefiting activities of the organization.

Pursuant to the Government Printing and Binding Regulations, no project may be awarded primarily or substantially for the purpose of having material printed for the awarding agency. The Government Printing and Binding Regulations allow:

- The issuance of a project for the support of non-Government publications, provided such projects were issued pursuant to an authorization of law, and were not made primarily or substantially for the purpose of having material printed for the awarding agency.
- The publication of findings by recipients/subrecipients within the terms of their project provided such publication is not primarily or substantially for the purpose of having such findings printed for the awarding agency.

See 2 C.F.R. § 200.461.

# III. Postaward Requirements

## 3.9 ALLOWABLE COSTS

### Publication

Guidance for publication costs is set out in 2 C.F.R. § 200.461. To be considered allowable, publication costs must be incurred for work done according to a process that the recipient has described in writing. This process should include writing, editing, and preparing the illustrated material (including videos). Alternatively, it may include only the internal printing requirements from the recipients/subrecipients in accordance with the terms of the project.

- DOJ has authorized any recipient or subrecipient employee to make or have made by any means available to him or her, without regard to the journal copyright and without royalty, a single copy of any such article for his or her own use.

Recipients are encouraged to make the results and accomplishments of their activities available to the public. Recipients publicizing project activities and results must adhere to the following parameters:

- Responsibility for the direction of the project activity should not be ascribed to the grant-making component.
  - The publication must include the following statement: "The opinions, findings, and conclusions or recommendations expressed in this publication/program/exhibition are those of the author(s) and do not necessarily reflect the views of the Department of Justice or grant-making component."
  - The publication must not convey DOJ's official recognition or endorsement of the recipient's project simply based on having received funding.
  - Recipients may file a separate application with the grant-making component requesting official recognition.
- In all materials publicizing or resulting from award activities, the awarding agency assistance must be acknowledged. An acknowledgement of support shall be made through use of the following or comparable footnote:
  - "This project was supported by Award No.XXXXX awarded by the (name of specific office/bureau), Department of Justice."
- Recipients and any subrecipients are expected to publish or otherwise make widely available to the public, as requested by the awarding agency, the results of work conducted or produced under an award.
- All publication and distribution agreements with a publisher must include provisions giving the Federal Government a royalty-free, nonexclusive, and irrevocable license to reproduce, publish, or otherwise use and to authorize others to use the publication for Federal Government purposes (see Chapter 3.7). The agreements with a publisher should contain information on the awarding agency requirements.
- Unless otherwise specified in the award, recipients/subrecipients may copyright any books, publications, films, or other copyrightable material developed or purchased as a result of award activities. Copyrighted material will be subject to the same provisions giving the Federal Government a license as described above.
- A publication and distribution plan should be submitted to the awarding agency before materials developed under an award are commercially published or distributed.
  - The plan must include a description of the materials, the rationale for commercial publication and distribution, the criteria to be used in the selection of a publisher, and—to assure reasonable competition—the identification of firms that will be approached.
  - Recipients/subrecipients must obtain prior agency approval of this plan for publishing project activities and results when it uses Federal funds to pay for the publication.

## III. Postaward Requirements

**3.9 ALLOWABLE COSTS**

> ▶ **OJP SPECIFIC TIP**
>
> Recipients/subrecipients are permitted to display the official awarding agency logo in connection with the activities supported by the award, with the prior approval of the awarding agency. In this respect, the logo must appear in a separate space, apart from any other symbol or credit.
>
> The words "Funded/Funded in part by DOJ" shall be printed as a legend, either below or beside the logo, each time it is displayed. Use of the logo must be approved by the awarding agency.

### Duplication

If recipients/subrecipients need to duplicate less than 5,000 units of only one (1) page, or less than 25,000 units in the aggregate of multiple pages, of its findings for the awarding agency, DOJ will not consider this duplication to constitute printing primarily or substantially for the awarding agency (e.g., 5,000 copies of 5 pages, etc.). Duplicated pages may not exceed a maximum image size of 10¾ by 14¼ inches.

### Other Allowable Costs

- Recipients can expense costs associated with software development in the period the costs are incurred, subject to the limits outlined in the budget and budget narrative.

- Recipients may not use an accelerated method to calculate depreciation without clear evidence indicating that the expected consumption of the asset will be significantly greater in the early portion than in the later portion of its useful life.

- Post-employment benefits are allowable costs if funded in accordance with actuarial requirements.

- In accordance with 2 C.F.R. § 200.428, costs incurred by a non-Federal entity to recover improper payments are allowable as either direct or indirect cost, as appropriate.

# III. Postaward Requirements

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

> **▶ OVW SPECIFIC CONFERENCE GUIDANCE**
>
> The section below does not apply to recipients of OVW funds. Guidance on conference approval, planning, and reporting for OVW recipients is available here.

### Introduction

The purpose of this section is to provide guidance to OJP/COPS Office grantees (including cooperative agreement recipients and subrecipients) and contractors that conduct training sessions, meetings, or conferences.

For purposes of this chapter (OJP/COPS Office Conference Approval, Planning, and Reporting) references to "contractor" means a Federal contractor, unless context indicates otherwise.  Click here to sign up for email notifications for any changes to the Conference Cost Policy pages: Email Notification (Click to Subscribe)

### What's New

**Conference Policy Last Updated March 18, 2013**
- "When No Prior Approval is Required" page published with checklist to help recipients determine which events are exempt from the prior approval process.
- Guidance on application of indirect cost rates to conference costs.
- New FAQs.
- Delinquent reports may result in a hold on remaining award funds.

### Policy Overview

All conferences (defined broadly to include meetings, retreats, seminars, symposia, events, and group training activity) conducted by cooperative agreement recipients or contractors funded by OJP/COPS Office must receive written prior approval. An approved award budget is not a prior approval. All prior approval requests for conferences costing $100,000 or less and not exceeding any cost thresholds must be submitted a minimum of 90 days in advance of the start date. All conferences costing more than $100,000 or exceeding any one cost threshold must be submitted a minimum of 120 days in advance of the start date. See the Prior Approval Required section for more information.

In addition, cooperative agreement recipients and contractors conducting conferences that cost more than $20,000 must report actual conference expenses within 45 days after the last day of the event. See the Post-Event Reporting section for more information.

No hotel/venue or audio-visual contracts may be entered into before such prior approval has been obtained in writing from OJP/COPS Office.

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Grants**

Conferences conducted by grant recipients do not require prior approval. However, grant recipients must ensure compliance with the food/beverage, meeting room/audio-visual, logistical planner, and programmatic planner limitations and cost thresholds. (Note – if the award number does not have a "K" in the last 4 characters, then the award is a grant.)

**Cooperative Agreements**

Cooperative agreement recipients must receive written prior approval for all conferences. Cooperative agreement recipients may not proceed with a conference until appropriate approval has been received, must comply with the approval process regarding logistical conference planning (see section on logistical conference planning), and must keep their program manager informed of all decisions being made during the conference planning process. (Note – if there is a "K" in the last 4 characters of the award number, then the award is a cooperative agreement.)

**Contracts**

Contract recipients must receive written prior approval for all conferences.

**Cost Thresholds**

Cost thresholds and limitations are in place for the following items:

- Meeting room/audio-visual services (lesser of $25 per day per attendee or $20,000)
- Logistical planners (lesser of $50 per attendee or $8,750)
- Programmatic planners (lesser of $200 per attendee or $35,000)
- Food and beverage (generally not allowed)
- Refreshments (generally not allowed)

While there are exceptions to these thresholds and limitations, they are rare and require extraordinary justification as well as approval outside and above OJP/COPS Office. See the Conference Costs and Prior Approval Required sections for more information.

## Definitions

The following definitions pertain specifically to conference costs. Additional definitions can be found in the Glossary of Terms, Appendix 5.2. See 41 C.F.R. § 300-3.1 for a glossary of travel terms.

**Agenda** means a *formal agenda* that provides a list of all activities that shall occur during the event, using an hour-by-hour timeline. It must specifically include the times during the event when food and/or beverages will be provided.

**Conference** is defined broadly, and includes meetings, retreats, seminars, symposia, and training activities. See 2 C.F.R. § 200.432 for general cost principles that apply to conferences.

- A conference typically is a prearranged formal event with at least some of the following characteristics: designated participants and/or registration; a published substantive agenda; and scheduled speakers or discussion panels on a particular topic.

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

- A conference typically is not a routine operational meeting, a law enforcement operation or prosecutorial activity in connection with a specific case or criminal activity, a testing activity, or a technical assistance visit. Please refer to the definitions of these set out below to decide whether the event requires prior approval and reporting under this guidance.

**Conference costs and conference expenses** mean all costs using DOJ funds associated with planning, hosting, sponsoring, or otherwise holding any conference, including all of the categories of costs listed below:

- Conference meeting space (including rooms for breakout sessions)
- Audio-visual equipment and services
- Printing and distribution
- Meals provided at the event (generally unallowable)
- Refreshments (generally unallowable)
- Meals and incidental expenses (M&IE portion of per diem)
- Lodging
- Air travel to/from conference
- Local transportation (e.g., rental car, privately owned vehicle to-and-from the airport, taxi)
- Logistical conference planner
- Programmatic conference planner
- Trainers, instructors, presenters, or facilitators
- Other costs which must be identified individually
- Staff time associated with planning and holding the conference
- Indirect costs/overhead rates applied to direct costs associated with the conference (In accordance with negotiated agreements, all indirect costs associated with a conference must be applied to the above categories as appropriate and reported as conference costs.)

**Law enforcement operation** means events that involve staging (as well as victim service provider staging related to a law enforcement operation), surveillance, investigation, intelligence, and undercover activities, and other activities directly related to active law enforcement operations. For example:

- A meeting between the police department and local trafficking service providers related to an impending raid on a labor trafficking site would be a law enforcement operation.
- However, a conference about human trafficking that brought together the police department and local trafficking service providers to train, discuss their overall trafficking initiatives, and develop professional relationships, would not be a law enforcement operation.

A **routine operational meeting** typically does not have a formal published agenda, scheduled speakers, or discussion panels, and is defined as an event where the:

- Primary focus is the recipient's day-to-day operations and concerns (e.g., staff meetings, all hands meetings);
- Attendees overwhelmingly are internal to the organization holding the meeting; and
- Answer to all ten questions on the checklist on the No Prior Approval Required page is "No."

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Technical assistance visit** means travel by an individual or a small group of grantee/contractor staff members or consultants to provide training or technical assistance to a particular entity, where there are no costs to DOJ funds for meeting rooms, conference planning, or trinkets. Reasonable travel costs (lodging, transportation, local transportation, audio-visual, printing, and meals and incidental expenses [M&IE]) for technical assistance staff may be reimbursed.

**Testing activity** means an event where the primary purpose is to evaluate an individual's qualifications to perform certain duties necessary to perform his or her job. The most common examples include events held for firearms and weaponry proficiency testing and certifications. A majority of the event must be devoted to the administration and taking of the test. An event that includes testing that is merely incidental to the event, or where such testing is given upon the completion of the event to evaluate the event or determine participation in the event, is not a testing activity.

**Federal facility** means property or building space owned, leased, or substantially controlled by the Federal Government or the government of the District of Columbia.

**Non-Federal facility** is any facility that is not a Federal facility. State and local facilities are considered "non-federal facilities". For further clarification see 5 U.S.C. § 4101(6).

**Logistical conference planners** perform the logistical planning necessary to hold a conference, which may include: recommending venues, advertising, setting the stage and arranging for audio-visual equipment, securing hotel rooms, interacting with caterers, and other non-programmatic functions.

**Programmatic conference planners** develop the conference agenda, content, and written materials. They may also identify and/or provide appropriate subject matter experts and conference participants.

**Total Costs** are defined as direct and indirect costs.

**Per Attendee** means *all* attendees, federal and non-federal.

**Subaward/Subcontract** includes any agreement under which the award recipient outsources work, goods, or services related to the conference; indirect cost rates may only be allocated to the first $25,000 of each such agreement. See 2 C.F.R. § 200.330; 2 C.F.R. § 200 Appendix III C.2 (IHE); 2 C.F.R. § 200 Appendix IV. B.2.c (non-profits); and 2 C.F.R. § 200 Appendix VII C.2.c (State and local).

### No Prior Approval Required

Prior approval is not required for the following types of award recipients and/or activities.

#### Grantees Who Do NOT Have a Cooperative Agreement Type of Grant Award

Reasonable conference-related activity costs are allowable uses of OJP/COPS Office funding as long as the grant budget has been approved by OJP/COPS Office. Meals, refreshments, and trinkets generally <u>are not</u> allowable.

- OJP/COPS Office does not require non-cooperative agreement grantees to obtain additional prior approval from OJP/COPS Office for specific conference costs.

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

- Cost limits apply. Even though prior approval of most conference costs by OJP/COPS Office is not required, OJP/COPS Office expects grantees to make every effort to stay within the cost limitation thresholds on meeting space, audio-visual equipment/services, and conference planning, as set out in this guidance. Where grantees plan to exceed (or do exceed) these cost limitations, they must maintain adequate documentation that such costs were reviewed by the grantee through some internal process, and that the costs were determined to be justified by the grantee. This documentation will be subject to review during monitoring and audits.

> ☑ **ACTION ITEM**
>
> In very limited circumstances, grantees may seek prior approval for an exception to provide meals, refreshments, or trinkets with grant funds. OJP/COPS Office rarely approves such requests.

### Operational Meetings and Technical Assistance

In response to questions regarding what qualifies as operational meetings and technical assistance visits, OJP/COPS Office developed a checklist to alleviate some of the uncertainty regarding whether an event requires prior approval. Incorporated onto the top of Sheet A of the Conference & Events Submission Form are ten questions. If the answers to all of the ten questions are "No," the event does not require prior approval:

1. Is the cost of the event greater than $20,000?

2. Are there meeting room costs?

3. Are audio-visual costs greater than $25 per attendee or more than $1,000 in total?

4. Are there any food and beverage costs?

5. Did the request for the meeting come from multiple jurisdictions or agencies?

6. Do the participants represent multiple agencies that are not co-located or joined by an agreement (e.g., task force with MOU)?

7. Are there trinkets being purchased?

8. Is there a formal published agenda?

9. Are formal discussions or presentation panels planned?

10. Are there logistical planning costs beyond incidental internal administrative costs necessary to arrange travel and lodging for a small number of individuals?

The above checklist should be utilized to assist with questions regarding the definition and differences between technical assistant visits and trainings. If the answers to the above questions for an event are all "No" it does not require prior approval.

### Law Enforcement Activity

Events that involve staging (as well as victim service provider staging related to a law enforcement operation), surveillance, investigation, intelligence, and undercover activities, and other activities directly related to active law enforcement operations, do not require prior approval.

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

#### Training or Speaking at a Non-DOJ-Sponsored Conference

Providing training at or speakers for a <u>non-DOJ-sponsored conference</u>, but not contributing to overall conference planning or costs is generally considered a technical assistance event. These events do not require prior approval if the answer to all the following questions is "No":

1. Is the cost of the event greater than $20,000?

2. Are there meeting room costs that will be paid for with DOJ federal or match funds?

3. Are the audio-visual costs (if any) greater than $25 per attendee or more than $1,000 in total for this specific event?

4. Are there any food and beverage costs that will be paid for with federal funds? (does not include per diem reimbursements to grantee staff or consultants)

5. Are there logistical planning costs beyond incidental internal administrative costs necessary to arrange travel and lodging?

6. Is any other type of participation being provided in the event (e.g., exhibit booth sponsorship, overall conference sponsorship, sponsorship or provision of non-workshop good/services)?

Note: Providing multiple speakers to a conference (generally exceeding $20,000 in total costs) or providing other types of direct or indirect support (e.g., sponsoring an exhibit booth using federal funding) that offsets the costs of the non-DOJ sponsored conference hosted by a third-party may be considered a federally-funded "sponsor," which some may construe as OJP/COPS Office-sponsorship of the overall conference. For these reasons, OJP/COPS Office may require these types of situations be approved as a "DOJ-sponsored" event, on a case by case basis.

#### Testing Activity

The primary purpose is to evaluate an individual's qualifications to perform certain duties necessary to his or her job. The majority of the event must be devoted to the administration and taking of the test. The most common examples include events held for firearms and weaponry proficiency testing and certification. An event that includes testing that is merely incidental to the event, or where such testing is given upon the completion of the event to evaluate the event or determine participation in the event, is not a testing activity.

#### Video Conferences and Webinars

Webinars and video conferences do not require prior approval if there are no costs for logistical conference planning or for Government-provided food or beverages.

### Prior Approval Required

Prior approval is required for the following types of award recipients and/or activities.

#### Grantees Who Have a Cooperative Agreement Type of Grant Award

Cooperative agreement recipients must seek and obtain OJP's/COPS Office's prior written approval for each event held with OJP/COPS Office funds, and for all conference costs associated with that event that are paid by OJP/COPS Office funds.

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

- No conference (regardless of the number of attendees) can proceed, nor can conference-related contracts (e.g., hotel contracts and travel arrangements/reservations) be signed, or conference implementation funding be obligated/work authorized (whether performed by cooperative agreement staff or outside staff), until the cooperative agreement recipient has obtained DOJ's approval in writing.

- Approval of the overall cooperative agreement proposal or budget does not grant prior approval to use federal funds for events anticipated in the budget.

- The reasonable minimal costs of identifying conference locations and developing the itemized cost estimates required to assemble and submit a conference cost approval request are allowable without prior approval by OJP/COPS Office. However, cooperative agreement recipients should work with the relevant program office to ensure that any costs authorized are reasonable and minimal.

- Those entities with conference planning contracts providing support for planning as well as implementation logistics should only authorize the tasks absolutely necessary to identify the most cost-effective conference locations/services, and to prepare and negotiate cost proposals for submission to DOJ.

### Contracts

Contractors must seek and obtain OJP's/COPS Office's prior written approval for each event held with OJP/COPS Office funds, and for all conference costs associated with that event that are paid with OJP/COPS Office funds.

Timing of Requests for Prior Approval

| Event Parameters | Mandatory Timeframe for Prior Approval Request |
|---|---|
| Conferences costing **$100,000 or less, and not exceeding any cost thresholds** (conference space & audio-visual equipment/services, logistical conference planner, and programmatic conference planner) | Requests **must** be submitted to OJP/COPS Office **90 calendar days** in advance of the earliest of the following:<br><br>• Start date of the conference;<br>• Deadline for signing conference-related contracts, or<br>• Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request.) |
| Conferences costing **over $100,000, or exceeding any one cost threshold** (conference space & audio-visual equipment/services, logistical conference planner, or programmatic conference planner) | Requests must be submitted to OJP/COPS Office **120 calendar days** in advance of the earliest of the following:<br>• Start date of the conference;<br>• Deadline for signing conference-related contracts, or<br>• Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request). |

☑ **ACTION ITEM**

OJP/COPS Office may, at its sole discretion, consider prior approval event requests that are submitted late, but cannot assure that such requests will receive a decision in time to avoid having to cancel the conference (particularly if there are any issues that arise with specific items of cost in the request). Cancellation costs associated with conferences that are submitted for late prior approval may be determined to be unallowable costs by OJP/COPS Office.

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Submitting an Event Request**

All cooperative agreement and contract recipients must complete the Conference & Events Submission Form and obtain OJP's/COPS Office's prior written approval for each event held with OJP/COPS Office funds. Each submission must contain all the applicable information (e.g., start date, end date, conference planner, M&IE) to assist in a thorough review. The recipient must provide justification where required by the form. If additional space is needed, please add a tab to the form. All supporting documentation should be embedded and included within the spreadsheet file. This ensures one file per submission, reduces the number of questions, and reduces the possibility of necessary information getting lost or separated from the main submission file. Note: Supporting calculations and agendas (submitted on a separate tab) must be included in all submissions.

To obtain a blank copy of the form click here.

**Submitting a Blanket Request**

A Conference & Events Submission Form may be completed to host a series of the same or similar pre-arranged events containing multiple delivery dates scheduled to take place within the same fiscal year. The recipient must first estimate the average cost of each event and select the highest cost from each event to complete the submission form. Click here to obtain instructions for submitting a blanket request.

Submit completed prior approval requests on the Conference & Events Submission Form to the following email addresses:

**Bureau of Justice Assistance (BJA):** BJAConferencereport@usdoj.gov
**All other OJP Bureaus and Offices:** OJPConferencecosts@ojp.usdoj.gov
**COPS Office:** COPSConferencecosts@usdoj.gov

**Prior Approval Submission Issues**
- The conference has not occurred and additional costs have been identified.
  - If additional costs not represented in the submitted prior approval request are estimated to exceed 10% and $1,000 of the original prior approval amount in any conference cost category or in total, the contractor/cooperative agreement recipient should submit an amended conference request form containing the new amounts for prior approval.
  - If the conference now exceeds $100,000 in total costs, or if any cost category thresholds are exceeded, additional review is required beyond OJP/COPS Office. The new request for prior approval should be submitted 120 days prior to the conference date. If the resubmission is outside of that timeframe, OJP/COPS Office may not have adequate time for the review and approval process.
- Conference was not approved in advance.
  - If the conference has occurred without advance approval, the contractor/cooperative agreement recipient must submit the required conference approval form with detailed justification as to why the event was not submitted for advance approval. The conference approval form must be reviewed/approved by the bureaus and program offices. OJP/COPS Office may, in its sole discretion, consider approving the event retroactively. If OJP/COPS Office considers costs ineligible for approval, the costs will be unallowable.

# III. Postaward Requirements

**3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING**

- Cost estimates.
  - ▸ Cooperative agreement and contract recipients must provide detailed cost estimates for each conference cost category (e.g., lodging rate per attendee, itemized audio-visual cost, transportation). Cost comparisons should be conducted to minimize costs of contracts for services, unless a specific provider is required by a facility. See Location Selection for a discussion of facility and venue selection.

**Determining Costs**

When determining the total cost of a DOJ-funded conference, all costs incurred by the recipient under the award must be included (see specific categories below).

