UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Fred L. Nance Jr. | ) | |
| | ) | Case No. 20 CV 06316 |
| Plaintiff, | ) | |
| | ) | Honorable Judge: Jorge L. Alonso |
| vs. | ) | |
| | ) | Honorable Magistrate Judge: |
| Department of Justice, Bureau of Justice Assistance, Office of Justice Programs, EMAGES, Inc., Hattie Wash, Thomas Bradley, et al. | ) ) ) ) | Beth W. Jantz |
| | ) | Courtroom: 1903 |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF OBJECTION TO AND IN OPPOSITION TO DEFENDANT DOJ, BJA, OJP STATEMENT OF FACTS**

NOW COMES, pro se plaintiff Fred L. Nance Jr. responding to defendants DOJ, BJA, OJP (hereinafter "DOJ") State of Facts pursuant to LR56.1(b)(2).

1. In 2018, co-defendant Establishing Managing and Generating Effective Services Inc. ("EMAGES, Inc.") received a grant award from DOJ's Office of Justice Programs and the Bureau of Justice Assistance for a prison related program under the "Second Chance Act" ("SCA"). Complaint at 2; Exhibit A, EMAGES award information.

**Response:** Plaintiff disputes in part the asserted fact. EMAGES was named by DOJ the awardee of Grant #2018-CY-BX-0025 because EMAGES was the lead agency. (Ex.2,3)

2. EMAGES was the sole applicant to the grant program and, accordingly, had primary responsibility for funding and managing the program. Exhibit B, EMAGES Award.

**Response:** Plaintiff disputes in part the asserted fact. EMAGES was not the sole applicant. (Ex.3,24,38,39,40,41) EMAGES shared responsibility with C.L.I.C.K. Services, NFP. EMAGES managed the fiduciary part of the grant 10% or 13% of the time. C.L.I.C.K., by and through,

plaintiff had the primary responsibility for managing the program working 100% of the time. (Ex.3,24,38,39,40,41)

3. As part of the SCA grant program, DOJ made 26 grant awards in fiscal year 2018 totaling more than $20.5 million, one of which was a $500,000 award to EMAGES. Exhibit C, BJA FY 18 Second Chance Act Comprehensive Community-Based Adult Reentry Program award information.

**Response:** Plaintiff disputes in part this assertion. Plaintiff is not aware of who received awards for this grant. $500,000.00 was awarded for Grant #2018-CY-BX-0025. (Ex.2)

4. The EMAGES award was scheduled to start on October 1, 2018, and conclude on September 30, 2021. Complaint at 2; Exhibit D, BJA Second Chance Act solicitation at 13.

**Response:** Plaintiff disputes in part the asserted fact. Grant #2018-CY-BX-0025 was scheduled to start on October 1, 2018 and end on September 30, 2021. (Ex.2) Plaintiff's complaint contest DOJ stating plaintiff was not a legal partner and/or collaborator for Grant #2018-CY-BX-0028. (Ex.1)

5. Through the grant solicitation, DOJ notified the applicants of the eligibility requirement that only one entity may be the applicant. Id. at 2. The applicant must be the entity that would have primary responsibility for carrying out the award, including administering the funding and managing the entire program. Id.

**Response:** Defendants provide multiple statements, which violate Local Rule 56.1(a)(2). Plaintiff disputes in part this assertion. Plaintiff admits defendant EMAGES had the fiscal responsibility of the grant. (Ex.3) Defendant Hattie Wash's primary duty was fiduciary, administering the funding working 10% or 13% of the time. (Ex.38,40) Defendant Hattie Wash primary responsibilities was not managing the entire program. C.L.I.C.K. Services, NFP's

employee Dr. Fred L. Nance Jr. was managing the entire program working 100% of the time. (Ex.3,24,38,39,40,41)

    6.   In accordance with the eligibility requirement, DOJ only considered one applicant entity, EMAGES, for the award in question, not Nance or his company, and therefore the grant was awarded to EMAGES. Exhibit A, EMAGES award information; Exhibit D, BJA Second Chance Act solicitation at 2.

