## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Fred L. Nance Jr. | ) | |
| | ) | Case No. 20 CV 06316 |
| Plaintiff, | ) | |
| | ) | Honorable Judge: Jorge L. Alonso |
| vs. | ) | |
| | ) | Honorable Magistrate Judge: |
| Department of Justice, Bureau of Justice | ) | |
| Assistance, Office of Justice Programs, | ) | Beth W. Jantz |
| EMAGES, Inc., Hattie Wash, Thomas | ) | |
| Bradley, et al. | ) | Courtroom: 1903 |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF RESPONSE IN OPPOSITION TO DEFENDANT DOJ, BJA, OJP MOTION TO DISMISS

NOW COMES, pro se plaintiff Dr. Fred L. Nance Jr. rejecting and in opposition to

defendants DOJ, BJA, OJP (hereinafter "DOJ") motion to dismiss. Plaintiff is bringing this

lawsuit pursuant to the Whistleblower Act of 2013, amended 2016 et seq. This is not an

employee/employer relationship case before this court. Plaintiff filed this case pursuant to the

Whistleblower Act of 2013, amended 2016 et seq. Plaintiff asserts his 107 paragraphs/allegations

in his Original Complaint as if fully stated herein. (Ex.1) DOJ's motion to dismiss or

alternatively summary judgment should be denied, and plaintiff should be allowed to amend his

original complaint if needed and avail himself to full discovery.

Plaintiff request to supplement and/or amend his complaint to include the negligent

actions of DOJ employees Michael Dever, OPJ Division Chief; Andre Bethea, Senior Policy

Advisor; and Tracey Willis, Grant Manager pursuant to Rule 15(a)(1). These individuals did not

investigate plaintiff's Whistleblower complaints and allowed defendant Hattie Wash to give the

grant back making false statements in her letter (Ex.28, 5), which was retaliatory in nature to

plaintiff for filing Whistleblower complaints against her and terminated plaintiff's employment

causing harm to plaintiff. In addition, plaintiff has lost valuable partnerships and collaborations through the actions of defendants DOJ, EMAGES, Inc., Hattie Wash, and Thomas Bradley.

DOJ cites, as a primary source, 28 U.S.C. § 2675(a). 28 U.S.C. § 2675(a) states "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section…." Plaintiff's claims were made final by OIG O'Neill (Ex.8), but OIG O'Neill did not follow the policies of DOJ by sending plaintiff's 3 Whistleblower complaints to his department head.

DOJ attorney's set of "facts" are smoking mirrors attempting to dissuade this court from looking at the "true" facts in a chronical order. Plaintiff is an employee of C.L.I.C.K. Services, NFP. C.L.I.C.K. Services, NFP partnered and collaborated with EMAGES, Inc. in applying for Grant #2018-CY-BX-0025. C.L.I.C.K. Services, NFP is a subrecipient/subawardee of Grant #2018-CY-BX-0025. (Ex.16,24,31,40) C.L.I.C.K. Services, NFP employee, plaintiff Fred L. Nance Jr., duties and responsibilities in the proposal was to be the Program Director managing all aspects of Grant #2018-CY-BX-0025. (Ex.16,38,41) EMAGES, Inc. employee, Hattie Wash, duties and responsibilities was to manage all fiduciary matters. (Ex.3)

Pursuant to the budget of Grant #2018-CY-BX-0025, defendant Hattie Wash "percentage of time" on grant activities and the fiduciary was 10% or 13% of her time. (Ex.38) Plaintiff's

"percentage of time" on all grant management and activities was 100%. (Ex.38) Plaintiff applied

for Grant #2018-CY-BX-0025. (Ex.39) DOJ decided to send the Grant Award letter naming

EMAGES, Inc. as the recipient. (Ex.2) C.L.I.C.K. Services, Inc. subaward budget allocation is

$113,200.00 (Ex.40), Plaintiff discussed this with Brenda Worthington, BJA Division Chief, via

email. (Ex.16) C.L.I.C.K. Services, NFP never received its allocation from Grant #2018-CY-BX-

0025. (Ex.40)

Plaintiff received notice from OIG Assistant Inspector General, M. Sean O'Neill

dismissing plaintiff's 2nd Whistleblower complaint, thus terminating the processes, and not

pursuing or investigating plaintiff's 1st and 3rd Whistleblower complaints. (Ex.8) Mr. O'Neill did

not send plaintiff anything by certified or registered mail as required by DOJ policy. Mr. O'Neill

did not forward plaintiff's Whistleblower complaints to his Department Head as required by DOJ

policy.

