

**FILED**
10/26/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

EXHIBIT 1



RECEIVED
OCT 23 2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Fred L. Nance Jr. ) | |
| ) | |
| Plaintiff, ) | 1:20-cv-06316 |
| ) | Judge Jorge L. Alonso |
| vs. ) | Magistrate Judge Beth W. Jantz |
| ) | |
| Department of Justice, Bureau of Justice ) | |
| Assistance, Office of Justice Programs, ) | |
| EMAGES, Inc., Hattie Wash, Thomas ) | |
| Bradley, et al. ) | Courtroom: |
| ) | |
| Defendants. ) | |

### PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES, Pro se Plaintiff Fred L. Nance Jr. (hereinafter, "Plaintiff") pursuant to the

Federal Tort Claims Act (FTCA) and files suit against the Department of Justice

(DOJ)(hereinafter "DOJ"), Bureau of Justice Assistance (BJA)(hereinafter, "BJA"), and Office

of Justice Programs (OJP)(hereinafter, "OJP") under FTCA; and plaintiff injured by the tortious

actions of nonemployees EMAGES, Inc. (hereinafter, "EMAGES"), Hattie Wash (hereinafter,

"Hattie") and Thomas Bradley (hereinafter, "Bradley") may sue nonemployees individually

under ordinary principles of state tort law, even though plaintiff may not sue the individuals

Michael Dever (hereinafter "Dever"), Andre Bethea (hereinafter, "Bethea"), and Tracey Willis

(hereinafter, "Willis") who are government employees, yet perpetrated the tortious acts under the

color of government employees of the United States under the FTCA.[1] Plaintiff complains all

---

[1] See, e.g., *Creel,* 598 F.3d at 211–15 (remanding with instructions to deny nonemployee's
motion to dismiss and to grant United States' motion to dismiss); *Ezekiel v. Michel,* 66 F.3d 894,
903–04 (7th Cir. 1995) (explaining that if individual defendant was "an independent contractor
rather than a federal employee," the plaintiff's case against that defendant could proceed).

listed here violated the National Defense Authorization Act (NDAA) of 2013 et seq.,[2] 41 U.S.C. §4712,[3] and 740 ILCS 174/ when plaintiff received retaliation and was terminated from employment for filing 3 Whistleblower complaints against "EMAGES" and "Hattie" with the assistance of DOJ, BJA, OJP.

Plaintiff and defendant "Hattie" entered into a partnership/collaboration submitting an abstract and proposal[4] for Second Chance Act (hereinafter, SCA) Grant #2018-CY-BX-0025.[5] Plaintiff and defendant "Hattie" agreed plaintiff would be the Program Director and defendant "Hattie" would be the fiduciary for this grant. Plaintiff and defendant "Hattie" received this grant on October 1, 2018 for a period of 3 years, September 30, 2021. Starting on April 17, 2020, plaintiff filed the 1st of 3 Whistleblower complaints to DOJ, BJA, OJP reporting misappropriation of funds and/or fraud against defendant "Hattie". Defendant "Hattie" told plaintiff since he filed Whistleblower complaints with DOJ, BJA, OJP, OSC, and OIG against her she was going to give the grant back and plaintiff could have it. OIG submitted a "partial" final determination to plaintiff's 2nd Whistleblower Complaint regarding retaliation. No one from the DOJ, BJA, OJP, OSC, or OIG has addressed all 3 Whistleblower complaints in their entirety.

Defendants DOJ, BJA, OJP employees "Dever", "Bethea", and "Willis" informed plaintiff that defendant "Hattie" gave reasons for giving the grant back. Defendants DOJ, BJA, OJP employees "Dever", "Bethea", "Willis", et al. allowed defendant "Hattie" to give the grant back; thus allowing "Hattie" to retaliate against plaintiff and terminate plaintiff's employment for filing 3 Whistleblower complaints. When plaintiff claimed he was a partner on Grant #2018-

---

[2] https://www.congress.gov/112/plaws/publ239/PLAW-112publ239.pdf
[3] https://www.law.cornell.edu/uscode/text/41/4712
[4] https://drive.google.com/file/d/1PR002k0763nYPN7lW1jAcuronVuLU5Jj/view?usp=sharing
[5] https://drive.google.com/file/d/1Qff6DYdl7R9EMlixYgYx_EUBajrvWNvP/view?usp=sharing

CY-BX-0025 and the Grant should be given to him if "Hattie" was giving it up, DOJ, BJA, OJP employees "Dever", "Bethea", "Willis", et al. informed plaintiff he was an employee of EMAGES, and not a partner on the grant. Plaintiff referenced the abstract and proposal to substantiate plaintiff's claim he was a partner. Defendant employee "Dever" sent plaintiff an email stating "If C.L.I.C.K. Services would like to apply for a Second Chance Act Community-Based Program grant as a direct recipient or through a partnership with another organization to continue serving the community in FY 2021, please know that we will be announcing the Second Chance Act Solicitations this Fall." Defendant DOJ, BJA, OJP employees "Dever", "Bethea", "Willis" et al. rescinded the grant; thus allowing defendant "Hattie" request to return the grant, which triggered a retaliatory act against plaintiff, terminating plaintiff's employment for filing 3 Whistleblower complaints.

The NDAA seq al. and 41 U.S.C. §4712 protects a Whistleblower and prohibits government contractors and grantees from subjecting their employees to reprisal for disclosing gross mismanagement, waste, and other harms or wrongdoing relating to federal contracts or grants. The statute provides: An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. 41 U.S.C. § 4712(a)(1). The NDAA makes it illegal for an employee of a Federal contractor, subcontractor, grantee, or subgrantee to be discharged, demoted, or otherwise

discriminated against for making a protected whistleblower disclosure. In 2016, Congress amended the program to make those protections permanent.

