September 24, 2020

United States Attorney's Office
Northern District of Illinois, Eastern Division          EXHIBIT 21
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
Attn: Screening Committee

**Cover Letter**

Good afternoon. I, Dr. Fred L. Nance Jr., am submitting documents I will use to construct my Whistleblower litigation in the Northern District of Illinois, 7th Circuit. I filed 3 Whistleblower complaints. The first 2 complaints were filed with DOJ, BJA, OJP. The 3rd complaint was filed with the Office of the Inspector General in Washington DC. I am naming as Defendants: Department of Justice, Bureau of Justice Assistance, Office of Justice Programs; BJA Division Chief Michael Devers, Senior Policy Advisor Andre Bethea, Grant Manager Tracey Willis, EMAGES, Inc., Hattie Wash, Thomas Bradley, et. al.

On September 24, 2020, I talked to Mr. Robert from your paralegal section about filing my Federal complaint requesting information for service of the complaint. I asked if the United States Attorney's Office in the Northern District of Illinois was the appropriate entity to serve my Federal complaint. Robert instructed me to send information to you to assess if your office is the appropriate venue for service of my Federal complaint.

I am left with no other avenue or relief but to file a Federal complaint. I have exhausted my administrative remedies. I have not received anything from the Office of the Inspector General. The Bureau of Justice Assistance Division Chief, Michael Devers, has basically thrown my Whistleblower complaint out the window without providing me the protections of a Whistleblower. Therefore, when I file my Federal complaint, using the documents I am providing here as my statement of facts, I want assurance your office this is the place for service. I have posted these documents on my social media pages, utilizing my 1st Amendment right. Please respond. Thank you.

Respectfully submitted

/s/Dr. Fred L. Nance Jr., Ph.D.
Human Services/Social Policy Analysis
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
www.clickservices.org
www.twitter.com/clickforjustice
frednance@clickservices.org

# EXHIBIT 21

Re: Grant #2018-CY-BX-0025 Termination

From:   Dr. Fred Nance Jr. (drfred.nancejr@gmail.com)

To:   andre.bethea@usdoj.gov; michael.dever@usdoj.gov; josie.ware@mail.house.gov; tbacpa52@yahoo.com; tumia.romero@mail.house.gov; jwilliams@air.org; tracey.willis@usdoj.gov

Cc:   drfred.nancejr@gmail.com; frednance@clickservices.org

Date:   Friday, September 25, 2020, 09:55 AM CDT

I forgot to report when I brought this SCA solicitation to Dr. Wash in April of 2018, EMAGES was not getting paid for their sex offender program regularly by the State of Illinois. When we received the grant in October 2018, EMAGES was not receiving appropriate funding for their sex offender program. Now, EMAGES has proclaimed to DOJ BJA OJP they are not receiving their appropriate funding as a predicate to blame the Coronavirus for suspending their sex offender program. NEWS FLASH...EMAGES has not suspended their sex offender program because the current therapist said they would work for free and wait until Dr. Wash receives her funding from the State of Illinois. Grant #2018-CY-BX-0025 is funded. Both programs are using teleconferencing to communicate with their clients/participants. This report will be part of my Statement of Facts in my litigation. During the Discovery phase of the litigation I will get the documents from EMAGES to support my claims.

On Fri, Sep 25, 2020 at 8:16 AM Dr. Fred Nance Jr. <drfred.nancejr@gmail.com> wrote:

Good morning. EMAGES held a Zoom meeting for all staff on 9/24/20 reporting she was giving up the Second Chance Act and suspending her sex offender program due Covid-19. DOJ BJA OJP Mr. Michael Dever, Andre Bethea, and Tracey Willis are assisting Dr. Wash in closing out the grant.

Dr. Wash gave no valid reasoning for shutting down the SCA grant. Dedicated mentors were upset because the SCA funding was fluid. The mentors are contractual paid positions. The SCA was operating via teleconferencing very well. 75% of our participants have been on the teleconferencing call since March of 2020. The participants are buying into the curricula and the program overall. We had a plan to work thru the pandemic. Our OJP Technical Advisor, Mr. Joseph Williams, asked us if we had any problems with meeting our goals, we could revise our Implementation Plan as other grantees are doing. In August of 2020, Dr. Wash told Mr. Williams we did not need to revise our Implementation Plan because everything was working well. The only thing that changed with our SCA grant was my Whistleblower complaints against Dr. Wash for misappropriation of funds and fraud, which DOJ BJA OJP are violating my protections.

Dr. Wash talked about suspending EMAGES sex offender program stating lack of funding. She talked about the State of Illinois had not paid her since July 2020. She emphasized how client fees were not being paid. She reminded staff EMAGES has gone thru this dilemma many times in the past; and that she was expecting payment later this year; and that she could not pay staff. She said she had enough money in her bank account to pay rent in October.

EMAGES staff agreed to work without pay as they have done before during times when funding was not there; emphasizing since they were working from home via teleconferencing it was not a burden to them. Therefore, EMAGES is still open for business!!

Wherefore, the real reason Dr. Wash is terminating the SCA Grant is retaliatory in nature. She is shutting the program down to hurt me, and DOJ BJA OJP is complicit in this nefarious act. I have provided more than enough evidence for my Whistleblower complaints. DOJ BJA OJP is supposed to protect my employment and me from any retaliation. Dr. Wash has fed DOJ BJA OJP a sob, false story about our dedicated, successful service delivery via teleconferencing during this Coronavirus.

Since DOJ BJA OJP Representatives have taken my Whistleblower protections from me, I have no other alternatives but to pursue rightful litigation in Federal Court. I have posted, and will continue to post, on social media the nefarious actions taken against me because I tried to protect our grant and the integrity of the Second Chance Act, which the Honorable Congressman Danny K. Davis co-sponsored and President Bush signed in 2008. I had the extreme pleasure of working on Congressman Davis' Advisory Committee for the Second Chance

EXHIBIT 21

Act in 2007. I know this legislation and it was not created for such nefarious behavior as demonstrated here by Dr. Wash and DOJ BJA OJP Representatives.

This is my posted message below. You will find in the link provided overwhelming evidence of misappropriation of funds and Fraud. You will see how I have exhausted all administrative remedies toward a peaceful solution. I was Dr. Wash's partner in this grant, and had respectfully requested DOJ BJA OJP transfer the grant to my organization. DOJ BJA OJP Representative Mr. Dever offered me to apply for my own grant. This is how he is protecting my employment pursuant to the Whistleblower policies.

