August 29, 2020

U.S. Department of Justice
Office of the Inspector General          **EXHIBIT 34**
Investigations Division
ATTN: Fraud Detection Office
950 Pennsylvania Ave., NW
Washington, DC 20530

**Grant #2010-CY-BX-0087 and Grant #2018-CY-BX-0025**: Misappropriation of Funds and/or Fraud

Inspector General:

I, Dr. Fred L Nance Jr., am the author of this complaint. I have been a peer reviewer for the Second Chance Act since 2009. I am on Congressman Danny K. Davis SCA Reentry Advisory Committee since 2007. I assisted in the development of the SCA Bill President Bush signed in 2008. I am filing this complaint pursuant to The National Defense Authorization Act of 2013 (NDAA) Whistleblower Act.

In December of 2019, I sat down with Congressman Danny K. Davis to discuss my 90-Day Transitional House for Sex Offenders being released on parole. I informed Congressman Davis about the issues of misappropriation of funds for Grant #2018-CY-BX-0025. **Congressman Davis told me I had a duty to report**.

Whistleblowers perform an important service for the public and the Department of Justice (DOJ) when they report evidence of wrongdoing. All DOJ employees, contractors, subcontractors, grantees, subgrantees, and personal services contractors are protected from retaliation for making a protected disclosure. The disclosure must be based on a reasonable belief that wrongdoing has occurred. The disclosure must also be made to a person or entity that is authorized to receive it. Employees who reasonably believe they have evidence of wrongdoing are always protected for submitting that information to other authorized audiences are different, depending on your place of employment. No one should ever be subject to or threatened with reprisal for coming forward with a protected disclosure. It is unlawful for any personnel action to be taken against you because of your whistleblowing. If you believe you have been retaliated against for making a protected disclosure, you may file a retaliation complaint. I reported these incidents to the DOJ Program Manager, Tracey Willis, and to the BJA Senior Policy Advisor, Andre Bethea.

I am employee of a DOJ grantee, and I am filing a charge of retaliation pursuant to 41 U.S.C. § 4712, which states it is illegal for an employee of a federal contractor, subcontractor, grantee, or subgrantee or personal services contractor to be discharged, demoted, or otherwise discriminated against for making a protected disclosure. Since I filed my Whistleblower complaint with Grant Manager, Tracey Willis, and DOJ Senior Policy Advisor, Andre Bethea, Grantee Dr. Hattie Wash, Grant **#2018-CY-BX-0025** is demanding I come to the office during this Coronavirus epidemic knowing I am protected class because of my age. I will be 71 years old on September 1, 2020.

# EXHIBIT 34

I have been working from home since Governor Pritzker instituted a Stay at Home Order in March of 2020, along with the consultants we have as mentors. Occasionally, when I thought it was safe, I would come to a manager's meeting or pick up documents. Recently, due to my health, I have decided not to go into the office. Dr. Wash is refusing to send the documents I need to do my work via email to me. In addition, Program Manager, Tracey Willis, has allowed Dr. Wash an approved GAN taking me off Point of Contact. I have been Point of Contact for programmatic reasons since we received the grant in October of 2018. This is clear retaliation for filing a Whistleblower complaint.

**Grant #2010-CY-BX-0087**

This is the language in an email I sent to Program Manager, Tracey Willis, BJA Senior Policy Advisor, Andre Bethea, and Technical Assistant, Joseph Williams. I attached supporting documents. **Email**: The documents here demonstrates patterns of deceit by Dr. Wash. Dr. Wash did not participate in creating the proposal and budget for the SCA 2010-2012 grant. Dr. Wash is a pessimist. She did not believe I would get the grant. I had a great network I put together with assistance from Congressman Davis and Dr. Gary Dennis of DOJ. I wrote the grant from my experience being on Congressman Danny K. Davis' SCA Advisory Committee, as a Peer Reviewer, and from listening to Dr. Gary Dennis talk about a successful grant process. I had some assistance in creating the curriculum for this 2010-2012 grant from the sex offense therapist employed by EMAGES.

When I wrote the budget, my job description was "Program Coordinator" and my salary was $65,000.00 a year. Dr. Wash had no problem with this salary as she reviewed all documents before submission. When Congressman Davis alerted me with the news I received the grant, I informed Dr. Wash. EMAGES received confirmation about 3 weeks later.

When Dr. Wash received the notice of the award, she began cutting and adding to the budget. Dr. Wash took $10,000.00 each year, of the 2-year grant, from me. There was nothing I knew to do at the time. I was very, very upset, but I did my job as a professional. Dr. Wash told me she was taking the money from me to pay for an additional accountant. I reminded Dr. Wash she said there was no need for an accountant in the SCA budget because she was going to use the accountant she had and he was getting paid through a State of Illinois award. Dr. Wash said she needed a "special" accountant because this was a federal grant. I told her she did not need a "special" accountant for the grant. I informed her I talked to my collaborators and network. Dr. Wash told me EMAGES was her company and she could do what she wanted to do.

