## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Fred L. Nance Jr. | ) | |
| | ) | Case No. 20 CV 06316 |
| Plaintiff, | ) | |
| | ) | Honorable Judge: Jorge L. Alonso |
| vs. | ) | |
| | ) | Honorable Magistrate Judge: |
| Department of Justice, Bureau of Justice | ) | |
| Assistance, Office of Justice Programs, | ) | Beth W. Jantz |
| EMAGES, Inc., Hattie Wash, Thomas | ) | |
| Bradley, et al. | ) | Courtroom: 1903 |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT EMAGES, INC., HATTIE WASH AND THOMAS BRADLEY MOTION TO DISMISS**

NOW COMES, pro se plaintiff Dr. Fred L. Nance Jr. rejecting and in opposition to defendants EMAGES, INC. (hereinafter, "EMAGES", Hattie Wash (hereinafter, "Wash"), and Thomas Bradley (hereinafter "Bradley") motion to dismiss pursuant to FRCP Rule 12(b)(6) and 12(e) states, emphatically…Plaintiff asserts his 107 paragraphs/allegations in his Original Complaint as if fully stated herein. (Dkt. #49-5)

Plaintiff's federal complaint is not an employee/employer relationship issue. Plaintiff's complaint is based on the Whistleblower Act of 2013, amended 2016 et seq. Defendant Bradley was the accountant, an independent contractor for Grant #2018-CY-BX-0025. (Ex.44) Bradley was contracted, previously and currently, as of the beginning of Grant #2018-CY-BX-0025 and its end September 30, 2020, by an outside entity as a Certified Public Accountant for an audit of defendant EMAGES, Inc. before he was contracted as an independent accountant for Grant #2018-CY-BX-0025. (Ex.44)

Defendant Bradley's contractor scope of service will consist of the following: overall financial management and monitoring of internal controls, the preparation of all required

financial documents, drawdown monthly for expenditures, preparation of all state and federal forms, preparation of payroll and submission of all required documents to state and federal entities, submission to OJP of all required financial reports, fiscal closeout at the conclusion of the grant period, and all other required financial documents. (Ex.44,46,47) Defendant Bradley had a duty to financially protect and report any appearance of misappropriation of funds and fraud committed against Grant #2018-CY-BX-0025. (Ex.45,46,48; Dkt. #49-15, 49-17)

Defendant Bradley has the responsibility to check all Grant #2018-CY-BX-0025 expenditures with invoices and receipts before drawdowns. (Ex.46,47) If there is no form of tracking monthly expenditures, financial controls, with invoices and receipts, then misappropriation of funds and fraud is inevitable. If there were financial controls in place and plaintiff found approximately 6 months of misappropriation of funds or fraud, then defendant Bradley had to be part of the scheme. If Bradley was not part of the scheme, then why did he allow funds to be expended for 6 months without discovery or some sort of restraints put in place? Defendant Bradley had a duty to report. (Ex.46,47,48; Dkt. #49-15)

Plaintiff reports, emphatically, this is NOT an employee/employer relationship complaint. Plaintiff understands most employment cited cases fall up under Title VII policies and legal precedent. Nevertheless, this is a complaint regarding the violation of the Whistleblower Act of 2013, amended 2016 et seq. The legal precedent must follow the policies of the Whistleblower Act of 2013, amended 2016 et seq.

All law derives from policy. Future policies are created from deficient law interpretations. America's integrity depends on appropriate law interpretation. The U.S. Department of Justice, Office of Justice Programs, Office for Civil Rights 20-page document (Dkt. #49-36) is the policy governing Second Chance Act Grant #2018-CY-BX-0025. There is a

mountain of evidentiary material within plaintiff's original complaint and his "Evidentiary Exhibits and Docket Numbers", and this document needing discovery to achieve any measurement of justice in this matter as it pertains to defendant's motion to dismiss. Interpretation of this policy by Federal courts is primary and governs in furtherance of laws enacted from it.

Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make the fact to be proved more or less likely than if the evidence were not introduced. Rule 401 provides: Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Plaintiff has requested a jury trial. 31 U.S.C. § 3730(h) Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop one or more violations of this subchapter.

Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

**C.L.I.C.K. Services, NFP (Plaintiff's Employer)**

C.L.I.C.K. Services, NFP's President & CEO Dr. Fred L Nance Jr. (hereinafter,

"Plaintiff") has been on the Honorable Congressman Danny K. Davis' Second Chance Act

Advisory Committee since 2007. Plaintiff and others assisted Congressman Davis in drafting the

original language for the Second Chance Act Bill signed by President Bush on April 10, 2008.

Plaintiff has been a "Peer Reviewer" for Second Chance Act proposals since 2009. Plaintiff has

reviewed over 100 proposals, across the United States, for Second Chance Act grants. Plaintiff

sits on the following "Advisory Committees" of Congressman Danny K. Davis, 7th

Congressional District of Illinois:

| | |
|---|---|
| Women & Reentry | 2021 |
| Technology Advisory Committee | 2020 |
| Sub-Committees: | |
| Technology Awareness Campaign | |
| Technology Legislation | |
| | |
| Reentry Sub-Committees: | 2020 |
| Second Chance Act and Bail Reform | |
| Minimum Wage | |
| Resource Guide | |
| Substance Use and Mental Health | |
| | |
| Youth in Technology Summit | 2016 |
| Healthcare Summit | 2011 |
| Business Consortium | 2008 |
| Business Employment Reentry | |
| Collaborative Task Force | 2008 |
| Child Welfare | 2008 |
| Housing Advisory Task Force | 2008 |
| Welfare and Poverty | 2008 |
| Media Planning | 2008 |
| Youth and Child Development | 2008 |
| Drugs and Substance Abuse Prevention | 2008 |
| Second Chance Technical Support | 2008 |
| Ex-offenders and Criminal Justice | 2007 |
| Second Chance Act of 2007 | 2007 |

