**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Fred L. Nance Jr. | ) | |
| | ) | Case No. 20 CV 06316 |
| Plaintiff, | ) | |
| | ) | Honorable Judge: Jorge L. Alonso |
| vs. | ) | |
| | ) | Honorable Magistrate Judge: |
| Department of Justice, Bureau of Justice | ) | |
| Assistance, Office of Justice Programs, | ) | Beth W. Jantz |
| EMAGES, Inc., Hattie Wash, Thomas | ) | |
| Bradley, et al. | ) | Courtroom: 1903 |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DOJ, BJA,**
**OJP MOTION TO DISMISS OR ALTERNATIVELY SUMMARY JUDGMENT**

All law derives from policy. Future policies are created from deficient law

interpretations. America's integrity depends on appropriate law interpretation. The U.S.

Department of Justice, Office of Justice Programs, Office for Civil Rights 20-page document (Pl.

Obj. Def. Facts ¶6,7,15) is the policy governing Second Chance Act Grant #2018-CY-BX-0025.

There is a mountain of evidentiary material within plaintiff's original complaint and this

document needing discovery to achieve any measurement of justice in this matter as it pertains to

defendant's motion to dismiss or alternatively summary judgment. Interpretation of this policy

by Federal courts is primary and governs in furtherance of laws enacted from it.

In enacting civil service reform in the late 1970s, Congress prohibited retaliation against

whistleblowers in the federal government. Congress subsequently strengthened protections for

whistleblowers several times, including the Whistleblower Protection Act (WPA) and then most

recently by enacting the Whistleblower Protection Enhancement Act of 2012 (WPEA).

An abuse of authority is an "arbitrary or capricious exercise of power by a federal official

or employee" that harms the rights of any person or that personally benefits the official/employee

or their preferred associates. See *Elkassir v. Gen. Servs. Admin.*, 257 F. App'x 326, 329 (Fed. Cir. Dec. 10, 2007). An employee need not prove that the matter disclosed was unlawful or constituted gross mismanagement, a gross waste of funds, an abuse of power, or a danger to public health or safety. Rather, it is enough to show that a person standing in the employee's shoes would reasonably believe, given the information available to the employee, that the disclosure evidence one of these types of wrongdoing. See *Webb v. Dep't of the Interior*, 122 M.S.P.R. 248, 251 (2015).

To establish a prima facie case of retaliation for exercising whistleblowing, complaint, appeal, or grievance rights under Section 2302(b)(9), an employee must prove the following four elements by preponderant evidence: (1) the employee, or someone identified with the employee, engaged in a protected activity; (2) the agency took, failed to take, or threatened to take a personnel action; (3) the official responsible for the personnel action knew about the employee's protected activity; and (4) a causal connection existed between the protected activity and the personnel action.

The next step in establishing a prima facie case of whistleblower retaliation under the WPA is showing that the employee suffered a personnel action. Plaintiff was terminated in violation of the Whistleblower Act of 2013, amended 2016 et seq. The WPA covers a broad range of personnel actions (5 U.S.C. § 2302(a)(2)(A)), including: an appointment; a promotion; an action under Chapter 75 of Title 5 of the U.S. Code or other disciplinary or corrective action; a detail, transfer, or reassignment; a reinstatement; a restoration; a reemployment; a performance evaluation under Chapter 43 of Title 5 or under Title 38 of the U.S. Code; a decision concerning pay, benefits, or awards; a decision concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or

other personnel action; a decision to order psychiatric testing or examination; the implementation

or enforcement of any nondisclosure policy, form, or agreement; and any other significant

change in duties, responsibilities, or working conditions.

Are Retaliatory Investigations Prohibited? Yes, where "an investigation is so closely

related to the personnel action" that the investigation "could have been a pretext for gathering

evidence to retaliate," then the agency must show by clear and convincing evidence "that the

evidence would have been gathered absent the protected disclosure." If the agency cannot make

this clear and convincing showing, "then the whistleblower will prevail on his affirmative

defense" of whistleblower retaliation. *Russell v. Dep't of Justice*, 76 M.S.P.R. 317, 324 (1997).

(Ex.8)

Under the WPA, the whistleblower must prove that the agency officials accused of

retaliation knew about the individual's protected disclosures. An employee can show either

actual or constructive knowledge. Actual Knowledge - An employee may prove actual

knowledge using direct or circumstantial evidence. See *Bonggat v. Dep't of the Navy*, 56

M.S.P.R. 402, 407 (1993). An employee can establish constructive knowledge where an official

with actual knowledge influenced the deciding official. See *McClellan v. Dep't of Def.*, 53

M.S.P.R. 139 (1994). (Ex.5,6,11,12,13,16,21,24,25,27,28,29,32,34,35,36,40,41,43)

An employee must show a causal connection between the protected activity and the

retaliatory personnel action. The MSPB interprets causation broadly and considers any factors

that tend to affect the outcome of the personnel action. An employee may show causation using

either: the knowledge/timing test; or circumstantial evidence of causation. An employee can

show causation using the knowledge/timing test by proving both that: the official who took the

personnel action knew of the disclosure; and the personnel action occurred within a period of

time where a reasonable person may conclude that the disclosure was a contributing factor in the personnel action.

If the personnel action is imposed within about 1 to 1.5 years of when the employee made the protected disclosure, the "knowledge-timing" test may be satisfied. See *Inman v. Dep't of Veterans Affairs*, 112 M.S.P.R. 280, 283-4 (2009) (reassignment 15 months after disclosure) Once the employee demonstrates the official's knowledge and the timing of the personnel action, the employee has established a prima facie case of retaliation. If the employee fails to demonstrate both knowledge and timing, then the MSPB considers available circumstantial evidence to determine whether any other factor potentially affected the outcome of the personnel action. See *Jones*, 74 M.S.P.R. at 678; see also *Marano v. Dep't of Justice*, 2 F.3d 1137, 1143 (Fed. Cir. 1993).

A prevailing whistleblower can recover: lost wages, attorney's fees, equitable relief (for example, reinstatement, rescinding a suspension, or modifying a performance evaluation), and uncapped compensatory damages (emotional-distress damages). In addition, a whistleblower can recover fees, costs, or damages reasonably incurred due to a retaliatory investigation. Retaliatory investigations can take many forms, such as unwarranted referrals for criminal or civil investigations or extraordinary reviews of time and attendance records.

In the United States Supreme Court case *DHS vs. MacLean* (2015) states, "Federal law generally provides whistleblower protections to an employee who discloses information revealing "any violation of any law, rule, or regulation," or "a substantial and specific danger to public health or safety." 5 U. S. C. §2302(b)(8)(A)…Congress passed the whistleblower statute precisely because it did not trust agencies to regulate whistleblowers within their ranks.

Plaintiff has requested a jury trial. 31 U.S.C. § 3730(h) Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop one or more violations of this subchapter.

Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make the fact to be proved more or less likely than if the evidence were not introduced. Rule 401 provides: Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Defendants DOJ violated L.R. 56.1(a)(2) statement of facts…should not contain legal argument and L.R. 56.1(d)(1) "…statement of facts…must consist of concise numbered paragraphs setting forth a single statement of fact. In defendant's statement of facts they have used legal argument and have numerous sentences in a paragraph, such as, ¶s 5,13,14,15. These paragraphs should be stricken pursuant to *Nance v. NBCUniversal Media, LLC*, No. 16-11635, 2018 WL 1762440, pp. 5-7 (N.D. Ill. July 29, 2019).

Summary judgment should be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issues as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988). Plaintiff raises doubt with his exhibits matching his Whistleblower complaints allegations. (Ex.33)

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. 4 Indus Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Plaintiff has satisfied this burden. (Ex.33) Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. Evidence "based on rumor or conjecture" cannot "ward off summary judgment." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989). This Court must then determine whether there is a need for trial— whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 477 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995). Finally, where a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of

material fact requiring trial. *Sarsha v. Sears, Roebuck & Co*., 3 F.3d 1035, 1041 (7th Cir. 1993). The Seventh Circuit previously held that an action leading to a loss of "career prospects" can be an adverse employment action. *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009). (Ex.33)

DOJ attorney's set of "facts" are smoking mirrors attempting to dissuade this court from looking at the "true" facts in a chronical order. Plaintiff is an employee of C.L.I.C.K. Services, NFP. C.L.I.C.K. Services, NFP partnered and collaborated with EMAGES, Inc. in applying for Grant #2018-CY-BX-0025. C.L.I.C.K. Services, NFP employee, plaintiff Fred L. Nance Jr., duties and responsibilities in the proposal was to be the Program Director, which manages all aspects of Grant #2018-CY-BX-0025. EMAGES, Inc. employee, Hattie Wash, duties and responsibilities was to manage all fiduciary matters. Pursuant to the "revised" budget (Pl. Add'l Facts ¶12,14,15,26) of Grant #2018-CY-BX-0025, defendant Hattie Wash "percentage of time" on grant activities and the fiduciary was 13%. Plaintiff's "percentage of time" on all grant management and activities was 100%. (Pl. Add'l Facts ¶12,14,15,26)

Plaintiff applied for Grant #2018-CY-BX-0025. (Pl. Add'l Facts ¶12,16) DOJ decided to send the Grant Award letter naming EMAGES, Inc. as the recipient. (Pl. Obj. Def. Facts ¶1,3,4) C.L.I.C.K. Services, NFP should have been awarded Grant #2018-CY-BX-0025 when defendant Hattie Wash returned it. C.L.I.C.K. Services, NFP is subgrantee in every sense for Grant #2018-CY-BX-0025. (Pl. Add'l Facts, ¶9,10,22) C.L.I.C.K. Services, Inc. subaward budget allocation is $113,200.00 (Pl. Add'l Facts ¶9,12,15,26), which C.L.I.C.K. Services, NFP never received.

Plaintiff does not claim defendants DOJ employees, Michael Dever, Andre Bethea, and Tracey Willis; and defendants EMAGES, Inc., Hattie Wash, or Thomas Bradley terminated his employment as related to an employee/employer relationship. Plaintiff claims all defendants

violated the Whistleblower Act of 2013, amended 2016 et seq. causing the termination of plaintiff's employment, specifically, defendants EMAGES and Hattie Wash initiating the violation of the Whistleblower Act with their letter with false statements terminating the grant and DOJ employees Michael Dever, Andre Bethea, and Tracey Willis not investigating the claims in defendants EMAGES, Inc. and Hattie Wash's letter terminating Grant #2018-CY-BX-0025 and actively conspiring, colluding, or working collaboratively with EMAGES in violating the Whistleblower Act by allowing defendant Hattie's letter to stand as true statements for terminating a grant violating the Whistleblower Act, which terminated plaintiff's employment (Pl. Obj. Def. Facts ¶6,7,15; Pl. Add'l Facts ¶19) evidenced via the content of plaintiff's 3 Whistleblower complaints submitted on the OIG Hotline and via U.S. mail. (Pl. Obj. Def. Facts ¶11,12; Pl. Add'l Facts ¶18,31,32,34,35.36; Pl. Obj. Def. Facts ¶6,7,15, Pl. Add'l Facts ¶19) and emails to DOJ employees. Nevertheless, plaintiff provides case law to negate the false DOJ alleged claim of an employee/employer relationship leading to plaintiff's termination. Plaintiff was terminated because all defendants violated the Whistleblower Act of 2013, amended 2016 et seq.

