UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRED L. NANCE, Jr., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 6316 |
| v. | ) |
| | ) Judge Alonso |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF FEDERAL DEFENDANT'S
MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT**

### Introduction

Plaintiff Fred L. Nance, Jr. responds to the motion to dismiss with novel and unsupported legal theories, arguing that he exhausted his administrative remedies under the Federal Tort Claims Act by submitting a "whistleblower" complaint to the inspector general's office regarding defendant EMAGES, Inc.'s supposed misuse of grant funds, and arguing that even though Nance was never employed by the Department of Justice, he can pursue a whistleblower claim against DOJ anyway because it did not investigate the reasons behind EMAGES' request to terminate a grant award. His arguments should be rejected because there is no support for his novel legal contentions. His various other claims should also be dismissed because they are immaterial to his claims against DOJ, or they are unsupported, or both. Accordingly, the court should dismiss the complaint against the Department of Justice, or alternatively grant summary judgment for the federal defendant.

### Argument

Nance argues that filing a whistleblower complaint with the inspector general's office satisfied the exhaustion requirements under the FTCA, but he provides no support, and he is wrong.

He also provides no support for his claim that DOJ can be liable under the Whistleblower Act for simply allowing EMAGES to terminate its grant award. The Whistleblower Act could apply only if Nance were a DOJ employee, which Nance admits he was not. Besides, DOJ did not conspire against Nance or retaliate against him, as he falsely claims. To the contrary, the agency simply followed the regulations when it processed EMAGES, Inc.'s proper request to terminate its grant, as set forth below.

## I. Nance Failed to Exhaust his Administrative Remedies under the FTCA.

Nance failed to produce any evidence that he submitted an administrative claim under the Federal Tort Claims Act. Instead, he argues, without support, that he satisfied the FTCA exhaustion requirement by sending whistleblower complaints to the Office of the Inspector General ("OIG"), which OIG denied. Pl. Mem.[1] at 25. Nance is wrong.

As the Seventh Circuit has repeatedly held, the presentment requirement for an FTCA administrative claim "has four elements: (1) notification of the incident; (2) demand for a sum certain; (3) title or capacity of the person signing; and (4) evidence of the person's authority to represent the claimant." *Chronis v. United States*, 932 F.3d 544, 547 (7th Cir. 2019) *citing Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997). As the Seventh Circuit also makes clear, "a

---

[1] In response to the defendant's motion, Nance filed several pleadings, some of which are in violation of the local rules, as set forth in Section IV, *infra*. On March 5, 2021, after previously filing a Rule 56(d) motion, which the court properly denied, and an objection to the court's denial of that motion (Dkt. 44 – 47), Nance filed a 53-page memorandum ("Pl. Mem")(Dkt. 49-2), which appears to incorporate his response to the defendant's Rule 56.1 statement of material facts, a statement of additional facts (Dkt. 49-1), and a 20-page opposition motion ("Pl. Resp.")(Dkt. 49-3), both of which he filed in violation of the page limit under LR 7.1. A few days later, on March 9, 2021, Nance filed a "notice of re-filing" (Dkt. No. 55) and re-filed his 20-page opposition motion (Dkt. No. 53), his 53-page memorandum (Dkt. No. 53-3), a statement of additional facts (Dkt. 53-2), and a separate response to the defendant's Rule 56.1 statement of facts. Dkt. No. 53-1. The opposition motion and memorandum filed on March 5 and the later "re-filed" materials appear to be identical. This reply is in response and opposition to both sets of pleadings.

claimant who neither makes it clear" that he is "demanding money from the agency nor says how much" he is demanding "thwarts the settlement process envisioned by the FTCA." *Id.*, *citing Smoke Shop v. United States*, 761 F.3d 779, 788 (7th Cir. 204) (asserting that "without being presented with an actual claim for money damages, the [United States is] ill-equipped to make a fully informed assessment" concerning a plaintiff's claim). A *pro se* claimant should receive a liberal reading of his purported claim, but "there is a difference between generously construing a pro se complaint and effectively excusing a pro se plaintiff from the statutorily mandated exhaustion requirement." *Chronis,* 932 F.3d at 548.