- Actual or estimated costs.
  - ▸ Recipients must provide actual costs where possible, but may provide estimates for purposes of submitting requests for prior approval. For post-event reporting, actual costs must be provided.
- Co-sponsors.
  - ▸ Costs covered by non-DOJ co-sponsors are not subject to the conference cost limits and restrictions, do not require prior approval by OJP/COPS Office, and do not have to be reported as part of the DOJ-funded event. Such co-sponsor funding generally is not considered program income.
- Program income/fees.
  - ▸ Conference costs covered by program income (for example, from conference fees) are not subject to the conference cost thresholds and restrictions, do not require prior approval by OJP/COPS Office, and do not have to be reported as part of the DOJ-funded event. For purposes of overall conference prior approval, however, if program income will be used to offset a conference cost line item, please demonstrate that in the supporting calculations. Also ensure that any agendas with meals or refreshments funded by program income or other non-DOJ funding are clearly labeled as not funded by DOJ. Recipients that are permitted to charge fees, or otherwise generate program income, must account for those funds up to the same ratio of Federal participation as funded in the project or program. Example: A discretionary award project funded with 100% Federal must account for and report on 100% of the total program income earned. If the total program income earned was $20,000, the recipient must account for and report the $20,000 as program income on the Federal Financial Report (FFR), SF-425.
- Individual purchases.
  - ▸ Individual purchases of goods or services by attendees of the conference at the conference location are not considered to be "conference fees." An independent contractor (e.g., hotel, vendor), without any federal involvement whatsoever, may collect fees from recipients to cover the costs of specific goods or services that cannot be purchased with federal funding or are otherwise not approvable, so long as the good or service is not prohibited (e.g., alcoholic beverages). These fees are not considered program income and should only be collected to offset the costs incurred.
- Ticketed events.
  - ▸ Related to individual purchases, a recipient may hold a session where attendees have the option of purchasing a meal or refreshment directly from the hotel (a "ticketed event"). A recipient may communicate the availability of such a session to conference attendees, and as long as the recipient is not involved in the collection of the fees, the fees are not considered program income. The costs for services provided by the independent vendor with such fees are not subject to the conference cost thresholds and restrictions, do not require prior approval by OJP/COPS Office, and do not have to be reported as part of the DOJ-funded event.

# III. Postaward Requirements

**3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING**

- Attendee costs.
  - For prior approval and reporting purposes, a cooperative agreement recipient must report all costs of attendance supported by the award, including conference scholarships where that recipient administers the scholarships. (When determining overall conference costs, OJP/COPS Office may supplement the recipient's data with available data on attendance costs related to DOJ employees, and non-DOJ attendees whose attendance is supported by scholarships administered by an entity other than that primarily responsible for planning and/or hosting the conference.)

## Event Planning Guidance

### Minimize Costs Where Possible

All OJP/COPS Office funding recipients must thoroughly review all planned conference costs to ensure that such costs are reasonable and absolutely necessary. **Every effort should be made to conduct conferences via webinar, teleconference, or video conference.** In-person, face-to-face conferences should only be held when necessary and no other option exists to conduct the business without travel and related costs. Note: Each submission should include a statement discussing why the event cannot be conducted via webinar, teleconference, or video conference. This can be done on a separate tab on the Conference & Events Submission form.

### Location Selection

- Cost comparisons.
  - All funding recipients should conduct pricing comparisons of multiple facilities in multiple *locations*. Minimizing costs must be a critical consideration when determining the city and facility in which to hold a conference. Cost comparisons should include the following:
    - Overall facility cost;
    - Availability of lodging at per diem rates;
    - Convenience of location;
    - Availability of meeting space, equipment, and supplies, and
    - Commuting/travel distance for attendees.

In conducting cost comparisons of facilities, recipients should send the same detailed requirements to all potential facilities, and refrain from making commitments to any particular facility until the comparison is complete (and written approvals have been obtained).

- Location.
  - Recipients should compare multiple locations.
    - Cooperative agreement and contract recipients must consider multiple locations (i.e., multiple cities). Where cooperative agreement and contract recipients consider only facilities in one city, they must include in their request for approval a written justification for that location.
    - Grant recipients *should* consider multiple locations, and should maintain written documentation justifying their decision to select the chosen location in the event of a future audit.
- Facility.
  - Recipients should compare three or more facilities in a location. Facilities in the comparison should have given a positive response/quote and be able to accommodate the event as detailed in the requirements.

# III. Postaward Requirements

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

- *Federal facilities or no-cost facilities preferred.* Recipients must make every effort to use no-cost facilities, including available governmental facilities, to the extent practicable. (See links to two different listings of federal facilities at the end of this chapter under Resources.) Grantees may use non-federal facilities. Grantees are not required to consider or use federal facilities, but are encouraged to do so where feasible.

- *Non-federal facilities.* If no federal facility is available, or the federal facility would be more costly or otherwise does not meet the requirements of the event, a cooperative agreement or contract recipient may use a non-federal facility. Grantees may use non-federal facilities. Grantees are not required to consider or use federal facilities, but are encouraged to do so where feasible.

- *Primarily federal events.* If the conference attendees will be primarily federal employees (more than 50%, based on a reasonable estimate), recipients may be required to submit additional justification for a non-federal facility, and should contact their OJP/COPS Office point of contact for additional information.

- Appearance considerations.
  - Conference planners must exercise special care when considering holding a conference in any location that may give rise to appearance issues. Conference planners must ensure that the choice to hold a conference in such a location is made only when there is a determination that it is the most cost-effective option.

### Conference Fees

Grant and cooperative agreement recipients may charge fees to cover part or all conference costs if prior approval from the awarding agency is obtained. Such fees are considered program income and are subject to the rules applicable to program income (see Chapter 3.4 Program Income).

### Conference Planning Services and Staff Time

All cooperative agreement and contract recipients (but not grant recipients) must obtain prior written approval from OJP/COPS Office before incurring conference planning costs in accordance with the previously described approval process, except for such costs that are the reasonable minimal costs of identifying conference locations and developing the itemized cost estimates required to assemble and submit a conference cost approval request. This requirement applies whether the work is performed by the recipient's staff or subcontracted out.

- In-house versus subcontracted planning.
  - Recipients often provide conference planning services either through their own staff and resources, or through contracted external conference planners. Minimizing costs must be a critical consideration in this decision.
  - Recipients often are selected based on their ability to provide programmatic conference planning services (e.g., developing the conference agenda), but may also need to undertake logistical planning functions as well. In some cases, such logistical planning functions (e.g., negotiating hotel contracts, sending invitations, managing registration) may be performed at lower cost by a logistical planning service, which may be able to charge lower rates than the funding recipient for staff time, and may be more experienced in negotiating hotel and other necessary conference-related contracts.
  - Generally, a recipient should consider procuring logistical conference planning services when it does not have in-house expertise in such logistical planning, and when such services would result in lower overall costs to the Federal Government.

- Cost limits.
  - All conference planner costs must be reasonable for the scale of the conference. Cooperative agreement and contract recipients providing conference planning, either in-house, or through subcontracted planning services, must adhere to the following cost limits:

# III. Postaward Requirements

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

- *Logistical conference planners* perform the logistical planning necessary to hold a conference, which may include: recommending venues, advertising, setting the stage and audio-visual equipment, securing hotel rooms, interacting with caterers, and other non-programmatic functions. The cost of *logistical* conference planners may not exceed $50 per attendee, not to exceed $8,750. For example, if the number of attendees at a 2-day conference is 100, the maximum cost allowed for a logistical planner is $5,000 ($50 x 100 attendees). Logistical planning costs anticipated to exceed this amount require additional justification and approval prior to incurring the costs.

- *Programmatic conference planners* develop the conference agenda, content, and written materials. They may also identify and/or provide appropriate subject matter experts and conference participants. The cost of programmatic conference planners may not exceed $200 per attendee, not to exceed $35,000. For example, if the number of attendees at a 2-day conference is 100, the maximum cost allowed for a logistical planner is $20,000 ($200 x 100 attendees). Programmatic planning costs anticipated to exceed this amount require additional justification and approval prior to incurring the costs.

### Conference Cost Categories

The following cost categories relating to conferences and events are items included on the Conference & Events Submission Form.

### Meeting Rooms and Audio-Visual

- Total cost limit, $25 per day per attendee, not to exceed $20,000.
  - The cost allowed for conference space and audio-visual equipment and services is limited to $25 per day per attendee not to exceed a cumulative total cost of $20,000. Total costs are defined as direct and indirect costs. Costs in excess of these established limits require additional justification and approval outside of OJP/COPS Office.

### Printing

Every effort should be made to provide conference materials to participants electronically or via print-on-demand services/options. Printed materials should maximize paper usage (printing on both sides) and minimize higher cost options (color printing) where possible.

### Meals and Refreshments

- Generally unallowable.
  - Meals and refreshments are generally not allowable costs for conferences funded under OJP/COPS Office awards, unless the recipient obtains written prior approval from OJP/COPS Office. This applies to all awards, including contracts, grants, and cooperative agreements. In general, DOJ may approve such costs only in cases where:
    - Sustenance is not otherwise available (e.g., extremely remote areas);
    - The size of the event and nearby food/beverage vendors would make it impractical to not provide meals and/or refreshments; or
    - A special presentation at a conference requires a plenary address where there is no other time for sustenance to be obtained.
  - Water provided at no cost to the OJP/COPS Office award is, of course, allowable without prior approval.
- Cost limits on meals.

## III. Postaward Requirements

**3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING**

▸ If prior approval is obtained to provide food and/or beverages at an event, the DOJ and its grantees, cooperative agreement recipients, and contractors must all follow the limits in the Food and Beverage Policy on meals.

**Meals and Incidental Expenses Reimbursement**

■ Deduction of meals from requests for Meals and Incidental Expenses reimbursement (M&IE).

▸ All conference attendees must ensure that any provided meal is deducted from their claimed M&IE. For example, if lunch is provided, the recipient must deduct the value of the lunch from the amount of M&IE claimed (even if non-DOJ funds are used to provide the meal). The General Services Administration (GSA) M&IE breakdown can be found on the GSA website.

**Lodging**

■ Federal per diem rates preferred.

▸ OJP/COPS Office is aware that some DOJ funding recipients may have received a DOJ memorandum entitled *Restrictions on Per Diem Rates for Attendance at Conferences*, dated April 27, 2012. At this time, the referenced memorandum only applies to DOJ (Federal) personnel; however funding recipients should anticipate that staying within Federal per diem rates is strongly preferred and OJP/COPS Office will not likely approve grantee requests for waivers to the Federal per diem rate, or cooperative agreement recipient's organizational per diem rate (whichever is applicable).

▸ See Chapter 3.9 Allowable Costs for more guidance on travel costs.

**Transportation**

Include all costs, including baggage fees, related to common carrier transportation to and from the conference location paid with OJP/COPS Office funds.

**Local Transportation**

Include rental car, mileage to-and-from the airport or the conference (if local), and taxi charges.

**Logistical Conference Planner**

■ The total cost limit is $50 per attendee or $8,750, whichever is lower.

■ Cooperative agreement recipients should include all staff time related to logistical planning in this category and should be able to track these costs separately in their accounting records. All contracted, subcontracted, or subawarded logistical planning costs should also be included in this category. Total costs are defined as direct and indirect costs. Costs in excess of the established limits require additional justification and approval outside of OJP/COPS Office.

**Programmatic Conference Planner**

■ The total cost limit is $200 per attendee or $35,000, whichever is lower.

■ Cooperative agreement recipients should include all staff time related to programmatic planning in this category and should be able to track these costs separately in their accounting records. All contracted, subcontracted or subawarded programmatic planning costs should be also included in this category. Total costs are defined as direct and indirect costs. Costs in excess of the established limits require additional justification and approval outside of OJP/COPS Office.

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Conference Facilitator/Trainer/Instructor/Presenter**

Include all trainer and speaker fees. If the fee exceeds the maximum consultant rate, please include a copy of the consultant rate approval with the Conference & Events Submission Form on one of the available extra tabs. Also include a copy of the agenda (a draft version is acceptable) in one of the available tabs with the prior approval submission.

**Other**

All "Other" costs must be itemized on the Conference & Events Submission Form. Detailed descriptions and justification of the Other cost line items must be provided in the additional tabs.

**Indirect Rate Costs**

Indirect costs associated with the direct costs necessary to plan and hold a conference must be included in all conference cost reporting. The submission form contains a column allowing for the allocation of indirect rate cost to each category.

Cooperative agreement recipients should pay particular attention to the two areas listed below to ensure that the application of indirect cost rate is in compliance with the existing requirements of the Government-wide grant rules set out by the Office of Management and Budget (OMB):

***$25,000 Subcontract/Subaward Limitation.*** Indirect cost rates negotiated on the basis of modified total direct costs may only be applied against the first $25,000 of any subcontract or subaward under the agreement. This limitation must be applied to all conference-related subcontracts and subawards. For purposes of this chapter, a subcontract or subaward is any agreement under which the awardee outsources work, goods, or services related to the conference, including those with hotels and travel agents. See 2 C.F.R. § 200, Appendix III.C.2 (Indirect costs - IHE); 2 C.F.R. § 200, Appendix IV.B.2 c (Indirect costs - non-profits); or 2 C.F.R. § 200, Appendix VII.C.2.c (Indirect costs - State and Local).

***Participant Support Costs.*** Participant support costs are generally excluded from the distribution base. Therefore, indirect costs may not be applied against participant support costs. Participant support costs are direct costs for items such as stipends or subsistence allowances, travel allowances, and registration fees paid to or on behalf of participants or trainees (but not employees) in connection with meetings, conferences, symposia, or training projects. See 2 C.F.R. § 200.75. This exclusion applies to the *entirety* of any subcontracts for the lodging and travel of conference participants or trainees (but not employees).

Costs related to contractors of the recipient who are acting in the capacity of a "Conference Trainer/Instructor/ Presenter/Facilitator" are considered participant support costs.

**Gifts/Trinkets/Memorabilia/Commemorative Items**

Trinkets (items such as hats, mugs, portfolios, t-shirts, coins, gift bags, etc., regardless of whether they include the conference name or OJP/COPS Office logo) must not be purchased with DOJ funds as giveaways for conferences. Basic supplies that are necessary for use during the conference (e.g., folders, name tags) may be purchased.

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

#### Post Event Reporting

All conference costs for events held by cooperative agreement recipients or contractors costing more than $20,000, or where more than 50% of attendees are DOJ employees, must be reported within 45 calendar days after the last day of the event.

*Cooperative agreement recipients and contractors* must submit the completed Conference & Events Submission Form showing the prior approval amounts compared to the actual costs and explain all variances greater than 10% and $1,000. Completed reports for OJP recipients should be emailed to OJPConferenceCostReporting@ojp.usdoj.gov, and completed reports for the COPS Office should be emailed to COPS.Conferencecosts@usdoj.gov.

If the pre-approved costs were exceeded by more than 10% and $1,000, the contractor or cooperative agreement recipient should submit a detailed explanation with their post event Conference & Events Submission Form to support the additional costs.

The following situations and costs require additional explanation and will be considered unauthorized until OJP/COPS Office has reviewed the additional documentation:

- If the prior approval cost category contains no cost, but the post event report contains costs in that category.
- If the prior approval audio-visual/meeting room, logistical, and programmatic planner costs are less than the thresholds, but actual costs exceed the thresholds.
- If the prior approval total cost is less than $100,000, but the actual costs exceed $100,000.
- If the prior approval total cost is less than $500,000, but the actual costs exceed $500,000.

*Grant recipients* are not required to file post event reports, but should maintain documentation for purposes of monitoring and audit.

#### Deadlines

All conference costs must be reported no later than 45 calendar days after the end of any event that meets the following criteria:

- Total cost of the event exceeds $20,000, or
- More than 50% of attendees are DOJ employees.

The conference report should include the purpose of the conference, number of participants in attendance, a detailed breakout of all cost categories, etc. Other costs must be detailed on the form. If extra lines are needed, please list in one of the additional spreadsheet tabs.

When a prior approval amount exceeds $20,000, OJP/COPS Office expects a post event report. If the actual costs are less than $20,000, please either file the report with the actual costs or notify the program manager or OJP/COPS Office point of contact that a report is not required. Note: After the prior approval portion of the submission form has been approved, a copy of the submission form which contains the OJP/COPS Office event identifier will be returned to the submitter. It is important to use this form for the post event report.

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Delinquent Submissions and Non-Reporters**

The Conference & Events Submission Form must be emailed to either OJPConferenceCostReporting@ojp.usdoj.gov or COPS.Conferencecosts@usdoj.gov within 45 calendar days after the last day of the event. If the Conference & Events Form is not submitted by the due date, the report is considered to be delinquent and, for cooperative agreement recipients, drawing down funds through the Grant Payment Request System (GPRS) may not be permitted. An automatic email notification will be sent if this occurs. For non-reporters, a hold may be placed on the remaining funds associated with the award and any future payment requests will be denied. For contractors, remedies for non-compliance are outlined in the contract.

**Reporting Exemption**

If any item(s) are paid for with registration fees or other non-award funds, then that portion of expenses does not need to be reported on the Conference & Events Submission Form. Contractors may not charge registration fees.

**Determining Costs**

When determining the total cost of a DOJ-funded conference, all costs incurred by the recipient under the award must be included (see specific categories below).

- *Actual.* Post event reports must contain actual costs.
- *Fees/program income.* Post event conference reporting should exclude costs covered by other non-DOJ funding (e.g., non-DOJ co-sponsors) or program income.
- *Logistical and programmatic planner costs.* These costs should include cooperative agreement staff time spent on these activities and any contracted planner costs.
- *Attendee costs.* For post event reporting purposes, a cooperative agreement recipient or contractor must report all costs of attendance supported by the contract or award, or by DOJ-funded conference scholarships where that recipient administers the scholarships. (When determining overall conference costs, OJP/COPS Office may supplement the recipient's data with available data on attendance costs related to DOJ employees, and non-DOJ attendees whose attendance is supported by scholarships administered by an entity other than that primarily responsible for planning and/or hosting the conference.)
- *Indirect costs.* Recipients are required to include indirect costs when determining how much was spent in each conference cost category. For example, where a recipient has a 10% indirect cost rate, the reported cost of each conference item against which this indirect cost rate is charged should be augmented by 10% to take into account the rate charged.

**Public Reporting**

- All post event reports for conferences costing more than $100,000 in Federal funding will be posted publicly on the DOJ website.
- If the pre-event Conference & Events Submission Form was approved for less than $100,000, the actual costs reported on the post event report cannot exceed $100,000 without additional review and approval. This requirement is also applicable to events pre-approved for less than $500,000.
- Conferences costing more than $500,000 in DOJ funds are prohibited unless a waiver is granted by the Deputy Attorney General.

## III. Postaward Requirements

**3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING**

### FAQs

**Prior Approval**

1. Approximately how long should it take to adequately complete the Conference & Events Submission form?

2. Which types of events DO NOT require prior approval?

3. Where should staff time working on the conference, which is not related to planning, be captured?

4. If a cooperative agreement recipient/contractor is able to obtain a no-cost site for the event, are we still required to look into other facilities and provide justification for not selecting the other facilities?

5. Is there a timeframe after OJP/COPS Office accepts a conference request that a recipient/contractor can expect notification of approval?

6. Once an event is approved, how do we handle any increases and/or decreases in the amount of attendees originally proposed on the cost analysis spreadsheet submitted to DOJ for approval?

7. Does the $25 per person per day limit for meeting rooms and audio-visual costs also include service fees and taxes?

8. What if there are multiple meetings occurring within the larger event offered to all the attendees? Is the $25 per day per attendee limit applicable to each meeting? Example: A general session meeting contains all attendees and later breakout sessions are offered to the groups. Can each breakout/meeting have its own $25 per person per day limit?

9. Can we accept complimentary food and beverage?

10. Are the thresholds ($8,750 for logistical planner, $35,000 for programmatic planner, and $20,000 for conference space and audio-visual equipment) a cumulative cost for the entire event or a per day cost?

11. To whom should I submit event requests?

12. How far in advance do I have to submit an event for review and approval?

13. What are the most common mistakes made on the forms, so that I can avoid them in the future and increase the likelihood of a quick review and approval decision for my event?

14. Should I continue to exclude all food and beverage costs in my event submissions?

15. Can you summarize what I can do to prevent follow-up questions about my submitted event(s) that delay the review and approval process?

16. What events qualify for the expedited review process?

**Reporting**

17. Where can I find the most updated version of the conference reporting form to use for my submissions?

18. If I have a question about conference reporting, to whom should I send it?

19. Are we expected to have our staff track their time hour for hour for time spent on the event for planning, etc., or are reasonable estimates adequate for cost reporting purposes?

20. With conference cost reports now being due 30 days after the event, how should we handle costs for invoices that have not been received yet? Many invoices (such as hotels) are not received within 30 days of the end of the event. Should estimates be included on the cost report?

21. On the DOJ Conference & Events Submission Form, Item #19 Reporting Period under A. General Conference Information — is this the period in which the actual cost of the event is being reported or should this be based on the end date of the event?

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Prior Approval**

**Question 1:** <u>Approximately how long should it take to adequately complete the Conference & Events Submission form?</u>

**Answer:** The amount of time required to adequately complete the Conference & Events Submission Form will vary depending on the complexity of the proposed event. A small event (in terms of number of attendees, total cost, etc.) may only require an hour or two to complete the form because the event is basic/routine and data are not required in all of the available categories. On the other hand, a large event (in terms of number of attendees, multiple sessions occurring at the same time, etc.) may require several hours and/or days depending on the amount of required data (categories) and level of justification needed to support the event. Regardless of the size of any event, the supporting justification should be sufficient to support the agency's mission for conducting the event.

**Question 2:** <u>Which types of events DO NOT require prior approval?</u>

**Answer:** Currently there are six types of events which DO NOT require prior approval:

1. Conferences held by grant recipients (Note: conferences held by cooperative agreement recipients do require prior approval).

2. Law enforcement operational activities, including staging, surveillance, investigation, intelligence, and undercover activities.

3. Routine operational meetings (e.g., staff meetings, all-hands meetings), if held in a federal facility. In addition, meetings that are held by cooperative agreement recipients in a non-federal facility that does not charge for its use, and where there are no costs to DOJ for logistical conference planning or Government-provided food or beverages; in this instance, the answer to all the questions on the Prior Approval Not Required Checklist must be "No." Site visits are considered routine operational meetings regardless of location so long as there are no costs to DOJ for meeting rooms, logistical conference planning, or food and beverages.

4. Testing activities where the primary purpose of the event is to evaluate an applicant's qualifications to perform certain duties necessary to perform his or her job. This includes firearms and weaponry proficiency testing and certifications. A majority of the event must be devoted to the administration and taking of the test. Testing activities that are incidental to a training course or conference or are given upon its completion to determine satisfactory participation are not exempt from this policy.

5. Video conferences and webinars where there are no costs to DOJ for logistical conference planning and/or Government-provided food or beverages.

6. Technical assistance visits where travel made by an individual or a small group of project staff members to provide training or technical assistance to a particular entity; in this instance, the answer to all the questions on the Prior Approval Not Required Checklist must be "No."