**Response:** Plaintiff disputes in part this assertion. Plaintiff admits the award letter may have language construct of an eligibility requirement. (Ex.32) Plaintiff disputes the assertion DOJ considered EMAGES due to the eligibility requirement with exhibit D, BJA Second Chance Act solicitation at 2 because plaintiff was the subawardee/partner on Grant #2018-CY-BX-0025. If plaintiff is not the subawardee mentioned in documents submitted to DOJ, then who is the subawardee? (Ex.3,16,24,31,40)

    7.   Under the relevant requirements that applied to EMAGES' grant award, recipients are permitted to terminate awards by providing written notice to the awarding agency. See 2 C.F.R. §§ 200.339-343.

**Response:** Plaintiff disputes this assertion. EMAGES submitted false information to DOJ for terminating the grant was giving false information and retaliatory in nature. (Ex.5,6,13,30,35,36) Plaintiff does not know if EMAGES statement here is fully true without full discovery pursuant to Rule 26 et seq. and (Ex.32).

    8.   In September 2020, Hattie Wash, the founder and CEO of EMAGES, informed DOJ that she was terminating the EMAGES award because of, among other things, the COVID-19 pandemic and COVID-related restrictions. Exhibit E, EMAGES Termination letter; Complaint at 19.

**Response:** Plaintiff disputes this assertion. EMAGES provided false information to DOJ regarding the termination of Grant #2018-CY-BX-0025. Defendants reference plaintiff's complaint at 19 BUT does not provide a paragraph number. The statement at 19 does not relate to defendants' assertion. Plaintiff never saw or was given the letter defendant Wash submitted to DOJ. The information and/or reasoning provided in EMAGES letter is false. (Ex.5,6,13,28,30,35,36) Plaintiff did not receive EMAGES termination letter until defendant's filed this motion.

9. In the written notice provided to DOJ, Wash stated that COVID-19 and related restrictions created financial instability for EMAGES and "prevented EMAGES from fulfilling the performance measures of the Second Chance grant" and that although telehealth services permitted EMAGES to continue providing services to some individuals, the "shelter in place mandate for the State of Illinois has prevented us from collecting data inside Cook County Jail and the Illinois Department of Correction." Exhibit E, EMAGES Termination Letter.

**Response:** Plaintiff disputes this assertion. EMAGES lied in their letter to DOJ. (Ex.5,6,13,28,30,35,36) Plaintiff provided emails to DOJ employees stating EMAGES was still providing services via teleconferencing (Ex.5) and plaintiff provided an email from the Cook County jail and the Illinois Department of Corrections reporting continuation of services via teleconferencing. (Ex.6)

10. In April 2020, Nance pursued a "whistleblower complaint" claiming "possible fraud or misappropriation of funds" concerning the EMAGES award, alleging that EMAGES misappropriated the grant award. Exhibit F, April 17, 2020, Letter.

**Response:** Plaintiff disputes, in part, this assertion. Plaintiff filed 3 Whistleblower complaints. (Ex.12)

11. Nance pursued his "whistleblower" complaints through the U.S. Office of Special Counsel, which denied his complaints, noting that it lacked jurisdiction over individuals who are not federal employees or applicants for federal employment. Exhibit G, OSC letter.

**Response:** Plaintiff disputes, in part, this assertion. The September 30, 2020 OSC letter, File No. MA-20-002834, states "The information provided reflects that you are not a federal employee, or an applicant for federal employment. Accordingly, because this office does not have jurisdiction to investigate the matter you describe, we are closing this file." (Ex.7) OSC did not deny plaintiff's complaint. OSC stated they did not have jurisdiction. Defendants are providing misinformation to this court.

12. Nance then pursued his "whistleblower complaint" with the Office of the Inspector General, where he repeated his allegation that EMAGES drew down grant funds for an ex-employee, and claimed that Wash retaliated against him for reporting the questioned drawdowns by removing him as the point of contact for the grant award and that Wash reduced Nance's salary under the grant. Exhibit H, August 28, 2020, Letter; Complaint at 2, 17.