Mr. O'Neill provided the following information to plaintiff in a letter dated on October

13, 2020 via email. "In light of our determination, we intend to decline to open a whistleblower

reprisal investigation of your complaint. If you wish to provide any additional information

relevant to the OIG's determination, please do so within 10 days of the date of this letter.  If you

decline to provide any additional information, you may wish to review § 4712(c)(2), which

describes your right to pursue a claim of retaliation in federal district court."

28 U.S. Code § 2675 - Disposition by federal agency as prerequisite; evidence…Plaintiff

restates 28 U.S.C. § 2675(a) "…The failure of an agency to make final disposition of a claim

within six months after it is filed shall, at the option of the claimant any time thereafter, be

deemed a final denial of the claim for purposes of this section." Assistant Inspector General M.

Sean O'Neill provided a final determination regarding plaintiff's Whistleblower complaints. Plaintiff exhausted his administrative remedies pursuant to 28 U.S.C. § 2675(a), (Ex.8).

Mr. O'Neill steered plaintiff to civil litigation since he decided he was not going to open Whistleblower reprisal investigations on plaintiff's 3 Whistleblower complaints. Plaintiff request discovery so he can access information on why Mr. O'Neill did not forward plaintiff's 3 Whistleblower complaints to his Department Head so this person could determine if he/she agreed with Mr. O'Neill's decision to decline opening an investigation into plaintiff's 3 Whistleblower complaints; and send plaintiff his/her decision via certified or registered mail pursuant to DOJ policy.

Plaintiff filed his 1st Whistleblower complaint on April 17, 2020, his 2nd Whistleblower complaint on August 28, 2020, and his 3rd Whistleblower complaint on September 13, 2020 with DOJ employees Tracey Willis, Andre Bethea, and Michael Dever via email (Ex.13), which was also offered on the OIG Hotline website and via U.S. mail. (Ex.34) The August 29, 2020 Whistleblower complaint was the only one addressed by OIG Assistant Attorney General M. Sean O'Neill. (Ex.8) The author of the OIG Letter (Ex.8) did not forward plaintiff's Whistleblower complaints to any higher-level person for review. Therefore, 28 U.S.C. § 2675(a) was activated.

**Motion Under Rule 26 and 56(d)**

On February 3, 2021 defendants DOJ filed a motion to dismiss or alternatively summary judgment. On February 13, 2021 plaintiff filed a motion under Rule 26 and 56(d) with a 40 paragraph Declaration pursuant to FRCP 56(c)(4) and L.R. 56.1(d)(4) regarding discovery to address the summary judgment of defendant DOJ. On February 17, 2021 plaintiff attended a teleconference court hearing in front of the Honorable Judge Jorge L. Alonso.

Plaintiff was expecting defendant DOJ to file a "written" answer to plaintiff's "written" motion on his discovery request. However, on February 17, 2021 the Honorable Judge Jorge L. Alonso asked for oral argument from plaintiff and defendant via teleconferencing. Plaintiff did not want an "oral" argument. Plaintiff was asked if he was an employee of DOJ. Plaintiff informed the court he was not an employee of DOJ, and that, plaintiff's complaint was about the violation of the Whistleblower Act of 2013, amended 2016 et seq. Defendant DOJ reported plaintiff did not need discovery. To plaintiff's surprise, the Honorable Judge Jorge L. Alonso denied plaintiff's motion for discovery under Rule 26 and 56(d) regarding whether plaintiff needed discovery before Summary Judgment.

Defendant DOJ gives the following statement in their introduction. "Plaintiff Fred L. Nance, Jr., claims that he was in a "partnership/collaboration" with EMAGES, Inc., a private, not-for-profit treatment agency that had a Department of Justice grant to conduct a prison-related program under the "Second Chance Act" when EMAGES terminated him, supposedly with the assistance of DOJ.  Defendant EMAGES, Inc., terminated its grant award from DOJ because of financial challenges caused by the Covid-19 pandemic. While much of Nance's complaint involves various claims against EMAGES, including whistleblower, tort, and employment claims, his pro se complaint seems to present a single claim against DOJ under the Federal Tort Claims Act.  Nance's FTCA claims should be dismissed if for no other reason than because he failed to exhaust his administrative remedies.  If any of his remaining claims are meant to be against DOJ, they should be dismissed because he was never employed by the Department of Justice, or any other federal agency, and the only statutes that his claims could depend upon do not apply, including his whistleblower claims, which can only apply, if at all, against his former employer, EMAGES, not the Department of Justice.  Accordingly, the court should dismiss the

complaint against the Department of Justice, or alternatively grant it summary judgment."