## JURISDICTION AND VENUE

At all times relevant to this case, DOJ, BJA, OJP, "Hattie", "Bradley" et al. operated in the State of Illinois. A person injured by the tortious activity of a federal employee generally has two potential targets that he might name as a defendant in a tort lawsuit: (1) the federal employee who committed the tort and (2) the federal government itself.[6] In 1946, Congress enacted the FTCA,[7] which effectuated "a limited waiver of the federal government's sovereign immunity"[8] from certain common law tort claims. With certain exceptions and caveats, the FTCA authorizes plaintiffs to bring civil lawsuits, such as against the United States; for money damages; for injury to or loss of property, or personal injury or death; caused by a federal employee's[9] negligent or wrongful act or omission; while acting within the scope of his office or employment; under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the law of the place where the act or omission occurred.[10]

Pursuant to 41 U.S.C. § 4712(c)(2) If the head of an executive agency issues an order denying relief under paragraph (1) or has not issued an order within 210 days after the submission of a complaint under subsection (b), or in the case of an extension of time under paragraph (b)(2)(B), not later than 30 days after the expiration of the extension of time, and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the

---

[6] *Harbury v. Hayden*, 522 F.3d 413, 417 (D.C. Cir. 2008)
[7] *Nelson*, supra note 41, at 268–71 (discussing the FTCA's legislative history).
[8] *Evans v. United States*, 876 F.3d 375, 380 (1st Cir. 2017), cert. denied, 139 S. Ct. 81 (2018).
[9] See infra "Employees and Independent Contractors."
[10] Meyer, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b)).

complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy. Such an action shall, at the request of either party to the action, be tried by the court with a jury. An action under this paragraph may not be brought more than two years after the date on which remedies are deemed to have been exhausted. Jurisdiction is invoked pursuant to 41 U.S.C. § 4712(c)(2). This action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 41 U.S.C. § 4712(c)(2) because plaintiff and all defendants either reside in the District or engage in the operation of business in this District, and all events giving rise to plaintiff's claims occurred within the District. Plaintiff demands trial by jury.

## PARTIES

Plaintiff is the President & CEO of C.L.I.C.K. Services, NFP. Plaintiff is employed through and by C.L.I.C.K. Services, NFP pursuant to the abstract and proposal submitted to the Department of Justice (hereinafter, DOJ), Bureau of Justice Assistance (hereinafter, BJA), Office of Justice Programs (hereinafter, OJP), and approved by DOJ. Plaintiff has a Ph.D. in Human Services/Social Policy Analysis and Planning. Plaintiff is 71-years old. Plaintiff had a heart attack in July of 2011. Plaintiff has been on multiple medications since his heart attack, one of which is Lisinopril for his blood pressure. On or about July 23, 2020 plaintiff began receiving home health care from a licensed registered nurse for medical conditions arising from the circumstances of these Whistleblower complaints not being addressed.

Plaintiff has been a member of Congressman Danny K. Davis' SCA Advisory Committee since 2007. Plaintiff contributed to the language of the SCA Bill signed by President George Bush on April 10, 2009. Plaintiff has been a SCA Peer Reviewer since 2009; reviewing over 100

SCA proposals from around the United States. Plaintiff has extensive knowledge of the Whistleblower Act and the policies created and amended due to violations of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract or grant.

Principle Defendants are: Defendant Hattie Wash, President & CEO of EMAGES, Inc. and Fiduciary partner for Grant #2018-CY-BX-0025. Defendant Thomas Bradley is the Certified Public Accountant (hereinafter, CPA) for Grant #2018-CY-BX-0025. Defendant DOJ, BJA, OJP and their employees Michael Dever is the BJA Division Chief, Andre Bethea who is the OJP Senior Policy Advisor, and Tracey Willis who is the OJP Grant #2018-CY-BX-0025 Manager. At all times relevant to and during these tortious acts, with the statement of facts, defendants and defendant's employees/contractors/grantees/employee of grantee/consultants operated in the City of Chicago, Illinois; and Washington DC.

## **ADMINISTRATIVE PROCEDURE**

On April 17, 2020 plaintiff filed his 1st Whistleblower complaint via email with defendant BJA Grant Manager "Willis" and Senior Policy Advisor "Bethea". On August 29, 2020 and September 13, 2020 plaintiff filed his 2nd and 3rd Whistleblower complaints online with the U.S. Department of Justice, Office of the Inspector General (OIG), Investigation Division; DOJ, BJA, OJP employees "Dever", "Bethea", and "Willis". Plaintiff sent all 3 Whistleblower complaints, via email, to "Dever", "Bethea", and "Willis". Plaintiff filed all 3 Whistleblower complaints with the U.S. Office of Special Counsel, and OIG.

On September 24, 2020 "Dever" sent plaintiff an email stating "If C.L.I.C.K. Services would like to apply for a Second Chance Act Community-Based Program grant as a direct

recipient or through a partnership with another organization to continue serving the community in FY 2021, please know that we will be announcing the Second Chance Act Solicitations this Fall." On September 30, 2020 plaintiff received a letter via an email from the U.S. Office of Special Counsel stating "…The provisions of 5 U.S.C. § 2302 AND 5 U.S.C. 2105 establish that our authority extends only to current or former employees or applicants for employment to competitive or excepted service positions in Executive Branch departments and agencies of the federal government…."[11] On October 13, 2020 plaintiff received, via email, a response to plaintiff's August 29, 2020 Whistleblower complaint "only" from M. Sean O'Neill, Assistant Inspector General denying, in part, plaintiff's claim of retaliation. The OIG did not address the other parts of the 2nd Whistleblower complaint, nor did he address the other 2 Whistleblower complaints. Mr. O'Neill reports in his correspondence "…If you decline to provide any additional information, you may wish to review § 4712(c)(2), which describes your right to pursue a claim of retaliation in federal district court.[12] Apparently, the OIG has decided to address the 2nd Whistleblower complaint in part, and that decision is only part of the 2nd Whistleblower complaint. Plaintiff has exhausted all administrative relief.