@OJPgov @OJPgov COVID-19 had nothing to with EMAGES nefarious actions. Federal lawsuit Defendants: EMAGES, Inc., Hattie Wash, Thomas Bradley, Michael Devers, Andre Bethea, Tracey Willis, DOJ, BJA, OJP in their individual and official capacity.
https://drive.google.com/file/d/1d75UW7ZOgsPjd8qtskq0BKn7jKh8zr1G/view
--
/s/Dr. Fred Nance Jr., Ph.D.
Human Services/Social Policy Analysis
Program and Policy Development
708-921-1395


--
/s/Dr. Fred Nance Jr., Ph.D.
Human Services/Social Policy Analysis
Program and Policy Development
708-921-1395

 **Gmail**　　　　EXHIBIT 21　　　　Dr. Fred Nance Jr. <drfred.nancejr@gmail.com>

---

## Suspension of the sex offender groups and termination of the Second Change Act grant

---

**Dever, Michael (OJP)** <Michael.Dever@usdoj.gov>　　　　　　　　Thu, Sep 24, 2020 at 9:20 AM
To: "Dr. Fred Nance Jr." <drfred.nancejr@gmail.com>
Cc: "Willis, Tracey (OJP)" <Tracey.Willis@usdoj.gov>, "Bethea, Andre (OJP)" <Andre.Bethea@usdoj.gov>, Hattie Wash
<washhattie@gmail.com>

Good Morning Dr. Nance,


BJA made the award 2018-CY-BX-0025 to EMAGES, Inc. Although the application describes a partnership between
EMAGES and C.L.I.C.K. Services, you served as an employee of EMAGES, Inc. with no sub-award or partner
relationship with C.L.I.C.K. Services. EMAGES, Inc. has chosen to terminate the award per Dr. Hattie Wash's letter
outlining the reasons, and BJA will work with EMAGES to close out the award. BJA will conduct an in-depth financial
and programmatic review of the award activities between Oct. and Dec. to ensure funds were administered properly,
or identify issues requiring resolution.


If C.L.I.C.K. Services would like to apply for a Second Chance Act Community-Based Program grant as a direct recipient
or through a partnership with another organization to continue serving the community in FY 2021, please know that
we will be announcing the Second Chance Act Solicitations this Fall.


Thank you!


Michael Dever


**From:** Dr. Fred Nance Jr. <drfred.nancejr@gmail.com>
**Sent:** Monday, September 21, 2020 10:27 PM

[Quoted text hidden]

[Quoted text hidden]

 **Gmail**　　　EXHIBIT 21　　　Dr. Fred Nance Jr. <drfred.nancejr@gmail.com>

## Suspension of the sex offender groups and termination of the Second Change Act grant

**Dr. Fred Nance Jr.** <drfred.nancejr@gmail.com>　　　　　　　Thu, Sep 24, 2020 at 10:26 AM
To: "Dever, Michael (OJP)" <Michael.Dever@usdoj.gov>
Cc: "Bethea, Andre (OJP)" <Andre.Bethea@usdoj.gov>, "Dr. Fred Nance Jr." <drfred.nancejr@gmail.com>, "Dr. Fred Nance Jr." <frednance@clickservices.org>, Hattie Wash <washhattie@gmail.com>, "Willis, Tracey (OJP)" <Tracey.Willis@usdoj.gov>

Good morning. Thank you for your explanation. You have not addressed how you or BJA are protecting my Whistleblower protections, specifically my employment, retaliation, and emotional distress put upon me by EMAGES, specifically Dr. Wash, and DOJ BJA OJP. Therefore, you leave with few choices. I am going to address the issues of the whistleblower act in federal court. I will file in October 2020. I will sue all parties involved in their individual and professional capacity. I have posted the whistleblower complaints on Twitter and Facebook, as I exercise my 1st amendment rights. I will post my Federal complaint on social media once I have filed it. You have been noticed and all administrative remedies have been exhausted. Have a blessed day.
[Quoted text hidden]

 **Gmail**          EXHIBIT 21                    Dr. Fred Nance Jr. <drfred.nancejr@gmail.com>

## Suspension of the sex offender groups and termination of the Second Change Act grant

**Dr. Fred Nance Jr.** <drfred.nancejr@gmail.com>                    Thu, Sep 24, 2020 at 11:39 AM
To: "Dever, Michael (OJP)" <Michael.Dever@usdoj.gov>
Cc: "Bethea, Andre (OJP)" <Andre.Bethea@usdoj.gov>, "Dr. Fred Nance Jr." <drfred.nancejr@gmail.com>, "Dr. Fred Nance Jr." <frednance@clickservices.org>, Hattie Wash <washhattie@gmail.com>, Thomas Bradley <tbacpa52@yahoo.com>, "Willis, Tracey (OJP)" <Tracey.Willis@usdoj.gov>

Addendum to my previous response so I will have an additional legal document: I, Dr. Fred L. Nance Jr., am President & CEO of C.L.I.C.K. Services NFP. As stated in my previous documentation, I work for my company as the Abstract and Proposal dictate.

From the onset of this grant, I requested payment for my Program Director services to C.L.I.C.K. via a 1099. Dr. Wash told me the budget was written for regular taxes to be taken out for the Program Director position and that she could not change the budget. Being a Peer Reviewer, I told her she could change the budget with a GAN. Dr. Wash refused to change it. I talked Mr. Bradley, the accountant, requesting a change. Mr. Bradley said he had to go along with Dr. Wash since she was the fiduciary.

I will enjoin Mr. Thomas Bradley in my litigation as a defendant also.

On Thu, Sep 24, 2020 at 9:20 AM Dever, Michael (OJP) <Michael.Dever@usdoj.gov> wrote:

T
[Quoted text hidden]
[Quoted text hidden]

April 17, 2020

## EXHIBIT 21

Bureau of Justice Programs
Ms. Tracey Willis, BJA State Policy Advisor
Mr. Andre Bethea, Policy Advisor, Corrections

Ms. Willis:

I, Dr. Fred L. Nance Jr., am the author of this writing. I want to report possible fraud or misappropriation of funds regarding Grant #2018-CY-BX-0025. In order to protect this grant and myself, I want to invoke the NDAA Whistleblower Matters The National Defense Authorization Act of 2013 (NDAA), which include a provision that makes it illegal for an employee of a Federal contractor, subcontractor, or grantee to be discharged, demoted, or otherwise discriminated against for making a protected whistleblower disclosure. Under NDAA, the DOJ OIG has jurisdiction to investigate allegations of reprisal for whistleblowing by employees of DOJ contractors, subcontractors, and award recipients. As a peer reviewer for 10 years and instead of reporting this to the OIG, I thought we may be able to resolve this issue at this level with an **external** audit and future guidelines to follow. This is a whistleblower complaint.