I did not forget how she took $20,000.00 from me. When I crafted the abstract and proposal for this present grant #2018-CY-BX-0025, I specifically began with the language in the abstract, "EMAGES, Inc, in collaboration with C.L.I.C.K. Services, NFP, seeks funding in the amount of $500,000.00 to fully implement the Second Chance Act...." and the language in the section "Capabilities and Competencies" on page 18  "...Dr. Fred L. Nance Jr., the co-sponsor of the MA'AT project, is the president & CEO of C.L.I.C.K...." This established "legally" we were partners in this grant. I did this so Dr. Wash would not be able to make arbitrary decisions with the project and funds from this present grant without consulting with me. My integrity and honesty is attached to this project. I worked too hard and long, over 20 years, to get to where I

am today with my collaborations and network. This narrative and documents attached are part of my OIG complaint.

**Grant 2018-CY-BX-0025**

I am Program Director for this grant. EMAGES, Inc & C.L.I.C.K. Services, NFP wrote a proposal for this grant. Dr. Wash is the President & CEO of EMAGES. Dr. Nance is the President & CEO of C.L.I.C.K. Dr. Wash is the fiduciary. Dr. Nance handles the day-to-day operations as Director of Program. Dr. Nance receives a copy of the drawdown every month. On January 21st, February 26th, and March 30, 2020 Dr. Wash drew down funds for a person who was not employed. The person, Dorothy Collins, resigned on the 1st week of January 2020. When I brought this issue to Dr. Wash's attention, she threatened me with giving up the grant if I told our Grant Manager. Nevertheless, I informed the Grant Manager and Mr. Andre Bethea, Senior Policy Advisor for the Second Chance Act via email. I informed the Grant Manager and Mr. Bethea I was reporting this incident pursuant to the Whistleblower Act. I did not receive a response from them.

After I reported this incident, Dr. Wash continued misappropriating funds. We provide 7 groups with a trauma informed and mentoring curricula with this grant. When the COVID 19 crisis hit and Governor Pritzker issued his Stay at Home Order in March of 2020, we lost 2 groups, which were with the Cook County jail and the Illinois Department of Corrections Special Needs Unit. We budgeted 10 mentors for $2800.00 a month. The groups we lost were budgeted for 4 mentors at around $500.00 a month. The payroll I submitted for March $2600.00; April $2100.00; May $1800.00; June $2300.00; and July $2100.00. Dr. Wash drew down $2800.00 for each of these months. Dr. Wash drew down $1160.00 from October of 2019 thru July of 2020 for our evaluator without receiving an invoice from her.

Dr. Wash would ask our evaluator for an invoice when we talked to her, which was after she drew down money for her. I informed Dr. Wash she could not draw down funds for a particular month and not spend everything she drew down. Dr. Wash told me to mind my business and stay in my lane. I reminded Dr. Wash, several times, I am peer reviewer and know how this system works. I informed her there can be no money left over in her bank account. Dr. Wash continued to threaten me, stating if I reported it she would give up the grant. I told her I would take it up.

I informed our Technical Assistant, Joseph Williams, providing him emails and documentation. Mr. Williams informed me via email he would send all of my documentation to the Grant Manager and his higher ups. I informed our Grant Manager and Mr. Bethea. Dr. Wash continued to retaliate against me telling me I cannot supervise the Support Clerk for our Grant. Our Support Clerk's job description clearly states the clerk reports to me. This Support Clerk handles Dr. Wash's financial records.

On August 26, 2020 Dr. Wash submitted a GAN stating she wanted to take me off the Grant as one of the Point of Contact (POC). On August 28, 2020 our Grant Manager, Tracey Willis, approved Dr. Wash's GAN taking me off as POC. Taking me off as POC limits me from performing my duties. Dr. Wash retaliated against me for filing my complaints with our Grant

# EXHIBIT 34

Manager, the Technical Assistant, and Mr. Bethea. I have detailed emails and documents to support my complaint.

I have been litigating my issues for over 20 years. I am not a lawyer. I put all my litigation and other issues on my Twitter page www.twitter.com/clickforjustice. Please contact me so I can provide the evidence for the statements I have made here. Thank you.

Respectfully submitted,


/s/Dr. Fred L. Nance Jr., Ph.D.
Human Services/Social Policy Analysis
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org
www.twitter.com/clickforjustice

EXHIBIT 34

```
             UNITED STATES
             POSTAL SERVICE.
                 THORNTON
             103 E ELEANOR ST
           THORNTON, IL 60476-9998
              (800)275-8777
08/29/2020                      11:33 AM
─────────────────────────────────────────
Product            Qty    Unit     Price
                          Price
PM 2-Day            1              $7.75
Window FR Env
    Washington, DC  20530
    Flat Rate
    Expected Delivery Day
    Tuesday 09/01/2020
    USPS Tracking #
    9505 5106 0092 0242 2867 83
Insurance                          $0.00
    Up to $50.00 included
Total                              $7.75

─────────────────────────────────────────
Grand Total:                       $7.75
─────────────────────────────────────────

Debit Card Remit'd                 $7.75
    Card Name:MasterCard
    Account #:XXXXXXXXXXXX2394
    Approval #
    Transaction #:974
    Receipt #:015564
    Debit Card Purchase:$7.75
    Cash Back:$0.00
    AID:A0000000042203      Chip
    AL:Citibank Card
    PIN:Verified        Citibank Card
─────────────────────────────────────────


*******************************************
     Due to limited transportation
      availability as a result of
       nationwide COVID-19 impacts
       package delivery times may be
     extended. Priority Mail Express®
          service will not change.
*******************************************

Includes up to $50 insurance

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit www.usps.com
USPS Tracking or call 1-800-222-1811.
```