**Facts**

Plaintiff is an employee of C.L.I.C.K. Services, NFP (www.clickservices.org). C.L.I.C.K. Services, NFP partnered and collaborated with EMAGES, Inc. in applying for Grant #2018-CY-BX-0025. C.L.I.C.K. Services, NFP employee, plaintiff Fred L. Nance Jr., duties and responsibilities in the proposal was to be the Program Director, which manages all aspects of Grant #2018-CY-BX-0025. (Dkt. #49-7) EMAGES, Inc. employee, Hattie Wash, duties and responsibilities was to manage all fiduciary matters. Pursuant to the "revised" budget (Dkt. #49-41) of Grant #2018-CY-BX-0025, defendant Hattie Wash "percentage of time" on grant activities and the fiduciary was 13%. Plaintiff's "percentage of time" on all grant management and activities was 100%. (Dkt. #49-41)

Plaintiff applied for Grant #2018-CY-BX-0025. (Dkt. #49-42) DOJ decided to send the Grant Award letter naming EMAGES, Inc. as the recipient. (Dkt. #49-6) C.L.I.C.K. Services, NFP should have been awarded Grant #2018-CY-BX-0025 when Wash returned it. C.L.I.C.K. Services, NFP is the subrecipient in every sense for Grant #2018-CY-BX-0025. (Dkt. #s 49-28, 49-43; Ex.31) C.L.I.C.K. Services, Inc. subaward budget allocation is $113,200.00 (Dkt. #49-43), which C.L.I.C.K. Services, NFP never received. What did defendants Wash and Bradley do with this money?

Plaintiff does not claim defendants DOJ employees, Michael Dever, Andre Bethea, and Tracey Willis; and defendants EMAGES, Inc., Hattie Wash, or Thomas Bradley terminated his employment as related to an employee/employer relationship. Defense counsel wants to frame this litigation as an employee/employer relationship to avoid addressing the Whistleblower Act of 2013, amended 2016. Plaintiff claims all defendants violated the Whistleblower Act of 2013, amended 2016 et seq. causing the termination of plaintiff's employment, specifically, defendants

EMAGES and Wash initiating the violation of the Whistleblower Act with their letter with false statements (Dkt. #s 49-9, 49-32) terminating the grant and DOJ employees Michael Dever, Andre Bethea, and Tracey Willis not investigating the claims in defendants EMAGES, Inc. and Wash's letter terminating Grant #2018-CY-BX-0025 thus triggering an active conspiration, collusion, and/or working collaboratively with defendants EMAGES, Wash, and Bradley in violating the Whistleblower Act by allowing defendant Hattie's letter to stand as true statements for terminating a grant violating the Whistleblower Act, which terminated plaintiff's employment (Dkt. #s 49-27, 49-36) evidenced via the content of plaintiff's 3 Whistleblower complaints submitted on the OIG Hotline and via U.S. mail. (Dkt. #s49-12, 49-27, 49-36) and emails to DOJ employees. (Dkt. #s 49-9, 49-17, 49-19, 49-20, 49-46) Nevertheless, plaintiff provides case law to negate the false DOJ alleged claim of an employee/employer relationship leading to plaintiff's termination. Plaintiff was terminated because all defendants violated the Whistleblower Act of 2013, amended 2016 et seq.

On or about May 1, 2018 plaintiff filed documents for Grant #2018-CY-BX-0025. (Dkt. #42) Defendant Wash and plaintiff worked together to create these documents. Defendant Wash and plaintiff agreed EMAGES would be the Lead agency responsible for all fiduciary issues and plaintiff would be Program Administrator. (Dkt. #49-7)

In or around February of 2019 plaintiff and defendant Wash completed the "Special Conditions" of Grant #2018-CY-BX-0025. The planning and implementation guide was completed in July of 2019. (Dkt. #49-44) The subaward monitoring policy was completed on October 1, 2018. (Dkt. #49-28) The budget line for the subaward was $113,200. (49-43) C.L.I.C.K. Services, NFP was the subrecipient. (Dkt. #49-20; Ex.31)

In December of 2019 plaintiff verbally discussed defendant Wash's financial missteps with the Honorable Congressman Danny K. Davis. On March 10, 2020 plaintiff sent an email to BJA Division Chief Brenda Worthington regarding defendant Wash's missteps with financial management. (Dkt. #49-20) Plaintiff discussed the Whistleblower Act of 2013, amended 2016 et seq in the email with Ms. Worthington. Plaintiff informed Ms. Worthington he was not an employee of EMAGES. (Dkt. #49-20) Ms. Worthington discussed the subrecipient component of Grant #2018-CY-BX-0025. (Dkt. #49-20) Plaintiff requested defendant Wash provide him a 1099. Defendant Wash denied plaintiff's request stating plaintiff did not know anything about accounting. Plaintiff insisted he was not defendant Wash's employee in their discussion regarding a 1099. (Dkt. #49-20, 49-25, pp.7-8)

In or about March of 2020 plaintiff discovered defendant Wash was misappropriating grant funds. Plaintiff discussed this issue with Congressman Davis. (Dkt. #49-19) Congressman Davis suggested plaintiff talk with defendant Wash, and if she does not listen plaintiff had a duty to report the issue. Plaintiff verbally discussed the misappropriation of funds with defendant Wash, and via email with defendant Bradley. (Ex.45,46,47,48)

During plaintiff verbal and email discussions with defendant Wash, she berated and disrespected plaintiff telling him to mind his own business and concentrate on running the program. During plaintiff discussion with defendant Bradley, via email, Bradley told plaintiff to have the discussion with defendant Wash. Plaintiff informed Bradley he was supporting the misappropriation of funds because he was the accountant, he attended the DOJ Financial Management training, (Dkt. #49-15; Ex.46) and he was present during the all drawdowns of funds from Grant #2018-CY-BX-0025. (Ex.47) Since there was no relief talking with these

defendants, plaintiff filed his 1ˢᵗ Whistleblower complaint on April 17, 2020, and subsequent