**Channels for Whistleblowing**

Disclosures are protected only if made to: (1) a member of Congress or a congressional committee; (2) an Inspector General; (3) the Government Accountability Office (GAO); (4) a federal employee responsible for contract or grant oversight or management at the relevant agency; (5) an authorized official of the Department of Justice (DOJ) or other law enforcement agency; (6) a court or grand jury; and (7) a management official or other employee of the contractor or subcontractor who has the responsibility to investigate, discover, or address misconduct 10 U.S.C. § 2409(a)(2); 41 U.S.C. § 4712(a)(2).)

Plaintiff informed defendant Thomas Bradley, CPA for the grant, regarding the misappropriation of funds and fraud. Defendant Bradly did nothing to stop the continued behavior of defendants EMAGES, Inc. and Hattie Wash. Plaintiff discussed with the Honorable Congressman Danny K. Davis grant improprieties in December of 2019 (Ex.15), and before filing his 1st Whistleblower complaint on April 17, 2020. Plaintiff has apprised Congressman Davis on all 3 Whistleblower complaints requesting an audience to discuss the Second Chance Act and Whistleblower Act of 2013, amended 2016 et seq. before the Ways and Means Committee. Plaintiff has been on Congressman Davis' Second Chance Act Advisory Committee since 2007. Plaintiff provided language during the construction of the Second Chance Act Bill of 2008, which President George Bush signed into law on April 10, 2008. Plaintiff has been a peer reviewer for the Second Chance Act since 2009. Plaintiff believes he knows how the Second Chance Act is applied, how it should work, and the policies governing it.

The WPA protects disclosures to Congress, and the Lloyd-La Follette Act prohibits agencies from barring disclosures to Congress: "The right of employees, individually or collectively, to petition Congress or a Member of Congress, or to furnish information to either House of Congress, or to a committee or Member thereof, may not be interfered with or denied." 5 U.S.C. § 7211.

**Administrative Complaints**

An NDAA reprisal claim must be filed initially with the Office of Inspector General (OIG) of the agency that awarded the contract or grant about which the employee disclosed wrongdoing (10 U.S.C. § 2409(b)(1); 41 U.S.C. § 4712(b)(1)). Plaintiff filed all 3 Whistleblower complaints with the OIG. The OIG decided to rule only on the August 29, 2020 complaint

(Ex.8), suggesting plaintiff pursue his issues in federal court. (Pl. Obj. Def. Facts ¶11,12; Pl. Add'l Facts ¶18,31,32,34,35,36)

§ 4712(b)-(c). 28 U.S.C. § 2675(a) "…The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." Plaintiff exhausted his administrative remedies pursuant to 28 U.S.C. § 2675(a) because OIG Assistant Attorney General stopped the processes by not forwarding his decision to his department head, but rather made his decision final for plaintiff's 3 Whistleblower complaints. (Ex.8)

**Cite to Specific Paragraphs to Defendants Statement of Fact**

1. In 2018, co-defendant Establishing Managing and Generating Effective Services Inc. ("EMAGES, Inc.") received a grant award from DOJ's Office of Justice Programs and the Bureau of Justice Assistance for a prison related program under the "Second Chance Act" ("SCA"). Complaint at 2; Exhibit A, EMAGES award information.

**Response:** Plaintiff disputes in part the asserted fact. EMAGES was named by DOJ the awardee of Grant #2018-CY-BX-0025 because EMAGES was the lead agency. (Ex.2,3)

In the abstract and proposal, it is clear plaintiff's not-for-profit organization, C.L.I.C.K. Services, NFP partnered and collaborated with defendants EMAGES, Inc. and Hattie Wash. The proposal, specifically the area of Competencies and Capabilities, outlines the specific management duties of EMAGES, Inc. and C.L.I.C.K. Services, NFP. There are many issues in dispute. Pursuant to Rule 56.1, Summary Judgment exist to determine if there are material facts in dispute. If material facts are in dispute, defendant's Summary Judgment must fail. Material Facts are in dispute. Plaintiff request discovery in this matter.

2. EMAGES was the sole applicant to the grant program and, accordingly, had primary

responsibility for funding and managing the program. Exhibit B, EMAGES Award.

**Response:** Plaintiff disputes in part the asserted fact. EMAGES was not the sole applicant.
(Ex.3,24,38,39,40,41) EMAGES shared responsibility with C.L.I.C.K. Services, NFP. EMAGES
managed the fiduciary part of the grant 10% or 13% of the time. C.L.I.C.K., by and through,
plaintiff had the primary responsibility for managing the program working 100% of the time.
(Ex.3,24,38,39,40,41)

As stated above, EMAGES was not the sole applicant of Grant #2018-CY-BX-0025.
EMAGES, Inc. and C.L.I.C.K. Services, NFP were co-applicants of this grant. Yes, DOJ gave
the grant to EMAGES, Inc. but plaintiff and defendant Hattie Wash agreed, upon their initial
meetings before grant submission, we were co-applicants and partners and would proceed
throughout the grant as partners on this grant. There are many issues in dispute. Pursuant to Rule
56.1, Summary Judgment exist to determine if there are material facts in dispute. If material facts
are in dispute, defendant's Summary Judgment must fail. Plaintiff request discovery in this
matter.

3.   As part of the SCA grant program, DOJ made 26 grant awards in fiscal year 2018
totaling more than $20.5 million, one of which was a $500,000 award to EMAGES.  Exhibit C,
BJA FY 18 Second Chance Act Comprehensive Community-Based Adult Reentry Program
award information.

**Response:** Plaintiff disputes in part this assertion. Plaintiff is not aware of who received awards
for this grant. $500,000.00 was awarded for Grant #2018-CY-BX-0025. (Ex.2)

Plaintiff does not know if this statement is true. There are many issues in dispute.
Pursuant to Rule 56.1, Summary Judgment exist to determine if there are material facts in

dispute. If material facts are in dispute, defendant's Summary Judgment must fail. Plaintiff request discovery in this matter.

4.   The EMAGES award was scheduled to start on October 1, 2018, and conclude on September 30, 2021.  Complaint at 2; Exhibit D, BJA Second Chance Act solicitation at 13.

**Response:** Plaintiff disputes in part the asserted fact. Grant #2018-CY-BX-0025 was scheduled to start on October 1, 2018 and end on September 30, 2021. (Ex.2) Plaintiff's complaint contest DOJ stating plaintiff was not a legal partner and/or collaborator for Grant #2018-CY-BX-0028. (Ex.1)

Grant #2018-CY-BX-0025 was scheduled to operate between October 1, 2018 through September 30, 2021. Defendant Hattie Wash submitted false statements in a letter to DOJ and DOJ accepted the letter's content and terminated the grant; terminating plaintiff's employment, which violated the Whistleblower Act of 2013, amended 2016 et seq. There are many issues in dispute. Pursuant to Rule 56.1, Summary Judgment exist to determine if there are material facts in dispute. If material facts are in dispute, defendant's Summary Judgment must fail. Plaintiff request discovery in this matter.

5.   Through the grant solicitation, DOJ notified the applicants of the eligibility requirement that only one entity may be the applicant.  Id. at 2. The applicant must be the entity that would have primary responsibility for carrying out the award, including administering the funding and managing the entire program. Id.

**Response:** Defendants provide multiple statements, which violate Local Rule 56.1(a)(2). Plaintiff disputes in part this assertion. Plaintiff admits defendant EMAGES had the fiscal responsibility of the grant. (Ex.3) Defendant Hattie Wash's primary duty was fiduciary, administering the funding working 10% or 13% of the time. (Ex.38,40) Defendant Hattie Wash

primary responsibilities was not managing the entire program. C.L.I.C.K. Services, NFP's

employee Dr. Fred L. Nance Jr. was managing the entire program working 100% of the time.

(Ex.3,24,38,39,40,41)

Defendants provide multiple statements, which violate Local Rule 56.1(a)(2). Plaintiff

disputes in part this assertion. Plaintiff admits defendant EMAGES had the fiscal responsibility

of the grant. (Pl. Obj. Def. Facts ¶1,2,5; Pl. Add'l Facts ¶11,12,13,14,22) Plaintiff disputes Grant

#2018-CY-BX-0025 specifying only one entity may be the applicant. Grant #2018-CY-BX-0025

solicitation does not state on page 2 the applicant must be the entity that would have primary

responsibility for carrying out the award, including managing the entire program. BJA FY 21

Second Chance Act Community-Based Reentry Program (Pl. Obj. Def. Facts ¶5) reports, for the

first time, "BJA will consider under which two or more would carry out the federal award;

however, only one entity may be the applicant…." p.2, ¶4

6. In accordance with the eligibility requirement, DOJ only considered one applicant entity,

EMAGES, for the award in question, not Nance or his company, and therefore the grant

was awarded to EMAGES. Exhibit A, EMAGES award information; Exhibit D, BJA Second

Chance Act solicitation at 2.

**Response:** Plaintiff disputes in part this assertion. Plaintiff admits the award letter may have

language construct of an eligibility requirement. (Ex.32) Plaintiff disputes the assertion DOJ

considered EMAGES due to the eligibility requirement with exhibit D, BJA Second Chance Act

solicitation at 2 because plaintiff was the subawardee/partner on Grant #2018-CY-BX-0025. If

plaintiff is not the subawardee mentioned in documents submitted to DOJ, then who is the

subawardee? (Ex.3,16,24,31,40)

Plaintiff disputes in part this assertion. Plaintiff admits the award letter may have language construct of an eligibility requirement. Plaintiff disputes the assertion DOJ considered EMAGES due to the eligibility requirement with exhibit D, BJA Second Chance Act solicitation at 2. Page 2 of the solicitation for Grant #2018-CY-BX-0025 does not make such a statement.

7.    Under the relevant requirements that applied to EMAGES' grant award, recipients are permitted to terminate awards by providing written notice to the awarding agency. See 2 C.F.R. §§ 200.339-343.

**Response:** Plaintiff disputes this assertion. EMAGES submitted false information to DOJ for terminating the grant was giving false information and retaliatory in nature. (Ex.5,6,13,30,35,36) Plaintiff does not know if EMAGES statement here is fully true without full discovery pursuant to Rule 26 et seq. and (Ex.32).

Plaintiff disputes this assertion. DOJ is just throwing stuff up against the wall to see what is going to stick.