Here, Nance's whistleblower complaints allege that EMAGES fraudulently drew down grant funds and that EMAGES' CEO, Wash, retaliated against Nance for reporting the questioned drawdowns by removing him as the point of contact for the grant award and by reducing Nance's salary under the grant. DSF ¶¶ 10 – 13. Even reading those whistleblower complaints liberally, they do not meet the *FTCA* administrative claim requirements because they do not make it clear that Nance was demanding *any* money from DOJ, much less a sum certain. *Chronis*, 932 F.3d at 547. At best, his whistleblower complaints demand money from his employer *EMAGES* for allegedly reducing his salary, but his demand for money from EMAGES cannot be read as an FTCA claim to the United States because "without being presented with an actual claim for money damages," DOJ was "ill-equipped to make a fully informed assessment of" Nance's claim. *Smoke Shop*, 761 F.3d at 788. In short, Nance "simply did not tell the government that [he] intended to bring a tort suit against it," and therefore he did not exhaust his FTCA administrative remedies by submitting whistleblower complaints. *Smoke Shop*, 761 F.3d at 788.

Nance also requests "to supplement and/or amend his complaint to include the negligent actions" of DOJ employees because they "did not investigate" Nance's whistleblower complaints

3

and because they were "actively conspiring" and "colluding" with EMAGES when they "allowed" EMAGES to terminate its grant award, implying that DOJ should have investigated the reasons for EMAGES' termination request, rather than process the request, as it was required to do under the regulations, as set forth below and in our opening brief. Pl. Resp. at 1, 8; Def.'s Mem. at 8 - 9. Nance is wrong as to each of these claims, but even if the court allows him to amend his complaint to add a new negligence claim, Nance has not exhausted his FTCA administrative remedies for this claim either, for the reasons set forth above.

Also, even if he did exhaust his supposed tort claim, which he did not, Nance offers no support for his claim that a federal grant awarding agency even has a duty to investigate a termination notice provided by a grant recipient (pursuant to 2 C.F.R. § 200.340). A grant recipient has the prerogative to terminate a grant award, and a federal awarding agency cannot force an unwilling (and possibly unable) award recipient to perform grant activities. 2 C.F.R. §§ 200.340(a)(1)-(5). And there was no requirement that DOJ consider Nance's opinion in processing EMAGES' grant termination notice just because Nance was being paid under the grant. To the contrary, the decision to terminate a grant is a one-way street: either the agency terminates it (with or without the *grantee's* consent) or the *grantee* terminates it by providing notice pursuant to section 200.340. 2 C.F.R. §§ 200.340(a)(1)-(5). Third-parties, such as Nance, do not get an opportunity to weigh in on that decision.

Under Nance's theory, any disgruntled third-party could disagree that a grant should be terminated and the funding agency would therefore be forced to compel the award recipient to continue performance under an award while the agency conducted an investigation (and that investigation, according to Nance, would need to meet the disgruntled employee's satisfaction). Pl. Resp. at 8, 15. Nance provides no support for this illogical contention, and none exists.

4

Even if DOJ were required to investigate the reasons behind EMAGES termination request (which it is not, as set forth above), Nance provides no evidence to doubt EMAGES' reasons for terminating the grant. EMAGES stated that it was terminating the award because COVID-19 and related restrictions created financial instability for EMAGES and "prevented EMAGES from fulfilling the [p]erformance measures of the Second Chance grant" and that although telehealth services permitted EMAGES to continue providing services to some individuals, the shelter-in-place "mandate for the State of Illinois has prevented [it] from collecting data inside Cook County Jail and the Illinois Department of Correction." DSF ¶ 9. Nance even concedes that "[d]ue to Covid-19, in March of 2020, we lost the IDOC Thursday group and the Cook County jail Friday group." Pl. Resp. at 13. Regardless, EMAGES' reasons for terminating the grant were certainly valid, on their face considering the pandemic, and Nance provides no evidence to the contrary.

Also, Nance does not even address the argument that an FTCA claim can be brought only against the United States, not against the DOJ. *E.g.*, *Quinlan by Cecola v. U.S. Postal Serv.*, No. 89 C 5748, 1989 WL 88255, at *1 (N.D. Ill. July 31, 1989) ("Section 1346(b) calls for the action to be brought against the United States itself and not against the federal agency, and that is confirmed by Section 2679(a).").