**Question 3:** <u>Where should staff time working on the conference that is not related to planning be captured?</u>

**Answer:** Time spent working on a conference by staff or contractors can be classified as either Logistical planning time or Programmatic planning time. Programmatic planning includes time spent on activities such as developing the conference content and agenda, identifying and recruiting subject matter experts, and preparing written materials. Logistical planning includes time spent on tasks such as venue selection, ordering and setting up of audio-video equipment, securing hotel rooms, processing registrations, onsite support during the event, and other non-programmatic functions.

# III. Postaward Requirements

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Question 4: If a cooperative agreement recipient/contractor is able to obtain a no-cost site for the event, are we still required to look into other facilities and provide justification for not selecting the other facilities?**

**Answer:** Yes. Cooperative Agreement recipients and contractors should compare three or more facilities in a location. Facilities in the comparison should have given a positive response/quote and be able to accommodate the event as detailed in the requirements. A desired hotel may offer an incentive of no overall facility cost (meeting room[s] and/or audio-visual), but may not be economical in other cost comparison items such as the availability of lodging at per diem rates, commuting/travel distance for attendees, etc. Also, the recipient/contractor should maintain written documentation justifying their decision to select the chosen location in the event of a future audit.

**Question 5: Is there a timeframe after OJP/COPS Office accepts a conference request that a recipient/contractor can expect notification of approval?**

**Answer:** Each conference request is unique in reference to how the event will accomplish OJP's/COPS Office's mission (meeting, conference, webinar, etc.). The key to any conference/event moving through the review process will depend on whether the package is complete. A complete package contains a detailed cost analysis and sufficient justification to support all categories within the package. Example: An event is submitted for approval which consists of the following categories: printing and distribution, M&IE, lodging, transportation, and trainer/facilitator costs. The package contains a detailed cost analysis of each cost category (e.g., one trainer at $450 per day x 2 days = $900) and adequate justification explaining the purpose of the event and the role of the trainer. This package can move through the review process in a few days and allow ample time for travelers to make reservations, if the package was submitted within the required timeframe. However, based on the example above, if the package was submitted and the trainer/facilitator's costs exceeded OJP's/COPS Office's threshold, and supporting justification was not included with the package, a delay may occur while this justification is being retrieved. To avoid delays in the approval process, all recipients/contractors should adhere to the timeframe requirements for the dollar amount of their proposed event.

**Question 6: Once an event is approved, how do we handle any increases and/or decreases in the amount of attendees originally proposed on the cost analysis spreadsheet submitted to DOJ for approval?**

**Answer:** After receiving notification of approval from DOJ/OJP/COPS Office, all subsequent changes prior to the start day of the event should be sent to either the OJP or COPS Office Conference Costs email address, as appropriate. *Example:* If an event was approved by OJP/COPS Office on 9/1/20XX for an event scheduled for 12/15/20XX, the recipient/contractor should notify OJP/COPS Office as soon as possible of any changes in attendees (preferably 30 days or more in advance). This scenario holds true for changes to start and end date, location, and any other cost-related category.

**Question 7: Does the $25 per person per day limit for meeting rooms and audio-visual costs also include service fees and taxes?**

**Answer:** Yes. The cost allowed for conference space and audio-visual equipment and services (fees and taxes) is limited to $25 per day per attendee not to exceed a cumulative total cost of $20,000. *Total costs* are defined as direct and indirect costs.

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Question 8:** <u>What if there are multiple meetings occurring within the larger event offered to all the attendees? Is the $25 per day per attendee limit applicable to each meeting? Example: A general session meeting contains all attendees and later breakout sessions are offered to the groups. Can each breakout/meeting have its own $25 per person per day limit?</u>

**Answer:** No. Despite the multiple meetings offered within the larger event, DOJ/OJP/COPS Office considers and approves this type of event as a single event.

**Question 9:** <u>Can we accept complimentary food and beverage?</u>

**Answer:** Yes. Complimentary food and beverages may be accepted if offered to everyone. ***Example:*** Hotel W offers a complimentary continental breakfast to all its overnight customers regardless of any status they may have with the hotel chain. This type of complimentary offer is considered a business strategy of the hotel to promote an increase in overnight stays. You are not required to reduce your M&IE by the value of the food and beverage if offered to all customers as noted in this example.

**Question 10:** <u>Are the thresholds ($8,750 for logistical planner, $35,000 for programmatic planner, and $20,000 for conference space and audio-visual equipment/services) a cumulative cost for the entire event or a per day cost?</u>

**Answer:** The cost allowed for conference space and audio-visual equipment and services (fees and taxes) is limited to $25 per day per attendee not to exceed a cumulative total cost of $20,000. The cost allowed for a logistical planner is the lesser of $50 per attendee or $8,750 per event. The cost allowed for a programmatic planner is the lesser of $200 per attendee or $35,000 per event.

**Question 11:** <u>To whom should I submit event requests?</u>

**Answer:** For all BJA events, the forms should be sent to: BJAConferencereport@usdoj.gov. All other OJP event forms should be sent to: OJPConferencecosts@ojp.usdoj.gov. For all COPS Office events, the form should be sent to: COPSConferencecosts@usdoj.gov. Please do not send questions or other correspondence to these email addresses. These mailboxes should be used only for the submission of conference forms and supporting documentation (e.g., hotel contracts).

**Question 12:** <u>How far in advance do I have to submit an event for review and approval?</u>

**Answer:** Requests for conferences costing *$100,000 or less, and not exceeding any cost thresholds* (conference space and audio-visual equipment and services, logistical conference planner, and programmatic conference planner) must be submitted to OJP/COPS Office 90 <u>calendar days</u> in advance of the earliest of the following:

- Start date of the conference;

- Deadline for signing conference-related contracts, or

- Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request).

Requests for conferences costing *more than $100,000, or exceeding any one cost threshold* (conference space and audio-visual equipment and services, logistical conference planner, or programmatic conference planner), must be submitted to OJP/COPS Office <u>120 calendar days</u> in advance of the earliest of the following:

- Start date of the conference;

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

- Deadline for signing conference-related contracts, or
- Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request).

*Approval Requests Submitted Less than the Required Number of Days in Advance (as noted above)*—OJP/COPS Office may, in its sole discretion, consider requests that are submitted late, but cannot assure that these requests will receive a decision in time to avoid having to cancel the conference (particularly if there are any issues that arise with specific items of cost in the request). Cancellation costs associated with conferences that are submitted for late prior approval may be determined to be unallowable costs by OJP/COPS Office.

**Question 13:** <u>What are the most common mistakes made on the forms, so that I can avoid them in the future and increase the likelihood of a quick review and approval decision for my event?</u>

**Answer:** Below are the most common mistakes found:

- *Inaccurate calculation of daily per diem.* Daily per diem rates for locations across the Nation can be found on the <u>GSA website</u>. Please ensure the daily rate utilized in the calculations corresponds to the specific location and dates of the meeting. In addition, please remember that travel days are reimbursed at a slightly lower rate than meeting days. The lower rates must be used for days of travel both before and after the event. The following chart includes these lower rates:

| Full Per Diem Rate | Corresponding Travel Day Rate (75%) |
|---|---|
| $46.00 | $34.50 |
| $51.00 | $38.25 |
| $56.00 | $42.00 |
| $61.00 | $45.75 |
| $66.00 | $49.50 |
| $71.00 | $53.25 |

**EXCEPTION:** If your organization has its own formal, written travel policy, your event submissions can reflect that policy, instead of the rates in the chart above. In these instances, please state that you have a formal, written travel policy, and clearly explain the rates in the policy, and how the corresponding numbers in your submission were derived.

- *Insufficient explanation and justification of transportation costs.* Please remember to "break out" and briefly describe/justify the transportation costs that are included. Example: If participants are flying to your event and the tickets are being paid for with DOJ funding, you should include the anticipated number of people flying multiplied by the estimated cost per ticket. If cars will be rented you should include a brief justification for why rental cars are being used instead of another form of ground transportation, such as taxis or shuttles.
- *Insufficient explanation and justification of audio-visual costs.* All audio-visual costs should be "broken out" and briefly described. The quantity of equipment to be rented (e.g., number of microphones, projectors, etc.) should be included, along with relevant costs and a brief justification for why the proposed equipment is required to conduct a successful meeting. A discussion of how the audio-visual services provider was selected should be included (for example, did you obtain three quotes?).

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

- *Insufficient explanation and justification of printing costs.* Proposed printing costs for participant materials should also be itemized and briefly described. Specifically, it is important to articulate why printed materials are needed instead of making materials available electronically (at low or no cost) to attendees before and/or after the event.

- *Insufficient explanation and justification of shipping costs.* Please provide an itemization of these costs, along with a brief description of why the equipment and other materials being shipped are essential to hosting a successful conference.

- *Insufficient explanation and justification of consultant costs.* The maximum daily rate for subject matter experts who are being reimbursed for their time is noted here. Please describe all consultant costs in detail and include a brief yet compelling justification for the proposed costs. Daily rates for subject matter experts above the maximum daily rate require prior approval by DOJ/OJP/COPS Office. In cases where higher rates are included in the event submission, written documentation of prior approval is required and should be attached.

**Question 14:** <u>Should I continue to exclude all food and beverage costs in my event submissions?</u>

**Answer:** Yes. The inclusion of food and beverage costs will delay the review process and these costs are not likely to be approved. The only exception is when the location of the conference does not allow attendees to obtain food or beverages on their own, or when this restriction would greatly disrupt the conference schedule. If you believe your event qualifies for such a rare exception, please contact your program manager to discuss it before completing and submitting your form. If meals are included in your event submission, please remember that attendees must subtract the meal costs from the M&IE reimbursement for the days on which the meals will occur.

**Question 15:** <u>Can you summarize what I can do to prevent follow-up questions about my submitted event(s) that delay the review and approval process?</u>

**Answer:** As a general rule, please explain how you derived <u>every</u> cost that you include in the conference submission form. The form can be challenging to complete and there are lines where it is not possible to add descriptive narrative. Please include your explanations and specific cost breakdowns in a separate tab, or in a separate document that is submitted with the form. In addition, please include the cooperative agreement or contract number on the form.

**Question 16:** <u>What events qualify for the expedited review process?</u>

**Answer:** There is no "expedited review process." Every effort is made to review all events as quickly as possible. Most delays result from a need for additional information. Events are prioritized for review by balancing the following three criteria:

- The start date of the event;

- The date the event submission was received by OJP/COPS Office; *AND*

- The overall cost and complexity of the conference. For example, conferences requiring Assistant Attorney General for Administration approval (over $100,000–$250,000) and Deputy Attorney General typically take longer to process as they have to go through OJP/COPS Office and DOJ reviews, result in more questions, and are more likely to have issues related to cost thresholds.

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Reporting**

**Question 17:** <u>Where can I find the most updated version of the conference reporting form to use for my submissions?</u>

**Answer:** The most updated version of the conference reporting form can be found under the <u>Resources</u> section at the end of this chapter.

**Question 18:** <u>If I have a question about conference reporting, to whom should I send it?</u>

**Answer:** Please send your questions to your designated Program Manager. They are great resources and will be happy to assist you. You may also direct your question to <u>Ask.OCFO@usdoj.gov</u>.

**Question 19:** <u>Are we expected to have our staff track their time hour for hour for time spent on the event for planning, etc., or are reasonable estimates adequate for cost reporting purposes?</u>

**Answer:** Post event reports must contain actual costs. These costs should include *logistical* and *programmatic planner* staff time spent on these activities and any *contracted planner* costs.

**Question 20:** <u>With conference cost reports now being due 30 days after the event, how should we handle costs for invoices that have not been received yet? Many invoices (such as hotels) are not received within 30 days of the end of the event. Should estimates be included on the cost report?</u>

**Answer:** All conference costs for events held by cooperative agreement recipients or contractors costing over $20,000, or where more than 50% of attendees are DOJ employees, must be reported within *45 calendar days after the last day of the event*.

**Question 21:** <u>On the DOJ Conference & Events Submission Form, Item #19 Reporting Period under A. General Conference Information — is this the period in which the actual cost of the event is being reported or should this be based on the end date of the event?</u>

**Answer:** This reporting requirement is based on the end date of the event. All conference costs for events held by cooperative agreement recipients or contractors costing over $20,000, or where more than 50% of attendees are DOJ employees, must be reported within 45 calendar days after the last day of the event. *Example:* An OJP/COPS Office-approved conference/event was conducted from 3/16/20XX through 3/20/20XX. A completed Conference & Events Submission Form must be submitted showing the prior approval amounts compared to the actual costs and explain all variances greater than 10% and $1,000. Reports should be emailed to the appropriate conference cost email address.

## Resources

- <u>Conference & Events Submission Instructions</u>
- <u>Conference & Events Submission Form</u>
- <u>Federal Facilities List 1</u>
- <u>Federal Facilities List 2</u>
- <u>Quick Reference Guide to Conference Cost Policy and Guidance</u>
- <u>Food and Beverage Policy</u>

## III. Postaward Requirements

### 3.11 INDIRECT COSTS

#### Introduction

Indirect costs are costs of an organization that are not readily assignable to a particular project, but are necessary to the operation of the organization and the performance of the project. Examples of costs usually treated as indirect include those incurred for facility operation and maintenance, depreciation, and administrative salaries.

> ▶ **OJP/COPS SPECIFIC TIP**
>
> **Transferring funds into or out of the indirect cost category is not allowable without prior approval from the awarding agency. A budget modification is required.**

#### Federal Indirect Cost Rate—Negotiated Agreements

If a Federal awarding agency has approved an indirect cost rate or allocation plan, then another awarding agency must accept the same indirect cost rate or allocation plan, provided the rate or plan is current and based on allocation methods substantially in accord with those set forth in the OMB Uniform Guidance for grant requirements. There are limited circumstances where a Federal agency may deviate from negotiated rates as discussed in 2 C.F.R. § 200.414 (Indirect (F&A) costs).

A non-Federal entity that has a federally negotiated indirect cost rate, which has expired during the funding period cannot drawdown funds budgeted for indirect costs until a new rate is approved and a copy is submitted to the awarding agency.

Any non-Federal entity that has a federally negotiated indirect cost rate may request a one-time extension of a current negotiated rate for a period of up to four years. This extension request is subject to approval from the cognizant agency for indirect costs. If the extension is granted then the non-Federal entity may not request a rate review until the extension period ends. At the end of the extension period, the non-Federal entity must re-apply to negotiate a new indirect cost rate. Subsequent one-time extensions (up to four years) are permitted if a renegotiation is completed between each extension request.

> ▶ **OJP SPECIFIC TIP**
>
> **A request for a one-time extension of a current negotiated rate may be approved for a period of one year.**

#### Establishment of Indirect Cost Rates

The requirements for the development and submission of indirect cost proposals and cost allocation plans are set out in Appendices III – VII of 2 C.F.R. § 200. A non-federal entity should follow the guidelines applicable to its type of organization:

- 2 C.F.R. § 200, Appendix III for Institutions of Higher Education;
- 2 C.F.R. § 200, Appendix IV for Non-Profit Organizations;
- 2 C.F.R. § 200, Appendix V for State/Local Government Central Service Cost Allocation Plans;

## III. Postaward Requirements

### 3.11 INDIRECT COSTS

- [2 C.F.R. § 200, Appendix VI for Public Assistance Cost Allocation Plans](#);
- [2 C.F.R. § 200, Appendix VII for State/Local/Tribal Indirect Cost Proposals](#).

If a recipient determines that OJP is their cognizant agency for indirect cost negotiation, refer to [Indirect Costs resource document [PDF – 32Kb]](#) for instructions on how to prepare an indirect cost proposal for submission to OJP. If it is determined that OVW is the cognizant agency for indirect costs, instructions on how to prepare and submit an indirect cost proposal may be found at [https://www.justice.gov/ovw/grantees](https://www.justice.gov/ovw/grantees).

---

ⓘ **FINANCIAL MANAGEMENT TIP**

**There is an exception:** Units of local government are not required to submit an indirect rate cost proposal. However, the indirect cost proposal must be prepared and retained on file for review. See 2 C.F.R. Part 200, Appendix VII.D.

---

▶ **OJP SPECIFIC TIP**

Generally, if an indirect cost proposal is not submitted within 90 days after the award date, indirect costs may not be recovered for the period prior to submission of the proposal.

---

- To support the indirect cost proposal, recipients are responsible for ensuring that independent organizational audits are conducted in accordance with existing Federal auditing and reporting standards set forth in the applicable audit requirements. A copy of the audit report must be submitted to the cognizant Federal agency to support the indirect cost proposal.
- As part of requesting an indirect cost rate, a signed certification stating that the plan only includes allowable costs must be submitted with the proposal.
- Additional guidance for completing an indirect cost proposal as an award recipient, as well as examples of how certain information should be provided, is available through the U.S. Department of Health and Human Services (HHS) Program Support Center website.

After negotiations, the cognizant Federal agency will establish either a provisional, final, or fixed-with-carry-forward indirect cost rate.

### Indirect Cost Distribution Bases

Regardless of the allocation method used by the organization, the following "direct cost" bases may be used as a distribution base:

- **Modified Total Direct Cost, or MTDC.** This base includes all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards up to the first $25,000 of each subaward (regardless of the period of performance of the subawards under the award). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships,

# III. Postaward Requirements

## 3.11 INDIRECT COSTS

participant support costs, and the portion of each subaward in excess of $25,000. Other items may only be excluded when necessary to avoid a serious inequity in the distribution of indirect costs, and with the approval of the cognizant agency.

- **Direct Salaries and Wages.** This base includes only the costs of direct salaries and wages incurred by the organization.
- **Direct Salaries and Wages plus Fringe Benefits.** This base includes the costs of direct salary and wages and the direct fringe benefits incurred by the organization.

## Cost Allocation Plans—Central Support Services

- State agencies and local units of government may not charge to an award the cost of central support services supplied by the State or local units of government, except pursuant to a cost allocation plan approved by HHS.
- The rate to be applied may be on a fixed rate with carry forward provision.

## Lobbying Costs and the Indirect Cost Pool

When a non-Federal entity seeks reimbursement for indirect costs, total lobbying costs must be separately identified in the indirect cost rate proposal and thereafter treated as other unallowable activity costs in accordance with the procedures in 2 C.F.R. § 200.413 (Direct Costs).

Requirements for recipient organizations:

- Unallowable costs associated with the indirect cost pool (e.g., lobbying) must be added to the direct cost base.
- Non-Federal entities must submit, as part of their annual indirect cost rate proposal, a certification that they are in compliance with all the requirements and standards under 2 C.F.R. § 200.450 (Lobbying).

Exemption from some record-keeping requirements:

- Recipient organizations will not be required to create time logs, calendars, or similar records for purposes of complying with this section during any particular calendar month when:
  - ▶ The employee engages in lobbying and 25 percent or less of the employee's compensated hours of employment during that calendar month constitutes lobbying; and
  - ▶ Within the preceding 5-year period, the non-Federal entity has not materially misstated allowable or unallowable costs of any nature, including legislative lobbying costs.
- When the first two conditions listed above are met, organizations are not required to establish records to support the allowability of claimed costs in addition to records already required or maintained.
- Also when the first two conditions are met, the absence of time logs, calendars, or similar records will not serve as a basis for disallowing costs by contesting estimates of lobbying time spent by employees during a calendar month.

# III. Postaward Requirements

## 3.11 INDIRECT COSTS

### No Approved Plan

Recipients that have never had an approved Federal indirect cost rate may either negotiate an indirect cost rate with their cognizant Federal agency or elect to charge a de minimis rate of 10% of modified total direct costs.

If the recipient decides to negotiate an indirect cost rate with a DOJ component or has a rate pending with another Federal agency, a special condition will be added to the award prohibiting the obligation, expenditure, or drawdown of funds reimbursement for indirect costs until an indirect cost rate has been approved by the cognizant Federal agency, and a Grant Adjustment Notice (GAN) has been issued, or for COPS Office, the appropriate notification has been made retiring the special condition.

Non-federal entities that have never received a negotiated indirect cost rate, except for those non-Federal entities described in Appendix VII to Part 200 paragraph (d)(1)(B), may elect to charge a de minimis rate of 10% of modified total direct costs (MTDC) which may be used indefinitely. When using this method, cost must be consistently charged as either indirect or direct costs, but may not be double charged or inconsistently charged as both. Also, if this method is chosen then it must be used consistently for all Federal awards until such time as an indirect cost rate is negotiated (which may be done at any time). See 2 C.F.R. § 200.414(f).

- **There is an exception:** Units of local government which the Office of Management and Budget (OMB) has not assigned a cognizant Federal agency are not required to submit an indirect cost proposal, unless the awarding agency requires a copy of the proposal. Please see the appropriate Appendix section in 2 C.F.R. § 200 as listed above.

### Approval of Indirect Cost Rates for Subrecipients

Direct recipients of Federal funding are responsible for approving indirect cost rates for their subrecipients. Such rates must be consistent with the requirements of 2 C.F.R. § 200. The Federal awarding agency will not approve indirect cost rates beyond the direct recipient level; however, subrecipients who are also direct recipients of Federal awards may already have a Federally approved indirect cost rate. If a subrecipient has negotiated an indirect cost rate with the Federal government, then that rate applies.

## III. Postaward Requirements

### 3.12 OJP'S CONFIDENTIAL FUNDS

#### Introduction

The provisions outlined in this chapter apply to all awarding agency professional personnel, recipients, and subrecipients involved in the administration of grants containing confidential funds. Confidential funds are those monies allocated to:

- **Purchase of Services (P/S).** This category includes travel or transportation of a non-Federal officer or an informant; the lease of an apartment, business front, luxury-type automobile, aircraft or boat, or similar effects to create or establish the appearance of affluence; and/or meals, beverages, entertainment, and similar expenses (including buy money, flash rolls, etc.) for undercover purposes, within reasonable limits.

- **Purchase of Evidence (P/E).** This category is for purchase of evidence and/or contraband, such as narcotics and dangerous drugs, firearms, stolen property, counterfeit tax stamps, and so forth, required to determine the existence of a crime or to establish the identity of a participant in a crime.

- **Purchase of Specific Information (P/I).** This category includes the payment of monies to an informant for specific information. All other informant expenses would be classified under P/S and charged accordingly.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Confidential funds should only be allocated when 1) the merit of a program/investigation warrants the expenditure of these funds, and 2) the recipient is unable to obtain these funds from other sources.

Confidential funds are subject to prior approval.