**Response:** Plaintiff disputes in part this assertion. The Office of Inspector General letter dated October 13, 2020 states "I am writing in response to the August 28, 2020 whistleblower reprisal complaint that you submitted to the Department of Justice Office of the Inspector General (OIG)… In light of our determination, we intend to decline to open a whistleblower reprisal investigation of your complaint. If you wish to provide any additional information relevant to the OIG's determination, please do so within 10 days of the date of this letter. If you decline to provide any additional information, you may wish to review §4712(c)(2), which describes your right to pursue a claim of retaliation in federal district court…." Plaintiff disagrees with the determination of the October 13, 2020 determination because the OIG did not investigate

plaintiff's 3 Whistleblower complaints. (Ex.8,12) EMAGES clearly states here the OIG supposedly investigate the August 28, 2020 Whistleblower complaint only. Defendant DOJ attorney provides misinformation to this court and does not provide true and valid facts. Plaintiff did submit his August 29, 2020 complaint online (Ex.9) and mailed it to the Office of the OIG, along with his April 17, 2020 Whistleblower complaint (Ex.34) that the OIG did not reference in his letter of October 13, 2020. (Ex.8) Plaintiff never claimed defendants EMAGES and Hattie Wash reduced plaintiff's salary for Grant #2018-CY-BX-0025, which is the focus of this litigation. Plaintiff did reference defendant Wash taking $20,000.00 from plaintiff's salary in the 2010-2012 Second Chance Act grant, which is not in question for this present litigation.

13. Nance alleges that EMAGES drew down $880 in grant award funds for an ex-employee. Exhibit F, April 17, 2020, letter. This small amount represents less than 0.2% of the entire $500,000 grant award. He also alleges that EMAGES improperly drew down $2,800 each month from March to July 2020 when Plaintiff only submitted a payroll of $2,600 for March; $2,100 for April; $1,800 for May; $2,300 for June; and $2,100 for July. Complaint at 10. That total alleged discrepancy is $3,100 (i.e., a $200 overcharge in March; $700 in April; $1,000 in May; $500 in June; and $700 in July). Complaint at 15.

**Response:** Plaintiff disputes, in part, this assertion. Defendants rely on "Complaint at 15". Complaint at 15 reports $3,050.00 was overdrawn for reported consultant fees. (¶37)

14. The OIG rejected Nance's complaint stating "we do not believe that you have alleged that you suffered a reprisal in violation of 41 U.S.C. § 4712(a)." Exhibit I, OIG letter. OIG further found that Nance's complaint failed to allege that he made a protected disclosure (i.e., a communication that, among other things, reasonably evidenced gross mismanagement of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a

federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal contract (including the competition for or negotiation of a contract) or grant) and that "significant doubt surrounds whether your complaint alleges that you suffered a personnel action, as contemplated under § 4712(a)." Id.

**Response:** Defendants provide multiple statements and legal arguments violating Local Rule 56.1(a)(2). Plaintiff disputes this assertion. Defendants are not addressing the Whistleblower Act of 2013, amended 2016 (Ex.10,11), which is governed by the National Defense Authorization Act 2013, amended 2016 et seq.

15. Nance is not an employee of a contractor, subcontractor, grantee, or subgrantee of DoD or NASA. Complaint, at 5- 6. Nance has also never been employed by the Department of Justice. Id.

**Response:** Defendants provide multiple statements violating Local Rule 56.1(a)(2). Plaintiff disputes in part this assertion. Plaintiff is a subawadee/subgrantee of Grant #2018-CY-BX-0025. (16,24,31,40) Plaintiff needs discovery pursuant to Rule 26 et seq. to determine employment duties with DOJ pursuant to subawardee/subgrantee. (Ex.32)

16. A search DOJ's computerized database of administrative tort claims reveals that Nance has not filed an administrative tort claim with the department. Exhibit J, Declaration of Elijah Jenkins.

**Response:** Plaintiff disputes this assertion. Plaintiff filed his April 17, 2020, August 29, 2020, and September 13, 2020 complaints online on the OIG Hotline website (Ex.9), via info@ocs.gov (Ex.20, 21, 22), and via U.S. mail (Ex.34).

Respectfully submitted,

/s/Fred L Nance Jr., Ph.D.
Pro se Plaintiff
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org