DOJ attorney reports plaintiff filed his Whistleblower complaints after he learned Grant #2018-CY-BX-0028 had been given back. This is not true. Plaintiff must call this what it is. It is a lie. DOJ attorney is really telling the court to forget "pro se" true facts in a chronological order but look over here because he is a real attorney. Why is the DOJ attorney distorting the real facts? The DOJ attorney is working the court and the Honorable Judge Alonso. This may be proven by the court decision made on February 17, 2021. It appears the court believes whatever is coming out of the mouth of the DOJ attorney.

If what the DOJ attorney said in open court on February 17, 2021 is true, why didn't he put it in writing so it can be challenged? PROCESS!!! When you skip processes, it creates gateways for lies and falsities. The DOJ attorney knew he did not have to put it in writing because the court was going to believe him, no matter what is coming out of his mouth. This is disparate treatment at work here. There is no way for the court to grant a motion to dismiss or alternatively summary judgment here. There are all kinds of facts in dispute. The proof of facts and disputed facts between plaintiff and defendant DOJ employees is in the evidentiary material (Ex.33) offered by plaintiff and the foregoing real facts.

## FACTS

On October 23, 2020, plaintiff filed a federal civil complaint against the Department of Justice, Bureau of Justice Assistance, Office of Justice Programs (hereinafter, "DOJ"); EMAGES, Inc., Thomas Bradley, et al. regarding Grant #2018-CY-BX-0025 for violations of the National Defense Authorization Act 2013, amended 2016 et seq., 41 U.S.C. § 4712, Illinois Whistleblower Law, Retaliation, Hostile Work Environment, Emotional Distress, and Special Damages. (Ex.1)

Plaintiff co-authored an abstract and proposal (Ex.3) for Grant #2018-CY-BX-0025, in which C.L.I.C.K. Services, NFP (hereinafter, "C.L.I.C.K.") partnered/collaborated on this grant with EMAGES, Inc. C.L.I.C.K. is a subrecipient/subawardee of Grant #2018-CY-BX-0025. Plaintiff is an employee of C.L.I.C.K. Plaintiff's duties in this partnership/collaboration is outlined in the Abstract (Ex.3, ¶1), and specifically, in the Capabilities and Competencies section of the proposal. (Ex.3, pp.17-18) C.L.I.C.K.'s employee, plaintiff Dr. Fred L. Nance Jr., was responsible for all management and program duties. (Ex.12,24,35,36,39,40,41) Plaintiff pledged 100% of his time to Grant #2018-CY-BX-0025. EMAGES, Inc. employee, defendant Dr. Hattie Wash, was responsible for the fiduciary duties. Defendant Hattie Wash pledged 10% to Grant #2018-CY-BX-0025 at submission of the abstract and proposal, and upon receiving the grant defendant Wash decided to pay herself more money by revising her time to 13%. (Ex.38,40) EMAGES, Inc. was the lead agency via verbal discussion between plaintiff and defendant Hattie Wash. DOJ award letter listed EMAGES, Inc. as the administrator of the grant.

As stated above, C.L.I.C.K. Services, NFP is the subrecipient referenced in the Subaward Monitoring Policy for Grant #2018-CY-BX-0025. (Ex.24, ¶1; 31,40) C.L.I.C.K. Services, Inc. subaward budget allocation is $113,200.00 (Ex.40), which C.L.I.C.K. Services, NFP never received. Plaintiff is the President & CEO of C.L.I.C.K. DOJ claims plaintiff is an employee of EMAGES. Plaintiff is an employee of C.L.I.C.K. Services, NFP. (www.clickservices.org) Plaintiff discussed this issue, via email, with BJA Division Chief Brenda Worthington (Ex.16)

Plaintiff has written and received 2 Second Chance Act grants (2010-2012 and 2018-2020) as a co-sponsor, partner/collaborator with defendant EMAGES, Inc. Plaintiff wrote the 1st proposal for the grant in 2010-2012 without the assistance of defendant Hattie Wash (hereinafter,

"Hattie"). Defendant Hattie assisted in the writing of the abstract and proposal for Grant #2018-CY-BX.0025. (Ex.3)