## NATURE OF THE LAWSUIT

Plaintiff and defendant "Hattie" created and developed budget items for their abstract and proposal to the DOJ, BJA, and OJP submitting the package on May 1, 2018. In September of 2018 DOJ, BJA, OJP approved the abstract and proposal for the Second Chance Act Community-Based Program grant. This was a 3-year grant. The first year, October 1, 2018 thru

---

[11] https://drive.google.com/file/d/1-Xvauz_DTSqIYGKCP3cXu-p2h6xg-8C7/view?usp=sharing

[12]https://drive.google.com/file/d/19r6ANwXdSTExUzl7m2HsuEELVz4hlREB/view?usp=sharing

September 30, 2019 was the start-up phase of the grant. During the start-up phase, defendant "EMAGES" CPA "Bradley" and plaintiff attended the DOJ Grant Financial Management Training online. Defendant "Hattie" did not attend the training reporting there was no need for her to attend because she has been working with budgets for over 20 years.

There were 2 Financial Management Trainings. Financial Management Training II had sections called Payments/GPRS – Module 17. Module 17 states, in part, "…Funds requested should be based on immediate disbursement or reimbursement requirements…Award recipients should time draw down requests to ensure that Federal cash on hand is the minimum needed for disbursements/reimbursements to be made immediately or within 10 days. If funds are not spent or disbursed within 10 days, you must return them to the awarding agency…Organizations should develop written procedures for the management of funds to ensure that Federal case on hand is kept at or near zero…." Grant Fraud – Module 23; NDAA. Module 23 states, in part, "…The National Defense Authorization Act of 2013 (NDAA) included a provision that makes it illegal for an employee of a Federal contractor, subcontractor, or grantee to be discharged, demoted, or otherwise discriminated against for making a protected whistleblower disclosure. Under NDAA, the DOJ OIG has jurisdiction to investigate allegations of reprisal for whistleblowing by employees of DOJ contractors, subcontractors and award recipients…."

After approval of the "Special Conditions" of Grant #2018-CY-BX-0025, in February of 2020 we were approved to drawdown funds. Defendant "Hattie" was the fiduciary for the grant. DOJ, BJA, OJP allow a recipient of the "SCA" grant to drawdown funds "monthly" for services rendered. Plaintiff receives a copy of all monthly drawdowns being the Program Director and partner of the grant. On or about February 26, 2020 plaintiff received a copy of the drawdown. Plaintiff noticed monies were drawn down for Dorothy Collins who was no longer an employee

of the grant. Dorothy Collins resigned on or about January 16, 2020. On or about February 26,

2020 and March 30, 2020 plaintiff noticed there were drawdown of funds for Dorothy Collins.

Plaintiff brought this discrepancy to defendants "Hattie" and "Bradley" ("Bradley" CPA for the

grant). Defendant "Hattie" informed plaintiff to stay in his lane and to pay attention to his job.

Plaintiff explained to defendant "Hattie" this was his job being the Program Director. Plaintiff

filed his 1st Whistleblower complaint on April 17, 2020 with the defendant BJA Grant Manager,

"Willis", and OJP Senior Policy Advisor, "Bethea". "Willis" and "Bethea" did not respond or

contact plaintiff nor did they attempt to stop defendant "Hattie".

Meanwhile, plaintiff was in the process of developing a 90-day transitional housing

project for the population we were serving. Plaintiff was discussing a Letter of Support with the

Honorable Congressman Danny K. Davis (hereinafter, "Congressman Davis"). Plaintiff met with

Congressman Davis to drive through of his 7th Congressional District seeking possible locations

for this housing. As plaintiff was driving and talking with Congressman Davis, plaintiff told

Congressman Davis what he had discovered with the draw downs of federal funds and this grant.

Congressman Davis asked plaintiff if he had spoken to his partner about this issue. Plaintiff told

Congressman Davis he did and told him her answer. Plaintiff informed Congressman Davis he

could not afford to get caught up in a scandal or misinformation when we had an audit from the

Federal government. Congressman Davis advised plaintiff to do what is right and report it.

Plaintiff told Congressman Davis he would and that he would keep the Congressman apprised of

events. Plaintiff filed his 1st Whistleblower complaint on April 17, 2020 regarding

misappropriation of funds and/or fraud.

Plaintiff carefully monitored the monthly drawdowns after this experience. Plaintiff

found defendant "Hattie" was drawing down funds for non-existing groups/mentors. Our budget

allowed a monthly drawdown for 7 groups and 2 mentors per group. We lost 2 groups and 2

mentors due to the Coronavirus in March of 2020. Defendant "Hattie" continued drawing down

funds for the 2 groups and 2 mentors through August 2020. When plaintiff brought it to her

attention she cannot drawdown monies for consultant salaries for groups that are not operating,

defendant "Hattie" disrespected plaintiff stating plaintiff is not an accountant, should stay in his

lane, and do his job function. Plaintiff brought this issue to defendant "Bradley", CPA.