The reasoning for writing this report at this time is because of what I discovered in April of 2020 and having working knowledge of the event being described. I am not part of any fraudulent scheme. I received a copy of our Second Chance Act drawdown report, dated March 30, 2020, which listed Dorothy Collins, a clerk who resigned on or about January 16, 2020. When I inquired of Dr. Wash about drawing down monies for someone who did not work for the program, she insulted and demeaned me as she stated I knew nothing about accounting. I reported my finding to our Accountant, Mr. Tom Bradley, CPA. I asked Mr. Bradley for an explanation and report. I have noted these conversations via emails to Dr. Wash and Mr. Bradley. I am attaching supporting documentation with this writing via email to you.

This writing is a result to protect my integrity and ethics being a partner to this Grant. In the first instance of our initial proposal submitted on May 1, 2018 for this grant it reports, "EMAGES, in collaboration with C.L.I.C.K. Services, NFP…." Dr. Hattie Wash is President and CEO of EMAGES. Dr. Wash handles the fiduciary part of the Grant. I am the President and CEO of C.L.I.C.K. Services, NFP. I handle the day-to-day operation as the Program Director. Therefore, I have an obligation and responsibility to report the appearance of irregularities with this Grant.

We received funding for our Grant, in late February 2019. When Dr. Wash conducts her drawdowns, I would be given a copy of the drawdown with numbers for total cost. I requested to get line-item cost for the total cost. I did not receive my first "line-item" cost until October 2019. Since receiving funding in February 2019, I had been complaining about not receiving a laptop computer to perform my duties. I requested the laptop because I had been using my personal laptop to perform my task during the implementation stage of the grant period. Instead of providing me with a laptop, Dr. Wash bought a desktop, which was placed in an office where we were not working. All work during the implementation stage was done in Dr. Wash's office as we worked in concert developing our curricula and other duties related to the implementation stage. When Dr. Wash bought the desktop, I asked her how were we supposed to use the desktop

EXHIBIT 21

if we are working in her office. I received a laptop computer and other office material in October of 2019, which was requested in February 2019. The laptop did not come with virus protection. Virus protection was provided from an EMAGES existing program. This virus protection ended in February of 2020. I requested new virus protection, verbally, for weeks before requesting it in writing. I received virus protection for the laptop on April 10, 2020.

At every turn, I argued or advocated for a program need strongly suggesting the use of SCA funding; Dr. Wash would tell me "this is my company!" When Dr. Wash would make this statement, I consistently reminded her "Yes, EMAGES is your company but this SCA grant is not EMAGES alone." When the need was not met and became more important, I would continue to request it. Dr. Wash would give me some partial supplies she had laying around stating "I will order your supplies." I constantly rejected partial supplies. Dr. Wash would respond in a condescending manner. I responded "I am not your employee. I am your partner."

Nevertheless, pursuant to DOJ Grant Financial Management Training II, **Payroll and Benefit Services** – Award recipients must refer to program guidelines, award special conditions, Part 200 Uniform requirement, and their approved budget to determine the permissibility of compensation charges. **Allowability** – Charges made to Federal awards for salaries, wages, and fringe benefits must be based on records that accurately reflect the work performed under each specific grant award, and conform to the established written policies of the organization consistently applied to both federal and non-federal activities. See 2 C.F.R. 200.430 The allowability criteria for compensation for personal services are as follows: (1) The compensation must be for work performed during the performance period; and (2) The compensation is not a retroactive payment for a prior performance period. Dorothy Collins was not employed during the time frame listed in the drawdown document.

**Material Misstatements Including Failure to Adequately Document the Use of Funds**
Recipients must establish and maintain an adequate accounting system and, when requested, be able to provide sufficient documentation to prove that all grant drawdowns were for allowable, allocable and reasonable expenses. **Reporting Obligations 2 C.F.R. Part 200.113** "Mandatory Disclosures" specifically requires that "The non-Federal entity or applicant for a Federal award must disclose, in a timely manner, in writing to the Federal awarding agency or pass-through entity all violations of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Failure to make required disclosures can result in any of the remedies described in § 200.338 Remedies for noncompliance, including suspension or debarment. (See also **2 C.F.R. Part 180** and **31 U.S.C. 3321**)." Award recipients are required to use federal funds in the best interest of their program and ensure their decisions related to the use of the funds are free of personal and organizational conflicts of interest. **2 C.F.R. 200.112**

Respectfully submitted

/s/Dr. Fred L. Nance Jr., Ph.D.
Human Services/Social Policy Analysis and Planning
Program Director – Grant #2018-CY-BX-0025

August 29, 2020

EXHIBIT 21

U.S. Department of Justice
Office of the Inspector General
Investigations Division
ATTN: Fraud Detection Office
950 Pennsylvania Ave., NW
Washington, DC 20530

**Grant #2010-CY-BX-0087 and Grant #2018-CY-BX-0025**: Misappropriation of Funds and/or Fraud

Inspector General:

I, Dr. Fred L Nance Jr., am the author of this complaint. I have been a peer reviewer for the Second Chance Act since 2009. I am on Congressman Danny K. Davis SCA Reentry Advisory Committee since 2007. I assisted in the development of the SCA Bill President Bush signed in 2008. I am filing this complaint pursuant to The National Defense Authorization Act of 2013 (NDAA) Whistleblower Act.

In December of 2019, I sat down with Congressman Danny K. Davis to discuss my 90-Day Transitional House for Sex Offenders being released on parole. I informed Congressman Davis about the issues of misappropriation of funds for Grant #2018-CY-BX-0025. **Congressman Davis told me I had a duty to report**.

Whistleblowers perform an important service for the public and the Department of Justice (DOJ) when they report evidence of wrongdoing. All DOJ employees, contractors, subcontractors, grantees, subgrantees, and personal services contractors are protected from retaliation for making a protected disclosure. The disclosure must be based on a reasonable belief that wrongdoing has occurred. The disclosure must also be made to a person or entity that is authorized to receive it. Employees who reasonably believe they have evidence of wrongdoing are always protected for submitting that information to other authorized audiences are different, depending on your place of employment. No one should ever be subject to or threatened with reprisal for coming forward with a protected disclosure. It is unlawful for any personnel action to be taken against you because of your whistleblowing. If you believe you have been retaliated against for making a protected disclosure, you may file a retaliation complaint. I reported these incidents to the DOJ Program Manager, Tracey Willis, and to the BJA Senior Policy Advisor, Andre Bethea.