Whistleblower complaints on August 28, 2020 and September 13, 2020. (Dkt. #49-17)

Plaintiff's litigation here is not about an employee/employer relationship. Plaintiff's

litigation is regarding the violation of the Whistleblower Act of 2013, amended 2016 et seq.

plain and simple. Defendants are attempting to characterize this litigation as an

employee/employer relationship. This is a smoking mirror; look over here; forget your lying

eyes; listen and look at the words coming out of my mouth. Defendants have no defense; just as

the emperor has no clothes. Defendant's motion to dismiss should not be under FRCP Rule

12(b)(6) and 12(e) because this is not an employee/employer relationship case and it does not

address the Whistleblower statute. Nevertheless, plaintiff will address FRCP Rule 12(b)(6) and

the issue at hand, the Whistleblower Act of 2013, amended 2016 et al.

**Main Arguments of Law**

In *Horne vs. Electric Eel Manufacturing Company, Inc., et al.*, No. 19-2082, decided

February 10, 2021 (7th Circuit), the court states "In our adversarial system of adjudication, we

follow the principle of party presentation. As this Court stated in *Greenlaw v. United States*, 554

U.S. 237, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008), "in both civil and criminal cases, in the first

instance and on appeal ..., we rely on the parties to frame the issues for decision and assign to

courts the role of neutral arbiter of matters the parties present." Id., at 243, 128 S.Ct. 2559.

In criminal cases, departures from the party presentation principle have usually occurred

"to protect a pro se litigant's rights." *Id.*, at 244, 128 S.Ct. 2559; see, e.g., *Castro v. United*

*States*, 540 U.S. 375, 381–383, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003) (affirming courts'

authority to recast pro se litigants' motions to "avoid an unnecessary dismissal" or

"inappropriately stringent application of formal labeling requirements, or to create a better

correspondence between the substance of a pro se motion's claim and its underlying legal basis" (citation omitted)). But as a general rule, our system "is designed around the premise that parties represented by competent counsel know what is best for them and are responsible for advancing the facts and argument entitling them to relief." *Id*., at 386, 124 S.Ct. 786 (Scalia, J., concurring in part and concurring in judgment). *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)." In short: "Courts are essentially passive instruments of government." *United States v. Samuels*, 808 F.2d 1298, 1301 (CA8 1987) (Arnold, J., concurring in denial of reh'g en banc). They "do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." *Id*.

**Motion to Dismiss**

In *Sidney L. Peterson vs. Wexford Health Sources, Inc., Arthur Davida, Sara Mays, and Loreatha Coleman*, No. 19-2592, an appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 19-cv-415, Charles P. Kocoras, Judge; argued November 3, 2020 and decided January 26, 2021. The appellate court states "We review de novo the district court's decision granting a motion to dismiss for failure to state a claim, "accepting as true all well-pleaded facts and drawing reasonable inferences in Peterson's favor." *United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016) (citing *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012)).

For a pleading to survive, the plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Twombly, 550

U.S. at 555). We review the district court's order granting a motion for judgment on the pleadings the same way "de novo, asking whether the well-pleaded factual allegations viewed in favor of the nonmoving party state a facially plausible claim for relief." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018) (citing *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017)).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Chi. Lodge* No. 7, 570 F.3d 811, 820 (7th Cir. 2009). A plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend his complaint before the entire action is dismissed. We have said this repeatedly. e.g., *Luevano v. Wal-Mart Stores, Inc*., 722 F.3d at 1024; *Bausch v. Stryker Corp*., 630 F.3d at 562; *Foster v DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008); *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 & n.3 (7th Cir. 2004) (collecting cases). Quoting *Salita vs. Kennedy et al*., No. 15 C 924, (2015). Plaintiff's complaint has sufficient facts to survive a motion to dismiss, which defendants EMAGES and Bradley have to stipulate are true because they filed a motion to dismiss pursuant to Rule 12(b)(6).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Nevertheless, the complaint's allegations "must be enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff's original complaint meets these requirements. If not, plaintiff needs to amend his complaint.

Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself, or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered, and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect. *Ortiz v. Werner Enterprise, Inc.*, No. 15-2574 (7th Cir. 2016)

Ortiz signals a diminishing importance of the prima facie case, shifting emphasis to the ultimate inquiry of whether the employer's rationale for its decision is a pretext for unlawful discrimination. It also highlights the Seventh Circuit's impatience with evidentiary constructs that distract the parties and the courts from the ultimate question of motivation. Evidence is evidence, and with that in mind, the parties, district courts and Seventh Circuit should view evidence in its totality to determine whether the employer was motivated by bias. Labeling evidence as direct or indirect, and then analyzing it separately is improper.

The use of disparate methods and the search for elusive mosaics has complicated and sidetracked employment-discrimination litigation for many years. During the last decade, every member of the 7th Circuit court has disapproved both the multiple methods and the search for mosaics. See, e.g., *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900 (7th Cir. 2006); *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (concurring opinion joined by entire panel); *Good v. University of Chicago Medical Center*, 673 F.3d 670, 680 (7th Cir. 2012); *Harper v. C.R. England, Inc.*, 687 F.3d 297, 314 (7th Cir. 2012); *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 737 (7th Cir. 2013); *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013);

*Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014); *Bass v. Joliet Public School District No. 86*, 746 F.3d 835, 840 (7th Cir. 2014); *Hutt v. AbbVie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014); *Simpson v. Beaver Dam Community Hospitals, Inc*., 780 F.3d 784, 789–90 (7th Cir. 2015); *Castro v. DeVry University, Inc*., 786 F.3d 559, 564 (7th Cir. 2015) (collecting cases)

To make matters worse, this court has itself occasionally treated "convincing mosaic" as a legal requirement, even while cautioning in other opinions that it must not be so understood. See, e.g., *Hatcher v. Board of Trustees of Southern Illinois University*, No. 15-1599 (7th Cir. July 14, 2016), slip op. 13; *Chaib*, 744 F.3d at 981*; Cloe v. Indianapolis*, 712 F.3d 1171, 1180 (7th Cir. 2013); *Smith v. Bray*, 681 F.3d 888, 901 (7th Cir. 2012); *Good*, 673 F.3d at 674; *Silverman v. Board of Education of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011); *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006); *Koszola v. Board of Education of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Rhodes v. Illinois Department of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004); *Cerutti v. BASF Corp*., 349 F.3d 1055, 1061 (7th Cir. 2003); *Robin v. Espo Engineering Corp*., 200 F.3d 1081, 1088–89 (7th Cir. 2000).