Title 2 C.F.R. § 200.339: Remedies for noncompliance

If a non-Federal entity fails to comply with the U.S. Constitution, Federal statutes, regulations or the terms and conditions of a Federal award, the Federal awarding agency or pass-through entity may impose additional conditions, as described in § 200.208. If the Federal awarding agency or pass-through entity determines that noncompliance cannot be remedied by imposing additional conditions, the Federal awarding agency or pass-through entity may take one or more of the following actions, as appropriate in the circumstances: (a) Temporarily withhold cash payments pending correction of the deficiency by the non-Federal entity or more severe enforcement action by the Federal awarding agency or pass-through entity; (b) Disallow (that is, deny both use of funds and any applicable matching credit for) all or part of the cost of

the activity or action not in compliance; (c) Wholly or partly suspend or terminate the Federal

award; (d) Initiate suspension or debarment proceedings as authorized under 2 CFR part 180 and

Federal awarding agency regulations (or in the case of a pass-through entity, recommend such a

proceeding be initiated by a Federal awarding agency); (e) Withhold further Federal awards for

the project or program; (f) Take other remedies that may be legally available.

200.339: Termination

(a) The Federal award may be terminated in whole or in part as follows: (1) By the

Federal awarding agency or pass-through entity, if a non-Federal entity fails to comply with the

terms and conditions of a Federal award; **(2) By the Federal awarding agency or pass-through**

**entity for cause;** (3) By the Federal awarding agency or pass-through entity with the consent of

the non-Federal entity, in which case the two parties must agree upon the termination conditions,

including the effective date and, in the case of partial termination, the portion to be terminated;

or (4) By the non-Federal entity upon sending to the Federal awarding agency or pass-through

entity written notification setting forth the reasons for such termination, the effective date, and,

in the case of partial termination, the portion to be terminated. However, if the Federal awarding

agency or pass-through entity determines in the case of partial termination that the reduced or

modified portion of the Federal award or subaward will not accomplish the purposes for which

the Federal award was made, the Federal awarding agency or pass-through entity may terminate

the Federal award in its entirety.

(b) When a Federal awarding agency terminates a Federal award prior to the end of the

period of performance due to the non-Federal entity's material failure to comply with the Federal

award terms and conditions, the Federal awarding agency must report the termination to the

OMB-designated integrity and performance system accessible through SAM (currently FAPIIS).

(1) The information required under paragraph (b) of this section is not to be reported to designated integrity and performance system until the non-Federal entity either - (i) Has exhausted its opportunities to object or challenge the decision, see § 200.341 Opportunities to object, hearings and appeals; or (ii) Has not, within 30 calendar days after being notified of the termination, informed the Federal awarding agency that it intends to appeal the Federal awarding agency's decision to terminate. (2) If a Federal awarding agency, after entering information into the designated integrity and performance system about a termination, subsequently: (i) Learns that any of that information is erroneous, the Federal awarding agency must correct the information in the system within three business days; (ii) Obtains an update to that information that could be helpful to other Federal awarding agencies, the Federal awarding agency is strongly encouraged to amend the information in the system to incorporate the update in a timely way. (3) Federal awarding agencies shall not post any information that will be made publicly available in the non-public segment of designated integrity and performance system that is covered by a disclosure exemption under the Freedom of Information Act. If the non-Federal entity asserts within seven calendar days to the Federal awarding agency who posted the information, that some of the information made publicly available is covered by a disclosure exemption under the Freedom of Information Act, the Federal awarding agency who posted the information must remove the posting within seven calendar days of receiving the assertion. Prior to reposting the releasable information, the Federal agency must resolve the issue in accordance with the agency's Freedom of Information Act procedures. (c) When a Federal award is terminated or partially terminated, both the Federal awarding agency or pass-through entity and the non-Federal entity remain responsible for compliance with the requirements in §§ 200.343 Closeout and 200.344 Post-closeout adjustments and continuing responsibilities. [78 FR 78608, Dec. 26, 2013, as

amended at 80 FR 43309, July 22, 2015] DOJ employees received information from plaintiff pursuant (2)(i) and should have considered the content/language of defendants EMAGES, Inc. and Hattie Wash termination was false.

8.  In September 2020, Hattie Wash, the founder and CEO of EMAGES, informed DOJ that she was terminating the EMAGES award because of, among other things, the COVID-19 pandemic and COVID-related restrictions. Exhibit E, EMAGES Termination letter; Complaint at 19.

**Response:** Plaintiff disputes this assertion. EMAGES provided false information to DOJ regarding the termination of Grant #2018-CY-BX-0025. Defendants reference plaintiff's complaint at 19 BUT does not provide a paragraph number. The statement at 19 does not relate to defendants' assertion. Plaintiff never saw or was given the letter defendant Wash submitted to DOJ. The information and/or reasoning provided in EMAGES letter is false. (Ex.5,6,13,28,30,35,36) Plaintiff did not receive EMAGES termination letter until defendant's filed this motion.

Plaintiff disputes this assertion. Defendants reference plaintiff's complaint at 19. Plaintiff never saw or was given the letter defendant Wash submitted to DOJ. The information and/or reasoning provided in EMAGES termination letter is false.

9.  In the written notice provided to DOJ, Wash stated that COVID-19 and related restrictions created financial instability for EMAGES and "prevented EMAGES from fulfilling the performance measures of the Second Chance grant" and that although telehealth services permitted EMAGES to continue providing services to some individuals, the "shelter in place mandate for the State of Illinois has prevented us from collecting data inside Cook County Jail and the Illinois Department of Correction." Exhibit E, EMAGES Termination Letter.

**Response:** Plaintiff disputes this assertion. EMAGES lied in their letter to DOJ. (Ex.5,6,13,28,30,35,36) Plaintiff provided emails to DOJ employees stating EMAGES was still providing services via teleconferencing (Ex.5) and plaintiff provided an email from the Cook County jail and the Illinois Department of Corrections reporting continuation of services via teleconferencing. (Ex.6)

Plaintiff disputes this assertion. EMAGES lied in their letter to DOJ. Plaintiff provided emails to DOJ employees stating EMAGES was still providing services via teleconferencing and plaintiff provided an email from the Cook County jail and the Illinois Department of Corrections reporting continuation of services via teleconferencing. (Pl. Obj. Def. Facts ¶8,9; Pl. Add'l Facts ¶4,19,21,24,25,26,27)

10. In April 2020, Nance pursued a "whistleblower complaint" claiming "possible fraud or misappropriation of funds" concerning the EMAGES award, alleging that EMAGES misappropriated the grant award. Exhibit F, April 17, 2020, Letter.

**Response:** Plaintiff disputes, in part, this assertion. Plaintiff filed 3 Whistleblower complaints. (Ex.12)

DOJ attorney admits here he had knowledge of plaintiff's April 17, 2020 Whistleblower complaint. Yet, OIG M. Sean O'Neill made no mention of investigating plaintiff's 1st or 3rd Whistleblower complaints in his letter dated October 13, 2020 where he denied plaintiff's 2nd Whistleblower complaint.

11. Nance pursued his "whistleblower" complaints through the U.S. Office of Special Counsel, which denied his complaints, noting that it lacked jurisdiction over individuals who are not federal employees or applicants for federal employment. Exhibit G, OSC letter.

**Response:** Plaintiff disputes, in part, this assertion. The September 30, 2020 OSC letter, File No. MA-20-002834, states "The information provided reflects that you are not a federal employee, or an applicant for federal employment. Accordingly, because this office does not have jurisdiction to investigate the matter you describe, we are closing this file." (Ex.7) OSC did not deny plaintiff's complaint. OSC stated they did not have jurisdiction. Defendants are providing misinformation to this court.

Plaintiff disputes in part this assertion. The September 30, 2020 OSC letter, File No. MA-20-002834, states "The information provided reflects that you are not a federal employee, or an applicant for federal employment. Accordingly, because this office does not have jurisdiction to investigate the matter you describe, we are closing this file." OSC did not deny plaintiff's complaint. OSC spoke on jurisdiction. Defendants are providing misinformation to this court. The Office of Inspector General letter dated October 13, 2020 states "I am writing in response to the August 28, 2020 whistleblower reprisal complaint that you submitted to the Department of Justice Office of the Inspector General (OIG)… In light of our determination, we intend to decline to open a whistleblower reprisal investigation of your complaint. If you wish to provide any additional information relevant to the OIG's determination, please do so within 10 days of the date of this letter. If you decline to provide any additional information, you may wish to review §4712(c)(2), which describes your right to pursue a claim of retaliation in federal district court…." Plaintiff disagrees with the determination letter of the October 13, 2020.

12. Nance then pursued his "whistleblower complaint" with the Office of the Inspector General, where he repeated his allegation that EMAGES drew down grant funds for an ex-employee, and claimed that Wash retaliated against him for reporting the questioned drawdowns

by removing him as the point of contact for the grant award and that Wash reduced Nance's salary under the grant. Exhibit H, August 28, 2020, Letter; Complaint at 2, 17.

**Response:** Plaintiff disputes in part this assertion. The Office of Inspector General letter dated October 13, 2020 states "I am writing in response to the August 28, 2020 whistleblower reprisal complaint that you submitted to the Department of Justice Office of the Inspector General (OIG)… In light of our determination, we intend to decline to open a whistleblower reprisal investigation of your complaint. If you wish to provide any additional information relevant to the OIG's determination, please do so within 10 days of the date of this letter. If you decline to provide any additional information, you may wish to review §4712(c)(2), which describes your right to pursue a claim of retaliation in federal district court…." Plaintiff disagrees with the determination of the October 13, 2020 determination because the OIG did not investigate plaintiff's 3 Whistleblower complaints. (Ex.8,12) EMAGES clearly states here the OIG supposedly investigate the August 28, 2020 Whistleblower complaint only. Defendant DOJ attorney provides misinformation to this court and does not provide true and valid facts. Plaintiff did submit his August 29, 2020 complaint online (Ex.9) and mailed it to the Office of the OIG, along with his April 17, 2020 Whistleblower complaint (Ex.34) that the OIG did not reference in his letter of October 13, 2020. (Ex.8) Plaintiff never claimed defendants EMAGES and Hattie Wash reduced plaintiff's salary for Grant #2018-CY-BX-0025, which is the focus of this litigation. Plaintiff did reference defendant Wash taking $20,000.00 from plaintiff's salary in the 2010-2012 Second Chance Act grant, which is not in question for this present litigation.

Plaintiff disputes in part this assertion. Defendant DOJ attorney provides misinformation to this court and does not provide true and valid facts. Plaintiff did submit his August 29, 2020 complaint online and mailed it to the Office of the OIG, along with his April 17, 2020 and

September 13, 2020 Whistleblower complaints that the OIG did not reference in his letter dated

October 13, 2020. Plaintiff never claimed defendants EMAGES and Hattie Wash reduced

plaintiff's salary for Grant #2018-CY-BX-0025. Plaintiff did reference defendant Wash taking

$20,000.00 from plaintiff's salary in the 2010-2012 Second Chance Act grant, which is not in

question for this present litigation, but demonstrates the lack of integrity and honesty of

defendants EMAGES, Inc and Hattie Wash.