In any event, since Nance has not satisfied the FTCA's procedural requirements, his FTCA claims, including his new claim that DOJ was negligent by not investigating EMAGES termination request, should therefore be dismissed for failure to exhaust administrative remedies. *See* Def. Mem. at 5-6; Compl. at 1,6; 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106 (1993); *Kanar*, 118 F.3d at 528 ("No one may file suit under the Federal Tort Claims Act without first making an administrative claim."); *Erxleben v. United States*, 668 F.2d 268, 270 (7th Cir. 1981).

5

**II.     Claims under the National Defense Authorization Act and 41 U.S.C. § 4712.**

Nance admits that he was never employed by the DOJ, and therefore his whistleblower complaint against DOJ fails. To pursue a whistleblower complaint under the National Defense Authorization Act of 2013 ("NDAA"), as amended, 10 U.S.C. § 2409, and 41 U.S.C. § 4712, the plaintiff must be an employee of the party that allegedly violated the Act. *Gill v. CEC Emp. Grp., LLC*, No. 19 C 8099, 2020 WL 5909068, at *4 (N.D. Ill. Oct. 6, 2020) (the NDAA "protects employees of federal contractors who report the misuse of federal funds from retaliation."). Section 4712 provides a cause of action for an employee "against the contractor or grantee." 41 U.S.C. § 4712(c)(2). Furthermore, § 4712 "prohibits reprisals by an employer—those who can 'discharge[ ], demote[ ], or otherwise discriminate[ ]'—against employees who disclose an employer's misconduct." *Delebreau v. Danforth*, 743 F. App'x 43, 44 (7th Cir. 2018) (emphasis original). The statute does not reach non-employers (like DOJ in this case) because "they cannot discharge, demote, or discriminate in employment." *Id*. Also, § 2409 applies only to grant and contracts awarded by the Department of Defense and NASA, not by DOJ.

Here, Nance admits that he is not a DOJ employee and that DOJ did not terminate his employment. Pl. Resp. at 5; Pl. Mem. at 34, 46. Instead, he argues that various employment discrimination statutes and the False Claims Act save his case, but he is wrong. For example, he cites cases decided by the U.S. Merit Systems Protection Board, which apply only to federal employees and agencies. Pl. Mem. at 2 – 4, 24, 32 – 33, 38 – 41; *see, e.g.*, 5 C.F.R. § 1200.1 (explaining that the MSPB adjudicates "Federal employee appeals of agency personnel actions"); *see also Young v. Cook Cty. Sheriff Tom Dart*, Case No. 14 C 6350, 2015 WL 8536734, at *2 (N.D. Ill. Dec. 10, 2015) (holding that 5 U.S.C. § 2302 "is inapplicable to Plaintiff's claim because this statute only applies to federal employees."), *citing Scholl v. Chicago Reg'l Council of Carpenters*, Case No. 12 C 1806, 2013 WL 474489, at *3 (N.D. Ill. Feb. 6, 2013). As set forth

above, Nance admits that he is not a federal employee. Accordingly, those statutes do not apply to his claims. Pl. Mem. at 34, 46.

Nance also cites the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as support (Pl. Mem. at 5, 31, 52, 53), but FCA claims may only be brought "for the United States Government" and must be filed "in the name of the Government," not *against* the United States. 31 U.S.C. § 3730(b). Besides, even if he could sue DOJ under the FCA, which he cannot, Nance failed to follow the proper procedure to file a section 3730 claim. *Id.* (complaint and evidence are filed in camera and served on the government and remain under seal for 60 days). Accordingly, Nance's backwards argument that DOJ is liable to him under the False Claims Act (which is not even alleged in his complaint) should be rejected.

In any event, DOJ was not Nance's employer, nor did it retaliate against Nance or assist EMAGES in discriminating or retaliating against Nance; rather, DOJ simply processed a grant termination notice by a grantee, EMAGES, in the ordinary course of business, as set forth in our opening brief. Def.'s Mem. at 8 – 9. DOJ could not *force* EMAGES to continue to take federal funds. Also, Nance's claims are alleged against DOJ, not DOD or NASA. Accordingly, his claims under the 2013 NDAA and 41 U.S.C. § 4712 should be dismissed.

**III.     Nance's Other Claims Should Be Dismissed.**

Nance's other claims should be dismissed for several reasons. First, he claims that this "is not an employee/employer relationship case," (Pl. Resp. at 1) even though he filed claims against DOJ that require such a relationship, which should be dismissed, as set forth above.