- Approval for confidential fund expenditures will be provided if it is found that the requested expenditures are reasonable and necessary elements of project operations.
- The approving agency must also ensure that the controls over disbursement of confidential funds are adequate to safeguard against the misuse of such funds.

#### Approval Authorities

The approval authority for the allocation of confidential funds is the awarding agency. (This includes Regional Information Sharing Systems (RISS) Program projects).

The approval authority for subrecipients is the original recipient agency.

#### Confidential Funds Certification

For all projects involved with confidential funds from either Federal or matching funds, DOJ requires signed certification that the Project Director has read, understands, and agrees to abide by the conditions described below. The signed certification must be submitted at the time of grant application. A sample Confidential Funds Certification form for use is included here.

Download sample Confidential Funds Certification form [PDF - 116 Kb].

## III. Postaward Requirements

### 3.12 OJP'S CONFIDENTIAL FUNDS

| ☑ **ACTION ITEM** |
|---|
| Each Project Director involved with confidential funds from either Federal or matching funds must provide signed certification to show that he or she has read, understands, and agrees to abide by conditions for confidential funds. |

### Written Procedures

Each Project Director and Regional Information Sharing Systems (RISS) member agency authorized to disburse confidential funds must develop and follow internal procedures which incorporate the elements listed below. If the Project Director and/or RISS member agency deviates from these elements, they must receive prior approval of the awarding agency.

- The funds authorized will be established in an imprest fund which is controlled by a bonded cashier.
- The supervisor of the unit to which the imprest fund is assigned must authorize all advances of funds for the purchase of information. In the authorization the supervisor must specify the information to be received, the amount of expenditures, and the assumed name of the informant.
- Informant files are confidential files of the true names, assumed names, and signatures of all informants to whom payments of confidential expenditures have been made. To the extent possible, pictures and/or fingerprints of the informant payee(s) should also be maintained. In the RISS Program, the informant files are to be maintained at the member agencies only. Project headquarters may maintain case files.
- The agent or officer authorized to make a confidential payment will provide the cashier with a receipt for cash advanced for such purposes. The informant payee must provide the agent or officer a receipt for cash paid to them. A sample informant payee receipt [PDF - 153 Kb] is provided as an example.

An informant payee receipt must identify the exact amount paid to and received by the informant payee on the date executed. Cumulative or anticipatory receipts are not permitted. Once the receipt has been completed, **no alteration is allowed.** As shown in the sample above, the agent must prepare an informant payee receipt containing all of the following information:

- The jurisdiction initiating the payment
- A description of the information/evidence received
- The amount of payment in both numerical and word format (e.g., one hundred dollars [$100.00])
- The date on which the payment was made
- The signature of the informant payee
- The signature of the case agent or officer making payment
- The signature of at least one other officer witnessing the payment
- The signature of the first-line supervisor authorizing and certifying the payment

The signed receipt from the informant payee with a memorandum detailing the information received must be forwarded to the agent or officer in charge.

- The agent or officer in charge must compare the signatures.

# III. Postaward Requirements

## 3.12 OJP'S CONFIDENTIAL FUNDS

- He/she must also evaluate the information received in relation to the expense incurred and enter his/her evaluation remarks in the report of the agent or officer who made the expenditure from the imprest fund.
- The certification will be witnessed by the agent or officer in charge on the basis of the report and informant payee's receipt.

Each Project Director must prepare a reconciliation report on the imprest fund on a quarterly basis.

- The reconciliation report must include the assumed name of each informant given and to what extent each informant contributed to the investigation.
- The recipient should retain the reconciliation report in its files and have it available for review.
- Subrecipients should retain the reconciliation report in their files and have it available for review unless the State agency requests that the report be submitted to them on a quarterly basis.

Each Project Director and member agency must maintain specific records of each confidential fund transaction. At a minimum, these records must consist of all documentation concerning the request for funds, processing (including the review and approval/disapproval), modifications, closure or impact material, and receipts and/or other documentation necessary to justify and track all expenditures.

- Refer to the documentation in the Informant Files section of this chapter for a list of documents which should be included in the informant files.
- In projects where award funds are used for confidential expenditures, please note that all of the above records are subject to the record retention and audit requirements of the awarding agency and program legislation.
- However, only under extraordinary and rare circumstances would such access include a review of the true name of confidential informants.
- When access to the true name of confidential informants is necessary, appropriate steps to protect this sensitive information must and will be taken by the organization, the awarding agency, and the auditing agency.
- Any such access, other than under a court order or subpoena pursuant to a bona fide confidential investigation, must be approved by both the OJP Program Office Head and the OJP Chief Financial Officer.

> ☑ **ACTION ITEM**
>
> If the project director and RISS member agency authorized to disburse confidential funds deviate from these written procedures, they must receive prior approval of the awarding agency.

## Informant Files

A separate file should be securely established for each informant for accounting purposes.

- Informant files should be kept in a separate and secure storage facility and under the exclusive control of the Project Director, manager, or an employee designated by him/her.
- The facility should be locked at all times when unattended.
- Access to these files should be limited to those employees who have a necessary and legitimate need.

# III. Postaward Requirements

## 3.12 OJP'S CONFIDENTIAL FUNDS

- An informant file should not leave its immediate area within the storage facility, except for review by a management official or the handling agent, and should be returned prior to the close of business on the day of its review.
- Sign-out logs should be kept indicating the date, informant number, time in and out, and the signature of the person reviewing the file.

Each file should include the following documentation:

- Informant Payment Record easily accessible on top of the file. This record provides a summary of informant payments.
- Informant Establishment Record, including complete identifying and locating data, plus any other documents connected with the informant's establishment.
- Current photograph and fingerprint card (or Federal Bureau of Investigation [FBI]/State criminal identification number).
- Agreement with cooperating individual.
- Receipt for P/I.
- Copies of all debriefing reports (except for the headquarters case file).
- Copies of case initiation reports showing the use of an informant (except for the headquarters case file).
- Copies of statements signed by the informant (unsigned copies will be placed in appropriate investigative files).
- Any administrative correspondence pertaining to the informant, including documentation of any representations made on his behalf or any other nonmonetary considerations furnished.
- Any deactivation report or declaration of an unsatisfactory informant.

### Regional Information Sharing Systems (RISS) Program

RISS is a national federally funded program of regionally oriented services designed to enhance the ability of local, State, Federal, and tribal criminal justice agencies to:

- Identify, target, and remove criminal conspiracies and activities spanning multijurisdictional, multistate, and sometimes international boundaries.
- Facilitate rapid exchange and sharing of information among the agencies pertaining to known suspected criminals or criminal activity.
- Enhance coordination and communication among agencies that are in pursuit of criminal conspiracies determined to be interjurisdictional in nature.

### RISS Processing Procedures

The agency must provide a statement agreeing to establish control, accounting, and reporting procedures consistent with the procedures outlined in this chapter. The project policy board establishes the maximum level the Project Director may authorize in disbursements to member agencies.

- The Project Director, or his/her designee, may authorize payment of funds to member agencies and their officers for P/I and evidence up to this maximum level.
- The Project Director must refer all requests for amounts in excess of the maximum level to the project policy board for review and approval.

# III. Postaward Requirements

## 3.12 OJP'S CONFIDENTIAL FUNDS

- Any member agency requesting funds from the project will do so in writing. The request must contain the amount needed, the purpose of the funds, and a statement that the funds requested are to be used to further the project's objectives.

The Project Director, or his/her designee when appropriate, will approve or disapprove the request in writing.

- If approved, the request will be forwarded to the project cashier, who will record the request and transmit the monies, along with a receipt form, to the member agency.
- Upon receipt of the monies, the member agency will immediately sign and return the receipt form to the cashier.

Each Project Director must record and maintain on file the assumed name and signature of all informants to whom member agencies make payments from project funds for all transactions involving P/I.

- The original signed informant payee receipt, with a summary of the information received, will be forwarded to the Project Director by the member agency.
- The Project Director will then verify the receipt by comparing the signature of the informant payee on the receipt with the signature maintained by the project in a secure and confidential file.
- If discrepancies exist, the Project Director, or his/her designee, will take immediate steps to notify the member agency and find out the reason(s) for the discrepancies.
- The member agency must forward written justification to deal with discrepancies identified by the Project Director. If the justification is sufficient, it will be attached to the informant payee receipt.

## Informant Management and Utilization

Anyone used as an informant should be identified as such. The specific procedures required in establishing a person as an informant may vary from jurisdiction to jurisdiction but, at a minimum, should include the following:

- Assign an informant code name to protect the informant's identity.
- Create an informant code book controlled by the Project Director or their designee containing:
  - ▶ Informant's code name;
  - ▶ Type of informant (i.e., informant, defendant/informant, restricted-use informant);
  - ▶ Informant's true name;
  - ▶ Name of establishing law enforcement officer;
  - ▶ Date the establishment of the informant is approved; and
  - ▶ Date of deactivation.
- Establish each informant's files in accordance with the documentation listing under the Informant Files section of this chapter.
- Search all available criminal records for informants.
  - ▶ If a verified FBI number is available, request a copy of the criminal records from the FBI.
  - ▶ Where a verified FBI number is not available, fingerprint the informant and send a copy to the FBI and appropriate State authorities for analysis.
  - ▶ The informant may be used on a temporary basis while awaiting a response from the FBI.

## III. Postaward Requirements

### 3.12 OJP'S CONFIDENTIAL FUNDS

- Review all active-status informant files on a quarterly basis to assure they contain all relevant and current information.
  - ▸ Where a substantive fact that was earlier reported on the Establishment Record is no longer correct (e.g., a change in criminal status or in means of locating the informant), a supplemental establishing report should be submitted with the correct entry.

### Payment to Informants

Anyone who receives payments charged against P/E or P/I funds should be established as an informant.

- This includes anyone who may otherwise be categorized as a source of information or an informant under the control of another agency.
- The amount of payment should match the value of services and/or information provided and should be based on the following factors:
  - ▸ The level of the targeted individual, organization, or operation.
  - ▸ The amount of the actual or potential seizure.
  - ▸ The significance of the contribution made by the informant to the desired objectives.
- Payments to informants may be made under various circumstances:
  - ▸ When an informant assists in developing an investigation, either through supplying information or actively participating in it, they may be paid for their service either in a lump sum or in staggered payments. Payments for information leading to a seizure, with no defendants, should be on a minimum basis.
  - ▸ When an informant needs protection, law enforcement agencies (LEAs) may absorb the expenses of relocation. These expenses may include travel for the informant and their immediate family, movement and/or storage of household goods, and living expenses at the new location for a specific period of time (not to exceed 6 months). Payments for these expenses may be either lump-sum or as they occur and should not exceed the amounts authorized by law enforcement employees for these activities.
  - ▸ To use or pay another agency's informant, the person should be identified as an informant. These payments should not be a duplication of a payment from another agency; however, sharing a payment is acceptable.
- Documentation of payments to informants is critical and must be noted on a receipt for P/I.
  - ▸ Payment should be made and witnessed by two law enforcement officers and authorized payment amounts should be established and reviewed by at least the first-line supervisory level.
  - ▸ In unusual circumstances, a non-officer employee or an officer of another LEA may serve as a witness.
  - ▸ In all instances, the original signed receipt must be submitted to the Project Director for review and recordkeeping.

☑ **ACTION ITEM**

Stress with staff the importance of maintaining complete records for informants, including documentation of payments.

## III. Postaward Requirements

### 3.12 OJP'S CONFIDENTIAL FUNDS

#### Accounting and Control Procedures

Special accounting and control procedures should direct the use and handling of confidential expenditures. We describe these procedures below:

- It is important that expenditures identified as P/E, P/I, and P/S expenses are in fact allocated and charged to the proper category. This is the only way that these funds may be properly managed at all levels and accurate projections of future needs be made.

- Each law enforcement entity should apportion its P/E, P/I, or P/S allowance throughout its jurisdiction and delegate authority to approve P/E, P/I, and P/S expenditures to those offices as necessary.

- Headquarters management should establish guidelines authorizing offices to spend up to a predetermined limit of their total allowance on any one investigation.

- In exercising their authority to approve these expenditures, the supervisor should consider:

  ‣ The significance of the investigation;

  ‣ The need for this expenditure to further that investigation; and

  ‣ Anticipated expenditures in other investigations.

- Funds for P/E, P/I, and P/S expenditures should be advanced to the officer for a specific purpose. If they are not expended for that purpose, they should be returned to the cashier. The funds should not be used for another purpose (including another category) without first returning them and repeating the authorization and advance process based on the new purpose.

- Funds for P/E, P/I, or P/S expenditures should be advanced to the officer on a suitable receipt form. A receipt for P/I or a voucher for P/E should be completed to document funds used in P/E or funds paid or advanced to an informant.

- For security purposes, there should be a 48-hour limit on the amount of time for which funds advanced for P/E, P/I, or P/S expenditure may be held outstanding.

  ‣ If it becomes apparent at any point within the 48-hour period that the funds will not be used, then the funds should be returned to the advancing cashier as soon as possible. An extension to the 48-hour limit may be granted by the level of management that approved the advance.

  ‣ Factors to consider in granting an extension are the amount of funds involved, safeguarding of funds, length of extension required, and importance of the expenditure.

  ‣ Extensions are generally limited to no more than an additional 48 hours. Recipients should consult with the program office prior to determining the final course of action. Beyond this time period, the funds should be returned and re-advanced, if necessary.

  ‣ Regardless of circumstances, within 48 hours of the advance, the fund cashier should be presented with either the unexpended funds, an executed receipt for P/I or P/E, or written notification by management that an extension has been granted.

- P/S expenditures, when not endangering the safety of the officer or informant, need to be supported by cancelled tickets, receipts, lease agreements, and any other relevant documentation. If supporting documents are unavailable, the Project Director or his or her immediate subordinate must certify that the expenditures were necessary and justify why supporting materials were not obtained.

---

☑ **ACTION ITEM**

For security purposes, establish a limit of 48 hours on the amount of time for which funds advanced for P/E, P/I, or P/S expenditure may be held outstanding.

---

## III. Postaward Requirements

**3.13 UNALLOWABLE COSTS**

### Introduction

Federal awards generally provide recipients and/or subrecipients with the funds necessary to cover costs associated with the award program. There are other costs, however, categorized as unallowable costs, that will not be reimbursed. Non-Federal entities must not use award or match funding for unallowable costs. Also within the category of unallowable costs are any costs considered inappropriate by the awarding agency. See 2 C.F.R. § 200.31 (Disallowed Costs).

Standard unallowable costs are identified in 2 C.F.R. § 200, Subpart E - Cost Principles. (For-profit entities and hospitals follow different cost principles – see FAR 31.2, and 2 C.F.R. Part 200b Appendix. IX, respectively). Specific items of unallowable costs that may be of particular relevance for DOJ-funded programs are highlighted below.

### Unallowable Cost Categories

**Land Acquisition**

No Federal funds that are awarded for renting, leasing, or construction of buildings or other physical facilities shall be used for land acquisition. See 2 C.F.R. § 200.439 (b)(1).

**Compensation of Federal Employees**

This category of unallowable costs includes salary payments, consulting fees, or other compensation to full-time Federal employees.

**Travel of Department of Justice (DOJ) Employees**

Award funds may not be spent on transportation, lodging, subsistence, and related travel expenses of awarding agency employees.

- DOJ does consider to be allowable the travel expenses of other Federal employees, such as those persons serving on advisory committees or other program or project duties or assistance, if travel expenses have been:
  - Approved by the Federal employee's department or agency; and
  - Included as an identifiable item in the funds budgeted for the project or subsequently approved by the awarding agency.

**Bonuses or Commissions**

Recipients and subrecipients cannot pay any bonus or commission to any individual or organization to obtain approval of an application for award assistance.

Bonuses to officers or board members of for-profit or nonprofit organizations that are determined to be a profit, distribution of earnings, or fees are unallowable. See 2 C.F.R. § 200.430(g).

Some programs do not allow reimbursement for bonuses to employees.

## III. Postaward Requirements

### 3.13 UNALLOWABLE COSTS

> ☑ **ACTION ITEM**
>
> Be sure to check the award document and, if applicable, financial clearance memorandum, to determine which salaries, fringe benefits, and other personnel costs are allowable under the specific award.

**Lobbying**

Recipients and subrecipients must comply with the provisions in 2 C.F.R. § 200.450 (Lobbying), as appropriate. Also, see Chapter 2.1 of this *Guide* for more specifics about restrictions on lobbying.

- The lobbying cost prohibition applies to all award recipients.
- Award funds cannot be used for the following purposes:
  - Attempting to influence the outcome of any Federal, State, or local election, referendum, initiative, or similar procedure, through in-kind or cash contributions, endorsements, publicity, or similar activity;
  - Establishing, administering, contributing to, or paying for the expenses of a political party, campaign, political action committee, or other organization established for the purpose of influencing the outcome of elections;
  - Attempting to influence (a) the introduction of Federal or State legislation; or (b) the enactment or modification of any pending Federal or State legislation through communication with any member or employee of the Congress or State legislature (including efforts to influence State or local officials to engage in similar lobbying activity), (c) the enactment or modification of any pending Federal or state legislation by preparing, distributing, or using publicity or propaganda, or by urging members of the general public, or any segment thereof, to contribute to or participate in any mass demonstration, march, rally, fund raising drive, lobbying campaign or letter writing or telephone campaign, or (d) with any Government official or employee in connection with a decision to sign or veto enrolled legislation;
  - Engaging in or supporting the development of publicity or propaganda designed to support or defeat legislation pending before legislative bodies;
  - Paying, directly or indirectly, for any personal service, advertisement, telephone, letter, printed or written matter, or other device, intended or designed to influence a member of Congress or of a State legislature to favor or oppose, by vote or otherwise, any legislation or appropriation by either Congress or a State legislature, whether before or after the introduction of any bill or resolution proposing such legislation or appropriation;
  - Engaging in legislative liaison activities, including attendance at legislative sessions or committee hearings, gathering information regarding legislation, and analyzing the effect of legislation, when such activities are carried out in support of or in knowing preparation for an effort to engage in unallowable lobbying;
  - Paying a publicity expert for purposes unallowable under the anti-lobbying rules; or
  - Attempting to improperly influence, either directly or indirectly, an employee or officer of the executive branch of the Federal Government to give consideration or to act regarding a sponsored agreement or a regulatory matter.

## III. Postaward Requirements

### 3.13 UNALLOWABLE COSTS

- The Anti-Lobbying Act, 18 U.S.C. § 1913, contains significant restrictions on the use of appropriated funding for lobbying.
  - ▸ These anti-lobbying restrictions are enforceable via large civil penalties, with civil fines between $10,000 and $100,000 per each individual occurrence of lobbying activity.
  - ▸ These restrictions are in addition to the anti-lobbying and lobbying disclosure restrictions imposed by 31 U.S.C. § 1352.
- All grantees must understand that no federally appropriated funding made available under the grant program may be used, either directly or indirectly, to support the enactment, repeal, modification, or adoption of any law, regulation, or policy, at any level of government, without the express approval of DOJ.
- Any violation of this prohibition is subject to a minimum $10,000 fine for each occurrence. This prohibition applies to all activity, even if currently allowed within the parameters of the existing OMB guidance.
- Any question(s) relating to the lobbying restrictions should be submitted in writing to the awarding agency's ethics official (typically in the awarding agency's Office of the General Counsel) through the DOJ program manager.

> **▶ OVW SPECIFIC TIP**
>
> OVW has some programs with purpose areas that expressly authorize "developing and promoting state, local, or tribal legislation and policies that enhance best practices for responding to domestic violence, dating violence, sexual assault, and stalking." Grantees with questions on specific authorized activities should contact their grant manager.

#### Fundraising

The costs of organized fundraising, including financial campaigns, endowment drives, solicitation of gifts and bequests, and similar expenses incurred solely to raise capital or obtain contributions may not be charged as direct or indirect costs against awards. However, certain fundraising costs for the purposes of meeting the Federal program objectives may be allowable with prior approval of the DOJ awarding agency. See 2 C.F.R. § 200.442 for more details.

- The portion of a person's salary that covers time spent engaged in unallowable fundraising, and any indirect costs associated with those salaries, may not be charged to the award.
- An organization may accept donations (e.g., goods, space, services) towards fundraising, as long as the value of the donations is not charged as a direct or indirect cost to the award.
- Nothing in this section should be read to prohibit a recipient from engaging in fundraising activities, as long as such activities are not financed by Federal or matching funds.

#### Corporate Formation

The cost for corporate formation (startup costs) may not be charged as either direct or indirect costs against the award except with prior approval from the awarding agency.

# III. Postaward Requirements

## 3.13 UNALLOWABLE COSTS

<table>
<tr><td>▶ OVW SPECIFIC TIP</td></tr>
<tr><td>OVW's Grants to Tribal Domestic Violence and Sexual Assault Coalitions may allow for corporate formation costs to be charged directly to the award.</td></tr>
</table>

### State and Local Sales Taxes

Taxes that a governmental unit is legally required to pay are allowable, except for self-assessed taxes that disproportionately affect Federal programs or changes in tax policies that disproportionately affect Federal programs.

- This provision becomes effective for taxes paid during the governmental unit's first fiscal year that begins on or after January 1, 1998, and applies thereafter.
- This provision does not restrict the authority of Federal agencies to identify taxes where Federal participation is inappropriate.
- Taxes from which exemptions are available to the organization directly or which are available to the organization based on an exemption afforded the Federal government when the DOJ awarding agency makes available the exemption certificates are unallowable.
- Where the identification of the amount of unallowable taxes would require an inordinate amount of effort, the cognizant Federal agency for indirect costs may accept a reasonable approximation thereof.

### Other Unallowable Costs

Other categories of unallowable costs include:

- Entertainment, including amusement, diversion, social activities, and any associated costs (i.e. tickets to shows or sports events, meals, lodging, rentals, transportation, and gratuities) are unallowable. Certain exceptions may apply when such costs have a programmatic purpose and have been approved by the awarding agency;
- Fines and penalties (except when incurred as a result of compliance with specific provisions of an award or contract, or with written approval from the awarding agency);
- Home office workspace and related utilities;
- Honoraria is unallowable when the primary intent is to confer distinction on, or to symbolize respect, esteem, or admiration for the recipient of the honorarium. A payment for services rendered, such as a speaker's fee under an award is allowable;
- Passport charges;
- Tips;
- Bar charges/alcoholic beverages, and
- Membership fees to organizations whose primary activity is lobbying.

### Costs Incurred Outside the Project Period

Any costs that are incurred either before the start of the project period or after the expiration of the project period are not allowable, unless written approval covering pre-agreement costs is granted by the awarding agency.