In or around March of 2019 plaintiff engaged BJA Division Chief Brenda Worthington concerning the distribution of funds and the Whistleblower Act regarding defendant Hattie. (Ex.16) Plaintiff discussed his Whistleblower complaints with the Honorable Congressman Danny K. Davis (Ex.15) and Second Chance Act Technical Advisor Joseph Williams. (Ex.43)

Plaintiff filed 3 Whistleblower complaints with the Department of Justice, Bureau of Justice Assistance, Office of Justice Programs Division Chief, Michael Dever; Andre Bethea, Senior Policy Advisor; Tracey Willis, Grant Manager; Joseph Williams, SCA Technical Advisor; OIG Hotline, and by U.S. Mail. (Ex.12,13,21,31,32,34,43)

Plaintiff does not claim defendants DOJ employees, Michael Dever, Andre Bethea, and Tracey Willis; and defendants EMAGES, Inc., Hattie Wash, or Thomas Bradley terminated his employment as related to an employer/employee relationship with EMAGES, Inc. Plaintiff claims all defendants violated the Whistleblower Act of 2013, amended 2016 et seq. causing the termination of plaintiff's employment, specifically, defendants EMAGES and Wash initiating the violation of the Whistleblower Act with her false information in her letter terminating the grant (Ex.28) and DOJ employees Michael Dever, Andre Bethea, and Tracey Willis actively conspiring, colluding, or working collaboratively with EMAGES in violating the Whistleblower Act by not investigating plaintiff's Whistleblower complaints (Ex.5) and allowing defendant Hattie Wash's letter to go through violating the Whistleblower Act, which terminated plaintiff's employment (Ex.23,32, p.6; ¶3, p.7; p.11; 23, 29) evidenced via the content of plaintiff's 3 Whistleblower complaints submitted on the OIG Hotline and via U.S. mail and emails to DOJ employees. (Ex.8,10,23,29; 32, p.11; 34)

**First,** this is not an employee/employer relationship termination. **Second**, this is a Whistleblower Act violation complaint regarding the termination of plaintiff. **Third**, plaintiff filed 3 Whistleblower complaints against defendants EMAGES, Inc., Hattie Wash, and Thomas Bradley by filing his complaints with DOJ employees copying Congressman Danny K. Davis. **Fourth**, the Whistleblower Act of 2013, amended 2016 et seq. prohibits demotion, termination, or changes in employment status for filing a Whistleblower complaint. **Fifth**, DOJ employees Tracey Willis and Andre Bethea were informed, via emails, that plaintiff filed 3 Whistleblower complaints and never addressed plaintiff's Whistleblower complaints. **Sixth**, employee Michael Dever responded via email to plaintiff's 3rd Whistleblower complaint giving his assurance that plaintiff's Whistleblower complaints would be investigated. **Seventh**, defendant Hattie Wash submitted false information for returning Grant #2018-CY-BX-0025 to DOJ employees. **Eighth**, without any investigation into the alleged reasoning defendant Hattie Wash gave in her written statement to DOJ, DOJ employees accepted defendant Hattie Wash's statement as true and terminated Grant #2018-CY-BX-0025; thus, terminating plaintiff's employment. **Ninth**, when DOJ employee Michael Dever informed plaintiff, via email, Grant #2018-CY-BX-0025 was returned and accepted, plaintiff began sending emails to DOJ Michael Dever, Andre Bethea, and Tracey Willis reporting defendant Hattie Wash lied about why she was returning the grant, and that, defendant Hattie Wash was retaliating against plaintiff by returning the grant (1) knowing it would terminate plaintiff's employment, and (2) violating the Whistleblower Act. **Tenth**, when DOJ employee Michael Dever, Andre Bethea, and Tracey Willis did not respond or take any action to address plaintiff's Whistleblower complaints, plaintiff claimed DOJ employees conspired, colluded, or worked collaboratively with defendant Hattie Wash, which made the

DOJ employees responsible for violating the Whistleblower Act of 2013, amended 2016 et seq. (Ex.33)

Plaintiff facilitated a Letter of Support from the Honorable Congressman Danny K. Davis. (Ex.14) Congressman Davis is the Chief Sponsor for the Second Chance Act bill (Ex.17). Plaintiff has been a member of Congressman Davis' Second Chance Act Advisory Committee since 2007. Plaintiff assisted in developing the language for the Second Chance Act Bill signed by President Bush on April 10, 2008. Plaintiff has been a Peer Reviewer for Second Chance Act grants/proposals since 2009, reviewing over 121 proposals. Plaintiff is considered an expert on the content and implementation of Second Chance Act grants.