Defendant "Bradley" did nothing to stop the drawdown of funds. Plaintiff filed his 2nd and 3rd

Whistleblower complaints. Defendants DOJ, BJA, OJP, et al. retaliated against plaintiff and

terminated his employment when they allowed defendant "Hattie" to give Grant #2018-CY-BX-

0025 back violating the Whistleblower Act.

## STATEMENT OF FACTS

1. On May 1, 2018 plaintiff and defendant "Hattie" submitted an abstract and proposal for

the Second Chance Act Comprehensive Community-based Adult Reentry Program (hereinafter,

"SCA Grant").

2. On September 26, 2018 plaintiff and defendant "Hattie" received the Grant Award letter

from the Unites States Attorney General Jeff Sessions for Grant #2018-CY-BX-0025; funding

the MA`AT project (hereinafter, "MA`AT") Trauma-Informed and Mentoring services for

October 1, 2018 thru September 30, 2021.

3. The budget created for the May 1, 2018 proposal reports (for purposes of this litigation):

Contractual fees $50.00 per session (hour) for 10 Mentors and a Support Clerk $11.00 an hour.

4. The budget created for the May 1, 2018 proposal reports a monthly drawdown amount of

$2800.00 for 10 Mentors, for 7 groups.

5. In September of 2019, plaintiff had sent emails to DOJ, BJA, OJP "Willis" without

getting a response.

6. In September of 2019 plaintiff called the office of DOJ, BJA, OJP "Willis" and one of her colleagues answering the phone directed me to her supervisor, DOJ, BJA, OJP "Bethea".

7. Plaintiff informed DOJ, BJA, OJP "Bethea" he had sent emails to DOJ, BJA, OJP "Willis" and "Willis" was not responding.

8. DOJ, BJA, OJP "Bethea" requested plaintiff copy him on all and any emails he sends to "Willis".

9. On September 11, 2019 DOJ, BJA, OJP "Willis" was instructed to copy "Bethea" on any and all emails sent to plaintiff.

10. On October 1, 2019 the "MA`AT" project was implemented.

11. On or about October 1, 2019 the "MA`AT" project hired 10 mentors and one Support Clerk.

12. On December 18, 2019 plaintiff requested a meeting via email with "Congressman Davis" to discuss housing possibilities for the MA`AT project participants..

13. On December 24, 2019 plaintiff met with "Congressman Davis" discussing the "SCA Grant" and housing for the sex offender population.

14. On or about January 17, 2020, the Support Clerk, Dorothy Collins, resigned from the "MA`AT" project and defendant "Hattie" drew down monies for this employee.[13]

15. On or about February 26, 2020 defendant "Hattie" drew down monies for Support Clerk, Dorothy Collins.

16. On or about March 30, 2020 defendant "Hattie" drew down monies for Support Clerk, Dorothy Collins.

---

[13] https://drive.google.com/file/d/1qOmUjLYZL5jBg9Vt4NiMEz6tTRLVJETT/view?usp=sharing

17. On or about April 7, 2020 there is an email chain between plaintiff and defendant "Hattie" addressing the drawdown of funds for Support Clerk, Dorothy Collins, the lack of operating supplies plaintiff requested from defendant "Hattie", and defendant "Hattie" accusing plaintiff of being a bully because plaintiff requires staff and management to adhere to policies and processes set up pursuant to our Abstract, Proposal, and P&I Guide.[14]

18. On April 8, 2020 plaintiff sent an email to defendant "Bradley" regarding the misappropriation of funds and fraud.[15]

19. On April 9, 2020 plaintiff received an email from defendant "Hattie" reporting the program is moving well during the Coronavirus.[16]

20. Plaintiff asked defendant "Hattie" why she was drawing down funds from the grant for a Support Clerk when we did not have one.

21. Defendant "Hattie" told plaintiff to mind his own business and to do his job.

22. In April of 2020 plaintiff discussed the drawing down of funds for staff not employed with the grant with "Congressman Davis".

23. "Congressman Davis" suggested plaintiff talk with his partner about these funds first before filing any charges.

24. On April 10, 2020 plaintiff sent an email to defendant "Bradley" informing him a drawdown of funds occurred in February and March of 2020 for Dorothy Collins who had resigned on or about January 17, 2020.

25. On April 15, 2020 plaintiff sent defendant "Bradley" another email stating, in part, "…If

---

[14] https://drive.google.com/file/d/1xiTtOaBvcHyEGKil2YqTtN99M42FJ2UN/view?usp=sharing
[15] https://drive.google.com/file/d/1lByBB-peiLzH22TXhcduSr-5NoRjUHIB/view?usp=sharing
[16] https://drive.google.com/file/d/1xfqtmhuV8H0b_Sci1tdMC9QC0zrXDMjj/view?usp=sharing

I do not hear from you about this issue, I am going to report it to the Office Justice Programs. Where did this money go? What was it spent on?..I will not be part of any fraud scheme."

26. On April 15, 2020 defendant "Bradley" sent plaintiff an email stating, in part, "...Dr Nance received your email, however because of the sensitive nature of your charges, any conversation concerning 2nd Chance Accounting Procedures need to be discussed with me and Dr Wash CEO...."

27. On April 17, 2020 plaintiff sent an email to defendant "Bradley" informing him defendant "Hattie" was not listening to him about the misappropriation of funds and fraud, and that plaintiff was going to report this to DOJ, BJA, OJP representatives.

28. On April 18, 2020 defendant "Bradley" sent plaintiff an email stating, in part, "...After reading your email I stand by my initial request for a meeting between you, Dr. Wash, and myself...."