I am employee of a DOJ grantee, and I am filing a charge of retaliation pursuant to 41 U.S.C. § 4712, which states it is illegal for an employee of a federal contractor, subcontractor, grantee, or subgrantee or personal services contractor to be discharged, demoted, or otherwise discriminated against for making a protected disclosure. Since I filed my Whistleblower complaint with Grant Manager, Tracey Willis, and DOJ Senior Policy Advisor, Andre Bethea, Grantee Dr. Hattie Wash, Grant **#2018-CY-BX-0025** is demanding I come to the office during this Coronavirus epidemic knowing I am protected class because of my age. I will be 71 years old on September 1, 2020.

EXHIBIT 21

I have been working from home since Governor Pritzker instituted a Stay at Home Order in March of 2020, along with the consultants we have as mentors. Occasionally, when I thought it was safe, I would come to a manager's meeting or pick up documents. Recently, due to my health, I have decided not to go into the office. Dr. Wash is refusing to send the documents I need to do my work via email to me. In addition, Program Manager, Tracey Willis, has allowed Dr. Wash an approved GAN taking me off Point of Contact. I have been Point of Contact for programmatic reasons since we received the grant in October of 2018. This is clear retaliation for filing a Whistleblower complaint.

**Grant #2010-CY-BX-0087**

This is the language in an email I sent to Program Manager, Tracey Willis, BJA Senior Policy Advisor, Andre Bethea, and Technical Assistant, Joseph Williams. I attached supporting documents. **Email**: The documents here demonstrates patterns of deceit by Dr. Wash. Dr. Wash did not participate in creating the proposal and budget for the SCA 2010-2012 grant. Dr. Wash is a pessimist. She did not believe I would get the grant. I had a great network I put together with assistance from Congressman Davis and Dr. Gary Dennis of DOJ. I wrote the grant from my experience being on Congressman Danny K. Davis' SCA Advisory Committee, as a Peer Reviewer, and from listening to Dr. Gary Dennis talk about a successful grant process. I had some assistance in creating the curriculum for this 2010-2012 grant from the sex offense therapist employed by EMAGES.

When I wrote the budget, my job description was "Program Coordinator" and my salary was $65,000.00 a year. Dr. Wash had no problem with this salary as she reviewed all documents before submission. When Congressman Davis alerted me with the news I received the grant, I informed Dr. Wash. EMAGES received confirmation about 3 weeks later.

When Dr. Wash received the notice of the award, she began cutting and adding to the budget. Dr. Wash took $10,000.00 each year, of the 2-year grant, from me. There was nothing I knew to do at the time. I was very, very upset, but I did my job as a professional. Dr. Wash told me she was taking the money from me to pay for an additional accountant. I reminded Dr. Wash she said there was no need for an accountant in the SCA budget because she was going to use the accountant she had and he was getting paid through a State of Illinois award. Dr. Wash said she needed a "special" accountant because this was a federal grant. I told her she did not need a "special" accountant for the grant. I informed her I talked to my collaborators and network. Dr. Wash told me EMAGES was her company and she could do what she wanted to do.

I did not forget how she took $20,000.00 from me. When I crafted the abstract and proposal for this present grant #2018-CY-BX-0025, I specifically began with the language in the abstract, "EMAGES, Inc, in collaboration with C.L.I.C.K. Services, NFP, seeks funding in the amount of $500,000.00 to fully implement the Second Chance Act...." and the language in the section "Capabilities and Competencies" on page 18 "...Dr. Fred L. Nance Jr., the co-sponsor of the MA'AT project, is the president & CEO of C.L.I.C.K...." This established "legally" we were partners in this grant. I did this so Dr. Wash would not be able to make arbitrary decisions with the project and funds from this present grant without consulting with me. My integrity and honesty is attached to this project. I worked too hard and long, over 20 years, to get to where I

# EXHIBIT 21

am today with my collaborations and network. This narrative and documents attached are part of my OIG complaint.

**Grant 2018-CY-BX-0025**

I am Program Director for this grant. EMAGES, Inc & C.L.I.C.K. Services, NFP wrote a proposal for this grant. Dr. Wash is the President & CEO of EMAGES. Dr. Nance is the President & CEO of C.L.I.C.K. Dr. Wash is the fiduciary. Dr. Nance handles the day-to-day operations as Director of Program. Dr. Nance receives a copy of the drawdown every month. On January 21st, February 26th, and March 30, 2020 Dr. Wash drew down funds for a person who was not employed. The person, Dorothy Collins, resigned on the 1st week of January 2020. When I brought this issue to Dr. Wash's attention, she threatened me with giving up the grant if I told our Grant Manager. Nevertheless, I informed the Grant Manager and Mr. Andre Bethea, Senior Policy Advisor for the Second Chance Act via email. I informed the Grant Manager and Mr. Bethea I was reporting this incident pursuant to the Whistleblower Act. I did not receive a response from them.

After I reported this incident, Dr. Wash continued misappropriating funds. We provide 7 groups with a trauma informed and mentoring curricula with this grant. When the COVID 19 crisis hit and Governor Pritzker issued his Stay at Home Order in March of 2020, we lost 2 groups, which were with the Cook County jail and the Illinois Department of Corrections Special Needs Unit. We budgeted 10 mentors for $2800.00 a month. The groups we lost were budgeted for 4 mentors at around $500.00 a month. The payroll I submitted for March $2600.00; April $2100.00; May $1800.00; June $2300.00; and July $2100.00. Dr. Wash drew down $2800.00 for each of these months. Dr. Wash drew down $1160.00 from October of 2019 thru July of 2020 for our evaluator without receiving an invoice from her.

Dr. Wash would ask our evaluator for an invoice when we talked to her, which was after she drew down money for her. I informed Dr. Wash she could not draw down funds for a particular month and not spend everything she drew down. Dr. Wash told me to mind my business and stay in my lane. I reminded Dr. Wash, several times, I am peer reviewer and know how this system works. I informed her there can be no money left over in her bank account. Dr. Wash continued to threaten me, stating if I reported it she would give up the grant. I told her I would take it up.

I informed our Technical Assistant, Joseph Williams, providing him emails and documentation. Mr. Williams informed me via email he would send all of my documentation to the Grant Manager and his higher ups. I informed our Grant Manager and Mr. Bethea. Dr. Wash continued to retaliate against me telling me I cannot supervise the Support Clerk for our Grant. Our Support Clerk's job description clearly states the clerk reports to me. This Support Clerk handles Dr. Wash's financial records.

On August 26, 2020 Dr. Wash submitted a GAN stating she wanted to take me off the Grant as one of the Point of Contact (POC). On August 28, 2020 our Grant Manager, Tracey Willis, approved Dr. Wash's GAN taking me off as POC. Taking me off as POC limits me from performing my duties. Dr. Wash retaliated against me for filing my complaints with our Grant

EXHIBIT 21

Manager, the Technical Assistant, and Mr. Bethea. I have detailed emails and documents to support my complaint.