**Plaintiff States Claims Against Bradley**

Defendant Bradley has a contractual agreement as a CPA accountant for Grant #2018-CY-BX-0025. (Ex.44) Defendant Bradley contractual agreement was emailed to DOJ employee, Tracey Willis as part of Grant #2018-CY-BX-0025 "Special Conditions" requirement. Defendant Bradley's original copy of his contractual agreement is in the possession of defendant Wash. The contractual agreement reads, in part, "This contract will commence on October 1, 2018 between EMAGES, Inc. 7601 Kostner Suite 500, Chicago, Illinois 60652 and Thomas Bradley. Thomas Bradley is an Independent Contractor and is contracted by EMAGES as a Certified Public Accountant…."

Plaintiff is not saying defendant Bradley had final authority on the fiscal management. Plaintiff is stating defendant Bradley had a duty to report pursuant to DOJ Financial Management policy. (Dkt. #s49-15,49-29; Ex.46,47) After receiving emails from plaintiff regarding defendants EMAGES and Wash misappropriating DOJ funds and fraud (Ex.45), defendant Bradley continued signing off on defendants EMAGES and Wash's misappropriating DOJ funds; thus retaliating and/or supporting the retaliation against plaintiff.

Defendant Bradley does not need to be an employer or a final decisionmaker. Defendant Bradley was responsible for and provided monthly financial input in Grant #2018-CY-BX-0025 system for payroll, drawdowns of federal funds. (Ex.47) Defendant Bradley received emails from plaintiff in April of 2020 regarding his Whistleblower complaint. (Ex.48) Defendant Bradley and plaintiff attended, as required, the DOJ Financial Management Training and received certificates of completion. (Ex.46) Defendant Wash did not attend any DOJ Financial Management Trainings. Defendant Wash stated she did not and was not required to attend a DOJ Financial Management Training.

Defendant Bradley is a contractor for Grant #2018-CY-BX-0025. (Ex.44) Defendant Bradley is the CPA for Grant #2018-CY-BX-0025. (Ex.44) Defendant Bradley is a member of the management team for Grant #2018-CY-BX-0025. (Ex.49) Defendant Bradley is a co-conspirator with defendant Wash in the misappropriation of funds, fraud, and willing partner of the retaliation claim pursuant to the Whistleblower Act of 2013, amended 2016 et seq. (Dkt. #49-33) because he did nothing, said nothing about the return of Grant #2018-CY-BX-0025 to DOJ. (Dkt. #49-9, 49-32) Defendant Bradley understood his responsibility to report financial misappropriation of funds and fraud due to his attendance in DOJ's Financial Management Training receiving a certificate of completion. (Dkt. #49-15l Ex.46)

**Plaintiff's Count 1 & 2 – NDAA and §41 U.S.C. 1472 as it applies to Defendant Bradley**

Defendant Bradley is a contractor for Grant #2018-CY-BX-0025. (Ex.44) As part of the "Special Conditions" of Grant #2018-CY=BX-0025 (Dkt. #49-36, pp. 6-17), defendant Bradley's contract agreement with the grant was submitted with all other documents needed for Grant #2108-CY-BX-0025 to proceed in force. It was a DOJ requirement. (Dkt. #49-36) Defendant Bradley does not have to be plaintiff's employee for duty requirements for Grant #2018-CY-BX-0025. The NDAA contains two robust whistleblower protection provisions that apply to employees of government contractors (see Sections 827 and 828 of Pub. L. No. 112-239, 126 Stat 1632 (2013), as amended by Pub. L. No. 114-261, 130 Stat. (2016)). Both provisions protect employees from retaliation for disclosing: (1) Gross mismanagement of a federal contract or grant; (2) A gross waste of federal funds: (3) An abuse of authority relating to a federal contract or grant; (4) A violation of law, rule, or regulation related to a federal contract; and (5) A substantial and specific danger to public health or safety. (10 U.S.C. § 2409; 41 U.S.C. § 4712.)

<u>*Scope of NDAA Coverage*</u>

As amended in 2016 et seq., Sections 827 and 828 of the NDAA cover all individuals performing work on a government contract or grant, including personal services contractors and employees of contractor, subcontractor, grantee, or subgrantee.

Section 827 protects employees of contractors and subcontractors of the Department of Defense (DoD) and the National Aeronautics and Space Administration (NASA) (10 U.S.C. § 2409(a)(1)). Section 828 applies to: (1) Employees of other federal contractors and subcontractors; (2) Grantees of other agencies; (3) Employees of entities that receive federal funds; and (4) Personal services contractors working on defense or civilian grant programs. (41

U.S.C. § 4712(a)(1).) The NDAA applies only to disclosures of waste, fraud, and abuse in federal government contracts and grants.

*Channels for Whistleblowing*

Disclosures are protected only if made to: (1) A member of Congress or a congressional committee; (2) An Inspector General; (3) The Government Accountability Office (GAO); (4) A federal employee responsible for contract or grant oversight or management at the relevant agency; (5) An authorized official of the Department of Justice (DOJ) or other law enforcement agency; (6) A court or grand jury; and (7) A management official or other employee of the contractor or subcontractor who has the responsibility to investigate, discover, or address misconduct.