13. Nance alleges that EMAGES drew down $880 in grant award funds for an ex-

employee. Exhibit F, April 17, 2020, letter. This small amount represents less than 0.2% of the

entire $500,000 grant award.  He also alleges that EMAGES improperly drew down $2,800 each

month from March to July 2020 when Plaintiff only submitted a payroll of $2,600 for March;

$2,100 for April; $1,800 for May; $2,300 for June; and $2,100 for July. Complaint at 10. That

total alleged discrepancy is $3,100 (i.e., a $200 overcharge in March; $700 in April; $1,000 in

May; $500 in June; and $700 in July).  Complaint at 15.

**Response:** Plaintiff disputes, in part, this assertion. Defendants rely on "Complaint at 15".

Complaint at 15 reports $3,050.00 was overdrawn for reported consultant fees. (¶37)

Defendants provide multiple statements and legal arguments violating Local Rule

56.1(a)(2). Plaintiff disputes in part this assertion. The Whistleblower Act of 2013, amended in

2016 et seq. states "A whistleblower is an employee of a Federal contractor, subcontractor, or

grantee who discloses information that the individual reasonably believes is evidence of: gross

mismanagement of a Federal contract or grant; a gross waste of Federal funds; an abuse of

authority relating to a Federal contract or grant; a substantial and specific danger to public health

or safety; or a violation of law, rule, or regulation related to a Federal contract (including the

competition for or negotiation of a contract) or grant. To be protected under the NDAA, a

disclosure regarding a DOJ contract, subcontract, or grant must be made to one of the following: a Member of Congress, or a representative of a committee of Congress; the OIG; the Government Accountability Office (GAO); a Federal employee responsible for contract or grant oversight or management at DOJ; an otherwise authorized official at DOJ or other law enforcement agency; a court or grand jury; or a management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct.

14. The OIG rejected Nance's complaint stating "we do not believe that you have alleged that you suffered a reprisal in violation of 41 U.S.C. § 4712(a)." Exhibit I, OIG letter. OIG further found that Nance's complaint failed to allege that he made a protected disclosure (i.e., a communication that, among other things, reasonably evidenced gross mismanagement of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal contract (including the competition for or negotiation of a contract) or grant) and that "significant doubt surrounds whether your complaint alleges that you suffered a personnel action, as contemplated under § 4712(a)." Id.

**Response:** Defendants provide multiple statements and legal arguments violating Local Rule 56.1(a)(2). Plaintiff disputes this assertion. Defendants are not addressing the Whistleblower Act of 2013, amended 2016 (Ex.10,11), which is governed by the National Defense Authorization Act 2013, amended 2016 et seq.

Defendants provide multiple statements and legal arguments violating Local Rule 56.1(a)(2). Plaintiff disputes this assertion. Defendants are not addressing the Whistleblower Act

of 2013, amended 2016 et seq., which is governed by the National Defense Authorization Act and reported in the OIG Hotline website.

15. Nance is not an employee of a contractor, subcontractor, grantee, or subgrantee of DoD or NASA. Complaint, at 5- 6. Nance has also never been employed by the Department of Justice. Id.

**Response:** Defendants provide multiple statements violating Local Rule 56.1(a)(2). Plaintiff disputes in part this assertion. Plaintiff is a subawadee/subgrantee of Grant #2018-CY-BX-0025. (16,24,31,40) Plaintiff needs discovery pursuant to Rule 26 et seq. to determine employment duties with DOJ pursuant to subawardee/subgrantee. (Ex.32)

Defendants provide multiple statements violating Local Rule 56.1(a)(2). Plaintiff disputes in part this assertion. Plaintiff needs discovery pursuant to Rule 26 et seq. to determine his employment duties with DOJ.

16. A search DOJ's computerized database of administrative tort claims reveals that Nance has not filed an administrative tort claim with the department. Exhibit J, Declaration of Elijah Jenkins.

**Response:** Plaintiff disputes this assertion. Plaintiff filed his April 17, 2020, August 29, 2020, and September 13, 2020 complaints online on the OIG Hotline website (Ex.9), via info@ocs.gov (Ex.20, 21, 22), and via U.S. mail (Ex.34).

Plaintiff disputes this assertion. Plaintiff filed his April 17, 2020, August 29, 2020, and September 13, 2020 complaints online on the OIG Hotline website, via info@ocs.gov, (Pl. Obj. Def. Facts ¶16; Pl. Add'l Facts ¶1,31) and via U.S. mail. (Pl. Obj. Def. Facts ¶16,32,34) How did the OIG Assistant Inspector General, M. Sean O'Neill, receive plaintiff's August 28, 2020 Whistleblower complaint he describes in his letter dated October 13, 2020?

**Whistleblower Act**

The Whistleblower Protection Act 2013, amended 2016 et seq. protects an employee who discloses information revealing "any violation of any law, rule, or regulation," or "a substantial and specific danger to public health or safety." There is a narrow exception, however, for disclosures that are "specifically prohibited by law." Affirming a Federal Circuit decision in *MacLean v. Dep't of Homeland Sec*., 116 M.S.P.R. 562 (2011) the Supreme Court, No. 13–894. Argued November 4, 2014, Decided January 21, 2015, held that this exception encompasses statutes and not rules or regulations. Applying basic canons of statutory construction, the Court found that Congress made a deliberate choice to say "specifically prohibited by law" rather than "specifically prohibited by law, rule, or regulation," thereby excluding rules and regulations from the narrow exception to WPA protected conduct. The Court's decision as driven in part by the important public policy of preventing agencies from using regulations to override the protections afforded whistleblowers under the Whistleblower Protection Act. In addition, a broad interpretation of the word "law" could defeat the purpose of the whistleblower statute. If "law" included agency rules and regulations, then an agency could insulate itself from the scope of Section 2302(b)(8)(A) merely by promulgating a regulation that "specifically prohibited" whistleblowing. But Congress passed the whistleblower statute precisely because it did not trust agencies to regulate whistleblowers within their ranks. Thus, it is unlikely that Congress meant to include rules and regulations within the word "law."

**Defendants' Argument**

Defendant states it does not appear that Nance is suing the DOJ other than under the Federal Tort Claims Act. Plaintiff filed 3 Whistleblower complaints pursuant to the Whistleblower Act of 2013, amended 2016 against defendants EMAGES, Inc., Hattie Wash,

Thomas Bradley, Department of Justice, Bureau of Justice Assistance, Office of Justice

Programs Division Chief, Michael Dever, Senior Policy Advisor, Andre Bethea, and Tracey

Willis, Grant Manager by and through the Department of Justice (hereinafter, "DOJ"). Plaintiff is

suing the DOJ for their employees negligent and retaliatory behavior pursuant to the

Whistleblower Act of 2013, amended 2016 et seq. (Pl. Add'l Facts ¶8,23,28,35,37,38,39,40)

DOJ is attempting to limit the scope of plaintiff's complaint with their statement on p.4 of

their Motion to Dismiss or Alternatively Summary Judgment. Plaintiff is suing DOJ under the

Whistleblower Act et seq. If necessary, plaintiff may need to amend his complaint to meet other

jurisdictional information. Plaintiff needs to amend his complaint to include negligence. In

addition, material evidence must be reviewed comprehensively. (Ex.33)

**Defendant DOJ states "Nance Failed to Exhaust his Administrative Remedies under the**
**FTCA."**

Plaintiff presented his claim pursuant to the information given on the OIG Hotline

website, in accordance with BJA Division Chief Brenda Worthington (Pl. Add'l Facts ¶7), and

via U.S. mail to OIG Assistant Inspector General M. Sean O'Neill. (Ex.34) Plaintiff exhausted

his administrative remedies because OIG Assistant Inspector General declined plaintiff 2nd

Whistleblower complaint (Ex.8) without any examination of plaintiff's 1st (April 17, 2020) and

3rd Whistleblower complaint(s) (September 13, 2020) stopping the administrative processes.

OIG Assistant Inspector General, M. Sean O'Neill, states in his October 13, 2020 letter to

plaintiff "…you may wish to review § 4712(c)(2), which describes your right to pursue a claim

of retaliation in federal district court. § 4712(c)(2) states "If the head of an executive agency

issues an order denying relief under paragraph (1) or has not issued an order within 210 days

after the submission of a complaint under subsection (b), or in the case of an extension of time

under paragraph (b)(2)(B), not later than 30 days after the expiration of the extension of time, and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy. Such an action shall, at the request of either party to the action, be tried by the court with a jury. An action under this paragraph may not be brought more than two years after the date on which remedies are deemed to have been exhausted."

§ 4712(c)(3) states "An Inspector General determination and an agency head order denying relief under paragraph (2) shall be admissible in evidence in any de novo action at law or equity brought pursuant to this subsection." OIG Assistant Inspector General, M. Sean O'Neill never escalated plaintiff 3 Whistleblower complaints to their Agency Head. Mr. O'Neill stopped the process when he declined plaintiff's 2nd Whistleblower complaint. 28 U.S. Code § 2675 - Disposition by federal agency as prerequisite; evidence…Plaintiff restates 28 U.S.C. § 2675(a) "…The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." Plaintiff exhausted his administrative remedies pursuant to 28 U.S.C. § 2675(a) (Pl. Obj. Def. Facts ¶11,12; Pl. Add'l Facts ¶18,31,32,34,35,36).

Let us further review the correspondence from Assistant Inspector General M. Sean O'Neill. (Pl. Obj. Def. Facts ¶11,12; Pl. Add'l Facts ¶18,31,32,34,35,36) Mr. O'Neill does not put a return address on his correspondence, so plaintiff does not know where the correspondence

is coming from without an address. If plaintiff's 3 Whistleblower complaints were sent to the wrong address, he would not know the correct address to send it too. Mr. O'Neill intentionally hides the information for plaintiff to access further review.

Mr. O'Neill states "I am writing in response to the August 28, 2020 whistleblower reprisal complaint that you submitted to the Department of Justice Office of the Inspector General." Plaintiff sent a 4-page cover letter with his 1st Whistleblower complaint dated April 17, 2020 and 2nd Whistleblower complaint dated August 28, 2020 via the United States Postal Service (USPS). (Pl. Obj. Def. Facts ¶16,32,34)

Mr. O'Neill either received plaintiff's Whistleblower via USPS or the OIG Hotline. A careful read of defendant's motion to dismiss or alternatively summary judgment will assure some of his language mirrors the language in plaintiff's 4-page cover letter, which suggests OIG Mr. O'Neill received plaintiff's cover letter and his April 17, 2020 and August 28, 2020 Whistleblower complaints. Mr. O'Neill chose to report only on August 28, 2020 Whistleblower complaint. This is discoverable material fact in dispute.