Nance also claims, falsely, that he was a subrecipient under the EMAGES grant award. Pl. Resp. at 2. Sub-awards require explicit federal approval. DRPSF ¶ 9. *See, e.g.*, Special Condition 10 for the EMAGES award (All subawards ("subgrants") must have specific federal authorization).

7

*Id.* DOJ never approved a subaward to Nance or his company, which was made clear to him in emails that Nance has provided to this court. *Id.* Nance offers no evidence that the required "Grant Adjustment Notice" was ever submitted and approved by DOJ. Regardless, Nance's alleged status as a subrecipient is immaterial to his claims against DOJ.

Nance also falsely claims that DOJ "did not respond" and "did not address" his "Whistleblower complaints." Pl. Mem. at 38. His complaints – which consisted mostly of allegations regarding minor accounting discrepancies and his workplace disagreements with Wash – were addressed by: (1) the U.S. Office of Special Counsel, which declined an investigation because it lacked jurisdiction; (2) DOJ's Office of the Inspector General, which provided a response and found his allegations insufficient; and (3) the Bureau of Justice Assistance, which will conduct an in-depth financial and programmatic review of the EMAGES award to address issues raised by Plaintiff. DSF ¶¶ 10 – 14; DRPSF 1, 25. Regardless, Nance cites no authority for his claim that, because he is personally unsatisfied with the response, he should receive $500,000 and/or have the EMAGES grant reinstated with a three-year extension. Complaint, at 27. Again, DOJ cannot force EMAGES to take federal money.

Nance also falsely claims that the "DOJ attorney reports plaintiff filed his Whistleblower complaints *after* he learned Grant#2018-CY-BX-0028 had been given back," (emphasis added), referring to DOJ's opening brief. Pl. Resp. at 6. To the contrary, as we stated earlier, "Nance, who apparently did not believe the grant award should have been terminated, *earlier* pursued a "whistleblower complaint" claiming "possible fraud or misappropriation of funds" concerning the EMAGES award, alleging that EMAGES misappropriated the grant award. DSF ¶¶ 10 - 12." (emphasis added) Pl. Resp. at 3.

8

Nance's claim that he needs discovery to properly respond to the defendant's motion is without merit, as the court already correctly ruled that discovery is not necessary. Dkt. 44 – 47. Nance has not produced any evidence that he submitted an FTCA administrative claim to DOJ, and he admits he was never employed by DOJ. Accordingly, no amount of discovery would change those uncontested facts. Besides, as Nance is well aware, in order to file a proper Rule 56(d) motion, he must submit an affidavit explaining what facts he seeks to gain through discovery and why they are essential to justify his opposition *to the defendant's motion*, which he has failed to do. *Nance v. NBC Universal Media, LLC*, Case No. No. 16 C 11635, 2019 WL 3410378, at *2 (N.D. Ill. July 29, 2019) appeal dismissed sub nom. *Nance v. NBC Universal Media LLC*, No. 19-2660, 2020 WL 8615363 (7th Cir. Apr. 23, 2020). Nance's declaration identifies facts that he claims he needs discovery on to prove *his claims*, not discovery on facts to oppose the defendant's motion, as is required. *Id.*; *see* Nance Declaration, Dkt. 43-1.

Finally, Nance fails to address the argument that a *federal* agency such as DOJ would not be liable under the *Illinois* Whistleblower Act (assuming Nance is suing DOJ on that claim) because the United States has not waived its sovereign immunity for such claims. Def. Memo. at 9. *FDIC v. Meyer*, 510 U.S. 471, 475, 485-86 (1994); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992) ("waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed"). Accordingly, this claim is barred because Nance cannot point to an "unequivocally expressed" waiver of sovereign immunity (because there is none). *United States v. King*, 395 U.S. 1, 4 (1969).

**IV. Nance Violated the Local Rules.**

Nance, who has a history of violating the local rules, has done so here in several ways. *See Nance v. NBCUniversal Media, LLC*, No. 16-11635, 2019 WL 3410378, at *2 (N.D. Ill. July 29, 2019), appeal dismissed *sub nom*. *Nance v. NBC Universal Media LLC*, No. 19-2660, 2020 WL 8615363 (7th Cir. Apr. 23, 2020); *Nance v. NBC Universal Media, LLC*, No. 16-11635, 2018 WL 1762440, at *7 (N.D. Ill. Apr. 12, 2018). First, as he did in the case cited above, where he was explicitly warned to not file any brief in excess of 15 pages without leave of court, Nance filed not just one 53-page brief but a second 20-page brief, essentially making the same baseless arguments, in violation of LR 7.1. Pl. Mem. (Dkt. 49-2) and Pl. Resp. (Dkt. 49-3); *Nance*, 2018 WL 1762440, at *7 ("Plaintiff is now directed to adhere to the Rule and not file any brief longer than fifteen pages (excluding exhibits) without prior leave of Court. Further noncompliant filings will be subject to being stricken in full.") The court should strike them both for violating Rule 7.1 especially since he was made aware of the rule in his prior case. *Id*.