## III. Postaward Requirements

**3.14 SUBRECIPIENT MANAGEMENT AND MONITORING**

### Introduction

A subaward is an award made by a pass-through entity to a subrecipient for the purpose of carrying out a portion of the work funded by the pass-through entity's Federal award. The pass-through entity may use any form of legal agreement for making a subaward, including an agreement that the pass-through entity considers a contract. A subaward is not a contract by which the non-federal entity (i.e., the recipient or a subrecipient) enters into an agreement with an entity to purchase property or services needed to carry out the project or program under a Federal award see 2 C.F.R. § 200.22 (Contract).

In keeping with 2 C.F.R. § 200.330 (Subrecipient and Contractor Determinations), the following circumstances support classification of a non-federal entity as a subrecipient of the pass-through entity:

- The non-federal entity determines who is eligible to receive what Federal assistance;
- The non-federal entity's performance is measured in relation to whether objectives of the Federal program were met;
- The non-federal entity has responsibility for programmatic decision making;
- The non-federal entity has responsibility for adhering to applicable program requirements under the Federal award; and
- The non-federal entity uses the Federal funds to carry out a program for a public purpose specified in the authorizing statute, as opposed to providing goods or services for the benefit of the pass-through entity.

In contrast, a contract for the purpose of obtaining goods and services for the pass-through entity's own use creates a procurement relationship with the contractor. Circumstances supporting this type of relationship include:

- The non-federal entity provides the goods and services within normal business operations;
- The non-federal entity provides similar goods or services to many different purchasers;
- The non-federal entity normally operates in a competitive environment;
- The non-federal entity provides goods or services that are ancillary to the operation of the Federal program; and
- The non-federal entity is not subject to the compliance requirements of the Federal program as a result of the agreement.

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> In determining whether an agreement between a pass-through entity and non-federal entity creates a subrecipient or a contractor relationship, the substance of the relationship is more important than the form of the agreement.

All of the characteristics listed above may not be present in all cases, so the pass-through entity must use judgment when categorizing each agreement as a subaward or a procurement contract.

The contract or other written agreement must not affect the recipient's overall responsibility and accountability to the Federal Government as the award recipient for the duration of the project. The recipient of the award is responsible for monitoring the subrecipient and ascertaining that all fiscal and programmatic responsibilities are fulfilled.

## III. Postaward Requirements

### 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

#### Subrecipient Monitoring

The purpose of subrecipient monitoring is to ensure that the subaward is being used for the authorized purpose, in compliance with the federal program and grant requirements, laws, and regulations, and the subaward performance goals are achieved. All pass-through entities are required to monitor their subrecipients. The requirements for subrecipient monitoring can be found in 31 U.S.C. § 7502 and in Title 2 C.F.R. § 200 (including, but not limited to, the sections on "Subrecipient Monitoring and Management" contained in Subpart D and audit requirements applicable to subrecipients contained in Subpart F).

Additional requirements can be found in the program legislation and the terms and conditions of the award.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> To effectively monitor subrecipients, ensure that Federal award information and compliance requirements are identified to the subrecipient at the time of the award and that subrecipient activities are monitored throughout the grant period.

As part of the organization's subrecipient monitoring process, it is important to develop systems, policies, and procedures to ensure that subrecipient reviews are conducted in accordance with Federal program and grant requirements, laws, and regulations.

Additionally, organizations should develop, implement, and perform procedures to ensure that the subrecipient obtains the required audits, and that audit findings identified in subrecipient audit reports are timely and effectively resolved and corrected.

#### Subrecipient Agreements

When a pass-through entity makes an award to a subrecipient, the Federal award information and applicable compliance requirements, including applicable special conditions, must be clearly identified in the subrecipient award agreement. Pass-through entities must ensure subaward documents include the following information at the time of the subaward. If any of these data elements change during the period of performance, the changes must be included in subsequent subaward modifications. The subaward must include the following information:

- Federal Award Identification;
- Subrecipient Name (which must match the name associated with its unique entity identifier);
- Subrecipient's DUNS number;
- Federal Award Identification Number (FAIN);
- Federal Award Date;
- Subaward Period of Performance Start and End Date;
- Amount of Federal Funds Obligated in this action/agreement;
- Total Amount of Federal Funds Obligated to the Subrecipient;
- Total amount of the Federal Award;
- Federal Award Project Description;

## III. Postaward Requirements

### 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

- Name of the Federal Awarding Agency, Pass-through entity, and contact information for the awarding official;

- Catalog of Federal Domestic Assistance (CFDA) number and name;

- Identification of whether the award is Research and Development (R&D);

- Indirect cost rate for the Federal award;

- All requirements imposed by the pass-through entity on the subrecipient so that the Federal award is used in accordance with federal statutes, regulations and the terms and conditions of the Federal award;

- Any additional requirements that the pass-through entity imposes on the subrecipient in order for the pass-through entity to meet its own responsibility to the DOJ grant-making component including identification of required financial and/or performance reports;

- Indirect cost rate to be used by the subrecipient (either a federally-approved rate, a rate negotiated between the pass-through entity and the subrecipient, or the de minimis indirect cost rate);

- A requirement that the subrecipient permit the pass-through entity and auditors to have access to the subrecipient's records and financial statements as necessary for the pass-through entity to meet the requirements of 2 C.F.R. § 200; and

- Appropriate terms and conditions concerning closeout of the subaward.

Additional elements to consider including in the agreement are listed in this chapter in the Best Practices section.

### Subrecipient Monitoring Procedures

The pass-through entity must have established written policies on subrecipient monitoring, as described in 2 C.F.R. § 200.331. The pass-through entity is required to monitor the subrecipient's use of Federal funds during the program period. The pass-through entity should evaluate the subrecipient's risk of non-compliance with Federal statutes, regulations and terms and conditions of the subaward for purposes of determining the appropriate monitoring. The methods of monitoring may vary; some of the factors to be considered in determining the nature, timing, and extent of monitoring are as follows:

- Subrecipient's prior experience with the same or similar subawards;

- Results of previous audits;

- Whether the subrecipient has new personnel or a new or substantially changed system;

- The extent and results of Federal awarding agency monitoring.

Subrecipients may be evaluated as higher risk or lower risk to determine the need for closer monitoring. Generally, new subrecipients require closer monitoring. For existing subrecipients, closer monitoring may be warranted based on results noted during monitoring and subrecipient audits, (e.g., the subrecipient has a history of non-compliance as either a recipient or subrecipient, new personnel, or new or substantially changed systems).

- Programs with complex compliance requirements have a higher risk of non-compliance;

- The larger the percentage of program awards passed through, the greater the need for subrecipient monitoring;

- Larger dollar awards are of greater risk.

Some of the mechanisms that may be used to monitor subrecipient activities throughout the year include regular communication with subrecipients, and appropriate inquiries concerning program activities; performing subrecipient site visits to examine financial and programmatic records and observe operations; and reviewing detailed financial and program data and information submitted by the subrecipient.

# III. Postaward Requirements

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

However, when no site visit is conducted, the pass-through entity should be familiar with the subrecipient's financial operations and procedures, as well as their maintenance of current financial data such as timesheets, invoices, contracts, and ledgers that tie back to financial reports.

Subrecipient monitoring by the pass-through entity must include:

- Reviewing financial and performance reports submitted by the subrecipient;
- Following-up and ensuring the subrecipient takes action to address deficiencies found through audits, onsite reviews, and other means, and
- Issuing a management decision for audit findings pertaining to the award (see below, and 2 C.F.R. § 200.521 (c)).

The purpose of these monitoring activities is to provide reasonable assurance that the subrecipient has administered the pass-through funding in compliance with the laws, regulations, and the provisions of the award and that the required performance goals are being achieved.

 **ACTION ITEM**

Recipients must have written subrecipient monitoring policies and procedures.

### Subrecipient Audits

The pass-through entity needs to develop procedures to ensure that subrecipients expending $750,000 or more in Federal awards during the subrecipient's fiscal year submit the required completed audit within 9 months after their year-end or one month after the issuance of their audit. Upon receipt of the subrecipient audit, the pass-through entity needs to:

- Evaluate the impact of subrecipient activities on the recipient organization's ability to comply with applicable Federal regulations,
- Issue a management decision on audit findings within 6 months after receipt of the subrecipient's audit report, and
- Ensure that the subrecipient takes timely and appropriate corrective action on all audit findings.

In cases of continued inability or unwillingness of a subrecipient to have the required audits conducted, the pass-through entity shall take appropriate action using sanctions. It is important to have policies and procedures in place to properly exercise the fiduciary responsibility in executing the award requirements should a subrecipient not comply with requirements, laws, and regulations.

As prescribed in 2 C.F.R. § 200 Subpart F, subrecipients are not required to submit a copy of the reporting package when there are "no audit findings," i.e., when the schedule of findings and questioned costs does not disclose audit findings relating to the Federal award requirements that was provided in the agreement with the subrecipient, and the summary schedule of prior audit findings does not report the status of audit findings relating to Federal awards.

# III. Postaward Requirements

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

---

**ⓘ  FINANCIAL MANAGEMENT TIP**

The information in the Federal Audit Clearinghouse (FAC) database may be used as evidence to verify that the required audit was performed and the subrecipient had "no audit findings." This verification is in lieu of reviewing submissions from the subrecipient when there are no audit findings. The FAC database is available online.

---

## Best Practices

Listed below are best practices that pass-through entities may consider in developing policies and procedures around subrecipient monitoring.

### Subrecipient Pre-Award and Monitoring Procedures

- Develop a request for applications (proposals) that clearly defines the work to be accomplished in furtherance of the Federal award purpose(s).
- Require subrecipients to include in their applications a time-phased milestone plan of action based on clearly-stated accomplishments defined in the proposal.
- Integrate budget line items into the performance plan.
- Require performance/progress reports and supporting documentation with monthly invoices. Performance reports should discuss:
  - ▶ Milestones achieved/to be achieved;
  - ▶ Any significant problem, issues, or concerns;
  - ▶ Timely accomplishments and delays, and
  - ▶ Actual cost incurred compared to each budget line item with variances explained.

### Remedies for Subrecipient Noncompliance

If a subrecipient fails to comply with Federal statutes, regulations, or the terms and conditions of a Federal award, the pass-through entity may impose additional conditions. However, if it is determined that noncompliance cannot be remedied by imposing additional conditions, the pass-through entity may take one or more of the following actions:

- Withholding of disbursements or further awards;
- Disallowance of cost;
- Suspension/termination of award;
- Suspension/Debarment;
- Civil lawsuit, or
- Criminal prosecution.

III. Postaward Requirements

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

| ⓘ FINANCIAL MANAGEMENT TIP |
|---|

To proactively monitor subrecipients:

• Read award/contract documents carefully.

• Ask for explanation and clarity; don't assume.

• Document transactions, agency guidance, performance evaluations, etc., in writing.

• Keep documentation on hand.

• Document, document, document! If it isn't documented, it doesn't exist!

## III. Postaward Requirements

### 3.15 REPORTING REQUIREMENTS

#### Introduction

The Department of Justice (DOJ) requires award recipients to submit both financial and program reports. These reports describe the status of the funds or the project, compare actual accomplishments to objectives, and provide other pertinent information. The specific requirements, reporting periods, and submission deadlines are identified below. The award documents may also include information regarding reporting requirements specific to the particular award.

 **ACTION ITEM**

Be sure to read ALL the special conditions in the award carefully!

#### SF-425 Federal Financial Reports

The SF-425 Federal Financial Report (FFR) should show the actual funds that have been spent (expenditures) and any bills that will be paid (unliquidated obligations incurred) at the recipient/subrecipient level, both for the reporting period and cumulatively, for each award. A copy of the SF-425 FFR is available in Appendix II.

Recipients will report the summary information on expenditures, unliquidated obligations incurred, the money from the recipient organization (match), program income, and indirect costs for each quarter of the project. Also the SF-425 should indicate whether the recipient's accounting system operates on a cash- or accrual-basis of accounting.

For OJP and OVW recipients:

- The SF-425 must be submitted online through the Grants Management System (GMS) Financial Status Reports Module. This module will allow authorized users to view current and past SF-425s and file or amend the SF-425 for the current quarter. The form presented in Appendix II is a slightly different version than the version in GMS.

- The GMS screens were designed by OJP to allow recipients to complete the report more quickly by including the previously reported amounts where possible.

- Once the submit button has been selected for the FFR, a system message, such as the sample provided in Figure 1, will appear on the screen indicating that the report has been successfully submitted. Please note that the system message may look different from the sample message in Figure 1 depending on the type of award.

COPS Office recipients are encouraged to submit the quarterly SF-425 through Agency Portal via the COPS Office website at https://cops.usdoj.gov.

## III. Postaward Requirements

### 3.15 REPORTING REQUIREMENTS

Figure 1



The quarterly SF-425 must be submitted online no later than 30 days after the last day of each quarter. If the FFR is not submitted by the due date, the GMS will automatically consider it to be delinquent and draw down of funds through the Grants Payment Request System (GPRS) will not be permitted. An automatic email notification will be sent if this occurs.

For COPS Office recipients:

- The report is due no later than 30 days after the last day of each quarter. If the SF-425 is not submitted by the due date, recipients will not be permitted to draw down funds through the GPRS system.

- Recipients are highly encouraged to submit their SF-425 online. Visit the COPS Office website at https://cops.usdoj.gov and select the "Account Access" link in the upper right corner to login, complete, and submit reports online. Attachments will not be accepted.

- In cases of an emergency, recipients can submit a completed and signed copy of the SF-425 via fax at 202-616-4428 or mail it to the following address:

> U.S. Department of Justice
> Office of Community Oriented Policing Services
> Federal Financial Reports (SF-425) Records Center 10.E.1004
> 145 N. Street N.E.
> Washington, DC 20530

---

▶ **COPS OFFICE SPECIFIC TIP**

For additional instruction on completing the SF-425 form go to https://cops.usdoj.gov/Default.asp?Item=100 or call the COPS Office Response Center at: 800-421-6770.

---

# III. Postaward Requirements

## 3.15 REPORTING REQUIREMENTS

| SF-425 Federal Financial Reports—Due Quarterly | | |
|---|---|---|
| **Reporting Period** | **Due By Date** | **Delinquent After** |
| October 1-December 31 | January 30 | January 30 |
| January 1-March 31 | April 30 | April 30 |
| April 1-June 30 | July 30 | July 30 |
| July 1-September 30 | October 30 | October 30 |

> ### ⓘ FINANCIAL MANAGEMENT TIP
>
> If the Federal Financial Report (SF-425) or progress report is delinquent, an **automatic hold will be placed on the remaining funds associated with the award** and any payments requested through the GPRS will be denied. In addition, any new awards or adjustments to current awards may be restricted until all reports are current.

The final FFR is due within 90 days after the end date of the award period, but may be submitted as soon as all outstanding expenditures have been completed.

**Important Reminders**

- Report actual funds spent, NOT the draw down amounts from the Federal Government.
- Report all allowable costs incurred, both at the recipient and subrecipient level.
- Report the cumulative matching expenditures.
- Report program income as the cumulative amount, NOT the quarterly amount.
- Report correct indirect cost rate and/or base supplied by the cognizant Federal agency.
- Report correct indirect cost rate type (provisional, final, or fixed).

For recipients that elect to charge the "de minimis" rate of 10% of modified total direct costs, report the details of indirect cost including period, rate, base, and amount charged in Section 12 (Remarks).

> ### ▶ OJP/OVW COMPONENT SPECIFIC TIP
>
> For information concerning online filing of SF-425 reports, go to *the OJP Training And Technical Assistance GMS User Guide; GMS Financial Status Reports Module (SF-425) for Recipients [PDF - 2.98 MB]* or OJP recipients should contact the OCFO Customer Service Center by phone at 1-800-458-0786 (option 2) or by email at ask.ocfo@usdoj.gov. OVW recipients should contact the OVW Grants Financial Management Division at 1-888-514-8556 or OVW.GFMD@usdoj.gov.

## III. Postaward Requirements

### 3.15 REPORTING REQUIREMENTS

#### Progress/Program Reports

Progress/program reports provide information relevant to the performance and activities of a plan, program, or project. Progress reports are submitted by recipients annually or semi-annually, depending on the award type. Semi-annual progress reports must be submitted within 30 days after the end of the reporting periods, which are June 30 and December 31, for the life of the award. Unless otherwise indicated, the final report is due within 90 days after the end date of the award. Reporting requirements are specified in the grant solicitation and in the special conditions specified in the award. OJP and OVW Progress Reports must be submitted via GMS. Questions concerning progress reporting should be directed to the Program Manager for the award.

COPS Office recipients are encouraged to submit progress/program reports online at https://cops.usdoj.gov.

> ▶ **OJP/OVW COMPONENT SPECIFIC TIP**
>
> Technical questions concerning GMS should be addressed to the GMS Helpdesk at 1-888-549-9901 for OJP awards, and 1-866-655-4482 for OVW awards. Programmatic questions should be directed to the program office grant manager identified in the award documents.

> ▶ **OJP SPECIFIC TIP**
>
> FFRs and progress reports are not applicable to awards under the State Criminal Alien Assistance Program, Southwest Border Prosecution Initiative, Northern Border Prosecution Initiative, and Bulletproof Vest Partnership Program.

#### Special Reports

In the review and approval process for plans and applications, it is sometimes necessary for the awarding agency to require that special or unique conditions be met in order to make an award. These special conditions will vary from award to award; however, acceptance of the award constitutes an agreement that the conditions will be met either prior to the project or during the course of the award period.

#### Government Performance and Results Act (GPRA), Modernization Act (GPRAMA)

Award recipients must agree to collect data appropriate for facilitating reporting requirements established by the Government Performance and Results Act Modernization Act.

- Ensure that valid and auditable source documentation is available to support all data collected for each performance measure required by the program including those specified in the program solicitation or award.

# III. Postaward Requirements

## 3.15 REPORTING REQUIREMENTS

### Reports Required under the Federal Funding Accountability and Transparency Act (FFATA)

The Federal Funding Accountability and Transparency Act of 2006 (referred to as FFATA or The Transparency Act) requires the Office of Management and Budget to maintain a single, searchable website that provides the public with information about how tax dollars are spent and gives them the ability to hold the Federal Government accountable for each spending decision. That site is http://www.usaspending.gov/Pages/Default.aspx.

Pass-through entities that award $25,000 or more to subrecipients are required to submit data in the FFATA Subaward Reporting System. Per 2 C.F.R. Volume 1, §170 (Reporting Subaward and Executive Compensation Information), prime grant recipients awarded a new Federal grant greater than or equal to $25,000 as of October 1, 2010 are subject to FFATA subaward reporting requirements as outlined in the OMB guidance issued August 27, 2010. The prime awardee is required to file a FFATA subaward report through the FFATA Subaward Reporting System (FSRS), located at https://www.fsrs.gov, by the end of the month following the month in which the direct recipient awards any subgrant greater than or equal to $25,000. Pass-through entities should also review and carefully consider 2 C.F.R. § 200.330 (Subrecipient and Contractor Determinations), as it includes guidance in making an appropriate determination that is relevant not only with regard to subrecipient reporting under FFATA, but also is key to the proper financial and programmatic administration and management of federal award funds.

The reporting requirements for Federal award recipients of both formula and discretionary grants awarded on or after October 1, 2010 are:

- All subaward information must be reported by the Federal recipient.
- If the initial subaward is at least $25,000, the award recipient must report the subawards and the names and annual compensation of the subawardee's five highest paid executives.
- If the initial award is below $25,000 but subsequent award modifications result in a total award equal to or over $25,000, the award will be subject to the reporting requirements as of the date the award reaches $25,000.
- If the initial award is equal to or greater than $25,000 but de-obligation of funding causes the total award amount to fall below $25,000, recipients will continue to be subject to the reporting requirements.

The reporting requirements do NOT apply to the following:

- Awards to individuals
- Recipients that had a gross income of $300,000 or less in their previous tax year
- Classified information

---

☑ **ACTION ITEM**

Reporting requirements for DOJ awards may change from year to year. Please read the award documents carefully.

---

## III. Postaward Requirements

### 3.16 RETENTION AND ACCESS REQUIREMENTS FOR RECORDS

#### Retention of Records

Retain all financial records, supporting documents, statistical records, and all other records pertinent to the award for a period of 3 years from the date of submission of the final expenditure report (Federal Financial Report/SF-425). For more information, see 2 C.F.R. § 200.333.

- Retention is required for purposes of Federal examination and audit.
- Records may be retained in an electronic format.

#### Coverage

The retention requirement includes, if applicable, books of original entry, source documents, supporting accounting transactions, the general ledger, subsidiary ledgers, personnel and payroll records, cancelled checks, and related documents and records.

- Source documents may include copies of all awards, applications, and required recipient financial and narrative reports.
- Personnel and payroll records must include the time and attendance reports for all full-time and/or part-time individuals reimbursed under the award.
- Time and effort reports are also required for consultants.

#### Exception to the 3-Year Retention Period

The 3-year retention period starts from the date of submission of the final expenditure report. The following are exceptions to the standard record retention period:

- If any litigation, claim, audit, or other action involving the records has started before the expiration of the 3-year period, the records must be retained until all issues involving the records have been resolved and final action taken.
- When notified by the DOJ grant-making component, cognizant agency for audit, oversight agency for audit, cognizant agency for indirect costs, or pass-through entity to extend the retention period.
- Records for real property and equipment acquired with Federal funds must be retained for 3 years after the final disposition.
- When records are transferred to or maintained by the DOJ grant-making component or pass-through entity, the 3 year retention period requirement is not applicable to the non-Federal entity.
- When required for program income earned after the period of performance, the retention period starts from the end of the non-Federal entity's fiscal year in which the program income is earned.
- Indirect cost proposals submitted for negotiation must be retained for 3 years from the date of submission.
- Indirect cost proposals not required to be submitted for negotiation must be maintained for 3 years from the end of the fiscal year covered by the proposal.

## III. Postaward Requirements

### 3.16 RETENTION AND ACCESS REQUIREMENTS FOR RECORDS

#### Maintenance of Records

Maintain and separately identify all records for each Federal fiscal period so that information desired may be readily located.

- Protect the records adequately against fire or other damage.

- Store the records away from the recipient's principal office; however, a list of the documents must be available if needed.

- Whenever practicable, information should be collected, transmitted and stored in open and machine readable formats rather than in closed formats or on paper.