**Defendants DOJ Alleged Facts**

Plaintiff Fred Nance was employed by co-defendant Establishing Managing and Generating Effective Services Inc. ("EMAGES, Inc."), a not-for-profit social service organization that received a grant award in 2018 from DOJ's Office of Justice Programs and the Bureau of Justice Assistance for a prison-related program under the "Second Chance Act" ("SCA"). Defendant's Rule 56.1 Statement of Material Facts ("DSF"), ¶ 1. Plaintiff was not engaged as an employee of EMAGES, which is responded to in DSF. (Ex.3,16,24,34,40,41,43)

EMAGES was the applicant to the grant program (there were no "co-applicants") and, accordingly, had primary responsibility for funding and managing the program. Exhibit B, EMAGES Award; DSF ¶ 2. There is no mention of "co-applicant" cited at DSF ¶2. Plaintiff and EMAGES were partners/collaborators. C.L.I.C.K. Services, NFP is subawardee/subrecipient of Grant #2018-CY-BX-0025. (Ex.24,31,40) EMAGES primary responsibility was being the fiduciary. Plaintiff's primary responsibility was managing the program. (Ex.3,16,24,31,40,41,43)

Through the grant solicitation, DOJ notified interested entities that an applicant had to be

a single entity. DSF ¶ 5. The applicant had to be the entity that would have primary responsibility for carrying out the award, including administering the funding and managing the entire program. *Id.* Accordingly, in agreement with the eligibility requirement, DOJ considered only one applicant entity, EMAGES, for the award in question, not Nance or his company, and therefore the grant was awarded to EMAGES. DSF ¶ 6.

C.L.I.C.K. and EMAGES were partners and collaborators. The lead agency received Grant #2018-CY-BX-0025 pursuant to the solicitation. (Ex.42) On page 2 of this grant, it reads as follows: "…BJA welcomes applications under which two or more entities would carry out the federal award; however, only one entity may be the applicant. Any others must be proposed as subrecipients (subgrantees). C.L.I.C.K. was the subgrantee. (Ex.24,31,40)

The applicant must be the entity that would have primary responsibility for carrying out the award, including administering the funding and managing the entire program. Under this solicitation, only one application by any particular applicant entity will be considered. An entity may, however, be proposed as a subrecipient (subgrantee) in more than one application." C.L.I.C.K. Services, NFP is the subrecipient. (Ex.3,24,39,40,41) Defendant Wash's primary duty was fiduciary, administering the funding working 10% or 13% of the time. (Ex.38,40) Defendant Wash primary responsibilities was not managing the entire program. C.L.I.C.K. Services, NFP's employee Dr. Fred L. Nance Jr. was managing the entire program working 100% of the time. (Ex.3,24,39,40,41)

EMAGES violated their financial responsibilities. (Ex.13,16,32 p.7, ¶5) C.L.I.C.K. Services, NFP was the subawardee/subrecipient of Grant #2018-CY-BX-0025 and plaintiff is an employee of C.L.I.C.K. Services, NFP. (Ex.24, ¶1;38,40) Grant #2018-CY-BX-0025 had only one subawardee. The partnership C.L.I.C.K shared with EMAGES inferred a subaward, which is

listed in our Subaward Monitoring Policy and budget. (Ex.24,31,40). Plaintiff explained the responsibilities of Grant #2018-CY-BX-0025. (Ex.3,24,39,40,41) The Grant award may have listed EMAGES as the awardee because EMAGES was the "lead" agency (Ex.32), and the majority of participants served pursuant to the proposal were current clients of EMAGES. (Ex.35,36)

DOJ reports "Under the relevant grant requirements, recipients were permitted to terminate awards by providing written notice to the awarding agency. DSF ¶ 7; see 2 C.F.R. §§ 200.339-343." This may be true, but the facts must be true in the termination letter because, if not, defendant Wash was retaliating against plaintiff for filing Whistleblower complaints against her. (Ex.5,28) Accordingly, in September 2020, Hattie Wash, the founder and CEO of EMAGES, informed DOJ that she was terminating the EMAGES award because of, among other things, the COVID-19 pandemic and COVID-related restrictions. DSF ¶¶ 8, 9. This is an untrue statement. (Ex.5,28) At or about the time Wash initiated the grant termination process, she apparently terminated Nance's employment with EMAGES. Compl. at 2. This is true.