29. On April 18,2020, acting on the discussion with "Congressman Davis" and the email sent to "Bradley", plaintiff filed his 1st Whistleblower complaint with supporting documents to DOJ, BJA, OJP "Willis" and "Bethea" via email reporting the appearance of misappropriation of funds and/or fraud.

30. Neither DOJ, BJA, OJP "Willis" nor "Bethea" responded to the April 17, 2020 Whistleblower complaint.

31. On April 23, 2020 defendant "Hattie" sent an email to plaintiff stating, in part, "...Your paranoia is getting the best of you I am not coming after you just trying to get a handle on the program...but if you feel you need to invite members from the office of justice administration I have no objections."

32. On June 29, 2020 plaintiff met with "Congressman Davis" and together they rode

through "Congressman Davis" 7th Congressional District seeking appropriate sex offender housing.

33. On June 29, 2020 plaintiff talked to "Congressman Davis" about his Whistleblower complaint and ongoing misappropriation of funds and fraud.

34. On July 6, 2020 plaintiff sent an email to defendant "Hattie" and "Bradley" addressing the consulting fees and what was drawn down.[17]

35. On July 8, 2020 plaintiff sent this email to "Congressman Davis" stating, in part,

> "…The Second Chance Act I have partnering with EMAGES, Inc. is not
> working out. EMAGES is the fiduciary part of the grant and my company,
> C.L.I.C.K. Services NFP, hires me as the Program Director. EMAGES has
> twice misappropriated funds. When I brought it to Dr. Wash, President &
> CEO of EMAGES, she criticized me for micromanaging and not doing my
> job. Instead of folding and putting the money back and working out our
> differences. Dr. Wash says she wants to give up the grant. I told her I
> would take it under C.L.I.C.K. Services, NFP (www.clickservices.org)
> Incorporated in 2002. Dr. Wash has agreed to let the transfer happen…I
> reported the first instance to the SCA Grant Manager and Senior Policy
> Advisor of the SCA under the Whistleblower Act, which is encouraged by
> the SCA's Fiscal Responsibility section of the Special Conditions in our
> grant. Reporting the incident under the Whistleblower Act secures the
> grant and protects me. The first act of misappropriation of funds was

---

[17] https://drive.google.com/file/d/1W1WMMpvlfF04H5qzEmwKZ84J6mQ0rE8S/view?usp=sharing

> drawing down funds for a period of 3 months for a person who did not
> work in the program. This second incident was drawing down $25,000.00
> for consultant fees for a period of 5 months, when the total consultant fees
> was $11,000.00 for the same period…."

36. On July 14, 2020 plaintiff issued an apology for misstating the numbers on the drawdown for consultant fees, even though too much was still drawn down.[18]

37. Plaintiff misstated the numbers in the July 8, 2020 email to "Congressman Davis" as he did in the narrative of the email dated July 6, 2020. The consultant fees for 5 months was $10,950. The drawdown was $14,000.00. This is a difference of $3,050.00, not $14,000.00. Plaintiff corrected his typo mistake with "Congressman Davis" and defendant "Hattie".

38. On July 23, 2020 plaintiff began receiving weekly home visits from Gold Health Home Care, Corp. regarding medical complaints to his doctors for stress and anxiety levels, diet, headaches., and emotional distress due to the Whistleblower complaints.

39. Plaintiff complained to the Registered Nurse the incidents surrounding the Whistleblower issues causing him to become dizzy with terrible stomach problems, stress, anxiety, and emotional distress.

40. The Registered Nurse increased plaintiff's blood pressure medication as plaintiff talked to her about the issues of the Whistleblower complaints and his employment.

41. On or about July 11, 2011 plaintiff had a heart attack.

42. Plaintiff was informed by the attending physician 2 of his 3 arteries were clogged; one was 98% and the other was 99% clogged.

43. Plaintiff received a stint in one of his arteries.

---

[18] https://drive.google.com/file/d/1aB7dT-EM99uB4hj7tRAOAhlGgdl140eR/view?usp=sharing

44. On June 8, 2020, October 15, 2020, and October 22, 2020 plaintiff took Covid-19 tests, which all were negative.

45. Since July 11, 2011 plaintiff has been taking various medications for his blood pressure and overall health due to precipitating factors for his heart attack.

46. On July 29, 2020 plaintiff filed the "MA`AT" quarterly (January to March 31, 2020) and semi-annual (January thru June 30, 2020) reports for the "SCA Grant".[19]

47. On page 18 of this report, the MA`AT project reports no problems or barriers with the 5 groups receiving teleconferencing services at EMAGES.

48. Defendant "Hattie" reported to DOJ, BJA, OJP, "Dever", "Bethea", and "Willis" the reason she was giving the grant back is because of problems and barriers with the Coronavirus.

49. On August 21, 2020 defendant "Hattie" sent an email to plaintiff stating she is willing to give the program up because of plaintiff's Whistleblower complaints.[20]

50. On August 25, 2020 Dr. Karen Witherspoon sent plaintiff an email regarding our Covid 19 plan for services going forward, which was requested from our Technical Advisor, Joseph Williams.[21]

51. As Dr. Witherspoon's email and attachments demonstrate, the MA`AT Project had a plan for going forward during the Coronavirus pandemic.

52. Defendant "Hattie" gave false and misleading information to DOJ, BJA, and OJP to why she was giving the "SCA Grant" back.

53. On August 25, 2020 plaintiff received an email from the Office of Chief Financial

---

[19] https://drive.google.com/file/d/1zW1HaapMUt1kdADNGzeRXoCMoVho3gtT/view?usp=sharing
[20] https://drive.google.com/file/d/18JE1995p1ICQnZqyHhuXnFlu-xAPRRdv/view?usp=sharing
[21] https://drive.google.com/file/d/1J4riO-HUyK5yh1U6EsPIlJ0zJUgfNl-X/view?usp=sharing

Officer offering a 2020 Financial Management Training Webinar.