I have been litigating my issues for over 20 years. I am not a lawyer. I put all my litigation and other issues on my Twitter page www.twitter.com/clickforjustice. Please contact me so I can provide the evidence for the statements I have made here. Thank you.

Respectfully submitted,


/s/Dr. Fred L. Nance Jr., Ph.D.
Human Services/Social Policy Analysis
███████████████
██████████████████
███████████████████

www.twitter.com/clickforjustice

# EXHIBIT 21

On September 13, 2020, I filed this Whistleblower complaint online with the U.S. Department of Justice, Office of the Inspector General. All 3 Whistleblower complaints will be posted on Social Media, which is protected by the 1st Amendment.
https://drive.google.com/file/d/1ETgkeIYqYfHelXTwTEpooSnpH78Fv0yc/view?usp=sharing
https://drive.google.com/file/d/1XRVBPx5e6dwF0tjTT0VGquysvI_B5bjR/view?usp=sharing
https://drive.google.com/file/d/1r4wEtCUT7SOZELbCpNoi9h985MvWZ8Ed/view?usp=sharing

**Introduction**

From the onset of our grant #2018-CY-BX-0025, Dr. Hattie Wash informed me she **did not** need every email and text copied to her stating (not verbatim), she did not need all the attachments and other stuff because this was my job to keep up with it. This statement from Dr. Wash was keeping in compliance with our proposal, which Dr. Wash and I refer to continuously as a guide toward services we promised DOJ, BJA, OJP to deliver. Our proposal specifically states in the Competencies and Capabilities section: "…Dr. Hattie Wash is the founder & CEO of EMAGES…EMAGES is a private not-for-profit psychological and treatment agency and is the lead agency for the MA`AT project…Dr. Fred L. Nance Jr., the co-sponsor of the MA`AT project, is the President & CEO of C.L.I.C.K. C.L.I.C.K. is a 501c3 public charity…the MA`AT project will consist of a full-time Project Director, Dr. Fred L. Nance Jr., who will be responsible for the day-to-day oversight, the development of the work plan during the 1st first year and implementation of the project during the 2nd and 3rd years. The CEO of EMAGES will work 10% of her time in the project and is responsible for the fiscal and management oversight of the project…."

On the first Tuesday of every month Dr. Wash and I meet virtually with our Grant Technical Assistant. On Tuesday, September 1, 2020, I met with our Grant Technical Assistant. The Grant Technical Assistant informed me during this meeting Dr. Wash sent him an email reporting she was not going to attend our monthly meeting until OJP made a decision on my Whistleblower complaints. On September 9, 2020 Dr. Wash sent me an email demanding I copy her on all correspondence I send out relating to our Grant. Dr. Wash's decision not attending our "required" monthly meeting with the Grant Technical Assistant is outrageous! Now, Dr. Wash wants me to copy her on all emails I send out relating to the Grant but does not want to meet with our Grant Technical Assistant to discuss the content of the emails I send out. Why would Dr. Wash think or believe she can demand how the Whistleblower processes end? Is Dr. Wash privately and discreetly working with someone at OJP to subvert the Whistleblower process?

Dr. Wash, and others, are retaliating against me for filing Whistleblower complaints. The retaliation prompting this 3rd Whistleblower complaint is Dr. Wash demanding I copy her on every email I send out to staff and our network partners **after** I sent an email on September 9, 2020 to her copying the OJP Grant Manager, Senior Policy Advisor, and Division Chief. As you will see in the emails and responses, I was glad she wanted to re-engage but she must respond/reply to my emails, if for no other reason having professional respect for me and the Grant. Since it appears the Whistleblower complaint processes does not provide any immediate relief from harassment or nefarious acts, I am going to file a Federal complaint in the Northern District of Illinois requesting an Injunction, and Order to Cease and Desist with Damages. I do not know who the "others" are involved in this conspiracy to violate the Whistleblower Act. The

# EXHIBIT 21

remedy for finding who they are in Federal Court is the Discovery processes, which includes Depositions.

During this Coronavirus episode and the Illinois Stay at Home Order, along with Dr. Wash not opening her facility for all staff and participants for this grant, I have been working from home as other staff of EMAGES and staff for this grant. Dr. Wash has not issued a plan for opening her facility as required in Illinois so all staff and participants will know we are in a safe environment, as she has promised. As stated in my earlier Whistleblower complaint (August 29, 2020), Dr. Wash informed staff she received $35,000.00 from the State of Illinois or City of Chicago to make her facility safe for re-opening. As of the date of this complaint, I am not aware of Dr. Wash has provided a plan for re-opening or scheduled a date for opening her facility to all staff and participants. Dr. Wash is not communicating with me. It appears Dr. Wash is intentionally sabotaging the grant due to my filing Whistleblower complaints. Dr. Wash, by her on words, reported she would give up the grant when I confronted her with disclosing the funds discrepancies to OJP. (See Whistleblower Complaint #2, 8/29/20)

I am in the protected class of individuals susceptible to the Coronavirus. Dr. Wash is aware I had a heart attack in July of 2011; I have hypertension and abdominal issues; I have a registered Emotional Support Animal (Oakley, 5-year old Chihuahua), which I had before writing the proposal for this grant and which I brought with me during the proposal writing processes and every day at work when we received the grant on October 1, 2018; and I have a Doctor's prescribed Nurse visiting me at home weekly as July 31, 2020. Due to my blood pressure levels and other issues contained in my Whistleblower complaints, I have shared with my Nurse the trauma I am experiencing due to the harassment, intimidation, and the nefarious behavior of Dr. Wash and others who may be encouraging her behaviors. My Nurse's progress notes reflect the anxiety and trauma suffered under this emotional distress.

**This is my 3rd Whistleblower Complaint, which includes retaliation.**

**On September 1, 2020** at 1:19 pm (CST) I sent this email message to Grant Manager Tracey Willis, OJP Senior Advisor Andre Bethea, and BJA Division Chief Michael Dever.

Good afternoon. It amazes me that no one from BJA has spoken directly to me about the Whistleblower complaints I filed on April 17, 2020 & September 29, 2020. This is not how I know DOJ. I have been dealing with DOJ, BJA, OJP for 11 years.

Ms. Willis sent me an email, responding to my inquiry about a GAN, stating if I wanted any information about the grant I should talk to Dr. Wash. Ms. Willis knows this particular GAN was in response to my Whistleblower complaints. Why would I talk to Dr. Wash about my complaints? I talked to her about the complaints before they were sent to you guys. You guys have my email threads on the discussions between Dr. Wash and I. A DOJ, BJA, OJP manager should have spoken with me. How can you guys make any decisions about these issues without talking with me, the petitioner?