Plaintiff disclosed his Whistleblower complains to: (1) A member of Congress (Dkt. # 49-19); (2) An Inspector General (Dkt. #49-12); (3) A federal employee responsible for the contract or grant oversight or management at the relevant agency (Dkt. #s 49-9, 49-17, 49-20, 49-34, 49-46); (4) An authorized official of DOJ (Dkt. #s 49-9, 49-17, 49-20, 49-34, 49-46; Ex.31); (5) a court; (6) a management official or other employee of the contractor or subcontractor who has the responsibility to investigate, discover, or address misconduct (Ex.44,45,46,47,48,49). Defendant Bradley was part of the management team for Grant #2018-CY-BX-0025. (Ex.49)

**Plaintiff's Count 3 & 4 – Illinois Whistleblower Law and Retaliation as it applies to Defendant Bradley**

In *Uhlig vs. Fluor Corp.*, No. 14-2815 (7th Circ. 2016) the court reports, an employee can pursue a claim for unlawful retaliation if he was discharged "because of lawful acts done by the employee ... in furtherance of an action under" the False Claims Act. 31 U.S.C. § 3730(h). In

other words, a plaintiff must prove that he was engaged in protected conduct and was fired "because of" that conduct. *Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 847 (7th Cir. 2012) (citations omitted). To determine whether an employee's conduct was protected, we look at whether "(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government." *Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 480 (7th Cir. 2004) (citation omitted). In assessing the second, "objective" prong, we look to the facts known to the employee at the time of the alleged protected activity. See id. at 479–80; *Mann v. Heckler & Koch Def., Inc.*, 630 F.3d 338, 345 (4th Cir. 2010).

A claim for whistleblower retaliation under Section 2303(b)(8) has four elements, which the employee must prove by a preponderance of the evidence: (1) A protected disclosure (see Protected Disclosures Under Section 2302(b)(8)). (2) A personnel action taken, threatened, or not taken after the protected disclosure (see Personnel Actions Under Section 2302(b)(8)). (3) The accused officials knew of the protected disclosure (see Knowledge of the Protected Disclosure Under Section 2302(b)(8)). (4) A causal connection between the disclosure and the personnel action (see Causation Under Section 2302(b)(8)). (Dkt. #49-33, pp.2-3)

The Illinois Whistleblower Act prohibits an employer from retaliating against an employee "for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation. . .." 740 ILCS 174/20. Under the Illinois Whistleblower Act, an action can be retaliatory "if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." 740 ILCS 174/20.1. The parallels between this definition and the *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (7th Cir. 2006) standard suggests that

Whistleblower retaliation is defined in a similar way to Title VII retaliation. Plaintiff provides sufficient evidence there are material facts in dispute.

Defendant Bradley participated in the misappropriation of funds, fraud, and retaliation. To establish his retaliation claim, plaintiff must plausibly allege: (1) he engaged in a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Volling v. Kurtz Paramedic Servs., Inc*., 840 F.3d 378, 383 (7th Cir. 2016)

Plaintiff provided sufficient evidence at this stage of the litigation. A claim for whistleblower retaliation under the NDAA has four elements, which the employee must prove by a preponderance of the evidence: (1) a protected disclosure. An employee of a government contractor makes a protected disclosure if the individual reasonably believes that the disclosed conduct constitutes any one of the following: (a) Gross mismanagement of a federal contract or grant, which is "a management action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission" (*Kavanagh v. Merit Sys. Prot. Bd*., 176 F. App'x 133, 135 (Fed. Cir. 2006) (citing *White v. Dep't of the Air Force*, 63 M.S.P.R. 90, 95 (1994))); (b) a gross waste of federal funds, which is a more than debatable expenditure significantly out of proportion to the benefit reasonably expected to accrue to the government (*Chambers v. Dep't of the Interior*, 515 F.3d 1362, 1366 (Fed. Cir. 2008)); (c) an abuse of authority relating to a federal contract or grant, which is an arbitrary or capricious exercise of power that adversely affects the rights of a person or results in personal gain or advantage to preferred other persons (*Doyle v. Dep't of Veterans Affairs*, 273 F. App'x 961, 964 (Fed. Cir. 2008) (citing *Embree v. Dep't of the Treasury*, 70 M.S.P.R. 79, 85 (1996))). Unlike gross mismanagement and gross waste of funds disclosures, there is no de minimis standard for

abuse of authority disclosures (*Pasley v. Dep't of the Treasury*, 109 M.S.P.R. 105, 114 (2008));
(d) a violation of law, rule, or regulation related to a federal contract or grant, including any
conduct protected under the False Claims Act (FCA) (see *Reid v. Merit Sys. Prot. Bd.*, 508 F.3d
674, 678 (Fed. Cir. 2007) and *U.S. ex rel. Cody v. ManTech Int'l Corp.*, 207 F. Supp. 3d 610,
621 (E.D. Va. 2016)); and (e) a "substantial and specific danger to public health or safety,"
identifying the nature and likelihood of the harm, as well as when the harm may occur (see
*Chambers*, 515 F.3d at 1367).

**Plaintiff's Count 5 – Hostile Work Environment**

A hostile work environment is defined as "a work environment which promotes or
permits discriminatory behavior towards an employee or class of employees based on the
employee's age, race, gender, natural origin, disability or religion." Additionally, discriminatory
actions that are taken in retaliation to rights protected by state and federal laws also qualify as
creating a "hostile work environment."

In *Sandor Demkovich vs. St. Andrew The Apostle Parish, et al.*, No. 19-2142, Decided
August 31, 2020 (7th Circuit) provides information on a hostile work environment. The court
reports "Hostile environment claims are essentially tortious in nature. See *Burlington Industries,
Inc. v. Ellerth*, 524 U.S. 756-57 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 793-94 (1998).