Mr. O'Neill's correspondence is dated October 13, 2020. Mr. O'Neill would have received all 3 Whistleblower complaints. Mr. O'Neill does not conduct an appropriate investigation into plaintiff's 3 Whistleblower complaints. If Mr. O'Neill conducted an appropriate and complete investigation, he would have investigated all 3 Whistleblower complaints of plaintiff. Plaintiff's 3rd Whistleblower complaint was filed on September 13, 2020.

Plaintiff sent his 3rd Whistleblower complaint via the OIG Hotline and via email to DOJ employees Michael Dever, OJP Division Chief; Andre Bethea, Senior Policy Advisor; and Tracey Willis, Grant Manager. Mr. O'Neill does not mention in his letter dated October 13, 2020 anything about plaintiff's 1st and 3rd Whistleblower complaint. Yet, Mr. O'Neill reports "…We

do not believe that you have alleged that you suffered a reprisal in violation of § 4712(a)…." Plaintiff's 1st, 2nd, and 3rd Whistleblower complaints contain all the elements for a Whistleblower complaint and U.S. Code § 4712. (Ex.12,34)

Retaliation is just one element of plaintiff's Whistleblower complaints. (Pl. Add'l Facts ¶8,23,28,35,37,38,39,40) Mr. O'Neill states, speaking on my 2nd Whistleblower complaint only, "First, your complaint fails to allege that you made a protected disclosure, i.e., a communication that, among other things, reasonably evidenced gross management of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a federal contract or grant…Second, significant doubt surrounds whether your complaint alleges that you suffered a personnel action, as contemplated under § 4712(a). In light of our determination, we intend to decline to open a whistleblower reprisal investigation of your complaint…If you decline to provide any additional information, you may wish to review § 4712(c)(2), which describes your right to pursue a claim of retaliation in federal court."

Mr. O'Neill cites as a defense reporting plaintiff failed to do the following "A claim has been presented to a federal agency once the plaintiff submits 'an executed Standard Form 95 **or** other written notification of an incident, accompanied by a claim for money damages in a sum certain.'" *Chronis v. United States*, 932 F.3d 544, 546–47 (7th Cir. 2019), citing 28 C.F.R. § 14.2(a). There are four required elements of an FTCA claim: "(1) notification of the incident; (2) demand for a sum certain; (3) title or capacity of the person signing; and (4) evidence of the person's authority to represent the claimant." *Id*. Plaintiff presented written notification, 3 Whistleblower complaints to DOJ officials. Plaintiff a demand for a sum certain in documents when he filed his original complaint with the federal court.  Plaintiff money damages is loss of

employment. Plaintiff presented his title in his Whistleblower complaints. Plaintiff has the authority to represent himself. There is nothing here. DOJ has no clothes on.

Mr. O'Neill infers an OIG final decision in his correspondence dated October 13, 2020. (Ex.8) Mr. O'Neill violated § 4712(c)(3) and 28 U.S.C. § 2675(a), which are policies of the Whistleblower Act of 2013, amended 2016 et seq. when he closed plaintiff's Whistleblower complaint after only supposedly reviewing 1 of 3 Whistleblower complaints filed in this matter.

Mr. O'Neill was supposed to forward his decision and plaintiff's 3 Whistleblower complaints to his Agency Head. Mr. O'Neill did not forward plaintiff's 3 Whistleblower complaints to his Agency Head. Plaintiff's email and U.S. mail exhibits demonstrate claims to DOJ employees. Plaintiff states "again" pursuant to § 4712(a) "…The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."

DOJ states "Even if Nance had exhausted his administrative remedies, which he did not, an FTCA claim can be brought only against the United States, not the DOJ. E.g., *Quinlan by Cecola v. U.S. Postal Serv.*, No. 89 C 5748, 1989 WL 88255, at *1 (N.D. Ill. July 31, 1989) ("Section 1346(b) calls for the action to be brought against the United States itself and not against the federal agency, and that is confirmed by Section 2679(a)."). If this is true, plaintiff needs to amend his original complaint to include the United States. It does not promulgate dismissal of plaintiff's complaint or summary judgment.

**Defendant DOJ states "Claims under the National Defense Authorization Act and 41 U.S.C. § 4712"**

Defendants cite *Delebreau v. Danforth*, 743 F. App'x 43, 44 (7th Cir. 2018), which after a careful read has nothing to do with DOJ couching for purposes of claiming DOJ is not my

employer. This is not an employee/employer case outside of the Whistleblower Act of 2013, amended 2016 et seq. If this court takes a careful read of this cited case, plaintiff believes it will conclude same. Plaintiff cites *Delebreau v. Danforth*, 743 F. App'x 43, 44 (7th Cir. 2018) to suggest DOJ unlawfully discharged plaintiff when they allowed defendants EMAGES, Inc. and Hattie Wash to terminate Grant #2018-CY-BX-0025 by giving the grant back knowing it would affect plaintiff's employment, and thereby, activate a retaliation claim.

In *Delebreau v. Danforth*, 743 F. App'x 43, 44 (7th Cir. 2018) the court states, "The court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The existence of federal question jurisdiction. . . must, under the long-standing precedent of the Supreme Court of the United States, be determined from the face of the complaint." *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1316 (7th Cir. 1997) (citing *Bell v. Hood*, 327 U.S. 678, 680-82 (1946)).

Although it is also "well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction," an action may nonetheless "be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id*. at 1316-17 (internal quotation mark omitted) (quoting *Bell*, 327 U.S. at 682-83). "A claim is insubstantial only if `its unsoundness so clearly results from the previous decisions of the Supreme Court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.'" *Sabrina Roppo v. Travelers Commercial Ins. Co*., 869 F.3d 568, 587 (7th Cir. 2017) (quoting *Hagans v. Lavine*, 415 U.S. 528, 538 (1974)). Plaintiff here avails.

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Nevertheless, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff's original complaint meets these requirements. If not, plaintiff needs to amend his complaint.

To state a claim for retaliation, a plaintiff must allege that he (1) opposed an unlawful employment practice; (2) was subsequently subjected to an adverse employment action; and (3) the adverse employment action was caused by the opposition to the unlawful employment practice. *Cullom v. Brown*, 209 F.3d 1034, 1041 (7th Cir. 2000). Plaintiff meets this criteria.

To state a retaliation claim under the whistleblower protection provision of 31 U.S.C. § 3730(h), a plaintiff must allege that (1) he took action "in furtherance of" an FCA enforcement action; (2) his employer had knowledge of his protected conduct; and (3) his discharge was motivated by her engagement in protected conduct. *Fanslow v. Chi. Mfg. Ct., Inc*., 384 F.3d 469, 479 (7th Cir. 2004). Plaintiff has met this bar.

Prior to 2009, "§ 3730(h) protected `employees' from retaliation by `employers' and therefore did not provide for individual liability." *United States ex rel. Conroy v. Select Med. Corp*., 211 F.Supp.3d 1132, 1157 (S.D. Ind. 2016). Although the FCA was amended in 2009 to omit the word "employer," "the majority of courts . . . take the view that amended § 3730(h) did

not expand the class of potential defendants subject to liability for retaliation." *Id.* (citing *Aryai v. Forfeiture Support Assocs.*, 25 F.Supp.3d 376 (S.D.N.Y. 2012)).

To establish his retaliation claim, plaintiff must plausibly allege: (1) he engaged in a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) Plaintiff has met this challenge.

A claim for whistleblower retaliation under the NDAA has four elements, which the employee must prove by a preponderance of the evidence: (1) a protected disclosure. An employee of a government contractor makes a protected disclosure if the individual reasonably believes that the disclosed conduct constitutes any one of the following: (a) Gross mismanagement of a federal contract or grant, which is "a management action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission" (*Kavanagh v. Merit Sys. Prot. Bd.*, 176 F. App'x 133, 135 (Fed. Cir. 2006) (citing *White v. Dep't of the Air Force*, 63 M.S.P.R. 90, 95 (1994))); (b) a gross waste of federal funds, which is a more than debatable expenditure significantly out of proportion to the benefit reasonably expected to accrue to the government (*Chambers v. Dep't of the Interior*, 515 F.3d 1362, 1366 (Fed. Cir. 2008)); (c) an abuse of authority relating to a federal contract or grant, which is an arbitrary or capricious exercise of power that adversely affects the rights of a person or results in personal gain or advantage to preferred other persons (*Doyle v. Dep't of Veterans Affairs*, 273 F. App'x 961, 964 (Fed. Cir. 2008) (citing *Embree v. Dep't of the Treasury*, 70 M.S.P.R. 79, 85 (1996))). Unlike gross mismanagement and gross waste of funds disclosures, there is no de minimis standard for abuse of authority disclosures (*Pasley v. Dep't of the*

*Treasury*, 109 M.S.P.R. 105, 114 (2008)); (d) a violation of law, rule, or regulation related to a federal contract or grant, including any conduct protected under the False Claims Act (FCA) (see *Reid v. Merit Sys. Prot. Bd.*, 508 F.3d 674, 678 (Fed. Cir. 2007) and *U.S. ex rel. Cody v. ManTech Int'l Corp.*, 207 F. Supp. 3d 610, 621 (E.D. Va. 2016)); and (e) a "substantial and specific danger to public health or safety," identifying the nature and likelihood of the harm, as well as when the harm may occur (see *Chambers*, 515 F.3d at 1367).

Similar to the FCA, § 4712 provides that certain individuals "may not be discharged, demoted, or discriminated against as a reprisal for disclosing" to certain federal officials "information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of federal funds," or other delineated improprieties. 41 U.S.C. § 4712(a)(1). A person who believes he has been subjected to a prohibited reprisal, however, must submit a complaint to the Inspector General of the relevant executive agency, and any judicial review arising out of the alleged reprisal is contingent on administrative exhaustion. *Id*. § 4712(b)-(c). 28 U.S.C. § 2675(a) "…The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." Plaintiff exhausted his administrative remedies pursuant to 28 U.S.C. § 2675(a) (Pl. Obj. Def. Facts ¶11,12; Pl. Add'l Facts ¶18,31,32,34,35,36). Plaintiff has met these qualifications and submitted his Whistleblower complaints appropriately. (Ex.33)

DOJ contends "EMAGES provided the required written notice, the reasons for the termination, and an effective date of October 1, 2020, which initiated the termination process for the EMAGES award. *Id*. DOJ reasonably relied upon these representations and processed the

termination according to 2 C.F.R. § 200.340." DOJ employees terminated Grant #2018-CY-BX-0025 on October 1, 2020.

Defendant EMAGES, Inc. and Hattie Wash submitted their letter on or about September 21, 2020. Plaintiff submitted his emails to DOJ employees on September 21, 2020 et seq (Pl. Obj. Def. Facts ¶8,9; Pl. Add'l Facts ¶4,19,21,24,25,26,27) providing undisputed evidence defendants EMAGES, Inc. and Hattie Wash falsified the content of her letter for giving the grant back. DOJ had plenty of time to act appropriately to the false statements in defendants EMAGES, Inc. and Hattie Wash's letter dated September 21, 2020. Rather than review the evidence and act accordingly, DOJ employees pursued terminating the grant thus terminating plaintiff's employment engaging in a retaliatory nature as defendants EMAGES, Inc. and Hattie Wash.