Second, Nance, who was also provided with the required notice to *pro se* litigants in this case (Dkt. 34), violated Local Rule 56.1 in several ways. First, just as he did in the case cited above, Nance improperly supports many of his denials of defendant's statements in both pleadings. For example, many of his denials are based on citations to emails from himself that essentially rehash his own allegations made here. *See e.g.,* "Plaintiff's Objection To and In Opposition To DOJ, BJA, OJP Statements of Fact," (Dkt. No. 53-1)("PRDSF") ¶¶ 7 – 9, 15. In addition, Nance often uses his responses as an opportunity to *argue* the facts rather than admit or deny them, as the rule requires. *See, e.g*., PRDSF ¶¶ 5, 8 11 – 13; LR 56.1(e)(2). Other denials are unresponsive to the facts at issue. *See, e.g.* PRDSF ¶¶ 6, 14, 15. For example, defendant's statement of facts, paragraph 15 states: "Nance is not an employee of a contractor, subcontractor, grantee, or

subgrantee of DoD or NASA. Complaint, at 5- 6. Nance has also never been employed by the Department of Justice. *Id*." DSF ¶ 15. Nance responded: "Defendants provide multiple statements violating Local Rule 56.1(a)(2). Plaintiff disputes in part this assertion. Plaintiff is a subawardee/subgrantee of Grant #2018-CY-BX-0025. (16,24,31,40) Plaintiff needs discovery pursuant to Rule 26 et seq. to determine employment duties with DOJ pursuant to subawardee/subgrantee. (Ex.32)." PRDSF ¶ 15; *see Nance,* 2019 WL 3410378, at *2.

Nance also improperly cites directly to pieces of the record, rather to a party's Rule 56.1 statement of fact, or a response thereto. *See, e.g.,* Pl. Mem. at 3, 6, 7, 10 – 16, 25, 28; *Madaffari v. Metrocall Companies Group Policy GL*, H21163-0, No. 02 C 4201, 2005 WL 1458071, *1 (N.D. Ill. June 15, 2005) ("[P]arties are required to cite to the numbered paragraphs of their Local Rule 56.1 statements and not to the underlying parts of the record."). "This citation practice is materially improper." *French v. Hartford Life & Acc. Ins. Co.*, No. 05 C 0975, 2006 WL 2247248, *9 (N.D. Ill. Aug. 2, 2006). By sneaking facts into his brief directly from pieces of the record, rather than alleging them through a Rule 56.1 statement of facts, as the rule requires, Nance improperly prevents the defendant from responding to them according to the Rule 56.1 procedure.

Also, as in *Nance v. NBC Universal Media, LLC*, Nance's references "make it difficult for the Court to determine which facts are disputed in this case. Judges are not like pigs, hunting for truffles buried in briefs." *Nance,* 2019 WL 3410378, at *2 *citing United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Furthermore, as the court found in *Nance*, while "courts liberally construe pleadings of individuals who proceed pro se, district courts are not obliged to 'scour the record looking for factual disputes.'" *Id. qouting Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016). Thus, "a court may require strict compliance with Rule 56.1 even for a pro se plaintiff." *Id.* Accordingly, the court should disregard Nance's response to defendant's statements of fact

11

and deem the material facts in defendant's statements admitted. *Id. citing Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006); *Stoltey v. Brown*, 283 F. App'x 402, 405 (7th Cir. 2008).

## Conclusion

For the foregoing reasons, this court should dismiss the claims against the Department of Justice in their entirety, or alternatively grant it summary judgment.

    Respectfully submitted,

    JOHN R. LAUSCH, Jr.
    United States Attorney

    By: s/ Kurt N. Lindland
        KURT N. LINDLAND
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 353-4163
        kurt.lindland@usdoj.gov