#### Access to Records

The DOJ grant-making component, the DOJ Office of the Inspector General, the Comptroller General of the United States, and the pass-through entity, or any of their authorized representatives, must have access to any documents, papers, or other records of recipients which are pertinent to the award, in order to make audits, examinations, excerpts, and transcripts.

- The right of access is not limited to the required retention period; it will last as long as the records are retained.

- However, only under extraordinary and rare circumstances would such access include review of information that would personally identify confidential informants or victims of crime. Routine monitoring cannot be considered extraordinary and rare circumstances that would necessitate access to this information. When access to the information that could personally identify victims of a crime is determined to be necessary, appropriate steps to protect this sensitive information must be taken by both the non-Federal entity and the DOJ grant-making component.

- Any such access, other than under a court order or subpoena pursuant to a bona fide confidential investigation, must be approved by the Head of the DOJ grant-making component.

> ► **OVW SPECIFIC TIP**
>
> - Unless required by statute, OVW will not place restrictions on recipients that limit public access to records of recipients that are pertinent to an award, except when OVW can demonstrate that such records must be kept confidential and would have been exempted from disclosure pursuant to the Freedom of Information Act (FOIA) if the records had belonged to OVW.
>
> - In addition, under 42 U.S.C. §13925 (b)(2), OVW grantees and subgrantees may not disclose identifying information about victims served with VAWA funds without a written, informed, time-limited release from the victim. Such a release may not be a condition of receiving services. Grantees and subgrantees can also release information if compelled by a statutory or court mandate. In that case, they are required to make reasonable attempts to provide notice to affected victims and take steps to protect the privacy and safety of the persons affected by the release of information. Grantees and subgrantees are required to document their compliance with this provision.

# III. Postaward Requirements

## 3.17 REMEDIES FOR NONCOMPLIANCE

### Introduction

If the Department of Justice (DOJ) grant-making component or pass-through entity finds that the award recipient or subrecipient has failed to comply with Federal statutes, regulations, or the terms and conditions of an award, additional conditions may be imposed as described in 2 C.F.R. § 200.207. However, if it is determined that noncompliance cannot be remedied by imposing additional conditions, the DOJ grant-making or pass-through entity may take one or more of the following actions under 2 C.F.R. § 200.338:

- Temporarily withhold cash payments pending correction of the deficiency or more severe action by the grant-making component or pass-through entity;
- Disallow all or part of the cost of activities or actions not in compliance;
- Wholly or partly suspend or terminate the Federal award;
- Initiate suspension or debarment proceedings as authorized under 2 C.F.R. § 180 and DOJ's implementing regulations at 2 C.F.R. § 2867 (or in the case of a pass-through entity, recommend such a proceeding be initiated by the grant-making component);
- Designate the award recipient as a high-risk recipient under the DOJ high-risk policy;
- Withhold future awards for the project or program; or
- Take other remedies that may be legally available.

### Termination

A Federal award may be terminated in whole or in part as follows:

- By the DOJ awarding agency or pass-through entity for failure to comply with the terms and conditions of an award;
- By the DOJ awarding agency or pass-through entity for cause;
- By the DOJ awarding agency or pass-through entity with consent of the recipient, in which case the two parties must agree upon termination conditions, including the effective date, and in the case of partial termination, the portion to be terminated; or
- By the recipient upon sending the DOJ awarding agency or pass-through entity written notification including the reasons for such termination, the effective date, and in the case of partial termination, the portion to be terminated. However, if the DOJ awarding agency determines that partial termination of the award will not accomplish the purposes for which the award was made, then DOJ may terminate the award in its entirety.

The awarding agency or pass-through entity will provide the recipient or subrecipient with notice of termination. If the award is terminated for failure to comply with the statutes, regulations, or terms and conditions of the award, the notification must state that the termination decision may be considered in evaluating future applications received from the non-Federal entity.

When an award is terminated or partially terminated, the awarding agency or pass-through entity and the recipient or subrecipient remain responsible for compliance with the requirements in 2 C.F.R. § 200.343 (Closeout) and 2 C.F.R. § 200.344 (Post-closeout adjustments and continuing responsibilities).

## III. Postaward Requirements

### 3.17 REMEDIES FOR NONCOMPLIANCE

#### Hearings and Appeals

Upon taking a remedy for noncompliance, the DOJ awarding agency will provide the recipient with an opportunity to object and provide information and documentation challenging the suspension or termination action (2 C.F.R. § 200.341). Refer to Office of Justice Programs (OJP) Appeal and Hearing Procedures for appeal rights in event of termination (Title 28 C.F.R. § 18).

#### Effects of Suspension and Termination

Costs incurred during a suspension or after termination of a Federal award or subaward are not allowable unless the DOJ awarding agency or pass-through entity expressly authorizes them in the notice of suspension or termination, or subsequently. However, costs during suspension or after termination are allowable if:

- The costs result from obligations which were properly incurred before the effective date of suspension or termination, are not in anticipation of it; and

- The costs would be allowable if the Federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect.

## III. Postaward Requirements

### 3.18 CLOSEOUT

#### Introduction

Closeout means the process by which the Federal awarding agency or pass-through entity determines that all applicable administrative actions and all required work of the Federal award have been completed and takes actions as described in 2. C.F.R. § 200.343 (Closeout). The following chapter provides guidance on closeout procedures applicable to Department of Justice (DOJ) awards.

#### First Step

For OJP and OVW awards, the recipient will initiate the closeout process once programmatic and financial requirements have been met by using the Closeout Module in the Grants Management System (GMS). All award recipients have 180 calendar days after the project period end date to close out the award.

- If the award recipient does not submit all required reports within 90 calendar days of project period end date, OJP/OVW will begin the closeout process. This is referred to as an administrative closeout.

For COPS Office awards, the recipient will initiate the closeout process once programmatic and financial requirements have been met by using the Closeout Module in the Enterprise Content Management (ECM) System. All award recipients must submit, no later than 90 calendar days after the end date of the period of performance, all financial, performance, and other reports as required by the terms and conditions of the award.

COPS Office recipients will be sent a final progress report from the COPS Office. This report will serve as the recipient's final programmatic report on the award and the information provided will be used to make the final assessment of the award process. As with the quarterly progress reports, this final report must be submitted via the Agency Portal on the COPS Office website at https://cops.usdoj.gov.

- Awards that do not meet closeout requirements (i.e., program requirements not met, open compliance issues, etc.) will be removed from the closeout process and placed in a closeout hold status.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Recipients should start the closeout process as soon as the program is completed and all Federal and matching funds have been spent.

#### Closeout of Awards

##### Cash Reconciliation and Final Draw Down

Award recipients must conduct a financial reconciliation of their accounting records to the final Federal Financial Report (FFR/SF-425) at closeout. Recipient must:

- Report any required match on the final FFR.

- Liquidate obligations incurred prior to the project period end date no more than 90 days after the project period end date.

- Request final reimbursement (draw down) of Federal expenditures made within the approved project period in conjunction with the final SF-425. This request must be submitted prior to the end of the liquidation period (90 days after the end date of the project). Failure to request final payment by this date will cause delays and result in additional administrative paperwork.

## III. Postaward Requirements

### 3.18 CLOSEOUT

**Recipient Closeout Requirements**

Within 90 days of the end date of the award (or any approved extension), the recipient must submit the following to the awarding agency:

- Final Federal Financial Report (FFR) (submitted on SF-425)

  ▸ This FINAL report of expenditures must have no unliquidated obligations.

  ▸ Any unobligated or unexpended funds will be de-obligated from the award amount. Make sure that all of the funds have been obligated prior to the award end date.

  ▸ Match requirements must be met by the end of the award period and included in the report.

  ▸ Recipients who have drawn down funds in excess of their Federal expenditures must return unused funds to the awarding agency when they submit the final report.

  ▸ Be sure to reconcile the final FFR against the internal accounting records. All entries in the accounting system must be supported by adequate source documentation (for example, original invoices and contracts).

  ▸ Report all allowable costs incurred, both at the recipient and subrecipient level.

- Final progress report must be prepared in accordance with instructions provided by the awarding agency's program office.

- Special condition(s) must have been met and removed via Grant Adjustment Notice.

- Inventions that were conceived or first introduced to practice during the course of work under the award project must be listed on an invention report before closeout.

- Real or personal property reports must be submitted in accordance with the terms of the award.

> ☑ **ACTION ITEM**
>
> Submit the final SF-425, final progress report, and invention or equipment reports (if applicable) well in advance of the end of the 90-day period. After the liquidation period, recipients are unable to draw down any additional funds on the award.

**Refund of Federal Grant Monies and/or Program Income**

Award recipients must report the amount of Federal funds returned (unobligated balance of Federal funds) on line 10(h) of the final SF-425, and any unexpended program income returned on line 10(o) of the final FFR.

If funds must be returned at award closeout, remit as follows:

- A check made payable to the U.S. Department of Justice/Grant-making Component Office name (ex. OJP, OVW, or COPS Office) to include the award number (COPS Office recipients must also include ORI and vendor/EIN number);

- A cover letter or voucher containing the grant award number for the refund, the unobligated balance, and an itemization of funds (e.g., the amount to be applied to excess payments, interest-income, program income, questioned costs, and so forth); and

- A copy of the final SF-425 report which reconciles the amount of the refund.

## III. Postaward Requirements

### 3.18 CLOSEOUT

If the financial reconciliation process reveals that a refund is due to the Department of Justice (DOJ), the DOJ grant-making component will contact the recipient to request the funds owed. The recipient must submit all refunds to DOJ by check.

- All checks will be converted into an electronic funds transfer (EFT).
- The account information from the check will be scanned and stored. DOJ will debit the account for the amount specified on the check within 24 hours.
- Recipients will not receive a cancelled check from the bank.
- DOJ will destroy all checks; however, the information from the check necessary to process the payment will be stored electronically.

If the EFT is returned for insufficient funds, DOJ will process the transfer two more times. DOJ may charge a processing fee for insufficient funds.

All refund checks and letters for OJP awards should be submitted to:

> Office of Justice Programs
> Office of the Chief Financial Officer
> ATTN: Accounting Control Branch
> 810 Seventh Street, N.W.
> Washington, DC 20531

All refund checks and letters for OVW awards should be submitted to:

> U.S. Department of Justice
> Office on Violence Against Women
> ATTN: Grants Financial Management Division (GFMD)
> 145 N Street, N.E.
> Suite 10W
> Washington, DC 20530

All refund checks and letters for the COPS Office awards should be submitted to:

> U.S. Department of Justice
> Office of Community Oriented Policing Services
> ATTN: Deputy Finance Officer
> 145 N Street, N.E.
> Washington, DC 20530

**Failure to Remit Funds Owed**

Any funds paid to the recipient that exceeds the amount to which the organization is finally determined to be entitled under the Federal award constitutes a debt to the Federal government. If this debt is not paid within 90 calendar days after the demand for payment, DOJ may take a range of actions, including administratively offsetting the debt against other requests for reimbursement, withholding of advance payments otherwise due to the organization, or other action permitted by Federal laws. To the extent permitted under Federal law, DOJ will charge interest on an overdue debt, in accordance with the Federal Claim Collection Standards (31 C.F.R. § 900 through 904). The date from which interest is computed is not extended by litigation or the filing of any form of appeal. See 2 C.F.R. § 200.345.

## III. Postaward Requirements

**3.18 CLOSEOUT**

If the recipient does not pay funds owed to DOJ, the debt may be referred to the U.S. Department of the Treasury for collection, as provided by Federal laws.

- Treasury may add fees, fines, and penalties to the original amount of the debt owed to the Federal agency.

- Failure to return any funds due to DOJ may result in a high-risk designation for future awards, withholding or freezing of funds, or special conditions on all other awards to the organization. It may also impact future financial integrity reviews, which in turn will affect future grant awards.

# III. Postaward Requirements

## 3.19 AUDIT REQUIREMENTS

### Audit Threshold

**For fiscal years beginning on or after December 26, 2014.** Non-Federal entities that expend $750,000 or more in Federal funds (from all sources including pass-through subawards) in the organization's fiscal year are required to arrange for a single organization-wide audit conducted in accordance with the provisions of Title 2 C.F.R. Subpart F.

**For fiscal years beginning before December 26, 2014.** Non-Federal entities (other than a for-profit/commercial entity) that expend $500,000 or more in Federal funds (from all sources including pass-through subawards) in the organization's fiscal year are required to arrange for a single organization-wide audit conducted in accordance with the provisions of Office of Management and Budget (OMB) Circular A-133 Compliance Supplement 2014.

Non-Federal entities that expend less than the applicable audit threshold a year in Federal awards are exempt from Federal audit requirements for that year. However, non-Federal entities must keep records that are available for review or audit by appropriate officials including the Federal agency, pass-through entity, and U.S. Government Accountability Office (GAO).

### Audit Objectives

Awards are subject to conditions of fiscal, program, and general administration to which the recipient expressly agrees upon acceptance of the award. See 2 C.F.R. § 200.514.

- The audit objective is to review the recipient's accountability of funds and required non-Federal contributions to determine whether the recipient has done all of the following:
  - ▶ Established an accounting system with adequate internal controls that provide full accountability for revenues, expenditures, assets, and liabilities.
  - ▶ Prepared financial statements which are presented fairly and in accordance with generally accepted accounting principles.
  - ▶ Submitted financial reports (including Federal Finance Reports (FFRs/SF-425s); cash reports; and claims for advances and reimbursements that contain accurate and reliable financial data and are presented in accordance with the terms of applicable agreements.
  - ▶ Expended Federal funds in accordance with the terms of award agreements and those provisions of Federal law or regulations that could have a material effect on the financial statements or on the awards tested.

### Audit Reporting Requirements

Independent auditors should follow the requirements prescribed in OMB Circular A-133 or 2 C.F.R. Subpart F, as applicable.

- The recipient's accounting records must support all amounts reported to the Department of Justice (DOJ).
- The recipient's financial activity reported to DOJ should reconcile to the amounts reported on the recipient's audited financial statements.
- If there are any differences between the recipient's audited financial statements and the financial activity reported to DOJ, the recipient must be able to explain the differences.

## III. Postaward Requirements

### 3.19 AUDIT REQUIREMENTS

- If the auditor becomes aware of illegal acts or other irregularities, he or she must give prompt notice to the recipient's management officials above the level of involvement.

- The recipient, in turn, must promptly notify the Federal cognizant agency and/or awarding agency of the illegal acts or irregularities and of proposed and actual actions, if any.

- All awarding agency personnel are responsible for informing the following individuals and groups of any known violations of the law within their respective area of jurisdiction:
  - ▶ OJP Office of the Chief Financial Officer
  - ▶ OJP Office of the General Counsel
  - ▶ U.S. Department of Justice Office of the Inspector General (OIG)
  - ▶ State and local law enforcement agencies or prosecuting authorities, as appropriate (see Chapter 3.20: Grant Fraud, Waste, and Abuse).

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Costs for audits not required or not performed in accordance with 2 C.F.R. Part 200 Subpart F, are unallowable. If a non-Federal entity did not meet the applicable expenditure threshold in 2 C.F.R 200.501 for Federal funds during the non-Federal entity's fiscal year, but contracted with a certified public accountant to perform an audit, those costs may not be charged to the grant. See 2 C.F.R. § 200.425.

> ☑ **ACTION ITEM**
>
> Audit costs, if allowable by the award, should be prorated and charged to the grant based on the ratio of all Federal grants being audited. See 2 C.F.R. § 200.405.

### Audit Submission Requirements

The Federal Audit Clearinghouse (FAC) requires all grant award recipients to use the Internet Data Entry System (IDES) to submit Standard Form-Single Audit Component (SF-SAC) and the Single Audit Reporting package online.

- Recipients will use IDES to:
  - ▶ Enter SF-SAC data online;
  - ▶ Check SF-SAC data for errors using the "Check Data" feature;
  - ▶ Upload a PDF copy of the Single Audit Reporting package;
  - ▶ Certify SF-SAC electronically using a signature code provided by the IDES; and
  - ▶ Submit their complete certified SF-FAC and Single Audit Reporting package to the FAC electronically.

- To review the submission requirements and create an online report ID, visit FAC's website at https://harvester.census.gov/facweb/.

# III. Postaward Requirements

## 3.19 AUDIT REQUIREMENTS

### Submission of Audit Reports

Recipients must submit audit reports as follows:

- For State and local governments, institutions of higher education, and nonprofit institutions:
  - ▸ Completed audit reports for fiscal years 2008 and later must be submitted electronically, rather than in paper format, to the Federal Audit Clearinghouse (FAC).
  - ▸ Instructions for submitting paper and online audit reports on FAC's website are listed at the FAC Data Collection Form Options web page.

---

**ⓘ FINANCIAL MANAGEMENT TIP**

Completed audit reports for State and local governments, institutions of higher education, and nonprofit institutions, should not be mailed to DOJ unless requested by an agency official.

---

- Commercial organizations and individuals should mail one copy of all completed audit reports to:

  U.S. Department of Justice
  Office of Justice Programs
  Office of the Chief Financial Officer
  ATTN: Control Desk
  810 Seventh Street, N.W.
  Washington, DC 20531

### Audit Report Confirmation Requests

When an independent audit is being conducted, recipients of OJP/COPS Office grant funds should email audit confirmation requests to auditconfirmation@ojp.usdoj.gov.

Audit confirmation requests for OVW awards should be emailed to ovw.gfmd@usdoj.gov.

# III. Postaward Requirements

## 3.19 AUDIT REQUIREMENTS

### Due Dates for Audit Reports

Audit reports are due no later than 9 months after the close of each fiscal year during the term of the award. See 2 C.F.R. § 200.512(a). Federal agencies can no longer grant due date extensions for submission of single audit reports.

### Audit Compliance

When an organization-wide audit has not been conducted, the following materials may be reviewed to determine recipient compliance with Federal requirements:

- Audits from recipients that were made in accordance with the Government auditing standards found in 2 C.F.R. Subpart F (§ 200.500).
- Previous audits performed on recipients' operations.
- Desk reviews of project documentation.
- Project audits by auditors obtained by recipients.
- Evaluations of recipients' operations by program officials.

### Resolution of Audit Reports

For an audit to be effective, it is important for a recipient to have policies and procedures in place to ensure timely corrective action on audit recommendations.

Each recipient must designate officials responsible for the following tasks:

- Following up on audit recommendations.
- Maintaining a record of the corrective action taken on recommendations, including time schedules for completing corrective action, such as those stated in a Corrective Action Plan (CAP).
  - ▶ Typically, the CAP letter will include a description of the finding, specific steps to take to implement the recommendation, including written formal procedures; a timetable for performance of each corrective action; and a description of monitoring to be performed to ensure implementation of the CAP.
  - ▶ The recipient must generate a response to the CAP letter within the specified timeframe, usually within 30 days after receipt of the letter.
- Implementing audit recommendations.

> ### ⓘ FINANCIAL MANAGEMENT TIP
>
> The awarding agency monitors the audit report requirements for commercial organizations through its audit tracking system. Once audit reports are received through the DOJ single audit process, OJP will track the reports until the audit has been resolved and officially closed by the Office of the Inspector General.

## III. Postaward Requirements

### 3.19 AUDIT REQUIREMENTS

#### Top Audit Findings (Fiscal Year 2016)

Below are the most common findings from audits of DOJ awards in Fiscal Year 2016, the most recent year for which this information is available. These findings are provided to make recipients aware of some areas to monitor closely in managing their award so that they are in compliance with all requirements and their audits go smoothly.

| Top Audit Findings (Fiscal Year 2016) | |
|---|---|
| 1 | Procedures not documented or need improvement. |
| 2 | Special conditions not met by grantee. |
| 3 | Federal Financial Reports (FFR) not accurately prepared. |
| 4 | Debarment and Suspension – verification not performed or not properly documented. |
| 5 | Federal Financial Reports (FFR) not submitted timely. |
| 6 | Accounting system inadequate or not effectively utilized to account for grant funds. |
| 7 | Excess cash-on-hand. |
| 8 | Subrecipient monitoring not being conducted. |
| 9 | Federal Financial Reports (FFR) amounts did not reconcile to grantee's accounting system. |
| 10 | Progress reports not timely submitted. |

#### Audit of Subrecipients

When subawards are made by the direct recipient to another organization or organizations, the direct recipient is responsible for making sure that subrecipients comply with the audit requirements set forth in this chapter. See 2 C.F.R. § 200.331(f).

- It is the direct recipient's responsibility to ensure that subrecipient audit reports are received and that corrective actions on all audit findings have been implemented.

- The subrecipient must convey to the direct recipient any known or suspected violations of law encountered during audits, including fraud, theft, embezzlement, forgery, or other serious irregularities.

- Providing an audit report special condition on all subawards.

☑ **ACTION ITEM**

If a subrecipient is not required to have an audit, as stipulated in 2 C.F.R Subpart F (§ 200.500), the direct recipient is still responsible for monitoring the subrecipient's activities to provide reasonable assurance that the subrecipient administers Federal awards in compliance with Federal requirements. See 2 C.F.R. § 200.330 through 200.332 – (Subrecipient Monitoring and Management).

## III. Postaward Requirements

### 3.19 AUDIT REQUIREMENTS

#### Technical Assistance

If DOJ is the assigned cognizant agency or has oversight responsibilities because it has provided the preponderance of direct Federal funding to an organization, then the DOJ Office of the Inspector General (OIG) is available to provide technical assistance in implementing the audit requirements of this chapter. Requests for technical assistance should be addressed to the appropriate DOJ Regional Inspector General's Office (see the listing of regional offices at the end of this chapter).

This assistance is available for areas such as:

- Review of the audit arrangements and/or negotiations
- Review of the audit program or guide to be used for conducting the audit
- Onsite assistance in the performance of the audit, when deemed necessary, as a result of universal or complex problems that may arise

#### Full-Scope Auditing

In addition to arranging and providing for the organizational, financial, and compliance audits required by 2 C.F.R. Subpart F (§ 200.500), direct recipients and subrecipients are encouraged to provide for additional audit coverage, as deemed appropriate.

- The additional audit coverage to be provided should be determined based on the circumstances surrounding the particular organization, function, program, or activity to be audited; management needs; and available audit capability.
- Direct recipients and subrecipients can determine the need for additional audit coverage by considering answers to the following questions about the organization that may need the coverage:
  - ‣ Are resources managed and used economically and efficiently?
  - ‣ Are desired results and objectives achieved effectively?
  - ‣ Is the accounting system and system of internal controls acceptable prior to the receipt of awarding agency funds? At a minimum, internal controls should include documented written procedures of the direct recipient or subrecipient.
  - ‣ Are the systems and controls adequate to detect fraud, waste, and abuse?