Defendant Hattie Wash submitted false statements in her written notice to DOJ. (Ex. 5,28) Defendant Wash writes about how she was not receiving income from the State of Illinois for services and lack of our services to our participants due to Covid-19 restrictions. Grant #2018-CY-BX-0025 was self-sufficient. (Ex.32) The State of Illinois funding had nothing to do with this grant. Covid-19 has nothing to do with the lack of services being provided to our grant participants. In addition, participants of Grant #2018-CY-BX-0025 had no difficulties with service delivery. (Ex.35,36)

Please review the participants list as of September 30, 2020. (Ex. 35,36) We enrolled a total of 111 participants from October 1, 2019 thru September 30, 2020. Our participants were

divided into groups. We conducted groups on Monday (2), Tuesday, Wednesday, Thursday, Friday, and Saturday. Due to Covid-19, in March of 2020, we lost the IDOC Thursday group and the Cook County jail Friday group. There were a total 30 participants enrolled in these 2 groups. As you can see from Ex. 35 & 36, we were losing most of this population on Thursday (IDOC) and Friday (Cook County jail) before the Covid-19 suspensions from these 2 entities.

On March 12, 2020, the last day before IDOC suspended service (Thursday) due to Covid-19, we had 5 people present. (Ex.36, p.20) On March 13, 2020, the last day before the Cook County jail suspended service (Friday) due to Covid-19, we had 1 person present. (Ex.36, p.21) As it relates to this Covid-19 issue, the grant lost 6 people because of it. Even with this loss of IDOC and Jail participants, we reported to our Technical Advisor, Joseph Williams, we did not need to adjust our Planning and Implementation Guide (Ex.41,43) as other similarly situated organizations in receipt of grants under Second Chance Act Community-based Adult Reentry Program May 1, 2018. (Ex.42) Our Second Chance Act Technical Advisor, Joseph Williams, was kept abreast of our IDOC and Cook County jail participants and the processes of our grant. (Ex.43) We met with him during teleconferencing calls during the Covid-19 crisis and the re-instatement possibilities of our pre-release participants. (Ex.43)

Plaintiff would not have this information if he was the type that could be intimidated and threatened by someone or something with skin on it. Defendant Wash's attorneys threatened plaintiff with legal action if he did not turn over the laptop computer with this information on it. (Dkt. #26-1) Plaintiff filed a motion for sanctions regarding these threats and intimidation. (Dkt. #26) The Honorable Judge Alonso denied the motion for sanctions. (Dkt. #37)

In defendant Wash's letter to DOJ, she states "…Effective October 1, 2020, the Board of Directors of EMAGES, Inc. will terminate our grant award under the FY18 Second Chance

Comprehensive Community-Based Adult Reentry Program, #2018-CY-BX-0025. The reasons

for the termination are as follow: EMAGES financial instability and a failure to meet

programmatic and evaluation requirements of the grant….” (Ex. 28) This was untrue. (Ex.5,32)

In defendant Hattie Wash's email dated September 21, 2020 to staff she states “The

Covid-19 pandemic, the Shelter in Place Mandate by the State of Illinois, less than 15% of sex

offender clients paying their fees as well as EMAGES not receiving a payment from the FY21

State budget which began July, 2020 has created an economic hardship and cash flow problem

for EMAGES. Given the above Effective October 1, 2020 EMAGES is suspending our sex

offender groups and returning the Second Chance Act grant back to the Office of Justice

Programs.” (Ex.28) This is not true. (Ex.5,35,36,43)

On September 21, 2020 plaintiff sent an email to DOJ Division Chief, Michael Dever,

Senior Policy Advisor, Ander Bethea, Grant Manager Tracey Willis, and a host of our

collaborating partners (prison & jails) tied to Grant #2018-CY-BX-0025, stating, in part, “…The

reasoning Dr. Wash uses for giving the grant back is ludicrous. Grant #2018-CY-BX-0025 is

funded and is not affected by the lack of Illinois State funding Dr. Wash alludes too. The grant

funding covers participant cost because there is no participant cost. The grant covers contractual

fees for all mentors and staff of the grant, which is listed in the grant budget. Our budget takes

care of office space and other ancillary functions and needs. Dr. Wash is lumping the grant

program in with her State dilemma to retaliate against me for filing my Whistleblower

complaints. The only reason Dr. Wash is giving the program back to OJP is to hurt me for filing

the 3 Whistleblower complaints. WHEREFORE, I am requesting a teleconference audience with