54. On August 25, 2020 plaintiff forwarded this email message to defendant "Bradley" stating "Mr. Bradley: You may want to attend this webinar."

55. On August 28, 2020 plaintiff received an email from DOJ Change of Contact.[22]

56. On August 28, 2020 plaintiff filed his 2nd Whistleblower complaint via email to DOJ, BJA, OJP "Willis", "Bethea", and our Technical Advisor, Joseph Williams (hereinafter, "TA").

57. Regarding the email of August 28, 2020, plaintiff states "Good evening. I filed my Whistleblower complaint with the Office of the Inspector General, Investigations Division (hereinafter, "OIG") tonight…I am not sure why Ms. Willis granted Dr. Wash taking me off as POC of this grant. You limited my performing my duties and allowed Dr. Wash to retaliate against me…."

58. Neither DOJ, BJA, OJP "Willis" nor "Bethea" responded to my email dated August 28, 2020.

59. On August 29, 2020 plaintiff sent an email to DOJ, BJA, OJP "Willis", "Bethea" and to "TA" giving a detailed report of his "OIG" complaint giving a history of the plaintiff and defendant "Hattie" relationship as it relates to DOJ, BJA, OJP grants, the Whistleblower complaints and history working voluntarily with "Congressman Davis" and being a Peer Reviewer for the DOJ, BJA, OJP.

60. On August 29, 2020 plaintiff sent a revised copy of his Whistleblower complaint to the "OIG", to DOJ, BJA, OJP "Willis", "Bethea", and "TA".

61. On August 31, 2020 plaintiff sent an email to "Congressman Davis" attaching his 2nd

---

[22]https://drive.google.com/file/d/10d9VhcbJoE3GUO0ymhJm5cHVpndodq7G/view?usp=sharing

Whistleblower complaint, copying DOJ, BJA, OJP "Dever", "Willis", "Bethea", "TA", and defendant "Hattie" stating, in part, "Congressman Davis, I realize you are on the Ways and Means Committee, and to some extent can explain to me the yearly reauthorization of the Second Chance Act and guiding principles leading to it. Please contact me so we can talk, at your earliest convenience, as I am exhausting all administrative remedies…."

62. On August 31, 2020 DOJ, BJA, OJP "Willis" sent an email to plaintiff stating plaintiff should send all correspondence about the grant to defendant "Hattie".[23]

63. On September 1, 2020 DOJ, BJA, OJP "Dever" responded to plaintiff's email stating, in part, "…We have received your emails and are looking into the grant expenditure information you referenced this week. Thanks again for your outreach and rest assured that we are taking steps to get to the bottom of the issues you've raised…."

64. On September 2, 2020 plaintiff sent an email to the MA`AT Clinical Supervisor regarding our pre-release participants at the Cook County and the jail re-opening.[24]

65. On September 2, 2020 plaintiff sent an email to the mentor consultants who will work in the Cook County jail.[25]

66. On September 2, 2020 plaintiff forwarded an email from the Cook County jail to DOJ, BJA, OJP "Willis", "Bethea", "Dever", and TA Williams regarding the re-opening of our pre-release services.

67. On September 7, 2020 plaintiff sent an email titled "SCA Grant Accountant Emails and 2020 Monthly Contractual Fee Invoices" to DOJ, BJA, OJP "Dever", "Bethea", and "Willis".[26]

---

[23] https://drive.google.com/file/d/1MhjE4oO6H38bUqra96-BqX2pTTVbxi9H/view?usp=sharing

[24] https://drive.google.com/file/d/1UW5PS1XgvRENSObLW0YQwfRxCHF72fFq/view?usp=sharing

[25] https://drive.google.com/file/d/14n2dCT0IJonTut2AS5hbza3yMkcIKVmb/view?usp=sharing

68. On September 10, 2020 defendant "Hattie" sent plaintiff an email demanding he copy her on all correspondence.[27]

69. On September 10, 2020 plaintiff sent an email to Sheriff Howard asking questions about the re-opening of the Cook County jail.[28]

70. On September 11, 2020 plaintiff sent another email to defendant "Hattie" informing her he did not have equipment ordered from her to operate the MA`AT project.[29]

71. On September 13, 2020 plaintiff sent an email to defendants alerting them he was filing his 3rd Whistleblower complaint.[30]

72. On September 16, 2020 plaintiff sent an email to defendants regarding defendant "Hattie" response to copying her on emails.[31]

73. On September 21, 2020 defendant "Hattie" sent an email to staff falsely reporting why she was giving the "SCA Grant" back.[32]

74. On September 22, 2020 plaintiff sent an email to defendants regarding defendant "Hattie" false report for giving the "SCA Grant" back.[33]

75. On September 22, 2020 plaintiff sent an email to DOJ, BJA, OJP "Willis", "Bethea", and "Dever" stating "Protect my Job" listing the posting plaintiff has on Twitter.[34]

76. On September 25, 2020 plaintiff sent an email to defendants and "Congressman Davis"

---

[26]https://drive.google.com/file/d/1LpUV7k5HubtXlGr2mOmRJM0NbCFHZpul/view?usp=sharing