# EXHIBIT 21

**On September 1, 2020** at 2:09 pm (CST) BJA Division Chief Michael Dever responded via email:

Good Afternoon Dr. Nance, We have received your emails and are looking into the grant expenditure information you referenced this week. Thanks again for your outreach and rest assured that we are taking steps to get to the bottom of the issues you've raised.

Michael Dever
BJA Division Chief

**On September 1, 2020** at 5:43 pm (CST) I sent this message to Mr. Dever via email:

Mr. Dever: First, I want to say Dr. Wash is the POC for the grant and all financial issues. I was the POC for programmatic issues. Second, I sent above information to Dr. Wash and our accountant regarding his semi-annual financial report being late. I received this information because I was the POC. This is not the first time I have had to remind the accountant and Dr. Wash about issues regarding reporting financial information. I have emails supporting this writing.

Dr. Wash is supposed to be monitoring the accountant. Now, I am not finding fault; just wanting to say the role I play as POC for this grant. I was alerted about the financial report being late because I was the POC. Taking me off as POC eliminates this protection of reports being filed on time. Taking me off as POC, took my ability to file my quarterly and semi-annual reports. I was told by the DOJ, BJA, OJP "help" desk that Dr. Wash initiated the GAN taking me off as POC.

Sir, I have been around Dr. Wash since November of 2001. I know Dr. Wash. One of my attributes is analyzing character and behavior. Knowing Dr. Wash, I am wondering who gave her the idea to take me off as POC. Dr. Wash did not come up with taking me off as POC on her own. What does this accomplish? This move hinders my ability to do my job. This move was retaliatory in nature. It happened "after" I filed my Whistleblower complaint.

**On September 2, 2020** I sent this message to our OJP Technical Assistant via email:

Mr. Williams: As promised during our monthly meeting on September 1, 2020, I would keep you apprised on our pre-release component of the grant. I received this message from the Cook County jail this morning. I will not attempt to send this message to Dr. Wash as she is not responding to any of my emails to her; as she did not attend our monthly meeting on September 1, 2020.

For your information, I created the linkage agreements we have with this grant. This is my network. I have spent 20 years creating my network and collaborations. They respect me, my integrity, and my dedication for assisting the socially disadvantaged and disenfranchised. I do not let personal issues get in the way of my duty to service, specifically, towards reentry and the returning citizen. This is part of my mission statement.

# EXHIBIT 21

**On September 7, 2020** at 4:20 pm (CST) I sent this email message to Grant Manager Tracey Willis, OJP Senior Advisor Andre Bethea, and BJA Division Chief Michael Dever.

Good evening. You may have received the emails I sent to the accountant of our grant regarding the apparent misappropriation of funds in April of 2020. Nevertheless, I am submitting them by itself, along with the email I sent to Ms. Willis and Mr. Bethea regarding my 1st Whistleblower complaint in April of 2020 with attachments. In addition, I do not believe I sent our 2020 Mentor Contractual Fee Invoices, which I send to Dr. Wash monthly. I did not have the March 2020 invoice with me. The March 2020 invoice in a locked cabinet in my office. When EMAGES opens I will send it to you.

On another note: I am still waiting on Dr. Wash to issue the statement she promised the mentors and other staff on the safety measures being taken before opening back up, along with an official opening date for EMAGES managers, staff, and clients/participants. EMAGES is presently partially open for those individuals who want to come to the office, such as clients paying fees, mentors picking up their checks or dropping off or picking up paperwork, and regular EMAGES staff working as Intake, data input and output, and clinical personnel (outside of the SCA grant). EMAGES "staff" includes Daniel Jean, who is the SCA grant Clinical Supervisor. Daniel conducts Intakes and other individual clinical responsibilites for EMAGES, the company. Daniel has dual roles.

**On September 9, 2020** at 3:26 pm (CST), I sent this message with 19 attachments to Dr. Hattie Wash Grant Fiduciary, Sheila Chew Grant Support Clerk, Grant Manager Tracey Willis, OJP Senior Advisor Andre Bethea, and BJA Division Chief Michael Dever.

Dr. Wash:

Our Clinical Supervisor, Daniel Jean, called me requesting the August 2020 Mentor Weekly Sign In Sheets and their Monthly Group Sign In Sheets for attendance so our support clerk can generate her monthly reports. Daniel reports the documents are not in the mentor's group folders. Due to the coronavirus and the Stay at Home Order, the Mentors send me these daily sign in sheets and at the end of the month they send me their attendance sheets via email. The mentors know, and I requested months ago, all documentation sent to me should come via email. The mentors are sending their documentation via email. The support clerk should be requesting this information from me.

Since implementation of the program began in October of 2019, the mentors submit all of their documentation to me. Daniel should not have to call me for this documentation. Daniel is the Clinical Supervisor.

I can send the support clerk the mentor's documentation weekly via email so she can complete her monthly reports. I requested the support clerk send me her monthly reports via email. I have not received any monthly reports from her. When I do not receive these reports from the support clerk, it hinders the reports I need to generate for OJP. I can still generate the reports for OJP, but it will be a tedious experience when it should not be because we have a support clerk.

# EXHIBIT 21

I am attaching the documentation Daniel requested to this email. I expect to get the reports I need via email from the support clerk until the office opens officially to all EMAGES staff, mentors, and participants. I have previously received these documents from the support clerk before the disruption created because of my Whistleblower complaints.

I sent this email to the support clerk on **August 12, 2020**. "I received the July 2020 Monthly Attendance Sheet. This sheet is missing the 5th week of attendance. There will be 5 weeks of attendance in every month thru December 2020. When will you send me the telephone listing of participants and mentors attending groups? Did you mail my check from August 7, 2020?" I did not receive a response. I am attaching her July 2020 report to this email.

P.S. I am sending these documents individually. I cannot group them together because I do not have the PDF program I requested from you. I believe it was in July 2020 you stated I should have reminded you for the June 2020 drawdown of funds. I informed you then I asked for this PDF program in early May 2020. I did not think I had to remind you.

Some of them will be in PDF because the mentors sent them to me in PDF or I used my personal PDF program that is on another computer. Transferring information from one computer to another is a tedious performance. August 3, 2020 thru August 8, 2020, mentors did not conduct group because they engaged the participants in completing questionnaires so there will be no official weekly sign in sheets. Some mentors took attendance also.

As you know, I create the mentors "contractual fee" report monthly from the weekly sign in sheets and from listening in on their teleconferencing calls during group.