They use different standards for holding an employer liable for actions that render the
environment hostile, and they do so precisely because the behavior that creates the hostile
environment is not essential for management supervision and control of employees. That
different character of hostile environment claims began to emerge in the early cases. See,
e.g., *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-66 (1986) (collecting cases on hostile
environments). In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), the Supreme Court

developed the definition of an actionable hostile work environment: "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Id. at 21, quoting *Meritor Savings Bank*, 477 U.S. at 65, 67 (quotation marks omitted).

This is a demanding standard; a plaintiff's evidence must go well beyond showing rudeness or incivility, *Faragher*, 524 U.S. at 788 (standards are "sufficiently demanding to ensure that Title VII does not become a `general civility code'"); *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017), even if it need not reach the point of "hellishness." See *Johnson v. Advocate Health & Hospitals Corp*., 892 F.3d 887, 901 (7th Cir. 2018).

Hostile environment claims are quite different. They concern the behavior of individual co-workers and/or supervisors that is generally treated as outside the scope of employment. Such behavior may be attributable to the employer in case of employer negligence or abuse of power over tangible employment actions. In *Porter v. Erie Foods International, Inc*., 576 F.3d 629, 635 (7th Cir. 2009), a Black employee repeatedly had a noose left at his work station and suffered violent intimidation in the workplace. In *Brooms v. Regal Tube Co*., 881 F.2d 412, 417 (7th Cir. 1989), a supervisor repeatedly showed racist pornography to an employee, threatened to force her to engage in bestiality, and threatened to kill her. In *EEOC v. Management Hospitality of Racine, Inc*., 666 F.3d 422, 428-30, 432 (7th Cir. 2012), a restaurant manager sexually harassed and assaulted multiple teenage employees, one during every single shift they worked together. See also *Smith v. Rosebud Farm, Inc*., 898 F.3d 747, 749-50 (7th Cir. 2018) (plaintiff was subjected to four years of groping, mimed sex acts, and racial slurs; he was threatened with meat cleavers and his tires were slashed after he reported workplace abuse to a supervisor); *Gates v.*

*Board of Education*, 916 F.3d 631, 637-39 (7th Cir. 2019) (plaintiff was subjected to repeated use of vicious racial epithets; collecting a number of other cases in which racial and sex-based abuse constituted a hostile work environment). We could go on."

Defendant's claim "plaintiff merely alleges that the Grant was returned as a result of his whistleblower complaints. These allegations do not meet the "high bar" required for hostile work environment claims." See *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018). First, the case cited here is about sexual discrimination and summary judgment. Second, plaintiff lost his employment. One cannot suggest there is a higher bar than eating, feeding your family, paying bills, and paying your mortgages/rents. This is not an employee/employer relationship complaint. Plaintiff's complaint is about the violation of the Whistleblower Act of 2013, amended 2016 et seq.

**Plaintiff's Count 6 & 7 – Emotional Distress & Special Damages**

In the Supreme Court case of *Carey vs. Piphus*, 76-1149 (1978), the court reports "Our legal system's concept of damages reflects this view of legal rights. "The cardinal principle of damages in Anglo-American [435 U.S. 247, 255] law is that of compensation for the injury caused to plaintiff by defendant's breach of duty." 2 F. Harper & F. James, Law of Torts 25.1, p. 1299 (1956)

Over the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights. These rules, defining the elements of damages [435 U.S. 247, 258] and the prerequisites for their recovery, provide the appropriate starting point for the inquiry. As we have observed in another context, the doctrine of presumed damages in the common law of

defamation per se "is an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss." *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 349 (1974).

Defendant's state, "Plaintiff's final two 'causes of action' are standalone claims titled "Emotional Distress" and "Special Damages." (Dkt. 5, Compl. at 24-25.) However, it is well established that neither emotional distress nor special damages represent independent claims but are forms of relief that must be founded upon underlying causes of action." Citing 7th circuit cases.

Plaintiff cites Supreme Court case *Carey v. Piphus*, 435 U.S. 247, 263-64, 98 S. Ct. 1042, 1052-53, 55 L. Ed. 2d 252 (1978). This court reports compensable damage must, however, be proven and cannot be presumed. It need not be financial or physical but may include damages for humiliation and emotional distress. *Id*. at 263-64 & n. 20, 98 S. Ct. at 1052-53 & n. 20.

Plaintiff has reported actual damages from violations the NDAA OF 2013, amended 2016 et seq., violation of 41 U.S.C. § 4712, violation of the Illinois Whistleblower Law, Retaliation, Hostile Work Environment, Emotional Distress, and Special Damages requesting the following relief: (1) $500,000.00 and/or reinstatement of Grant #2018-CY-BX-0025 with a 3-year extension and, as reported recently, plaintiff is the Grant Administrator; (2) Letters of Support or Letters of Apology addressed to all and any collaborations/networks involved with Grant #2018-CY-BX-0025 exonerating plaintiff of any and all wrongdoing, accusations, or allegations made against plaintiff, such as Illinois Department of Corrections (IDOC), Cook County Department of Corrections (Cook County Jail), IDOC Parole Officers, the Safer Foundation, Inc., especially, President & CEO Victor Dickson. Defendant Bradley worked in concert with defendants EMAGES, Inc. and Hattie Wash in violating NDAA OF 2013, amended 2016 et seq. with his

non-action for 9 months, from January 2020 thru September 2020, overlooking the alleged misappropriation of funds and fraud.

The law is clear that when a plaintiff has alleged actual damages, that claim keeps the case alive regardless of whether a claim for nominal damages remains. See, e.g., *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). Although bare violations of certain constitutional rights like the freedom of speech or religion can seem abstract, they also tend to cause, or at least generate plausible claims for, actual damages. Many such cases will involve some direct financial injury. See, e.g., *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 10 799 (7th Cir. 2016).