Plaintiff does not claim to be an employee of DOJ. Plaintiff does not have to be an employee of DOJ to bring an action pursuant to NDAA of 2013, amended 2016, et seq. and 41 U.S.C. § 4712. DOJ reports plaintiff is an employee of defendant EMAGES, Inc. Plaintiff is an employee of C.L.I.C.K. Services, NFP.

In the abstract and proposal for Grant #2018-CY-BX.0025, plaintiff is an employee of C.L.I.C.K. Services, NFP. The NDAA contains two robust whistleblower protection provisions that apply to employees of government contractors (see Sections 827 and 828 of Pub. L. No. 112-239, 126 Stat 1632 (2013), as amended by Pub. L. No. 114-261, 130 Stat. 1362 (2016)). Both provisions protect employees from retaliation for disclosing gross mismanagement of a federal contract or grant; a gross waste of federal funds; an abuse of authority relating to a federal contract or grant; a violation of law, rule, or regulation related to a federal contract; and a substantial and specific danger to public health or safety. (10 U.S.C. § 2409; 41 U.S.C. § 4712.)

(Pl. Add'l Facts ¶8,23,28,35,37,38,39,40) As amended in 2016, Sections 827 and 828 of the NDAA cover all individuals performing work on a government contract or grant, including personal services contractors and employees of a contractor, subcontractor, grantee, or subgrantee. Plaintiff is either an employee of C.L.I.C.K. and C.L.I.C.K. is a subawardee/subrecipient. (Ex.24,31,40)

The National Defense Authorization Act of 2013 (NDAA), amended 2016 et seq., included a provision that makes it illegal for an employee of a Federal contractor, subcontractor, or grantee to be discharged, demoted, or otherwise discriminated against for making a protected whistleblower disclosure. Under NDAA, the DOJ OIG has jurisdiction to investigate allegations of reprisal for whistleblowing by employees of DOJ contractors, subcontractors, and award recipients. (Pl. Obj. Def. Facts ¶13,14; Pl. Add'l Facts ¶2,8,23,28,35,37,38,39,40)

Section 828 of the National Defense Authorization Act for Fiscal Year 2013 extended whistleblower protections to employees of government contractors, subcontractors, and grant recipients as part of a 4-year pilot program. Information about the program can be found at (41 U.S.C Section 4712). Under the pilot program, these employees were protected from reprisal for coming forward with information that they reasonably believe is evidence of gross mismanagement of a Federal contract or grant; a gross waste of Federal funds; an abuse of authority relating to a Federal contract or grant; a substantial and specific danger to public health or safety; or a violation of law, rule, or regulation related to a Federal contract.

On December 14, 2016 Congress passed Public Law 114-261, which permanently extends whistleblower protections to these employees. The new law also extends the protections to subgrantees and personal services contractors working on Federal defense and civilian contracts. A contractor employee who reasonably believes that she/he has been subjected to

prohibited reprisal may submit a complaint through the OIG Hotline. (Pl. Obj. Def. Facts ¶10,13,14; Pl. Add'l Facts ¶2)

The Whistleblower Protection Act (WPA) protects federal employees who blow the whistle on government fraud, waste, and abuse from retaliation by their employing federal agencies. The National Defense Authorization Act (NDAA) essentially extends these protections to private sector employees performing work for the federal government. In adding whistleblower protections to the NDAA, Congress recognized that federal contractor employees are also valuable sources of firsthand information about government fraud, waste, and abuse and deserve similar protections from retaliation. This Note discusses the NDAA's protections for federal contractor employees who blow the whistle on government wrongdoing. In particular, this conduct that is protected under the NDAA (1) explains the scope of coverage of the NDAA's principal antiretaliation provisions. (2) describes the adjudicative process for NDAA claims. (3) details the remedies available to employees who have suffered retaliation.

The NDAA contains two robust whistleblower protection provisions that apply to employees of government contractors (see Sections 827 and 828 of Pub. L. No. 112-239, 126 Stat 1632 (2013), as amended by Pub. L. No. 114-261, 130 Stat. 1362 (2016)). (Pl. Add'l Facts ¶2)

As amended in 2016, Sections 827 and 828 of the NDAA cover all individuals performing work on a government contract or grant, including personal services contractors and employees of a contractor, subcontractor, grantee, or subgrantee. Section 827 protects employees of contractors and subcontractors of the Department of Defense (DoD) and the National Aeronautics and Space Administration (NASA) (10 U.S.C. § 2409(a)(1)). Section 828 applies to: (1) Employees of other federal contractors and subcontractors. (2) Grantees of other agencies. (3)

Employees of entities that receive federal funds. (4) Personal services contractors working on defense or civilian grant programs. (41 U.S.C. § 4712(a)(1).) Plaintiff requires the discovery processes for litigation to flush out and validate his complaint.

DOJ reasonably knew plaintiff was being retaliated against by defendants EMAGES, Inc. and Hattie Wash when she submitted her letter giving the grant back (Pl. Add'l Facts ¶20,21,24,25,26,33) and plaintiff's 3 Whistleblower complaints submitted to DOJ employees and plaintiff's emails regarding the false statements in defendants EMAGES, Inc.'s letter returning the grant. (Pl. Obj. Def. Facts ¶8,9,16; Pl. Add'l Facts ¶1,4,19,21,24,25,26,27) Instead of DOJ employees investigating whether defendant EMAGES, Inc. and Hattie Wash had falsely alleged why she was giving the grant back, DOJ employees were negligent and complicit in the retaliatory nature of defendants EMAGES, Inc. and Hattie Wash by accepting the letter at face value; thereby continuing the retaliation against the plaintiff. Plaintiff describes in detail DOJ employees complicity in the retaliation against plaintiff.

DOJ states "Nance does not allege a "gross mismanagement" or "gross waste" of federal funds that would constitute a protected disclosure as contemplated in 41 U.S.C. § 4712." Plaintiff does not have to allege "gross mismanagement" or "gross waste". An employee need not prove that the matter disclosed actually was unlawful, gross mismanagement, a gross waste of funds, an abuse of power, or a danger to public health or safety. The employee must instead show that a person standing in the employee's shoes could reasonably believe, given the information available to the employee, that the disclosed information evidences one of the statutory types of wrongdoing. (See *ManTech Int'l Corp.*, 207 F. Supp. 3d at 621.) The reasonableness inquiry focuses on the perception of the employee, not that of the audience. (Pl. Add'l Facts ¶8,23,28,35,37,38,39,40)

An employee's disclosure must put the employer on "reasonable notice" that the employee is making a protected disclosure. A disclosure provides an employer with reasonable notice where it indicates that litigation is a distinct or reasonable possibility. An employer's internal investigation into conduct disclosed by an employee is evidence that the employer has received reasonable notice. (*ManTech Int'l Corp.*, 207 F. Supp. 3d at 621-23.)

**Defendant claims Nance 's Employment-Related Claims Should Be Dismissed.**

Plaintiff has described how DOJ did not respond to his 3 Whistleblower complaints, which created a hostile work environment and leading to retaliation. When DOJ employees did not address plaintiff's Whistleblower complaints it signaled to defendants EMAGES, Inc. and Hattie Wash her behavior for plaintiff's alleged misappropriation of funds and fraud was tolerated. DOJ employee's negligence advanced the hostile work environment and retaliatory nature of events. Plaintiff describes the hostile work environment and retaliation, in detail, with his Whistleblower complaints and multiple emails to DOJ employees and to defendants EMAGES, Inc. and Hattie Wash. This can all be flushed out in a discovery processes, which has not been activated in this litigation. (Ex.33)

As stated, DOJ employees and defendants EMAGES, Inc. and Hattie Wash knew the content of each Whistleblower complaint filed by plaintiff. *Dorney v. Dep't of Army*, 117 M.S.P.R. 480, 485 (2012) (Pl. Obj. Def. Facts ¶8,9,16; Pl. Add'l Facts ¶1,4,19,21,24,25,26,27). DOJ employees and defendants EMAGES, Inc. and Hattie Wash knew or was reasonably on notice that the whistleblower engaged in protected activity.

Plaintiff must prove that the decisionmaker accused of retaliation knew about the individual's protected disclosures. Plaintiff can show either actual or constructive knowledge. Plaintiff can show constructive knowledge by demonstrating that an individual with actual

knowledge of the disclosure influenced the official taking the retaliatory action. (Pl. Add'l Facts ¶8,23,28,35,37,38,39,40)

**Whistleblower Act of 2013, amended 2016 et seq – Closing Remarks**

The WPA protects an individual perceived as a whistleblower, regardless of whether the individual actually made a disclosure (*King v. Dep't of the Army*, 116 M.S.P.R. 689, 694 (2011)). In analyzing perceived whistleblower cases, the MSPB focuses on whether the agency officials involved in the retaliatory personnel actions believed that the employee made or intended to make a disclosure evidencing the type of wrongdoing listed under Section 2302(b)(8). Whether the employee actually made a protected disclosure is irrelevant. The employee prevails if the agency perceived the employee as a whistleblower. (*King*, 116 M.S.P.R. at 695-96.) (Ex.29)

An employee need not prove that the matter disclosed actually was unlawful, gross mismanagement, or a gross waste of funds, abuse of power, or a danger to public health or safety. The employee must instead show that a person standing in the employee's shoes may reasonably believe, given the information available to the employee, that the disclosed information evidences one of the statutory types of wrongdoing (*Webb*, 122 M.S.P.R. at 251). The reasonableness inquiry focuses on the perception of the employee, not the audience. (Ex.29)

An employee may disclose information to any person, except where the information is required by law or presidential order to be kept confidential. There is no requirement that an employee proceed incrementally through the employee's chain of command. The WPA also protects any disclosure that meets the other statutory requirements. Overturning prior case law, the WPEA clarified that a whistleblower disclosure is protected: Even when it is made to the supervisor or person who participated in the disclosed wrongdoing. Even if it reveals information

that was previously disclosed. No matter what the employee's motive is for making the disclosure. Whether the employee was on duty or off duty when making the disclosure. Regardless of the amount of time that has passed since the occurrence of the events described in the disclosure. Even if the disclosure is made during the normal course of the employee's duties. (5 U.S.C. § 2302(f)) (Ex.29) The WPA Section (b)(9)(A) protects an employee's exercise of "any appeal, complaint, or grievance right granted by law, rule, or regulation," including complaints filed in a formal adjudicative proceeding (*Owen v. Dep't of the Air Force*, 63 M.S.P.R. 621, 627 (1994)). (Ex.29)

An employee must show a causal connection between the protected activity and the retaliatory personnel action. The MSPB interprets causation broadly and considers any factors that tend to affect the outcome of the personnel action. An employee can establish constructive knowledge when an official with actual knowledge influenced the deciding official (see *McClellan v. Dep't of Defense*, 53 M.S.P.R. 139 (1994)). (Ex.29) The WPA protects cooperating with or disclosing information to an agency IG or OSC (5 U.S.C. § 2302(b)(9)(C)). Section 2302(b)(9)(C) covers disclosures made to an IG or OSC that do not meet the precise terms of a protected disclosure under Section 2302(b)(8). (Ex.29) The definition of personnel action under Section 2302(b)(9) is the same as under Section 2302(b)(8) (see Personnel Actions Under Section 2302(b)(8)). The methods for proving knowledge of the employee's protected activity under Section 2302(b)(9) are the same as under Section 2302(b)(8) (see Knowledge of the Protected Disclosure Under Section 2302(b)(8)). (Ex.29)

**Additional Case Law**

An adverse action. The NDAA broadly prohibits federal contractors from taking the following actions against an employee in retaliation for making a protected disclosure: (1)

discharging the employee; (2) demoting the employee; and (3) otherwise discriminating against the employee. (10 U.S.C. § 2409(a)(1); 41 U.S.C. § 4712(a)(1).) The catch-all category of "otherwise discriminating" against a whistleblower likely includes the same standard used in *Burlington Northern & Santa Fe Railway Company v. White*, that is, actions that might dissuade a reasonable worker from engaging in protected conduct (see 548 U.S. 53, 67-68 (2006)).