#### Commercial (For-Profit) Organizations

These organizations must have financial and compliance audits conducted by qualified individuals who are organizationally, personally, and externally independent from those who authorize the expenditure of Federal funds.

- This audit must be performed in accordance with the Government Auditing Standards (January 2007 Revision) [PDF - 867 Kb], as found on the GAO website.
- The purpose of this audit is to ascertain the effectiveness of the financial management systems and internal procedures that have been established to meet the terms and conditions of the award.
- Usually, these audits must be conducted annually. They must be conducted no less frequently than every 2 years. The dollar threshold that is established for audit reports in 2 C.F.R. § 200.500 applies, as amended.

# III. Postaward Requirements

## 3.19 AUDIT REQUIREMENTS

### Failure to Comply

Failure to have audits performed as required will result in the awarding agency taking remedial action, as allowed under law. This may include, but not be limited to, the withholding of new discretionary awards and/or withholding of funds, or a change in the method of payment on active awards.

### Office of Inspector General Regional Offices

As mentioned previously, if DOJ is the assigned cognizant agency or has oversight responsibilities because it has provided the preponderance of direct Federal funding to an organization, then the organization is eligible to receive technical assistance from the DOJ OIG. Direct the request to the appropriate regional audit office of the DOJ OIG in the table in this section.

| Regional Audit Office | Geographical Area |
|---|---|
| **Atlanta Region (40)**<br>Ferris B. Polk, Regional Audit Manager<br>75 Spring Street, Suite 1130<br>Atlanta, GA 30303<br>Phone: 404-331-5928<br>Fax: 404-331-5046 | Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, North Carolina, Puerto Rico, South Carolina, Tennessee, and Virgin Islands |
| **Chicago Region (50)**<br>Carol S. Taraszka, Regional Audit Manager<br>500 West Madison, Suite 1121<br>Chicago, IL 60661<br>Phone: 312-353-1203<br>Fax: 312-886-0513 | Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Missouri, Ohio, and Wisconsin |
| **Denver Region (60)**<br>David M. Sheeren, Regional Audit Manager<br>1120 Lincoln Street, Suite 1500<br>Denver, CO 80203<br>Phone: 303-864-2000<br>Fax: 303-864-2004 | Arizona, Colorado, Idaho, Kansas, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Dakota, Texas, Utah, and Wyoming |
| **Philadelphia Region (70)**<br>Thomas O. Puerzer, Regional Audit Manager<br>701 Market Street, Suite 201<br>Philadelphia, PA 19106<br>Phone: 215-580-2111<br>Fax: 215-597-1348 | Connecticut, Delaware, Maine, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, and Vermont |
| **San Francisco Region (90)**<br>David J. Gaschke, Regional Audit Manager<br>90 7th Street, Suite 3-100<br>San Francisco, CA 94103<br>Phone: 650-876-9220<br>Fax: 650-876-0902 | Alaska, American Samoa, California, Guam, Hawaii, Nevada, Oregon, Trust Territory of the Commonwealth of Northern Mariana Islands, and Washington |
| **Washington Region (30)**<br>John J. Manning, Regional Audit Manager<br>1300 North 17th Street, Suite 3400<br>Arlington, VA 22209<br>Phone: 202-616-4688<br>Fax: 202-616-4581 | District of Columbia, Maryland, Virginia, and West Virginia |

## III. Postaward Requirements

## 3.20 GRANT FRAUD, WASTE, AND ABUSE

### Introduction

The U.S. Department of Justice (DOJ) awards Federal grant funds to recipients for specific purposes and requires them to use the funds within established guidelines. Unfortunately, some recipients and subrecipients have misused award funds in multiple ways ranging from award mismanagement to intentional criminal fraud. With this chapter, DOJ aims to help recipients avoid the misuse of award funds and the resulting penalties.

### Detection of Grant Fraud

Non-Federal entities are encouraged to:

- Be aware of common grant fraud schemes. This knowledge is the best way to reduce or even eliminate the risk of fraud.
- Adopt effective fraud risk-management efforts within the organization, and encourage subrecipients to do the same in order to prevent and detect fraud as early as possible.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Detecting grant fraud schemes early allows every chance of success with the award and ensures taxpayer dollars are used as efficiently and effectively as possible.

### Penalties for Grant Fraud

If found guilty of grant fraud, recipients may be subject to various remedies available under Federal law, including any or all of the following:

- A ban from receiving future Federal funding;
- Administrative recoveries of funds;
- Civil lawsuits and criminal prosecution; or
- A combination of all or some of these remedies.

### Fraud Indicators

The indicators or markers of fraud, waste, and/or abuse of award funds are varied and can be due to a range of causes. Follow-up on all such concerns is important.



# III. Postaward Requirements

## 3.20 GRANT FRAUD, WASTE, AND ABUSE

| ⓘ FINANCIAL MANAGEMENT TIP |
|---|
| As the award is being managed, it may be necessary to investigate an area or activity for possible fraud. Look for clues or hints of possible fraud in the following three areas: employee behavior; employee communications; and employee performance. |

## Common Grant Fraud Schemes

Most misuse of funds falls into one or more of three general categories:

- Conflicts of Interest
- Failure to Properly Support the Use of Award Funds
- Theft

Each of these categories will be examined in the sections that follow.

## Conflicts of Interest

Non-federal entities are required to use Federal funds in the best interest of the award program. Decisions related to these funds must be free of undisclosed personal or organizational conflicts of interest, both in fact and in appearance. Non-federal entities are required to disclose in writing any potential conflict of interest to the awarding agency or pass-through entity, as applicable. See 2 C.F.R. § 200.112.

- **Conflict in Fact.** In the use of award funds (direct or indirect), a recipient or subrecipient should not participate in any decisions, approval, disapproval, recommendations, investigation decisions, or any other proceeding concerning any of the following people or groups:
  - An immediate family member;
  - A partner;
  - An organization in which they are serving as an officer, director, trustee, partner, or employee;
  - Any person or organization with whom they are negotiating or who has an arrangement concerning prospective employment, has a financial interest, or for other reasons can have less than an unbiased transaction with the recipient or subrecipient.
- **Conflict in Appearance.** In the use of award funds, recipients and subrecipients should avoid any action which might result in, or create the appearance of:
  - Using an official position for private gain;
  - Giving special treatment to any person;
  - Losing complete independence or objectivity;
  - Making an official decision outside official channels; or
  - Affecting negatively the confidence of the public in the integrity of the Government or the program.

## III. Postaward Requirements

### 3.20 GRANT FRAUD, WASTE, AND ABUSE

Typical conflict-of-interest issues may include:

- Less-than-arm's-length transactions—the act of purchasing goods or services or hiring an individual from a related party such as a family member or a business associate of the recipient.

- Not using fair and transparent processes for subrecipient decisions and vendor selection. These processes must be free of undue influence, and fair and transparent. Most procurement requires full and open competition.

- Consultants can play an important role in award programs; however, recipients and subrecipients must ensure that their work conforms to all regulations governing a fair consultant selection process, reasonable pay rates, and specific verifiable work product.

**Case Example #1**

| Background | Possible Fraud Indicator | Scheme Identified | Result |
|---|---|---|---|
| An individual was assigned to purchase equipment using a Federal award. | Circumvention of the established procurement process; vendor complaints. | Individual stole over $100,000 by directing contracts to bogus companies that he had established. | 240-month prison sentence |

**Failure to Properly Support the Use of Award Funds**

A Federal award agreement creates a legal and binding obligation. Direct recipients and subrecipients are obligated to:

- Use the award as outlined in the agreement.

- Act with integrity when applying for and reporting the actual use of funds.

- Properly track the use of funds and maintain adequate supporting documentation.

Typical issues involving failure to properly support the use of award funds include:

- Deliberate redirection of the use of funds in a manner different from the purpose outlined in the award agreement.

- Failure to adequately account for, track, or support transactions such as personnel costs, contracts, indirect cost rates, matching funds, program income, or other sources of revenue.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Applicants and recipients must represent their eligibility for funding accurately and cannot provide false or misleading information in their application, subsequent narrative progress reports, or federal financial reports.

## III. Postaward Requirements

### 3.20 GRANT FRAUD, WASTE, AND ABUSE

**Case Example #2**

| Background | Possible Fraud Indicator | Scheme Identified | Result |
|---|---|---|---|
| A recipient received a Federal award for specific purposes. | An inability to provide sufficient and verifiable supporting documentation concerning the actual use of those funds. | | Recipient paid the Federal government over $300,000 to settle civil fraud allegations. |

## Theft

Theft is the most common issue in almost all organizations—including those that receive Federal awards. Non-federal entities are encouraged to keep the following in mind:

- People who embezzle funds can be extremely creative, while often appearing very trustworthy. These abilities are precisely why they can do so much damage to an organization and remain undetected for extended periods of time.

- Poor or no internal controls provide an opening for theft. A lack of proper separation of duties is one of the most common weaknesses.

☑ **ACTION ITEM**

Checks routinely written to employees for the "reimbursement" of expenses, and the routine use of ATM/debit/gift/credit cards for award costs, must be carefully controlled and require strong oversight.

**Case Example #3**

| Background | Possible Fraud Indicator | Scheme Identified | Result |
|---|---|---|---|
| A nonprofit received $2.7 million in Federal award funds to assist underprivileged children. | Unsuccessful program, lack of internal controls, unexplained income. | Funds had been diverted to pay for a wedding reception, building construction, plasma TV, and personal credit card bills, with an estimated total loss of $450,000. | 36- and 66-month prison sentences and full restitution. |

## Ways to Reduce the Risk of Fraud

There are several things that can be done to reduce or even eliminate the risk of fraudulent use of the Federal award:

- Examine operations and internal controls to identify fraud vulnerabilities.

- Implement specific fraud prevention strategies including educating others about the risks. The more people are aware of the issues, the more they can help prevent problems or detect them as early as possible.

- Maintain a well-designed and -tested system of internal controls.

## III. Postaward Requirements

## 3.20 GRANT FRAUD, WASTE, AND ABUSE

- Ensure all financial or other certifications and progress reports are adequately supported with appropriate documentation and evidence.

- Identify any potential conflict-of-interest issues and disclose them to the awarding agency for specific guidance and advice.

- Follow a fair and transparent procurement process, especially when using consultants. Ensure that the rate of pay is reasonable and justifiable, and that the work product is well-defined and documented.

Contact the DOJ Office of the Inspector General for more information.

---

**ⓘ FINANCIAL MANAGEMENT TIP**

Information on designing and testing internal controls may be found in the following references:

- 2 CFR Part 200 Appendix XI, Compliance Supplement, Part 6, Internal Control (PDF) (updated annually).

- OMB Circular A-123, Management's Responsibility for Internal Control (main portion) (PDF). Please also see multiple appendices to this circular. Although this is written for Federal Agencies, its guidance on internal control systems and testing those systems may be a useful reference resource.

- Committee of Sponsoring Organizations of the Treadway Commission (COSO), (https://www.coso.org/Pages/guidance.aspx). This site has guidance available on internal control framework and testing and has been designed for the private sector, but may be a useful reference resource.

---

## III. Postaward Requirements

### 3.21 OJP'S PAYMENT PROGRAMS

#### Introduction

The Office of Justice Programs (OJP) has several payment or reimbursement programs that are available to eligible applicants: the Bulletproof Vest Partnership (BVP), the State Criminal Alien Assistance Program (SCAAP), the Northern Border Prosecution Initiative (NBPI), and the Southwest Border Prosecution Initiative (SWBPI). This section briefly introduces each of these programs; please visit the related websites for recently updated information and each program's specific guidelines.

#### Bulletproof Vest Partnership

The BVP was created for the sole purpose of purchasing bullet-resistant body armor for sworn law enforcement officers. The program is administered by OJP's Bureau of Justice Assistance (BJA). It was enacted in 1998 by the Bulletproof Vest Partnership Grant Act (Public Law 105-181).

**Eligibility and Guidelines**

- Eligible jurisdictions that employ law enforcement officers may participate in this program. A jurisdiction is a State, town, city, village, borough, parish, or Indian tribe.

- Through the BVP program, recipients are reimbursed for up to 50 percent of the cost of each unit of eligible body armor purchased for law enforcement officers.

- Under current legislation, jurisdictions with fewer than 100,000 residents receive priority funding. Any remaining funds are distributed on a pro rata basis to jurisdictions with 100,000 residents or more.

- In order to qualify for this reimbursement, body armor must comply with the National Institute of Justice (NIJ) standards as of the date the body armor was ordered. Information pertaining to the current NIJ standards is available online at the [NIJ Definition of Eligible Body Armor web page](#).

**Application and Funding Process**

Obtain current information and manage the entire BVP program process from application through payment using the online BVP system located at [https://OJP/Bulletproof Vest Partnership Program](#). To participate in the BVP program, State, local, and tribal jurisdictions must follow four steps:

- Register as a jurisdiction
  - Jurisdictions that have never participated in the BVP program can register at any time throughout the year by contacting BVP Customer Support via phone at 1-877-758-3787 or email at [vests@usdoj.gov](mailto:vests@usdoj.gov).
  - If an eligible jurisdiction has more than one law enforcement agency (LEA), each LEA should register in the BVP system, and the application will be submitted by the jurisdiction on behalf of all of its LEAs.
  - Once registered with the BVP program, jurisdictions are responsible for regularly updating their own critical information.
- Submit application
  - When submitting an application, jurisdictions must make sure to identify the total number, type, and projected cost of vests for all eligible, participating law enforcement officers.
  - Applications may be submitted only during the annual 6-week open application period.
  - Funding decisions are made within 3 months after the application period closes.

# III. Postaward Requirements

**3.21 OJP'S PAYMENT PROGRAMS**

> ▸ Applicants are notified via email regarding approved funding levels.
>
> ▸ BVP funds are dispersed when the LEA receives the vests and the jurisdiction submits a request for payment through the BVP system.

■ Purchase vests

> ▸ BVP funds may only be used to purchase vests that meet the current NIJ bullet-resistant body armor standards.
>
> ▸ A list of vest models that meet the current NIJ standards is available on the BVP website.

■ Submit receipt information

> ▸ Once vests are received, jurisdictions can submit a request for payment through the BVP system.
>
> ▸ Recipients have up to 2 years from the date of the award to submit payment requests.
>
> ▸ Once the payment request is submitted, BJA reviews the request for accuracy and processes payments on a monthly schedule.

| Key Points about the BVP Program | |
|---|---|
| 1 | All purchased body armor must comply with NIJ body armor standards, which are available at the NIJ Definition of Eligible Body Armor web page. |
| 2 | BVP funds can be used to purchase only one vest per officer during the jurisdiction's stated replacement cycle. |
| 3 | BVP funds may be used toward the purchase of tactical-level vests, but if a tactical-level vest is purchased for an officer, it must be the officer's primary vest; a regular-duty vest cannot be purchased for the same officer, during the same replacement cycle, using BVP funds. |
| 4 | Beginning in fiscal year 2009, during the payment request process, jurisdictions may request, based on financial hardship, a waiver of the 50 percent match requirement. Jurisdictions that request the waiver must cite the nature of the financial hardship and maintain documentation pertaining to the hardship. |
| 5 | BJA strongly recommends that every LEA implement a mandatory body armor wear policy, if one is not currently in place. A mandatory wear concepts and issues paper and model policy are available by contacting the International Association of Chiefs of Police at policycenter@theiacp.org. |
| 6 | BJA recognizes that LEA operational and equipment needs may change. Consequently, participating agencies are not required to purchase the exact number, type, or model of vests contained in the approved application. Vests may be purchased at any threat level, make, or model and from any distributor or manufacturer, as long as the vests have been tested and found to comply with applicable NIJ ballistic or stab standards. |

ⓘ **FINANCIAL MANAGEMENT TIP**

**Justice Assistance Grant funds also may be used to purchase vests for an agency, but they may not be used to pay for that portion of the bulletproof vest (50 percent) that is not covered by BVP funds.**

# III. Postaward Requirements

## 3.21 OJP'S PAYMENT PROGRAMS

### State Criminal Alien Assistance Program

Through SCAAP, the U.S. Government provides payments to States and localities that incurred correctional officer salary costs for incarcerating undocumented criminal aliens who had at least one felony or two misdemeanor convictions for violations of State or local law, and were incarcerated for at least 4 consecutive days during a reporting period. BJA administers SCAAP in cooperation with the U.S. Department of Homeland Security (DHS).

**Eligibility and Guidelines**

Beginning with Federal fiscal year 2007, SCAAP awards must be used for correctional purposes only. To be considered for SCAAP funding, States and localities must prove that inmate records, convictions, and length of custody to meet the following eligibility requirements:

- **Inmate records.** For the purposes of SCAAP, an inmate is defined as a person who did one of the following things or was in one of the following situations:
    - ▸ Entered the United States without inspection or at any time or place other than as designated by the Attorney General.
    - ▸ Was in deportation or exclusion proceedings at the time he or she was taken into custody.
    - ▸ Is a nonimmigrant who failed to maintain his or her nonimmigrant status at the time he or she was taken into custody.
    - ▸ Is part of a subset of Mariel Cubans who otherwise meet these requirements.
- **Convictions and custody information.** To apply for SCAAP funds, an entity must be a State or unit of government with authority over correctional facilities that incarcerate or detain undocumented criminal aliens for terms of 4 or more consecutive days. Applicants may submit records of eligible inmates in their custody during the reporting period who meet all of the following criteria:
    - ▸ Were born outside the United States or one of its Territories and have no reported or documented claim to U.S. citizenship;
    - ▸ Were in the applicant's custody for 4 or more consecutive days during the reporting period;
    - ▸ Were convicted of a felony or second misdemeanor for violations of State or local law; and
    - ▸ Were identified and reported using due diligence.
- DHS makes the final determination on whether the documentation submitted supports the status of the inmate as an undocumented alien.

**Application and Funding Process**

The application and payment process for SCAAP is managed using the Grants Management System (GMS).

- The SCAAP system is available through the main GMS log-in page at GMS Log-in page.
- SCAAP payments must go directly to eligible States and localities.
- Authorized jurisdiction employees for SCAAP purposes must be listed as either the Authorized Representative or Alternate Contact in the GMS user profile.
- The chief executive officer (CEO) of an eligible jurisdiction may apply directly or delegate authority to another jurisdiction official. The CEO is generally considered the highest ranking elected or appointed official of a unit of government.

## III. Postaward Requirements

### 3.21 OJP'S PAYMENT PROGRAMS

| ⓘ FINANCIAL MANAGEMENT TIP |
|---|
| A SCAAP application without the CEO information included will be significantly delayed. |

| | Key Points about the SCAAP |
|---|---|
| 1 | Each SCAAP reporting period is based on the previous year's cases and salary. For example, the reporting period for fiscal year 2010 was July 1, 2008 through June 30, 2009. |
| 2 | Correctional officer salaries reported in the SCAAP application may only include base salary, overtime, and shift differential pay. Fringe benefits should not be included in the total salary. |
| 3 | The "total all inmate days" is the cumulative number of incarceration or detention days attributable to all inmates housed in the jurisdiction's facilities during the reporting period. It includes all inmates, regardless of their status, citizenship, disposition, or length of stay, including inmates held at contract facilities. A jurisdiction can use the sum of all nightly facility head counts for the 365 days in the reporting period. |
| 4 | All SCAAP payments must go to the jurisdiction's general fund. Please use the jurisdiction's Employer Identification Number (tax identification), jurisdiction name, and vendor number when applying for SCAAP funds. For example, police department and sheriff's offices may not apply directly for SCAAP funding. |
| 5 | See the 2015 SCAAP Program Guidelines located on the BJA website for more information. |

### Northern Border Prosecution Initiative and Southwest Border Prosecution Initiative

The NBPI and SWBPI programs were created to reimburse eligible State and local jurisdictions for prosecution and pretrial detention costs for cases that the Federal Government declined and referred to these jurisdictions. While applicant jurisdictions may use funds from NBPI/SWBPI Federal payments for any purpose not otherwise prohibited by Federal law, the programs encourage the jurisdictions to use the funds to support and enhance prosecutorial and detention services.

Note: Beginning in Fiscal Year 2013, BJA will only reimburse prosecution costs and will no longer reimburse detention costs under the Northern Border Prosecution Initiative and the Southwest Border Prosecution Initiative.

**Eligibility and Guidelines**

- A federally initiated and referred criminal case is eligible if it was prosecuted by a State or county prosecutor and disposed of during one of the eligibility periods.
- An applicant must be the chief executive or an authorized designee of any eligible jurisdiction.
- Only employees, such as a sheriff or county prosecutor, of the applicant jurisdiction can serve as an authorized designee for SWBPI or NBPI applications.
- The following border State and county governments are eligible to receive funding under the border prosecution initiatives:
  - Northern border: Alaska, Idaho, Maine, Michigan, Minnesota, Montana, New Hampshire, New York, North Dakota, Ohio, Pennsylvania, Vermont, Washington, and Wisconsin
  - Southwest Border: Arizona, California, New Mexico, and Texas

## III. Postaward Requirements

### 3.21 OJP'S PAYMENT PROGRAMS

- In addition to being an approved border State, submitted cases must meet the following criteria to be considered for NBPI and SWBPI funding:
  - ▸ The criminal case was federally initiated.
  - ▸ The case was declined or referred to a county or State jurisdiction after October 1, 2005.
  - ▸ The case was prosecuted by a State or county prosecutor.
  - ▸ The case was disposed of during a designated reporting period.
- Each defendant listed represents a separate case. If one case has multiple defendants, each defendant should be listed as a separate case.
- If one defendant was charged in multiple cases and the cases were investigated or prosecuted during concurrent periods of time, all cases are claimed as one case.

#### Application and Funding Process

- The annual application-through-payment processes for the NBPI and SWBPI programs are managed via online systems.
- The NBPI program is available at http://www.ojp.gov/nbpi, and guidelines are available in the document Northern Border Prosecution Initiative 2013 Guidelines (PDF).
- The SWBPI program can be found at http://www.ojp.gov/swbpi, and guidelines are available in the document Southwest Border Prosecution Initiative 2013 Guidelines (PDF).

| Key Points about the NBPI and SWBPI Programs | |
|---|---|
| 1 | Each NBPI/SWBPI reporting period is based on the previous year's cases and salary. For example, the reporting period for fiscal year 2010 was October 1, 2008 through September 30, 2009. |
| 2 | Court and arrest records for each case submitted for NBPI/SWBPI funding may be requested by BJA for pre- and post-award review. Any cases that do not have the corresponding court and arrest records will not be considered for funding. |
| 3 | Documentation must be maintained to support that NBPI/SWBPI funds, when combined with other Federal prosecution funds, do not exceed 100 percent of the prosecution costs for the cases. |
| 4 | Time spent by prosecutors on judicial appeals and incarceration time for sentenced offenders are not allowable program costs and should not be reported on the application. |

## III. Postaward Requirements

### 3.22 FINANCIAL MANAGEMENT TRAINING REQUIREMENTS

#### Introduction

New for fiscal year 2016, both the Point of Contact (POC) and all Financial Points of Contacts (FPOCs) for OJP awards must complete either the DOJ Grants Financial Management Online Training or OJP's in-person Financial Management Training Seminar within 120 calendar days after the date of the recipient's acceptance of the award. New grantees, grantees with a "high" pre-award risk, and DOJ high risk grantees will receive a withholding of funds special condition until the POC and FPOC have completed the training.