Mr. Michael Dever, BJA Division Chief; Mr. Andre Bethea, BJA Senior Policy Advisor; and

Ms. Tracey Willis, OJP Grant Manager; or in the alternative, a transfer of responsibility for Grant #2018-CY-BX-0025. Please respond. Thank you." (Ex.5,35,36,43)

On November 22, 2020 and November 28, 2020 plaintiff sent emails to DOJ's Michael Dever, BJA Division Chief; Andre Bethea, BJA Senior Policy Advisor; and Tracey Willis, OJP Grant Manager et al. informing them defendant Wash was still providing services to the participants of Grant #2018-CY-BX-0025 via her other sex offender program services. (Ex. 5, p.3-6) In defendant Wash's letter and email of September 21, 2020 she stated she was suspending all services due to Covid-19. (Ex.28) This was a false statement and DOJ employees had enough evidence from plaintiff to stop the termination of the grant and negate the retaliation cause of action in plaintiff's complaint, but they did not.

Therefore, defendant Wash lied in her written statement to DOJ regarding why she was returning the grant. (Ex.28) Defendant Wash returned the grant to retaliate against plaintiff for filing Whistleblower complaints against her; and DOJ was complicit in this retaliatory action because they did no investigation, having direct knowledge plaintiff had filed Whistleblower complaints via email reporting defendant Hattie Wash was retaliating against him. (Ex.5,13)

The DOJ attorney is just making up stuff as he goes, creating false timelines to muddle the waters with smoke screens. The DOJ attorney reports…Nance, who apparently did not believe the grant award should have been terminated, earlier pursued a "whistleblower complaint" claiming "possible fraud or misappropriation of funds" concerning the EMAGES award, alleging that EMAGES misappropriated the grant award. DSF ¶¶ 10 - 12.

Plaintiff filed 3 Whistleblower complaints. The DOJ attorney wants this court to believe plaintiff filed one whistleblower complaint because the August 28, 2020, 2nd Whistleblower complaint, was the only complaint the OIG addressed. (Ex.8) The OIG was privy to all 3

Whistleblower complaints and should have investigated each one. (Ex.12,34) The OIG letter is dated October 13, 2020 (Ex.8), a whole month after plaintiff's 3rd Whistleblower complaint. The OIG did not investigate plaintiff's Whistleblower complaints. (Ex.12)

Defendant DOJ states "Nance pursued his "whistleblower" complaints through the U.S. Office of Special Counsel, (Ex.7) which denied his complaints, noting that it lacked jurisdiction over individuals who are not federal employees or applicants for federal employment. Nance then pursued his "whistleblower complaint" with the Office of the Inspector General, where he repeated his allegation that EMAGES drew down grant funds for an ex-employee and claimed that Wash retaliated against him for reporting the questioned drawdowns by removing him as the point of contact for the grant award and that Wash reduced Nance's salary under the grant. DSF ¶¶ 12, 13."

Again, the DOJ attorney puts quotation marks around the singular phrase "whistleblower complaint" as if there is only one. Defendant Wash reducing plaintiff pay in 2010 has nothing to do with this litigation. Defendant Wash taking plaintiff off as Point of Contact has nothing to do with this litigation.

Plaintiff filed all 3 Whistleblower complaints. (Ex.12) The OIG letter is dated October 13, 2020. Plaintiff filed all 3 Whistleblower complaints on the OIG Hotline and, specifically, his 3rd Whistleblower complaint via email (Ex.22), and sent 2 Whistleblower complaints, April 17, 2020 and August 28, 2020, with a Cover Letter via U.S. mail. (Ex. 34) Now, the question is: How is the OIG saying he received the August 28, 2020, 2nd Whistleblower complaint and not the April 17, 2020 Whistleblower complaint? These are also material facts in dispute.

Defendant DOJ continues "The OIG rejected Nance's complaint stating, "We do not believe that you have alleged that you suffered a reprisal in violation of [41 U.S.C.] § 4712(a)."

DSF ¶ 14. OIG further found that Nance's complaint failed to allege that he made a protected disclosure (i.e., a communication that, among other things, reasonably evidenced gross mismanagement of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal contract (including the competition for or negotiation of a contract) or grant) and that "significant doubt surrounds whether your complaint alleges that you suffered a personnel action, as contemplated under § 4712(a)." Id. After the grant was terminated, based on EMAGES' termination request, Nance filed this complaint alleging various claims including his FTCA claim against the Department of Justice and his whistleblower, tort, employment, and other claims against EMAGES and its officers."