[27]https://drive.google.com/file/d/1sDVTLOeqpZGkbrp29IKTFulPLMBDZiFz/view?usp=sharing
[28] https://drive.google.com/file/d/1NHIL-8csvVaEkMeYbdVdNULBIxgqaobj/view?usp=sharing
[29] https://drive.google.com/file/d/1vK5oVUn_OgZT5qlylc2BA962gTTxAcIy/view?usp=sharing
[30] https://drive.google.com/file/d/1-noTmKCV2aFqPUthfD-fsKC1WlZ6ANFv/view?usp=sharing
[31]https://drive.google.com/file/d/1mjMO7aF_rgTAr012LX2eQgU_v2nLbUUA/view?usp=sharing
[32] https://drive.google.com/file/d/1Tbk_9SfisjC0b3XBoADRR0itcxK2uiCZ/view?usp=sharing
[33] https://drive.google.com/file/d/11wL3o_zp5f3QHBLlEgnZZcCOB9a4-kRh/view?usp=sharing
[34]https://drive.google.com/file/d/1wytNOBFBCiKMjr4SraNiQOmpv4Sy21pE/view?usp=sharing

regarding defendants violating plaintiff's Whistleblower rights.[35]

77. On September 25, 2020 plaintiff sent this email to DOJ, BJA, OJP "Dever", "Bethea", and "Willis" along with another DOJ person about plaintiff's Whistleblower complaints.[36]

78. On September 27, 2020 defendant "Hattie" admits plaintiff's company C.L.I.C.K. Services, NFP partnered with EMAGES, Inc. when she ask "Is this the grant we applied for?[37]

79. On September 26, 2020 plaintiff sent an email to all consultants instructing them to differentiate to the "SCA Groups" that their program was not terminated because of fees not being paid.[38]

80. On September 29, 2020 plaintiff filed all 3 Whistleblower complaints with the Office of Special Counsel.[39]

81. On September 29, 2020 plaintiff received an email from DOJ reporting the financial manager of the "SCA Grant" was requested by plaintiff and was removed.[40]

82. Plaintiff never requested anything from JustGrants.

83. On September 30, 2020 plaintiff received an email from DOJ stating he was enrolled in their program.[41]

84. On September 30, 2020 plaintiff received an email from DOJ reporting he was enrolled in JustGrants.[42]

---

[35] https://drive.google.com/file/d/1y8fgccKsQl_FCOpiw4bH0QJY8VeU4byK/view?usp=sharing
[36] https://drive.google.com/file/d/12Ki32A4_YZSoOgKxmRzzDCp0_Jkmq3Pb/view?usp=sharing
[37] https://drive.google.com/file/d/16UAZh4WIaXck1ynqGjBT7hjhgzCW7TQE/view?usp=sharing
[38] https://drive.google.com/file/d/1mquLkz73-GHyTXrsrA3Yg0RrmtMsiEtI/view?usp=sharing
[39] https://drive.google.com/file/d/1fGDiuxZwzZ3XG1_QY70Du3HBL9W_u70R/view?usp=sharing
[40] https://drive.google.com/file/d/1aBZ0IQWb4Zc9Qk0R7zYpvn1ejTDUQqf0/view?usp=sharing
[41] https://drive.google.com/file/d/15dCF0d-WeboPitWsYFZ4kqbNSn5GFEB3/view?usp=sharing

85. Defendant "Hattie" did not provide plaintiff with copies of drawdowns for June 2020, August 2020, and September 2020; plaintiff provides Mentor Contractual Fees for January 2020 thru September 2020, which is discussed in plaintiff's 2nd & 3rd Whistleblower complaints as misappropriation of funds and fraud.[43]

86. On October 9, 2020 Plaintiff filed the "MA`AT" quarterly (July thru September 30, 2020) report.[44]

87. There is nothing in the July thru September 30, 2020 quarterly report to support defendant "Hattie" claim of the Coronavirus affecting the attendance and quality of the teleconferencing mentoring services being provided to our population.

88. On October 13, 2020 plaintiff received an email determination letter from the OIG addressing only "part" of plaintiff's 2nd Whistleblower complaint, denying plaintiff's retaliation allegation.[45]

89. On October 13, 2020 plaintiff sent an email addressed to "Congressman Davis", copying DOJ Office of Inspector General, and all defendants regarding the violation of plaintiff's Whistleblower rights.[46]

90. On October 15, 2020 plaintiff sent an email to "Congressman Davis" and all defendants responding to DOJ, BJA, OJP "Dever" reporting the "real" duties of the Grant Administrator, which prompted plaintiff to immediately start this litigation.[47]

---

[42] https://drive.google.com/file/d/1u04HCwNNHZVtztAhkqV6w4esQvGfpX2g/view?usp=sharing
[43] https://drive.google.com/file/d/16LVkuqjr7PUhqfzP2thjXmVZ9wgYML23/view?usp=sharing
[44] https://drive.google.com/file/d/17r0uhstcAniUUwNAVnEM1wijt9SAYs6T/view?usp=sharing
[45] https://drive.google.com/file/d/1AQQUCVAiUwIi4sFbtlfVmqIYh1_SVXbm/view?usp=sharing
[46] https://drive.google.com/file/d/1o6iOFQieT1ZWzd4I0e8pTp4IYx8rtBGQ/view?usp=sharing
[47] https://drive.google.com/file/d/1QV8PqvycR9cHTCAKyuq1AUWNX_drnrIp/view?usp=sharing

91. Plaintiff was under the impression that being the Grant Administrator DOJ, BJA, OJP had given C.L.I.C.K. Services, NFP the grant since defendant "Hattie" said she would give the grant up and plaintiff could have it.