**On September 10, 2020** at 10:54 am (CST), Dr. Wash sent this response to my email. "Dr. Nance effective immediately copy me on all correspondence that you send out that relates to EMAGES Second Chance MA'At program. Dr. Wash

**On September 10, 2020** at 11:34 am (CST) I sent this response message to Dr. Hattie Wash Grant Fiduciary, Grant Manager Tracey Willis, OJP Senior Advisor Andre Bethea, and BJA Division Chief Michael Dever.

Dr. Wash: You have not responded to my texts or emails. How do I know if you received the correspondence I have sent to you? Specify what correspondence you are relating too. You are not privy to my Whistleblower texts, emails, or any correspondence relating to it that involves the MA'AT project.

**On September 10, 2020** at 12:40 pm (CST), Dr. Wash sent this response email to me:

I am not requesting information on your whistleblower complaint, However, You are to copy me on any other written corresrpondance that you send to anyone inside and outside of EMAGES that is associated with the Second Chance Ma'At program i.e., jail, special needs, mentors, ect.

# EXHIBIT 21

**On September 10, 2020** at 1:20 pm (CST), I sent this reply message to Dr. Hattie Wash Grant Fiduciary, Grant Manager Tracey Willis, OJP Senior Advisor Andre Bethea, and BJA Division Chief Michael Dever.

Great! When I send you this correspondence, as before, I need you to respond as you did in the past. If you do not respond, I do not know you received it or how you think or believe about what I am writing to the mentors or partners of this grant. We need to communicate as before so we can move past our differences and think about the success of this project. I believe we need to agree to disagree on issues where our opinions or understanding of processes differ as it relates to DOJ, BJA, OJP policies and procedures. The goal should be to accomplish what we report in our Implementation Plan.

In addition, the duties and responsibilities I held before my Whistleblower complaint should be reinstated and maintained throughout this grant period. Pursuant to the National Defense Authorization Act of 2013 (NDAA), which includes a provision that makes it illegal for an employee of a Federal contractor, subcontractor, or grantee to be discharged, demonted, or otherwise discriminated against for making a protected whistleblower disclosure. Under NDAA, the DOJ Office of Inspector General has jurisdiction to investigate allegations of reprisal for whistleblowing by employees of DOJ contractors, subcontractors, and award recipients. All legal remedies are open to retaliatory employment actions. This paragraph and statement should not be taken as a threat or any other derogatory terminology. It is meant to gain the respect I deserve and the honor I hold for my integrity and values for honesty and well-being in my professional and personal endeavors in life. Thank you.

**On September 10, 2020** at 1:22 pm (CST) I forwarded, via email, Dr. Wash's responses/replies to Grant Manager Tracey Willis, OJP Senior Advisor Andre Bethea, and BJA Division Chief Michael Dever.

**On September 10, 2020** at 8:23 pm (CST) I sent an email to the Deputy Sheriff of the Cook County Jail, copying Dr. Wash.

Good evening. Sorry for interrupting your basketball or football game. Our Cook County jail team met for a Skype meeting this evening. Pursuant to your last email on September 2, 2020, we are preparing to re-enter on September 18, 2020 from 4:00 pm to 5:00 pm. I have a few questions:

We understand masks are required. Can we wear or bring in gloves or will the jail provide hand sanitizer? In our August 7, 2020 meeting with Jane and you, Daniel and I talked about conducting 2 groups in one week in order to catch up with our other groups, which have been operating during the Coronavirus. We would need to conduct these 2 groups for approximately 6 months. Can you make this happen before or after our start up date of September 18, 2020? If you have any other concerns, please do not hesitate to contact me. Dr. Wash will review this email and may have other considerations.

There was no email confirmation of receipt to me from Dr. Wash. Dr. Wash did not respond.

# EXHIBIT 21

**On September 10, 2020** at 10:35 pm (CST) I sent this email to staff with 9 attachments, copying Dr. Wash

Good evening. Alicia and Serita will work with the participants in the Cook County jail. During our Skype meeting today we talked about the upcoming re-opening of the Cook County jail. Our agenda and discussion consisted of: Intake Process, Follow-up Information Before Discharge, Curricula, Entry/Exiting, MA`AT Approach to Service - Starting and Ending Times. We talked about using the documents attached here.

I am not sure if the case management document attached is the right one. Daniel stated the name of the document is "Case Management Needs." I cannot locate a document called "Case Management Needs" in my list of documents. If the case management needs document I have attached here is not the right one, I need for Daniel to send you and me the one he is using.

I sent an email to the Sheriff. As I thought about our discussion on working with 2 Tiers, I am not sure we should attempt to work with 2 Tiers. Working with 2 Tiers would require Serita and Alicia to work the jail 4x a week. Our budget only allows them to work 2x a week due to the Coronavirus effect on services from March 2020 thru September 2020. I can verbally explain working 2x a week at our next meeting.

Upon entry on or about September 18, 2020, we will use a blank weekly sign in sheet, which is attached. I am attaching an EMAGES flyer so you can distribute to your participants in the jail. I am waiting for a response from the Sheriff regarding gloves or hand sanitizer. If I forgot anything, let me know. Thanks.

P.S. Alicia & Serita: You guys stated you may go to EMAGES Saturday, September 12, 2020. Please print these documents if you go to EMAGES. As stated in our meeting today, the Sheriff has informed me there are 4 participants at this time. You may want to print 10 copies of each documents, anticipating more participants.

Mentors Alicia and Serita and Daniel Jean replied with an email confirmation of receipt, as always requested by me. Our Clinical Supervisor, Daniel Jean, responded stating the "Case Management Needs" document is not needed because the needs of the participants are requested in the Demographic form. There was no email confirmation of receipt to me from Dr. Wash.

**On September 11, 2020** at 2:31 pm (CST) I sent this email to Dr. Wash:
"Microsoft Office has expired on my laptop computer. I still do not have the PDF program I requested." Dr. Wash has not responded.

**On September 11, 2020** at 9:52 pm (CST) I sent this email to Dr. Wash: "When the Microsoft Office 365 stops working I will not be able to generate any documents for the MA'AT project." Dr. Wash has not responded.