Beyond those tangible injuries, plaintiffs can allege all manner of intangible-yet-compensable harms, including impairment of reputation, personal humiliation, and mental and emotional distress. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986); *Carey*, 435 U.S. at 263; see also *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 963–64 (8th Cir. 2015). Plaintiff has declared actual damages, loss of employment and emotional distress. Plaintiff request to amend his complaint to include impairment of reputation, and personal humiliation due to his loss of network collaboration build over a 20-year period, such as IDOC parole, Cook County jail, and others, which plaintiff does describe in his complaint.

Thus, in arriving at a figure the court should rely primarily upon the evidence introduced at trial. *Hurley v. Atlantic City Police Dept.*, 933 F. Supp. 396, 425 (D.N.J.1996). Comparisons, however, are useful in helping the court determine whether or not a given damage award falls within a permissible range. See *Hunter v. Allis-Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1425 (7th Cir.1986); *In re Innovative Construction Systems, Inc.*, 793 F.2d 875, 887 n. 11 (7th Cir. 1986); *Johnson v. Hale*, 13 F.3d 1351, 1353 & n. 3 (9th Cir.1994); *Abrams v. Lightolier*, 841

F. Supp. 584, 593 (D.N.J.1994), aff'd, 50 F.3d 1204 (3d Cir.1995); *Hurley v. Atlantic City Police Dept.*, 933 F. Supp. 396 (D.N.J.1996).

Plaintiff's exhibits support the Office of Inspector General, M. Sean O'Neill, administrative decision is flawed. Mr. O'Neill did not investigate plaintiff's 3 Whistleblower complaints before deciding not to investigate; nor did he send his decision to his Department Head for further analysis, review, and concurrence as his policy demands.

After concluding that an administrative decision is flawed, a court of appeals normally must remand to the agency. See, e.g., *Negusie v. Holder,* 555 U.S. 511, 129 S.Ct. 1159, 173 L.Ed.2d 20 (2009); *Gonzales v. Thomas,* 547 U.S. 183, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006); *INS v. Orlando Ventura,* 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). The remand rule is designed to afford the agency an opportunity to have its say on an issue, a say that may reflect expertise and could be entitled to judicial deference.

In *Delgado vs. DOJ*, 19-2239 (7th Circuit, 2020), the court states "We first provide an overview of the Whistleblower Protection Act and how it frames the issues on this petition for judicial review. In *Baez-Sanchez v. Barr*, we summarized the basic rules here: Under the rule of law, an agency that is unhappy with a court's decision on judicial review may appeal further or perhaps seek legislation to change the applicable law for future cases.

The agency may not pretend the court did not make its decision. See 947 F.3d at 1036. In more doctrinal terms, the agency here disregarded the law of the case, which "prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances." *United States v. Adams*, 746 F.3d 734, 744 (7th Cir. 2014), quoting *United States v. Polland*, 56 F.3d 776, 779 (7th Cir. 1995).

The law-of-the-case doctrine applies to judicial review of administrative decisions. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998), citing *Chicago & Nw. Transp. Co. v. United States*, 574 F.2d 926, 929– 30 (7th Cir. 1978), citing in turn *Morand Bros. Beverage Co*. v. NLRB, 204 F.2d 529, 532–33 (7th Cir. 1953). The law-of-the case doctrine is a corollary of the mandate rule, which "requires a lower court" here, an administrative tribunal" to adhere to the commands of a higher court on remand." *Adams*, 746 F.3d at 744; accord, *Baez-Sanchez*, 947 F.3d at 1036.

*Protected Disclosures Under the NDAA*

An employee of a government contractor makes a protected disclosure if the individual reasonably believes that the disclosed conduct constitutes any one of the following: Gross mismanagement of a federal contract or grant, which is "a management action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission" (*Kavanagh v. Merit Sys. Prot. Bd*., 176 F. App'x 133, 135 (Fed. Cir. 2006) (citing *White v. Dep't of the Air For*ce, 63 M.S.P.R. 90, 95 (1994))). A gross waste of federal funds, which is a more than debatable expenditure significantly out of proportion to the benefit reasonably expected to accrue to the government (*Chambers v. Dep't of the Interior*, 515 F.3d 1362, 1366 (Fed. Cir. 2008)).

An abuse of authority relating to a federal contract or grant, which is an arbitrary or capricious exercise of power that adversely affects the rights of a person or results in personal gain or advantage to preferred other persons (*Doyle v. Dep't of Veterans Affairs*, 273 F. App'x 961, 964 (Fed. Cir. 2008) (citing *Embree v. Dep't of the Treasury*, 70 M.S.P.R. 79, 85 (1996))).

A violation of law, rule, or regulation related to a federal contract or grant, including any conduct protected under the False Claims Act (FCA) (see *Reid v. Merit Sys. Prot. Bd.*, 508 F.3d

674, 678 (Fed. Cir. 2007) and U.S. ex rel. *Cody v. ManTech Int'l Corp.*, 207 F. Supp. 3d 610, 621 (E.D. Va. 2016)).

*Proving a Whistleblower Retaliation Claim under the NDAA*

A claim for whistleblower retaliation under the NDAA has four elements, which the employee must prove by a preponderance of the evidence: (1) a protected disclosure (see Protected Disclosures Under the NDAA); (2) the employer knew or was reasonably on notice that the whistleblower engaged in protected activity (see Knowledge of the Protected Disclosure); (3) an adverse action (see Personnel Actions Under the NDAA); (4) a causal connection between the disclosures and the personnel action (see Causation); and (5) the standards and burdens of proof for an NDAA whistleblower retaliation claim are the same as for individual right of action appeals under the WPA (10 U.S.C. § 2409(c)(6); 41 U.S.C. § 4712(c)(6)).