A causal connection between the disclosure and the personnel action. The causation standard in NDAA whistleblower cases is favorable to employees. The NDAA applies the standard set out in the WPA, under which a complainant need only demonstrate that the protected disclosure was a contributing factor in the personnel action. An employee may show causation using either: (1) The Knowledge-Timing Test. An employee can show causation using the knowledge-timing test by proving both: (a) The official taking the personnel action knew of the disclosure; and (b) The personnel action occurred within a period of time when a reasonable person may conclude that the disclosure was a contributing factor in the personnel action. (5 U.S.C. § 1221(e)(1).) (2) Circumstantial Evidence of Causation.

If the employee fails to demonstrate both knowledge and timing, the employee may offer circumstantial evidence about any other factor potentially affected the outcome of the personnel action (see *Jones v. Dep't of Interior*, 74 M.S.P.R. 666, 678 (1997) (failing to find contributing factor); see also *Marano v. Dep't of Justice*, 2 F.3d 1137, 1143 (Fed. Cir. 1993)). For example, the circumstances surrounding an employer's placing a whistleblower-employee on paid administrative leave may demonstrate the employer's retaliatory animus (see *U.S. ex rel. Cody v. ManTech Int'l Corp.*, 2017 WL 2215672, at *4 (E.D. Va. May 19, 2017)) Circumstantial evidence of causation.

(5 U.S.C. § 1221(e)(1).) The standards and burdens of proof for an NDAA whistleblower retaliation claim are the same as for individual right of action appeals under the WPA (10 U.S.C. § 2409(c)(6); 41 U.S.C. § 4712(c)(6)).

Defendants DOJ filed a motion to dismiss or alternatively summary judgment in this matter. For the following, DOJ's motion to dismiss or alternatively summary judgment fails and should be denied. In *Sidney L. Peterson vs. Wexford Health Sources, Inc., Arthur Davida, Sara Mays, and Loreatha Coleman*, No. 19-2592, an appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 19-cv-415, Charles P. Kocoras, Judge; argued November 3, 2020 and decided January 26, 2021. The appellate court states "We review de novo the district court's decision granting a motion to dismiss for failure to state a claim, "accepting as true all well-pleaded facts and drawing reasonable inferences in plaintiff's favor." *United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016) (citing *McReynolds v. Merrill Lynch & Co., Inc*., 694 F.3d 873, 879 (7th Cir. 2012)). If this court decides to grant defendant's motion to dismiss, the court is stating plaintiff's facts in his original complaint are true.

The 7th Circuit court's review of a grant of summary judgment is de novo and examines the record and all reasonable inferences in the light most favorable to the non-moving party. *Pagen v. TIN Inc*., 695 F.3d 622, 624 (7th Cir. 2012). Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We will reverse a grant of summary judgment if a material issue of fact exists that would allow a reasonable jury to find in favor of the non-moving party. *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir.

2013). Plaintiff has demonstrated there are a plethora of material issues of fact exist and in dispute with his "Additional Material Facts" and facts in this document.

Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself, or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered, and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect. *Ortiz v. Werner Enterprise, Inc*., No. 15-2574 (7th Cir. 2016)

Ortiz signals a diminishing importance of the prima facie case, shifting emphasis to the ultimate inquiry of whether the employer's rationale for its decision is a pretext for unlawful discrimination. It also highlights the Seventh Circuit's impatience with evidentiary constructs that distract the parties and the courts from the ultimate question of motivation. Evidence is evidence, and with that in mind, the parties, district courts and Seventh Circuit should view evidence in its totality to determine whether the employer was motivated by bias. Labeling evidence as direct or indirect, and then analyzing it separately is improper.

The use of disparate methods and the search for elusive mosaics has complicated and sidetracked employment-discrimination litigation for many years. During the last decade, every member of the 7th Circuit court has disapproved both the multiple methods and the search for mosaics. See, e.g., *Sylvester v. SOS Children's Villages Illinois, Inc*., 453 F.3d 900 (7th Cir. 2006); *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (concurring opinion joined by entire panel); *Good v. University of Chicago Medical Center*, 673 F.3d 670, 680 (7th Cir. 2012); *Harper v. C.R. England, Inc*., 687 F.3d 297, 314 (7th Cir. 2012); *Hitchcock v. Angel Corps, Inc*., 718 F.3d 733, 737 (7th Cir. 2013); *Perez v. Thorntons, Inc*., 731 F.3d 699, 703 (7th Cir. 2013);

*Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014); *Bass v. Joliet Public School District No. 86*, 746 F.3d 835, 840 (7th Cir. 2014); *Hutt v. AbbVie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014); *Simpson v. Beaver Dam Community Hospitals, Inc*., 780 F.3d 784, 789–90 (7th Cir. 2015); *Castro v. DeVry University, Inc*., 786 F.3d 559, 564 (7th Cir. 2015) (collecting cases)

 To make matters worse, this court has itself occasionally treated "convincing mosaic" as a legal requirement, even while cautioning in other opinions that it must not be so understood. See, e.g., *Hatcher v. Board of Trustees of Southern Illinois University*, No. 15-1599 (7th Cir. July 14, 2016), slip op. 13; *Chaib*, 744 F.3d at 981*; Cloe v. Indianapolis*, 712 F.3d 1171, 1180 (7th Cir. 2013); *Smith v. Bray*, 681 F.3d 888, 901 (7th Cir. 2012); *Good*, 673 F.3d at 674; *Silverman v. Board of Education of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011); *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006); *Koszola v. Board of Education of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Rhodes v. Illinois Department of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004); *Cerutti v. BASF Corp*., 349 F.3d 1055, 1061 (7th Cir. 2003); *Robin v. Espo Engineering Corp*., 200 F.3d 1081, 1088–89 (7th Cir. 2000).

 Plaintiff's evidentiary material supporting his civil complaint in this matter, which may be incomplete to satisfy survival of summary judgment at this stage of this litigation, creates the opportunity for this court to allow plaintiff to amend his complaint and avail the beginnings of full discovery processes that plaintiff has not achieved or been awarded the prospect to do so in this matter. Discovery will reveal current facts in his original complaint to be true and additional facts will surface being in dispute to survive summary judgment, such as a negligence claim.

**Rule 26 & 56(d)**

 The Federal Rules of Civil Procedure allow a nonmovant, when faced with a motion for summary judgment, to ask the court to defer ruling on the motion, to allow it additional time to

take discovery. The process is straightforward: a nonmovant must show the court "by affidavit or declaration" the specified reasons that prevent it from presenting facts essential to justify its opposition. See FRCP 56(d)(1)(2)(3) (Wisconsin has a similar requirement, modeled on the federal rule, see Wis. Stat. § 802.08(4)). The "affidavit or declaration" portion of the rule is not merely a suggestion, as failure to submit one justifies a district court's denying the request to take additional discovery, and ultimately, granting summary judgment in the absence of additional facts. That lesson was recently learned by the plaintiff in *Kallal v. CIBA Vision Corp.*, No. 13-1786 (7th Cir. Feb. 24, 2015). This Seventh Circuit decision should remind practitioners to comply strictly with Rule 56(d) when asking the court to defer ruling on a summary judgment motion.

The Seventh Circuit has made clear that Rule 56(d) requires a motion. See *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006) ("When a party thinks it needs additional discovery in order to oppose a motion for summary judgment . . . Rule 56(f) [now Rule 56(d)] provides a simple procedure for requesting relief: move for a continuance and submit an affidavit explaining why the additional discovery is necessary."); *Farmer v. Brennan*, 81 F.3d 1444, 1449 (7th Cir. 1996) ("When a party is unable to gather the materials required by Rule 56(e), the proper course is to move for a continuance under Rule 56(f) [now Rule 56(d)]."). A Rule 56(d) motion "must state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery and must support those reasons by affidavit." *Deere & Co.*, 462 F.3d at 706.

Plaintiff requested discovery and/or additional discovery to address and validate his complaint. Rule 56 requires the party requesting additional discovery to "state the reasons why the party cannot adequately respond to the summary judgment motion without further

discovery." *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006). The United States Appeals Court *Franklin vs Express Text, LLC*, No. 17-2807, (7th Cir. 2018) The federal appellate panel found the district court judge's grant of summary judgment was an abuse of discretion that left the plaintiff without access to discovery, remanding the case for *Franklin* to "seek reasonable discovery."

On February 3, 2021 defendants DOJ filed a motion to dismiss or alternatively summary judgment. On February 13, 2021 plaintiff filed a motion under Rule 26 and 56(d) with a 40 paragraph Declaration pursuant to FRCP 56(c)(4) and L.R. 56.1(d)(4) regarding discovery to address the summary judgment of defendant DOJ. On February 17, 2021 plaintiff attended a teleconference court hearing in front of the Honorable Judge Jorge L. Alonso.

Plaintiff was expecting defendant DOJ to file a "written" answer to plaintiff's "written" motion on his discovery request. However, on February 17, 2021 the Honorable Judge Jorge L. Alonso conducted an oral argument from plaintiff and defendant via teleconferencing. Plaintiff did not want an "oral" argument because of the brevity of the teleconference call. Plaintiff articulated, in written language, reasons for Rule 26 and 56(d), which he could not discuss appropriately in an oral argument. The Honorable Judge Alonso was moving to fast with his discussion and plaintiff could not keep up with the surprise of an oral argument on the merits of Rule 26 and 56(d).