OVW and COPS Office recipients are not required, but highly encouraged, to complete the DOJ Grants Financial Management Online Training.

#### Requirement for Compliance

Successful completion of either the DOJ Grants Financial Management Online Training or OJP's in-person Financial Management Training Seminar on or after January 1, 2015, will satisfy this requirement.

In the event that either the POC or a FPOC for an award changes during the period of performance, the new POC or FPOC must successfully complete an OJP financial management training by 120 calendar days after— (1) the date of OJP's approval of the "Change Grantee Contact" GAN (in the case of a new POC), or (2) the date the POC enters information on the new FPOC in GMS (in case of a new FPOC).

Non-compliance with the training requirements will result in placing a withholding of funds on all applicable awards.

#### Expiration of Training Certificates

POC and all FPOCs for the award will be required to re-certify their compliance with the financial management training requirement by successfully completing either the in-person OJP Financial Management Training or the DOJ Grants Financial Management Online Training every (3) three years.

#### List of Financial Management Trainings

Grant recipients can register for either the online or in-person training at the following website: https://ojp.gov/training/fmts.htm.

# IV. Organization Structure

**4.1 ORGANIZATION CHARTS**

**United States Department of Justice Organization Chart**

**Office of Justice Programs Organization Chart**

# V. Appendices

## 5.1 ACRONYMS

### A Note for Readers

To reduce clutter and ease reading, DOJ has used acronyms instead of the full phrasings for organizations, positions, and other items referenced more than once in the *Guide*. For the reader's convenience, the list of acronyms is organized alphabetically.

| **A** | |
|---|---|
| ACH | Automated Clearing House |
| ADP | Automatic Data Processing |
| ARRA | The American Recovery and Reinvestment Act of 2009 |
| **B** | |
| BJA | Bureau of Justice Assistance |
| BPIs | Border Prosecution Initiatives |
| BVP | Bulletproof Vest Partnership |
| **C** | |
| CAP | Corrective Action Plan |
| CCR | Central Contractor Registration |
| CEO | Chief Executive Officer |
| CFDA | Catalog of Federal Domestic Assistance |
| CFR | Code of Federal Regulations |
| CJICS | Criminal Justice Information and Communication Systems |
| COPS | Office of Community Oriented Policing Services |
| CSB | Customer Service Branch (of the Office of the Chief Financial Officer) |
| **D** | |
| DHS | U.S. Department of Homeland Security |
| DOJ | U.S. Department of Justice |
| DUNS | Data Universal Numbering System |
| **E** | |
| EFT | Electronic funds transfer |
| EIN | Employer Identification Number |
| **F** | |
| FAC | Federal Audit Clearinghouse |
| FAQs | Frequently Asked Questions |
| FAR | Federal Acquisition Regulation |
| FBI | Federal Bureau of Investigation |
| FFATA | Federal Funding Accountability and Transparency Act |
| FFR | Federal Financial Report (SF-425) |
| FPOC | Financial Point of Contact |
| FSRS | FFATA Subaward Reporting System |

| FTR | Federal Travel Regulation |
|---|---|
| FY | Fiscal Year |
| **G** | |
| GAN | Grant Adjustment Notice |
| GAO | U.S. Government Accountability Office |
| GMS | Grants Management System |
| GPRS | Grant Payment Request System |
| GSA | U.S. General Services Administration |
| **H** | |
| HHS | U.S. Department of Health and Human Services |
| **I** | |
| ICAC | Internet Crimes Against Children |
| IDES | Internet Data Entry System |
| IFB | Invitation for Bid |
| IRS | Internal Revenue Service |
| IT | Information Technology |
| **J** | |
| JABG | Juvenile Accountability Block Grant |
| JAG | Justice Assistance Grant |
| JJA | Juvenile Justice Act |
| **L** | |
| LEA | Law Enforcement Agency |
| **M** | |
| M&IE | Meals and Incidental Expenses |
| MPIN | Marketing Partner Identification Number |
| MTDC | Modified Total Direct Cost |
| **N** | |
| NBPI | Northern Border Prosecution Initiative |
| NEPA | National Environmental Policy Act |
| NIJ | National Institute of Justice |
| **O** | |
| OCFO | Office of the Chief Financial Officer |
| OCR | Office for Civil Rights (of the Office of Justice Programs) |
| OIG | Office of the Inspector General |
| OJJDP | Office of Juvenile Justice and Delinquency Prevention |

# V. Appendices

## 5.1 ACRONYMS

| | |
|---|---|
| OJP | Office of Justice Programs |
| OMB | Office of Management and Budget |
| OVC | Office for Victims of Crime |
| OVW | Office on Violence Against Women |
| **P** | |
| PAPRS | Phone Activated Payment Request System (replaced by GPRS) |
| P/E | Purchase of Evidence |
| P/I | Purchase of Specific Information |
| PMT | Performance Measurement Tool |
| POV | Privately owned vehicle |
| PPOC | Programmatic point of contact |
| P/S | Purchase of Services |
| **R** | |
| RFP | Request for Proposal |
| RISS | Regional Information Sharing Systems |
| **S** | |
| SAM | System for Award Management |
| SCAAP | State Criminal Alien Assistance Program |
| SES | Senior Executive Service |
| SF-424 | Standard Form 424 |
| SF-425 | Standard Form 425 (FFR) |
| SF-SAC | Standard Form-Single Audit Component |
| SOW | Statement of Work |
| STOP | Services Training Officers Prosecutors (Violence Against Women OVW formula grant program) |
| SWBPI | Southwest Border Prosecution Initiative |
| **T** | |
| Treasury | U.S. Department of the Treasury |
| **U** | |
| U.S.C. | United States Code |
| **V** | |
| VAWA | Violence Against Women Act |
| VOCA | Victims of Crime Act |
| **X** | |
| XML | Extensible Markup Language |

# V. Appendices

## 5.2 GLOSSARY OF TERMS

### A

**ACCRUAL BASIS** is the method of recording revenues in the period in which they are earned, regardless of when cash is received, and reporting expenses in the period when the charges are incurred, regardless of when payment is made.

**ADDENDUM RECORD** is what the bank receives that explains what a payment is for and gives the detail necessary for accurate posting into the correct account.

**ADMINISTRATIVE REQUIREMENTS** are set forth at 2 C.F.R. Part 200.

**AMUSEMENT/SOCIAL EVENT** is an informal gathering which is not mandatory for all participants to attain the necessary information. An indicator of a social/amusement event is a cash bar.

**AWARDING AGENCY** is typically (depending on context) the Federal Government or the next highest authority, that is, the State agency administering the formula award or the Federal agency administering the discretionary award.

**AWARDS** typically means grants or cooperative agreements for financial assistance that a non-Federal entity receives directly from a Federal agency, or indirectly via a pass-through entity.

### B

**BLANKET REQUEST** a series of the same or similar pre-arranged events containing multiple delivery dates scheduled to take place within the same fiscal year.

**BLOCK/FORMULA AWARDS** are awarded to the States to provide assistance to State and local units of government for programs in accordance with legislative requirements.

**BREAK FOODS** consist of cookies, sodas, and fruits or other snack items, and may be served at a training program, a meeting, or a conference.

**BREAKS** are short pauses in an ongoing informational program at trainings, meetings, conferences, or retreats. Typically, an all-day event may include one break during a morning session and one break during an afternoon session.

**BUDGET PERIOD** is the period for which a budget is approved for an award. The budget period may be equal to or shorter than the project period for an award, but cannot be longer than the project period.

### C

**CASH BASIS** is the method of reporting revenues and expenses when cash is actually received or paid out.

**CLOSEOUT** is a process in which the awarding agency determines that all applicable administrative actions and all required work of the award have been completed by the recipient and the awarding agency.

**COGNIZANT FEDERAL AGENCY** is generally the Federal agency that provides the most Federal financial assistance to the non-Federal entity. Cognizance for audits is assigned by OMB, and a list of agencies is available at the FAC Web site. See 2 C.F.R. § 200.18. Cognizant agency for audit is not always the same as the cognizant agency for indirect costs. For assignments of cognizant agencies for indirect cost see 2 C.F.R. § 200.19, which refers to the appropriate Appendices.

**CONFERENCE** is defined broadly, and includes meetings, retreats, seminars, symposia, or training activities. See 41 C.F.R. § 300-3.1; 2 C.F.R. § 200.432.

**CONSULTANT** is an individual who provides professional advice or services.

**CONTINENTAL BREAKFAST** means a light breakfast that may include a selection of coffees, teas, juices, fruits, and assorted pastries, and is allowable provided several hours of substantive material directly follows the continental breakfast. Grant recipients are reminded that the least expensive of the available selections should be chosen.

**CONTRACT** means a legal instrument by which a non-Federal entity purchases property or services needed to carry out the project or program under a Federal award. The term does not include a legal instrument, even if the non-Federal entity considers it a contract, when the substance of the transaction meets the definition of a Federal award or subaward. See 2 C.F.R. § 200.22.

**COOPERATIVE AGREEMENTS** are utilized when substantial involvement is anticipated between the awarding agency and the recipient during performance of the contemplated activity. See 2 C.F.R. § 200.24.

### D

**DIRECT RECIPIENT** is an individual and/or organization that receives Federal financial assistance directly from a Federal agency.

**DISCRETIONARY AWARDS** are made to States, units of local government, or private organizations at the discretion of the awarding agency. Most discretionary awards are competitive in nature in that there are limited funds available and a large number of potential recipients.

**DOMESTIC TRAVEL** includes travel within and between the United States and its territories and possessions.

# V. Appendices

## 5.2 GLOSSARY OF TERMS

**DRAW OR DRAWING DOWN** refers to the payments made by the Federal Government to the grantee which deplete the total grant award amount. DOJ grantees draw down or receive payments of their grant funding through the active grant period.

## E

**EQUIPMENT** is tangible, nonexpendable personal property having a useful life of more than 1 year and an acquisition cost of $5,000 or more per unit. A recipient/subrecipient may use its own definition of equipment provided that such definition would at least include all equipment defined above.

**EXPENDITURE** is a charge made to a project or program for which a Federal award was received.

## F

**FEDERAL CONTRACTOR** is a person or entity that contracts with the Federal Government to provide supplies, services, or experimental, developmental, or research work. Entities may include commercial organizations, educational institutions, construction and architect-engineer companies, State and local governments, and nonprofit organizations. See Title 48 C.F.R. § 31.103-105, § 31.107-108.

**FEDERAL EMPLOYEES** are those persons employed in or under an agency of the United States Federal Government or the District of Columbia. See 5 U.S.C. 4101 (1994) [PDF – 35.9 Kb].

**FEDERAL GRANTEE** means a non-Federal entity that receives a Federal award directly from a Federal awarding agency to carry out an activity under a Federal program. The term recipient does not include subrecipients. See also 2 C.F.R. § 200.69 (Non-Federal entity). Typically, this is the component of a State, local, or Federally recognized Indian tribal government, educational institution, hospital, or a for-profit or nonprofit organization which is responsible for the performance or administration of all or some part of a Federal award.

**FIXED RATE WITH CARRY FORWARD PROVISION** is similar to a predetermined rate in that a permanent rate is established for a specific future period (usually one fiscal year) based on an estimate of the costs for that period. However, fixed rates also require an adjustment to actual costs once actual costs have been determined. The difference between the estimated costs used to establish the fixed rate and the actual costs of the fiscal year covered by the rate is "carry forward" as an adjustment to the next rate negotiation.

**FOCUS GROUP** means a gathering of Federal Government employees to discuss results and improvements of programs in the field. The focus group should follow a prepared agenda, be led by an expert in the subject matter, and serve to educate the Federal employees.

**FOOD AND/OR BEVERAGES** retain their common meanings. Food or beverages are considered in the context of formal meals and in the context of refreshments served at short, intermittent breaks during an activity. Beverages do not include alcoholic drinks.

**FOREIGN TRAVEL** includes any travel outside of the United States and its territories and possessions. For an organization located in a foreign country, this means travel outside that country.

**FORMAL AGENDA** provides a list of all activities that shall occur during the event, using an hour-by-hour timeline. It must specifically include the times during the event when food and beverages will be provided.

## G

**GRANTS** are a legal instrument of financial assistance used to transfer anything of value from the Federal awarding agency or pass through entity to the non-Federal entity to carry out a public purpose. See 2 C.F.R. § 200.51.

**GRANTS MANAGEMENT SYSTEM (GMS)** is a web-based, data-driven computer application that provides support for the application, award, and management of grants at OJP. It consists of the following modules: Applications; Award Processing; Peer Review; Grant Adjustment Notice; Financial Reporting; Progress Reporting, Monitoring, and Closeouts.

## H

**HIGH RISK** is a determination made by the awarding agency of a recipient's ability to administer Federal project funds based on issues such as a history of unsatisfactory performance; financial instability; inadequate financial management system; non-conformance to terms and conditions of previous awards; or is otherwise not responsible. Additional reporting or other requirements may be placed on high-risk recipients.

# V. Appendices

## 5.2 GLOSSARY OF TERMS

### I

**IMPREST FUNDS** are fixed- or petty-cash funds in the form of currency or coin that have been advanced as funds held outside of the usual secure account. Agencies typically use imprest funds to reimburse employees for expenses, to make small purchases, to make emergency beneficiary payments, and to pay informants, among other uses.

**INCIDENTAL** means (in the conference context) relating to a formal event where full participation by participants mandates the provision of food and beverages.

**INTERAGENCY AGREEMENTS AND PURCHASE OF SERVICE ARRANGEMENTS** are usually entered into by two governmental units or agencies. Such funding arrangements are negotiated by the entities involved.

**INTERNAL CONTROLS** means a process, implemented by a non-Federal entity, designed to provide reasonable assurance regarding the achievement of objectives in the following categories:

(a) Effectiveness and efficiency of operations;

(b) Reliability of reporting for internal and external use; and

(c) Compliance with applicable laws and regulations.

See 2 C.F.R. § 200.61.

### L

**LIQUIDATION PERIOD** provides awardees time to receive ordered goods or services, and make final payments on trailing costs. It is usually a 90 day period after award end date.

**LOBBYING** is generally considered to be the act of trying to influence legislation. An organization will be regarded as attempting to influence legislation if it contacts, or urges the public to contact, members or employees of a legislative body for the purpose of proposing, supporting, or opposing legislation, or if the organization advocates the adoption or rejection of legislation. See 2 C.F.R. § 200.450.

### M

**MATCH** is the recipient share of the project costs. Match may either be "in-kind" or "cash." In-kind match includes the value of donated services. Cash match includes actual cash spent by the recipient and must have a cost relationship to the Federal award that is being matched. (Example: Match on administrative costs should be other administrative costs, not other matching on program costs).

### N

**NONEXPENDABLE PERSONAL PROPERTY** (i.e., equipment) includes tangible personal property (including information technology systems) having a useful life of more than 1 year and an acquisition cost of $5,000 or more per unit. A recipient may use its own definition of nonexpendable personal property provided that the definition would at least include all tangible personal property as defined below. See 2 C.F.R. § 200.33.

### O

**OBLIGATION** means orders placed for property and services, contracts and subawards made, and similar transactions during a given period that require payment by the non-Federal entity during the same or a future period (i.e., a legal liability to pay under a grant, subgrant, and/or contract determinable sums for services or goods incurred during the grant period). See 2 C.F.R. § 200.71.

### P

**PASS-THROUGH ENTITY** means a non-Federal entity that provides a subaward to a subrecipient to carry out part of a Federal program.

**PERSONAL PROPERTY** means property of any kind except real property. It may be tangible (having physical existence) or intangible (having no physical existence, such as patents, inventions, and copyrights). ). See 2 C.F.R. § 200.78.

**PREAGREEMENT COSTS** are defined as those costs which are considered necessary to the project but occur prior to the starting date of the award period.

**PRIOR APPROVAL** means written approval by the authorized official (the next highest authority except for sole source evidencing consent prior to a budgetary or programmatic change in the award).

# V. Appendices

## 5.2 GLOSSARY OF TERMS

**PROGRAM INCOME** is gross income earned by the non-Federal entity that is directly generated by a supported activity or earned as a result of the Federal award during the period of performance. See 2 C.F.R. § 200.80. Program income includes but is not limited to income from fees for services performed, the use or rental or real or personal property acquired under Federal awards, the sale of commodities or items fabricated under a Federal award, license fees and royalties on patents and copyrights, and principal and interest on loans made with Federal award funds. Interest earned on advances of Federal funds is not program income. Except as otherwise provided in Federal statutes, regulations, or the terms and conditions of the Federal award, program income does not include rebates, credits, discounts, and interest earned on any of them.

**PROJECT PERIOD** is the period for which implementation of a project is authorized. The project period may be equal to or longer than the budget period for an award, but cannot be shorter than the budget period.

**PURCHASE OF EVIDENCE (P/E)** is the purchase of evidence and/or contraband, such as narcotics and dangerous drugs, firearms, stolen property, counterfeit tax stamps, and so forth, required to determine the existence of a crime or to establish the identity of a participant in a crime.

**PURCHASE OF SERVICES (P/S)** includes travel or transportation of a non-Federal officer or an informant; the lease of an apartment, business front, luxury-type automobiles, aircraft or boat, or similar effects to create or establish the appearance of affluence; and/or meals, beverages, entertainment, and similar expenses (including buy money and flash rolls, etc.) for undercover purposes, within reasonable limits.

**PURCHASE OF SPECIFIC INFORMATION (P/I)** includes the payment of monies to an informant for specific information. All other informant expenses would be classified under P/S and charged accordingly.

### R

**REAL PROPERTY** means land, land improvements, structures, and appurtenances thereto, excluding movable machinery and equipment.

**REASONABLE** means those costs that a prudent person would have incurred under the circumstances prevailing at the time the decision to incur the cost was made.

**RECEPTION** means an informal gathering which is not mandatory for all event participants to obtain necessary information. Indicators of a reception include a cash bar, inadequate seating for the entire group, food items from a reception menu (such as finger foods), and a longer break (than utilized throughout the day) between the substantive meetings and the reception. Receptions are expressly prohibited and are considered to be an unallowable cost with Federal funds.

**RECIPIENT** means the recipient of federal funding from DOJ, unless context indicates otherwise.

**REGIONAL INFORMATION SHARING SYSTEMS (RISS)** is a national program of regionally oriented services designed to facilitate the coordination and communication capabilities of local, state, federal, and tribal criminal justice agencies.

### S

**SEPARATION OF DUTIES** is a key internal control concept that establishes procedures for certain types of financial transactions where no one person is able to execute the entire procedure alone. The most commonly used example concerns initiating a payment (writing the check) and authorizing a payment (signing the check).

**SOCIAL EVENT** is any event with alcoholic beverages served, available, or present.

**SPECIAL CONDITIONS** are contractual terms and conditions that are included with the award. Examples of special conditions include additional reports, audits, conferences, and disposition of program income.

**STIPEND** is an allowance to defray expenses. Examples of these expenses include, but are not limited to, rent, utilities, travel, incidentals, etc.

**SUBAWARD** means an award provided by a pass-through entity to a subrecipient for the subrecipient to carry out part of a Federal award received by the pass-through entity. It does not include payments to a contractor or payments to an individual that is a beneficiary of a Federal program. A subaward may be provided through any form of legal agreement, including an agreement that the pass-through entity considers a contract.

**SUBRECIPIENT** means a non-Federal entity that receives a subaward from a pass-through entity to carry out part of a Federal program; but does not include an individual that is a beneficiary of such program. A subrecipient may also be a recipient of other Federal awards directly from a Federal awarding agency.

# V. Appendices

## 5.2 GLOSSARY OF TERMS

**SUPPLANTING** is to deliberately reduce State or local funds because of the existence of Federal funds. For example, when State funds are appropriated for a stated purpose and Federal funds are awarded for that same purpose, the State replaces its State funds with Federal funds, thereby reducing the total amount available for the stated purpose.

### U

**UNALLOWABLE COSTS** are costs the government is unwilling to pay as a direct charge or through an indirect cost pool applied to the federal grant or contract. An organization is not prohibited from incurring unallowable costs but they cannot be recovered either directly or indirectly under federal grants or contracts.

### W

**WORKING DINNER** means a formal and mandatory dinner necessary for all participants to have full participation in the conference or event. A working dinner must include a formal agenda including a program or speakers that will impart necessary information important for full understanding of the subject matter of the conference. There should be several hours of informative sessions providing substantive information scheduled both before and after a working dinner. Indicators of a working dinner include seating for all participants. A cash bar is expressly prohibited.

**WORKING LUNCH** is a formal and mandatory lunch necessary for all participants to have full participation in the conference or event. A working lunch must include a formal agenda including a program or speakers that will impart necessary information important for full understanding of the subject matter of the conference. There should be several hours of informative sessions providing substantive information scheduled both before and after a working lunch (exhibits are not included). Indicators of a working lunch include seating for all participants. A cash bar is expressly prohibited.

**WORK-RELATED EVENT** is a conference or meeting involving a topical matter of interest within the purview of the agency's mission and function.

## V. Appendices

**5.3 APPENDICES I AND II**

### Appendix I: Sample Award Document

The following is a sample award document, as issued by the Office of Justice Programs, Department of Justice.

Sample Award Document [PDF - 121 Kb]

### Appendix II: Sample Federal Financial Report Form (SF-425)

The Federal Financial Report Form (SF-425) is a standard form that grantees must use to report cumulative expenses incurred under each award.

SF-425s must be submitted every quarter and no later than 30 days after the last day of each reporting quarter. OJP and OVW recipients should use the online SF-425 found in the Grants Management System (GMS). COPS Office recipients are encouraged to submit the quarterly SF-425 through Agency Portal via the COPS Office website at https://cops.usdoj.gov.

Sample SF-425 Form [PDF - 267 Kb]