The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. § 4712(a). OIG Assistant Attorney, M. Sean O'Neill, in his letter dated October 13, 2020 states "In light of our determination, we intend to decline to open a whistleblower reprisal investigation of your complaint." Mr. O'Neill basically stopped the processes of plaintiff's 3 Whistleblower complaints rendering a final decision. Plaintiff filed his federal complaint on October 23, 2020, after receiving this final determination. (Ex.1)

AMENDMENTS1966-Subsec. (a). Pub. L. 89-506, §2(a), required that all administrative claims be filed with the agency or department and finally denied by the agency and sent by certified or registered mail prior to the filing of a court action against the United States, provided that the claimant be given the option of considering the claim to have been denied if the agency fails to make final disposition of the claim within six months of presentation of the claim to the

agency, and provided that the requirements of the subsection would not apply to claims asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim. Subsection (b). Pub. L. 89-506, §2(b), struck out provisions under which a claimant could, upon 15 days written notice, withdraw a claim from the agency and institute an action thereon. 1949-Subsec. (b). Act May 24, 1949, substituted "section" for "subsection". Plaintiff never received certified or registered mail from Mr. O'Neill or his supervisor/manager. (Ex.26) Plaintiff believes Mr. O'Neill never sent his 3 Whistleblower complaints to his department head.

Plaintiff has procedurally and substantially proven his Whistleblower complaints. An employee **need not** prove that the matter disclosed actually was unlawful, gross mismanagement, a gross waste of funds, an abuse of power, or a danger to public health or safety. The employee must instead show that a person standing in the employee's shoes could reasonably believe, given the information available to the employee, that the disclosed information evidences one of the statutory types of wrongdoing. (See *ManTech Int'l Corp.*, 207 F. Supp. 3d at 621.) Following *ManTech Int'l Corp*, "the critical point in a retaliation claim is to "offer evidence that would allow the factfinder to conclude that the employer took the adverse action because of the protected activity…the holding demonstrates the critical importance of supporting arguments with sufficient evidence."" *Int'l Bus. Mach. Corp.*, 370 F.3d 698 (7th Cir. 2004) Plaintiff has provided sufficient evidence.

The reasonableness inquiry focuses on the perception of the employee, not that of the audience. An employee must prove that the decisionmaker accused of retaliation knew about the individual's protected disclosures. An employee can show either actual or constructive knowledge. An employee may show constructive knowledge by demonstrating that an individual

with actual knowledge of the disclosure influenced the official taking the retaliatory action (*Dorney v. Dep't of Army*, 117 M.S.P.R. 480, 485 (2012)).

The Whistleblower Protection Act 2013, amended 2016 et seq. protects an employee who discloses information revealing "any violation of any law, rule, or regulation," or "a substantial and specific danger to public health or safety." There is a narrow exception, however, for disclosures that are "specifically prohibited by law." Affirming a Federal Circuit decision in *MacLean v. Dep't of Homeland Sec.*, 116 M.S.P.R. 562 (2011) the Supreme Court held that this exception encompasses statutes and not rules or regulations. Applying basic canons of statutory construction, the Court found that Congress made a deliberate choice to say "specifically prohibited by law" rather than "specifically prohibited by law, rule, or regulation," thereby excluding rules and regulations from the narrow exception to WPA protected conduct. The Court's decision as driven in part by the important public policy of preventing agencies from using regulations to override the protections afforded whistleblowers under the Whistleblower Protection Act. In addition, a broad interpretation of the word "law" could defeat the purpose of the whistleblower statute. If "law" included agency rules and regulations, then an agency could insulate itself from the scope of Section 2302(b)(8)(A) merely by promulgating a regulation that "specifically prohibited" whistleblowing. But Congress passed the whistleblower statute precisely because it did not trust agencies to regulate whistleblowers within their ranks. Thus, it is unlikely that Congress meant to include rules and regulations within the word "law."

WHEREFORE, plaintiff respectfully request this Honorable court reject defendant's motion to dismiss or alternatively summary judgment and order DOJ to answer plaintiff's original complaint; and/or allow plaintiff to amend and/or supplement his complaint pursuant to Rule 15(a)(1); and amend his complaint pursuant to Rule 15(a)(1) to add a claim for negligence;

and/or alternatively proceed with initial full discovery processes in this matter dismissing

defendants motion to dismiss or alternatively summary judgment with prejudice.

Respectfully submitted,

/s/Fred L Nance Jr.
Pro Se Plaintiff
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org