92. On October 17, 2020 plaintiff sent an email to DOJ, BJA, OJP "Dever", "Bethea", "Willis", "Congressman Davis" and the TA with attachments labeled DOJ, BJA, OJP et al Violation of Whistleblower Act NDAA 2013 & 41 U.S.C. § 4712.[48]

93. On October 19, 2020 plaintiff received an email from DOJ reporting another denial of an appointment plaintiff supposedly had requested, which plaintiff has not offered anyone or anything to be approved.[49]

94. On October 19, 2020 plaintiff received an email from DOJ reporting another denial, which plaintiff has not requested approval for anyone.[50]

---

[48]https://drive.google.com/file/d/1mu4dJhAhL_cfA-qormV_ignmKiJIZme9/view?usp=sharing

[49] https://drive.google.com/file/d/1jNV2yjh9_m3U02s-dF-CsEFSgyQ25GUH/view?usp=sharing
[50]
https://drive.google.com/file/d/1KgXNYUtfoGmgcyD2VAXDGjbAtSJANC6t/view?usp=sharing

## CAUSES OF ACTION

### COUNT 1

#### National Defense Authorization Act (NDAA) of 2013 et seq.

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 94 above as if stated herein these paragraphs, along with "all" paragraphs below.

95. DOJ, BJA, OJP defendants violated plaintiff's Whistleblower rights.

96. Defendant "Hattie" never informed staff of the information regarding Contractor Employee Whistleblower Rights and Requirement to Inform Employees of Whistleblower Rights

### COUNT 2

#### 41 U.S.C. § 4712

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 96 above as if stated herein these paragraphs, along with "all" paragraphs below.

97. This statute provides: An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. 41 U.S.C. § 4712(a)(1).

## COUNT 3

### Illinois Whistleblower Law

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 97 above as if stated herein these paragraphs, along with "all" paragraphs below.

98. (740 ILCS 174/) Whistleblower Act. An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency if the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation. (Source: P.A. 93-544, eff. 1-1-04.)

99. Illinois is an "at will" employment state. This means an employee can be fired for any reason or no reason at all as long as the termination is not discrimination or in violation of legal protections, like filing workers compensation, or statutory rights, like those provided by the Illinois Whistleblower Act. Employers are prohibited from retaliating against whistleblowers.

## COUNT 4

### Retaliation

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 99 above as if stated herein these paragraphs, along with "all" paragraphs below.

100.     Retaliation occurs when an employer (through a manager, supervisor, or administrator) fires an employee or takes any other type of adverse action against an employee for engaging in protected activity.

101.     An adverse action is an action which would dissuade a reasonable employee from raising a concern about a possible violation or engaging in other related protected activity. Retaliation can have a negative impact on overall employee morale.

102.     Back pay is compensation for lost wages and benefits that the whistleblower would have earned absent the adverse employment action, offset by interim earnings. A backpay award may include all promotions and salary increases the complainant would have received in the absence of retaliation.

## COUNT 5

### Hostile Work Environment

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 102 above as if stated herein these paragraphs, along with "all" paragraphs below.

103.     A hostile work environment is defined as "a work environment which promotes or permits discriminatory behavior towards an employee or class of employees based on the employee's age, race, gender, natural origin, disability or religion." Additionally, discriminatory actions that are taken in retaliation to rights protected by state and federal laws also qualify as creating a "hostile work environment."

## COUNT 6

### Emotional Distress

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 103 above as if stated herein these paragraphs, along with "all" paragraphs below.

104.     Whistleblower retaliation can exact a serious toll, including lost pay and benefits, reputational harm, and emotional distress

## COUNT 7

### Special Damages

Plaintiff asserts his allegations contained in the opening paragraphs and paragraphs 1- 104 above as if stated herein these paragraphs, along with "all" paragraphs below.

105.     Sometimes, the retaliatory actions of an employer cause an employee to lose more than their job. Sometimes they are embarrassed, have suffered mentally and emotionally, and their reputation has been damaged. In these cases, a whistleblower retaliation lawsuit can also claim special damages.

106.     These damages include emotional distress, mental anguish, humiliation, and injury to reputation. When injury to reputation is claimed, employees can hold employers liable for paying compensation for loss of earning capacity, as they may no longer be able to work in the same industry.

107.     A plaintiff's testimony is typically enough to support a claim for special damages. However, the employee must show substantial evidence of emotional distress, adequately explain the injury, and the testimony must be genuine.

**Relief**

Reinstatement is the "presumptive and preferred remedy." Back pay is compensation for lost wages and benefits that the whistleblower would have earned absent the adverse employment action, offset by interim earnings. A backpay award may include all promotions and salary increases the complainant would have received in the absence of retaliation. Backpay provides compensation for any financial losses the employee sustained as a result of the retaliatory action. These damages often include wages, promotions, stock options, vacation pay, and other benefits. The False Claims Act states that employees who are retaliated against are entitled to twice the amount of back pay they have lost. Pre-judgement interest is also applied to the total amount of back pay. Interest is added every day from the time the retaliatory action is taken, to just before the judge issues a judgement.

Wherefore, plaintiff respectfully request the following relief: (1) $500,000.00 and/or reinstatement of Grant #2018-CY-BX-0025 with a 3-year extension and, as reported recently, plaintiff is the Grant Administrator; (2) Letters of Support or Letters of Apology addressed to all and any collaborations/networks involved with Grant #2018-CY-BX-0025 exonerating plaintiff of any and all wrongdoing, accusations, or allegations made against plaintiff, such as Illinois Department of Corrections (IDOC), Cook County Department of Corrections (Cook County Jail), IDOC Parole Officers, the Safer Foundation, Inc., especially, President & CEO Victor Dickson; and (3) whatever this Honorable Federal Court deems appropriate and necessary.

Respectfully submitted

/s/Fred L. Nance Jr., Ph.D.
Pro se
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org