/s/Dr. Fred L. Nance Jr., Ph.D.
Grant #2018-CY-BX-0025 Program Director

Case: 1:20-cv-06316 Document #: 49-25 Filed: 03/05/21 Page 20 of 21 PageID #:1054

## Fwd: Suspension of the sex offender groups and termination of the Second Change Act grant

### EXHIBIT 21

From:  Dr. Fred Nance Jr. (drfred.nancejr@gmail.com)

To:    michael.dever@usdoj.gov; andre.bethea@usdoj.gov; tracey.willis@usdoj.gov; jwilliams@air.org;
       ronald.howard@cookcountyil.gov; jane.gubser@cookcountyil.gov; patricia.grosskopf@illinois.gov; sarah.brown-
       foiles@illinois.gov; dion.dixon@illinois.gov; josie.ware@mail.house.gov; tumia.romero@mail.house.gov

Cc:    drfred.nancejr@gmail.com; frednance@clickservices.org

Date:  Monday, September 21, 2020, 08:54 PM CDT

---

On September 21, 2020, I received the email above and below from Dr. Hattie Wash dissolving the Second Chance Act grant #2018-CY-BX-0025. As Dr. Wash and I talked about her giving up the program, after I discovered her misappropriation of funds or fraud and talked to her about it, Dr. Wash told me since I was going to report this to DOJ, BJA, OJP I could take the program. I sent the email, with this statement from Dr. Wash, to DOJ, BJA, OJP's Mr. Dever, Mr. Bethea, and Ms. Willis. Therefore, I am requesting C.L.I.C.K. Services, NFP become responsible for the grant to its end on September 30, 2021.

There should be no barriers or reasons why I cannot take over the grant. Dr. Wash and I wrote the proposal. I am the Program Director. I created all of our collaborative partners for this grant. Dr. Wash and I created and developed the curricula for this program. I know every part of this program. I partnered with Dr. Wash on this grant. Dr. Wash and I decided she would be the fiduciary and I would handle the day-to-day operation as the Program Director. It was my understanding we were equal partners. Dr. Wash just handled the flow of money for the grant. Read our SCA abstract and proposal for this grant, which is attached.

As reported in our abstract and proposal (pp. 17-18) (attached), EMAGES, Inc & C.L.I.C.K. Services, NFP collaborated and partnered for this grant. I am more than capable of finishing out this grant. This move by Dr. Wash is retaliatory in nature toward me for filing the 3 Whistleblower complaints with the Department of Justice, Bureau of Justice Assistance, Office of Justice Programs, and the U.S. Office of Inspector General for misappropriation of funds or fraud. As I have stated in my Whistleblower complaints, my employment is protected by the Whistleblower Act. My Whistleblower complaints are attached.

Dr. Wash's dilemma with her funding from the State of Illinois is not the first time this has happened to EMAGES. EMAGES has closed programs before because of Illinois State funding. There is no reason this grant cannot continue to move forward under the direction of C.L.I.C.K. Services, NFP (www.clickservices.org). Grant #2018-CY-BX-0025 is funded. I can still work with the Illinois Department of Corrections (post-release prison) and the Cook County Department of Corrections (pre-release jail).I am in the process of creating and developing a 90-day transitional house for sex offenders. I can run the grant from this project. The housing program is being created under C.L.I.C.K. Housing, Inc. My 'brief' housing project proposal is attached. I created this proposal for Illinois and Chicago legislators seeking support for my housing project. Congressman Davis has given me a Letter of Support for my housing project, which is attached. I can provide more details in line with a regular SCA proposal for how the program will work if necessary.

The reasoning Dr. Wash uses for giving the grant back is ludicrous. Grant #2018-CY-BX-0025 is funded and is not affected by the lack of Illinois State funding Dr. Wash alludes too. The grant funding covers participant cost because there is no participant cost. The grant covers contractual fees for all mentors and staff of the grant, which is listed in the grant budget. Our budget takes care of office space and other ancillary functions and needs. Dr. Wash is lumping the grant program in with her State dilemma to retaliate against me for filing my Whistleblower complaints. The only reason Dr. Wash is giving the program back to OJP is to hurt me for filing the 3 Whistleblower complaints.

WHEREFORE, I am requesting a teleconference audience with Mr. Michael Dever, BJA Division Chief; Mr. Andre Bethea, BJA Senior Policy Advisor; and Ms. Tracey Willis, OJP Grant Manager; or in the alternative, a transfer of responsibility for Grant #2018-CY-BX-0025. Please respond. Thank you.

Respectfully submitted

---------- Forwarded message ---------
From: **Hattie Wash** <washhattie@gmail.com>

# EXHIBIT 21

Date: Mon, Sep 21, 2020 at 7:28 PM
Subject: Suspension of the sex offender groups and termination of the Second Change Act grant
To: Gerri Taylor <tgerri99@yahoo.com>, mitzi scott <mitziscott10@yahoo.com>, curtis slate <curtiscurtis47@aol.com>,
Sheila Chew <sacpoiple1@gmail.com>, <shudson305@hotmail.com>, Jean Daniel <Daniel_Jean716@yahoo.com>,
marcie collins <marcie_93@yahoo.com>, Chad Ellis <seragi73@yahoo.com>, Eleanor Harris
<eleanorharris98@yahoo.com>, Edward Butler <dr_ebutler@yahoo.com>, Jamie Enge <jamiee425@gmail.com>, Dr.
Fred Nance Jr. <drfred.nancejr@gmail.com>, valerie minor <vminor2018@gmail.com>, LORI ORTIZ
<loriortiz6199@comcast.net>, <pebsluvsgod@yahoo.com>, <earlene416@gmail.com>, <srobin21@csu.edu>, Dr.
Karen Witherspoon <doctorwitherspoon@gmail.com>, THOMAS BRADLEY <tbacpa52@yahoo.com>,
<trentonfedrick@yahoo.com>, <johnson_l@comcast.net>


The Covid-19 Pandemic,the Shelter in Place Mandate by the State of Illinois, less than 15% of sex offender clients
paying their fees as well as EMAGES not receiving a payment from the FY21 State budget which began July, 2020 has
created an economic hardship and cash flow problem for EMAGES.

Given the above Effective October 1, 2020 EMAGES is suspending our sex offender groups and returning the Second
Chance Act grant back to the Office of Justice Programs. Additionally, Staff in the substance abuse programs work week
will be reduced from a five day work week to a four day week. If funding is not received before October 1, 2020, I will not
be able to meet EMAGES October 1, 2020 payroll for the substance abuse program and the sex offender group
facilitators.

I have scheduled a ZOOM meeting for Thursday September 24, 2020 at 7:00 p.m. to discuss the above changes and
address any concerns you may have.  Please let me know if you are unable to attend the meeting.

You will receive a ZOOM login number tomorrow.
Dr. Wash


--
/s/Dr. Fred Nance Jr., Ph.D.
Human Services/Social Policy Analysis
Program and Policy Development
708-921-1395


SCA Abstract.pdf
8.9kB


SCA Proposal.pdf
93.5kB


8.31.20 90 Day Transitional Housing Proposal.pdf
128.7kB


4.17.20 1st Whistleblower Complaint.pdf
1MB


8.29.20 2nd Whistleblower Complaint.pdf
98.6kB


9.13.20 3rd Whistleblower Complaint.pdf
121.6kB


1.24.20 Congressman Davis Letter of Support for Transitional Housing.pdf
76.5kB