*Reasonable Belief*

An employee need not prove that the matter disclosed actually was unlawful, gross mismanagement, a gross waste of funds, an abuse of power, or a danger to public health or safety. The employee must instead show that a person standing in the employee's shoes could reasonably believe, given the information available to the employee, that the disclosed information evidences one of the statutory types of wrongdoing. (See *ManTech Int'l Corp.*, 207 F. Supp. 3d at 621.) The reasonableness inquiry focuses on the perception of the employee, not that of the audience.

*Notice*

An employee's disclosure must put the employer on "reasonable notice" that the employee is making a protected disclosure. A disclosure provides an employer with reasonable

notice where it indicates that litigation is a distinct or reasonable possibility. An employer's internal investigation into conduct disclosed by an employee is evidence that the employer has received reasonable notice. (*ManTech Int'l Corp.*, 207 F. Supp. 3d at 621-23.)

*Personnel Actions Under the NDAA*

The NDAA broadly prohibits federal contractors from taking the following actions against an employee in retaliation for making a protected disclosure: (1) Discharging the employee; (2) Demoting the employee; (3) Otherwise discriminating against the employee. (10 U.S.C. § 2409(a)(1); 41 U.S.C. § 4712(a)(1). The catch-all category of "otherwise discriminating" against a whistleblower likely includes the same standard used in *Burlington Northern & Santa Fe Railway Company v. White*, that is, actions that might dissuade a reasonable worker from engaging in protected conduct (see 548 U.S. 53, 67-68 (2006).

*Knowledge of the Protected Disclosure*

An employee must prove that the decisionmaker accused of retaliation knew about the individual's protected disclosures. An employee can show either actual or constructive knowledge. An employee may show constructive knowledge by demonstrating that an individual with actual knowledge of the disclosure influenced the official taking the retaliatory action (*Dorney v. Dep't of Army*, 117 M.S.P.R. 480, 485 (2012)).

*Causation*

The causation standard in NDAA whistleblower cases is favorable to employees. The NDAA applies the standard set out in the WPA, under which a complainant need only demonstrate that the protected disclosure was a contributing factor in the personnel action. An employee may show causation using either: (1) The knowledge-timing test; (2) Circumstantial evidence of causation. (5 U.S.C. § 1221(e)(1).) A whistleblower need not demonstrate the

existence of a retaliatory motive to establish that protected conduct was a contributing factor in a personnel action (*Marano v. Dep't of Justice*, 2 F.3d 1137, 1141 (Fed. Cir. 1993)).

*Knowledge-Timing Test*

An employee can show causation using the knowledge-timing test by proving both: (1) The official taking the personnel action knew of the disclosure; and (2) The personnel action occurred within a period of time when a reasonable person may conclude that the disclosure was a contributing factor in the personnel action. (5 U.S.C. § 1221(e)(1).)

*Circumstantial Evidence of Causation*

If the employee fails to demonstrate both knowledge and timing, the employee may offer circumstantial evidence about any other factor potentially affected the outcome of the personnel action (see *Jones v. Dep't of Interior*, 74 M.S.P.R. 666, 678 (1997) (failing to find contributing factor); see also *Marano v. Dep't of Justice*, 2 F.3d 1137, 1143 (Fed. Cir. 1993)). For example, the circumstances surrounding an employer's placing a whistleblower-employee on paid administrative leave may demonstrate the employer's retaliatory animus (see *U.S. ex rel. Cody v. ManTech Int'l Corp.*, 2017 WL 2215672, at *4 (E.D. Va. May 19, 2017)).

*Federal Litigation*

A whistleblower may file a lawsuit in federal district court against the federal contractor if the whistleblower either: (1) is denied relief after complaining to the OIG; and (2) has not obtained relief within 210 days of filing the complaint with the OIG. (10 U.S.C. § 2409(c)(2); 41 U.S.C. § 4712(c)(2)).

*Remedies*

Remedies for a successful NDAA whistleblower retaliation claim include: (1) reinstatement; (2) back pay (lost wages); (3) uncapped compensatory damages; and (4) attorneys' fees and costs. (10 U.S.C. § 2409(c)(1); 41 U.S.C. § 4712(c)(1).)

*Conclusion*

Plaintiff states, emphatically, that he is an employee of C.L.I.C.K. Services, NFP and defendant Hattie Wash refused to provide plaintiff with a 1099 for employment status. (Dkt. #49-20) Plaintiff states this is a public interest case due to plaintiff having engaged the Honorable Congressman Danny K. Davis and requesting an audience with the Ways and Means Committee to talk about the Second Chance Act and the Whistleblower Act of 2013, amended in 2016 et seq. and violation thereof.

Therefore, plaintiff is exercising his 1st Amendment rights and has posted and will post on his social media pages, such as, www.twitter.com/clickforjustice everything he writes about this case, except those under the FRCP for the processes Discovery. These are the latest posts: @JoeBiden @VP The Department of Justice (DOJ) purposely and intentionally violated the Whistleblower Act. DOJ employees conspired with defendants to retaliate against Dr. Nance for filing 3 Whistleblower complaints.

https://twitter.com/clickforjustice/status/1347709412358684672?s=21. Plaintiff's YouTube Channel on this subject has received 45,834 impressions in February 2021 and 25 media views https://youtu.be/YPE2AZDWo-Q.

WHEREFORE, plaintiff respectfully request this Honorable court reject defendant's motion to dismiss and order defendants EMAGES, Inc. and Thomas Bradley to answer plaintiff's original complaint; and/or allow plaintiff to amend and/or supplement his complaint;

and amend his complaint pursuant to Rule 15(a)(1) to add a claim for negligence and The False

Claims Act, 31 U.S.C. §§ 3729-31, 31 U.S.C. § 3730, and/or alternatively proceed with initial

full discovery processes in this matter dismissing defendants motion to dismiss with prejudice.


Respectfully submitted,


/s/Fred L Nance Jr.
Pro Se Plaintiff
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org