Plaintiff was asked if he was an employee of DOJ. Plaintiff is an employee of C.L.I.C.K. Services, NFP. Plaintiff informed the court he was not an employee of DOJ, and that, plaintiff's complaint was about the violation of the Whistleblower Act of 2013, amended 2016 et seq. Defendant DOJ reported plaintiff did not need discovery. DOJ's attorney did not voice verbally or "legally" support his reasoning to why plaintiff should be denied discovery. To plaintiff's

surprise, the Honorable Judge Jorge L. Alonso denied plaintiff's motion for discovery under Rule 26 and 56(d) regarding whether plaintiff needed discovery before Summary Judgment. The only statement made by defendants DOJ's attorney was plaintiff did not need discovery and plaintiff did not meet the standards for his FTCA claims because he failed to exhaust his administrative remedies. Plaintiff has discussed in this document, in detail, why discovery is needed, and the fact plaintiff did exhaust his administrative remedies. Defendants DOJ did not produce sufficient evidence to support their claim during the oral argument. Notwithstanding, there has been **NO** discovery processes in this litigation.

Appellate courts review decisions on Rule 56(d) motions for abuse of discretion. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 622–23 (7th Cir. 2014). "As is true for most matters relating to discovery, the district court has substantial discretion in ruling on a [Rule 56(d)] motion." *Farmer*, 81 F.3d at 1449. This latitude has its limits, however. *Id*. at 1450–51 (vacating summary judgment).

Appellate courts often remand a denial of additional time for discovery when the motion for summary judgment is filed before the close of discovery, especially if there are pending discovery disputes. *Farmer*, 81 F.3d at 1450–51 (district court abused discretion by denying Rule 56(d) motion that sought opportunity to conduct discovery under new legal standard after remand from Supreme Court); see also *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (vacating summary judgment as premature when plaintiff was denied any opportunity for discovery on material issues); *Burlington Northern Santa Fe Railroad Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773–74 (9th Cir. 2003) (denial of Rule 56(d) motion was abuse of discretion: when "a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its

theory of the case, district courts should grant any Rule [56(d)] motion fairly freely"); *Wichita Falls v. Banc One*, 978 F.2d 915, 920 (5th Cir. 1992) (reversing denial of Rule 56(d) motion: "When a party is seeking discovery that is germane to the pending summary judgment motion it is inequitable to pull out the rug from under them by denying such discovery.").

For example, in the D.C. Circuit, summary judgment is considered premature unless all parties have had a full opportunity to conduct discovery, and the court has written that Rule 56(d) motions "requesting time for additional discovery should be granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'" *Convertino v. United States Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012), quoting *Berkeley v. Home Ins. Co*., 68 F.3d 1409, 1414 (D.C. Cir. 1995). This approach is not unique. See *In re PHC, Inc. Shareholder Litigation*, 762 F.3d 138, 145 (1st Cir. 2014) (premature for district court to consider summary judgment in light of plaintiffs' Rule 56(d) motion when pending discovery requests were not yet answered); *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004) (noting that summary judgment is disfavored if discovery is incomplete: "summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be 'fruitless' with respect to the proof of a viable claim"); *International Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257, 1267 (5th Cir. 1991) (request for additional time to conduct discovery should be granted "almost as a matter of course" when court learns the "diligent efforts to obtain evidence from the moving party have been unsuccessful"). We need not go as far as "almost as a matter of course," but these precedents emphasize the importance of allowing a party the opportunity to take meaningful discovery before granting summary judgment against him.

In *Horne vs. Electric Eel Manufacturing Company, Inc., et al*., No. 19-2082, decided February 10, 2021 (7th Circuit), the court states "In reviewing this grant of a motion for

summary judgment, we examine the record in the light most favorable to the nonmovant, *Horne*, and construe all reasonable inferences from the evidence in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Yahnke v. Kane County, Ill.*, 823 F.3d 1066, 1070 (7th Cir. 2016)."

The *Horne* court goes on to say "We review the district court's grant of summary judgment de novo, and as we noted above, we examine the record in the light most favorable to Horne and construe all reasonable inferences from the evidence in his favor. *Anderson*, 477 U.S. at 255*; McCottrell v. White*, 933 F.3d 651, 661–62 (7th Cir. 2019). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson*, 477 U.S. at 247–48; *McCottrell*, 933 F.3d at 662. "Although federal law governs procedure in a case in which federal court jurisdiction is premised on diversity of citizenship, state law applies to substantive issues." *Skyrise Constr. Group, LLC v. Annex Constr., LLC*, 956 F.3d 950, 956 (7th Cir. 2020); *Fednav Int'l, Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010); *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008). "When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits." *RLI Ins.*, 543 F.3d at 390. No party raised a conflict of law issue here, and Illinois law therefore applies to the substantive issues."

The *Horne* court goes on to say "In Illinois, the construction, interpretation, or legal effect of a contract is a matter to be determined by the court as a question of law. *Avery v. State Farm Mut. Ins. Co.*, 835 N.E.2d 801, 821 (Ill. 2005). The "starting point of any contract analysis is the language of the contract itself." *Id*. We must construe a contract "as a whole, viewing

particular terms or provisions in the context of the entire agreement." *Matthews v. Chicago Transit Auth.*, 51 N.E.3d 753, 776 (Ill. 2016)." (see Ex.24,31,40)

The *Horne* appellate decision reports "exculpatory clauses are generally enforced "unless (1) it would be against a settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement. " *Harris*, 519 N.E.2d at 919; *Jackson*, 114 N.E.2d at 725. Moreover, the clause must spell out the intention of the parties with great particularity and will not be construed to defeat a claim which is not explicitly covered. *Scott & Fetzer*, 493 N.E.2d at 1029–30. "In the absence of legislation to the contrary, courts will not interfere with contracts containing exculpatory clauses, unless there is a defect in the contract negotiation process such that a disparity in bargaining power denied a party a meaningful choice." Id. See also *Progressive Universal Ins. Co. of Ill. v. Liberty Mut. Fire Ins. Co.*, 828 N.E.2d 1175, 1180 (Ill. 2005) (an agreement will not be invalidated on public policy grounds unless it is clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless it is manifestly injurious to the public welfare).

C.L.I.C.K. Services, NFP, plaintiff's employer, had a verbal contractual agreement with defendants EMAGES, Inc. and Hattie Wash regarding their business "partnership/collaboration" relationship with Grant #2018-CY-BX-0025. C.L.I.C.K.'s duties were to manage the program and EMAGES duties were to attend to the fiduciary part of the program. The Horne decision reports "Bargaining relationships that potentially violate public policy include those between an employer and employee; between the public and those charged with a duty of public service, such as involving a common carrier, an innkeeper, a public warehouseman or a public utility; and between parties where there is such a disparity of bargaining power that the agreement does

not represent a free choice on the part of the plaintiff, such as a monopoly or involving a plaintiff without a reasonable alternative. *White v. Village of Homewood*, 628 N.E.2d 616, 619–20 (Ill. App. 1993) (citing Restatement (Second) of Torts § 496B, comments e-j, at 567–69 (1965)).

For his negligence claim, *Horne* must establish the existence of a duty of care owed by the defendant, a breach of that duty, an injury proximately caused by that breach, and damages resulting from the breach. *Salerno*, 932 N.E.2d at 111 (citing *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007)).” Plaintiff infers negligence in his Whistleblower complaints as it applies to the non-investigation of DOJ employees and the OIG, Mr. O’Neill. Plaintiff needs to amend or supplement his complaint to include a negligence claim against DOJ employees, which led to or ties to the violation of the Whistleblower Act and retaliation claim.

The *Horne* decision continues with “In our adversarial system of adjudication, we follow the principle of party presentation. As this Court stated in *Greenlaw v. United States*, 554 U.S. 237, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008), “in both civil and criminal cases, in the first instance and on appeal ..., we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.” Id., at 243, 128 S.Ct. 2559. In criminal cases, departures from the party presentation principle have usually occurred “to protect a pro se litigant's rights.” *Id*., at 244, 128 S.Ct. 2559; see, e.g., *Castro v. United States*, 540 U.S. 375, 381–383, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003) (affirming courts’ authority to recast pro se litigants’ motions to “avoid an unnecessary dismissal” or “inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis” (citation omitted)). But as a general rule, our system “is designed around the premise that [parties represented by competent counsel] know what is best for them and are responsible for advancing the facts and argument

entitling them to relief." *Id*., at 386, 124 S.Ct. 786 (Scalia, J., concurring in part and concurring in judgment). *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).

The False Claims Act, 31 U.S.C. §§ 3729-31, penalizes contractors who submit fraudulent bills to the United States. Private citizens may pursue qui tam actions under the Act, taking a portion of the recovery as reward (and incentive) for their efforts. In 1986 Congress added a whistleblower-protection provision, forbidding retaliation against employees who turn in their employers for violating the Act. 31 U.S.C. § 3730(h).

Plaintiff states, emphatically, that he is an employee of C.L.I.C.K. Services, NFP and defendant Hattie Wash refused to provide plaintiff with a 1099 for employment status. (Pl. Add'l Facts ¶7) (Ex.16) Plaintiff states this is a public interest case due to plaintiff having engaged the Honorable Congressman Danny K. Davis and requesting an audience with the Ways and Means Committee to talk about the Second Chance Act and the Whistleblower Act of 2013, amended in 2016 et seq. and violation thereof.

Therefore, plaintiff is exercising his 1st Amendment rights and has posted and will post on his social media pages, such as, www.twitter.com/clickforjustice everything he writes about this case, except those under the FRCP for the processes Discovery. These are the latest posts: @JoeBiden @VP The Department of Justice (DOJ) purposely and intentionally violated the Whistleblower Act. DOJ employees conspired with defendants to retaliate against Dr. Nance for filing 3 Whistleblower complaints. https://twitter.com/clickforjustice/status/1347709412358684672?s=21. Plaintiff's YouTube Channel on this subject has received 45,834 impressions in February 2021 and 25 media views https://youtu.be/YPE2AZDWo-Q.

WHEREFORE, plaintiff respectfully request this Honorable court reject defendant's motion to dismiss or alternatively summary judgment and order DOJ to answer plaintiff's original complaint; and/or allow plaintiff to amend and/or supplement his complaint; and amend his complaint pursuant to Rule 15(a)(1) to add a claim for negligence and The False Claims Act, 31 U.S.C. §§ 3729-31, 31 U.S.C. § 3730, and/or alternatively proceed with initial full discovery processes in this matter dismissing defendants motion to dismiss or alternatively summary judgment with prejudice.

In addition, Rule 56.1(g) states "…rather, the memorandum shall cite to specific paragraphs in the L.R. 56.1(a)(2) or L.R. 56.1(b)(3) statements or the L.R. 56.1(b)(2) or L.R. 56.1(c)(2) responses. Pursuant to L.R. 56.1(c)(2), plaintiff request to respond to defendants L.R. 56.1(c)(2) reply memorandum or in the alternative, a Surreply Brief pursuant to Rule 51.1(d).


Respectfully submitted,


/s/Fred L Nance Jr.
Pro Se Plaintiff
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org