UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRED L. NANCE, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 6316 |
| v. | ) | |
| | ) | Judge Alonso |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**FEDERAL DEFENDANT'S RULE 56.1(c)(2) RESPONSE
TO PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS**

Defendant, United States Department of Justice, through its attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, submits in accordance with Local Rule 56.1, the following response to plaintiff's statement of additional facts:

1. Plaintiff's NDAA 3 Whistleblower complaints are validated. (Ex.33)

**Response**: Disputed. Defendant Department of Justice ("DOJ") denies that plaintiff Fred L. Nance's cite to the record supports this allegation. To the extent Nance alleges "validated" to mean the he filed successful whistleblower complaints against DOJ, that statement is disputed. Nance sent a letter dated April 17, 2020, to the Bureau of Justice Assistance alleging, among other things, various accounting irregularities. DSF ¶ 10 – 14. In response, DOJ engaged with EMAGES, the award recipient, to address accounting and reporting issues with its grant award and will conduct an in-depth financial and programmatic review of the award. Pl.'s Ex. 30. Nance's other complaints were denied for jurisdiction or insufficiency. Def.'s Ex. G, I.

2. On December 14, 2016 Congress passed Public Law 114-261 permanently extendedwhistleblower protections. (Ex.10, p.3; Ex.26)

**Response**: Admitted, to the extent Public Law 114-261 made permanent a four-year pilot program enacted at 41 U.S.C. § 4712 that protects employees of grantees and subgrantees who report "gross mismanagement," "gross waste," "an abuse of authority," a "substantial and specific danger to public health or safety," or "a violation of law, rule, or regulation" related to a Federal grant.

3. Defendants EMAGES and Hattie Wash, with the assistance of DOJ employees, violated the DOJ Financial Fraud, Waste and Abuse policies. (Ex. 25, pp.141-145)

**Response**: Disputed. Defendant denies that Nance's cite to the record supports this allegation. Furthermore, defendant denies that it violated any policy. Defendant followed the award termination process and guidelines detailed on page 128 of the DOJ Financial Guide, which provides that award recipients may terminate awards by written notification that includes the reasons for such termination and the effective date. Pl.'s Ex. 25, at 128. EMAGES provided reasons for the award termination and an effective date. DSF ¶¶ 8 – 9.

4. On September 21, 2020 Defendant Hattie stated in an email to plaintiff if she gave Grant#2018-CY-BX-0025 back to DOJ, plaintiff could have it. (Ex.5, ¶1)

**Response**: Disputed. DOJ denies that Nance's cite to the record supports this allegation. Nance's exhibit 5 is an email from himself, and it is inadmissible hearsay. Furthermore, Wash is not authorized to unilaterally assign a grant to anyone since the grant at issue was awarded to only EMAGES. DSF ¶ 1 – 2.

5. DOJ refused to give Grant #2018-CY-BX-0025 to C.L.I.C.K. Services, NFP after defendant Hattie Wash gave it back with false statements in her letter (Ex.5,16,24,28, 31,35,36,40,41,43) violating their own policies. (Ex.25, pp.128-129;24,)

**Response**: Disputed. Defendant denies that Nance's cite to the record supports this allegation. Defendant Wash provided her reasons on behalf of EMAGES for terminating the grant award and an effective date. Such a termination notification complies with 2 C.F.R. 200.340(a)(3) (federal award recipients may terminate an award by sending to the awarding agency "written notification setting forth the reasons for such termination" and the effective date). Def.'s Ex. E, EMAGES Termination letter.

6. The Honorable Congressman Danny K. Davis is the principal sponsor of the Second Chance Act Bill of 2007. (Ex.17)

**Response**: Admitted.

7. Plaintiff facilitated a letter of support from the Honorable Congressman Danny K. Davis apprising him of all the Whistleblower complaints and email to Division Chief Brenda Worthington regarding employment status. (Ex.14,15,16)

**Response**: Disputed. Defendant denies that Nance's cite to the record supports this allegation.

8. Whistleblower disclosures are protected only if made to a member of Congress or a congressional committee, an Inspector General, the Government Accountability Office a federal employee responsible for contract or grant oversight or management at the relevant agency. (Ex. 29, pp.2-3)

**Response**: Disputed, in part. A myriad of whistleblower programs apply to both the public and private sectors, and disclosures under these various programs do not universally need to be made to the particular parties and entities referenced by Nance. To the extent Nance's reference to "whistleblower disclosures" means such disclosures made pursuant to the NDAA whistleblower

3

provisions, defendant admits that covered disclosures may be made to the parties listed by Nance, but covered disclosures may also be made to an authorized official of the Department of Justice or other law enforcement agency, a court or grand jury, or a "management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct." 47 U.S.C. § 4712(a)(2).

9.     Plaintiff is the subrecipient/subgrantee/ referenced in the Subaward Monitoring Policyand the budget. (Ex.24,31,40)

**Response**: Disputed.  Defendant denies that Nance's cite to the record supports this allegation.

10.    Plaintiff discussed his employment status with BJA Division Chief Brenda Worthington and Technical Assistant Joseph Williams via email regarding a subrecipient agreement, subawards, subrecipient monitoring policies, and the Whistleblower Act of 2013, amended 2016 et seq. (Ex.16,24,31,40,43)

**Response**: DOJ admits that Nance discussed via email his status as an EMAGES employee and not as a subrecipient with DOJ. DOJ's employee recommended that Nance resolve his employment status with EMAGES, not with DOJ, and that if Nance wished to be compensated by the award recipient EMAGES via a subrecipient agreement, a budget modification Grant Adjustment Notice (GAN) would need to be submitted to and approved by Defendant. Pl.'s Ex. 16.

11.    C.L.I.C.K. Services, NFP partnered and collaborated as a subawardee/subrecipient with EMAGES, Inc. in applying for Grant #2018-CY-BX-0025. (Ex.3,24,31,40)

4

**Response**: Disputed. Defendant denies that Nance's cite to the record supports this allegation. Nance has not provided evidence that C.L.I.C.K. Services, NFP was approved by DOJ as a subaward under the EMAGES award.

12. C.L.I.C.K. Services, NFP employee, plaintiff Dr. Fred L. Nance Jr., was the Project Director and subrecipient/subawardee responsible for day-to-day oversight, development of the work plan, and implementation of the project for Grant #2018-CY-BX-0025. (Ex.3, p.19;14,24,31,35,36,38,39,40,41,43)

**Response**: Disputed, in part. Nance was not approved as a subrecipient under the grant award in question. The budget submitted by EMAGES (and provided by Nance as an exhibit) does not list C.L.I.C.K. Services, NFP or Nance as a subaward. Pl.'s Ex. 38, at 7 (listing Thomas Bradley CPA and Dr. Karen Witherspoon as subawards but failing to list C.L.I.C.K. Services or Nance as a subaward recipient); *see also* response to paragraph 10. Defendant admits, in part, that Nance was listed as the program director (not "Project Director") of the EMAGES award in the budget submitted by EMAGES in his capacity as an employee of EMAGES. *See* Budget Detail, Pl.'s Ex. 38, at 2.

13. EMAGES, Inc. employee, Hattie Wash, was working 10% to 13% of her time and responsible for the fiscal and management oversight of the project for Grant #2018-CY-BX-0025. (Ex.3, p.19;38)

**Response**: Defendant admits that the project narrative submitted by EMAGES as part of its grant application states that Wash, the CEO of EMAGES and authorized representative for the grant, planned to spend 10% of her time on the grant project. Defendant admits that Exhibit 38 lists Wash as spending 13% of her time on the grant project during the first year of the grant

5

project. Budget Detail, Pl.'s Ex. 38. DOJ denies that Nance's cite to the record supports the remaining allegations in this paragraph.

14. Defendant Hattie Wash, the CEO of EMAGES, will work 10% of her time on the project.(Ex.3, p.19;38)

**Response:** See response to paragraph 13. DOJ admits that Wash stated in the EMAGES project narrative submitted as part of the grant award application that she planned to work 10% of her time on the grant project.

15. Plaintiff's "percentage of time" on all grant management and activities was 100%.(Ex.24,31,38,40,41)

**Response**: DOJ admits that the EMAGES budget detail worksheet submitted to DOJ states that, during the first year of the three-year grant project, Nance would devote 100% of his working time to grant project activities as a full-time EMAGES employee. Pl.'s Ex. 38. DOJ denies that Nance's cite to the record supports the remaining allegations in this paragraph.

16. Plaintiff submitted and applied for Grant #2018-CY-BX-0025. (Ex.39)

**Response**: DOJ denies that Nance's cite to the record supports this allegation. The application was submitted on behalf of EMAGES and Nance submitted the application as an employee of EMAGES. Pl's. Ex. 39, at 2.

17. OJP Division Chief Michael Dever admits EMAGES, Inc. and C.L.I.C.K. Services, NFP described a partnership in the application for Grant #2018-CY-BX-0025. (Ex.30)

**Response:** Disputed. DOJ denies that Nance's cite to the record supports this allegation. As the email in question clearly states, "[a]lthough the application describes a partnership between EMAGES and C.L.I.C.K. Services, you served as an employee of EMAGES, Inc. with no sub-

6

award or partner relationship with C.L.I.C.K. Services. EMAGES, Inc. has chosen to terminate the award per Dr. Hattie Wash's letter outlining the reasons, and BJA will work with EMAGES to close out the award. BJA will conduct an in-depth financial and programmatic review of the award activities between Oct. and Dec. to ensure funds were administered properly, or identify issues requiring resolution." Pl.'s Ex. 30.

18. DOJ employees Michael Dever, Division Chief; Andre Bethea, Senior Policy Advisor;Tracey Willis, Grant Manager; and OIG Inspector General committed gross negligence when they did not address plaintiff's April 17, 2020, August 29, 2020, and September 13, 2020 Whistleblower complaints. (Ex.8,12)

**Response:** DOJ denies that Nance's cite to the record supports this allegation. DOJ denies that any of the activities of DOJ's employees identified by Nance constitute gross negligence, and further denies that DOJ did not address the concerns raised by Nance. As referenced in the email, DOJ stated it will conduct – in part as a response to the concerns raised by Nance – an in-depth financial and programmatic review of the EMAGES award. Pl.'s Ex. 30.

19. Plaintiff sent emails to DOJ employees Michael Dever, Andre Bethea, and Tracey Willis regarding all 3 Whistleblower complaints (Ex.5,13,19,23,30,31).

**Response**: DOJ admits that Nance has sent emails to DOJ's employees concerning his complaints.

20. Defendants Hattie provided false information to why she was giving the grant back to DOJ. (Ex.5,6,15,20,27,30,35,36)

**Response**: Disputed. DOJ denies that Nance's cite to the record supports this allegation. DOJ cannot compel an unwilling grant recipient who has requested termination to perform projects

7

under an award and challenges with a grant award are addressed through the DOJ's internal audit process and during the close-out procedure that occurs after termination. *See, e.g.,* 2 C.F.R. §§ 200.344 (Closeout) and 200.345 (Post-closeout adjustments and continuing responsibilities).

21. DOJ allowed defendant Hattie Wash to give the grant back with only the support of herletter (Ex.28) filled with false claims (Ex.5) without providing plaintiff with a copy so he could or they could validate the content of defendant Hattie's letter.

**Response**: Disputed. Award recipients are permitted to terminate grant awards by sending to the federal awarding agency written notification of the reasons for such termination and the effective date of the termination. 2 C.F.R. § 200.340(a)(4). DOJ processed a valid termination request that was initiated by the authorized representative of the award in question. DOJ denies that Nance's cite to the record supports this allegation.

22. Defendants EMAGES and Hattie understood C.L.I.C.K. Services, NFP and plaintiff were partners/collaborators, and a subcontractor (subaward) of Grant #2018-CY-BX-0025. (Ex.3,16,24,25, pp. 115-120;31,40)

**Response**: Disputed. *See* response to paragraph 17. DOJ denies that Nance's cite to the record supports this allegation.

23. There have been no discovery processes, no depositions in this litigation pursuant to Rule 26 et seq. and LR56(d). (Ex.29)

**Response**: Admitted.

24. Plaintiff provided information, via email, to DOJ employees to substantiate the false claims and information given to them by defendant Hattie Wash via her letter (Ex.28)terminating Grant #2018-CY-BX-0025. (Ex.5)

8

**Response**: Disputed. DOJ has not substantiated any allegedly false claims or information provided by Wash. *See* responses to paragraphs 17 and 20. In response in part to Nance's concerns, DOJ will conduct an in-depth financial and programmatic review of the EMAGES award activities to ensure funds were administered properly or identify issues requiring resolution. *See* Pl.'s Ex. 30.

25. After receiving plaintiff's Whistleblower Act complaints (Ex. 13), DOJ did not investigate defendant Hattie Wash's statements in her letter to them as to why she was terminating the grant and giving it back to DOJ. (Ex.5,28)

**Response**: Disputed. *See* responses to paragraphs 17 and 24. DOJ further disputes Nance's unsupported claim that DOJ had a duty to investigate the reasons provided by Wash when she terminated the EMAGES award.

26. DOJ terminated plaintiff's employment in violation of the Whistleblower Act of 2013,amended 2016 et seq. (Ex.5,24,28,30,31,34,35,36,38,40)

**Response:** Disputed. DOJ denies that Nance's cite to the record supports this allegation. Specifically, Nance provides no evidence that DOJ ever employed him. Nance admits he was never employed by DOJ. *See* Pl.'s Resp. at 1 ("Plaintiff was asked if he was an employee of DOJ. Plaintiff informed the court he was not an employee of DOJ").

27. DOJ employee's refusal to investigate plaintiff's Whistleblower complaints for April 17, 2020, August 29, 2020, and September 13, 2020 was an act of negligence. (Ex.5,13)

**Response**: Disputed. DOJ denies that Nance's cite to the record supports this allegation. *See* responses to paragraphs 17 and 24. Furthermore, the U.S. Office of Special Counsel declined

an investigation because it lacked jurisdiction (Def.'s Ex. G) and the DOJ's Office of the Inspector General declined for substantive reasons (Def.'s Ex. I). *See also* response to paragraph 1 and 36.

28. DOJ knew defendant Hattie Wash was accused of retaliation via emails from plaintiff's protected disclosures. (Ex.12,15,16,29, p.3)

**Response:** Admitted, in part, that Nance made DOJ aware of his complaints concerning Wash. DOJ denies that Nance's cite to the record supports the remaining allegations in this paragraph.

29. After plaintiff made defendant Hattie Wash aware she was misappropriating funds and/or committing fraud, defendant Hattie continued to misappropriate the funds of Grant #2018-CY- BX-0025. (Ex.5,12,16)

**Response**: DOJ denies that Nance's cite to the record supports this allegation..

30. The OIG online complaint page does not provide confirmation on a complaint being filed. (Ex.9)

**Response**: DOJ denies that Nance's cite to the record supports this allegation.

31. DOJ received plaintiff's 1st, 2nd, or 3rd Whistleblower complaints via online and U.S.mail. (Ex.5,8,13,22,34)

**Response:** Admitted, in part. DOJ received Nance's email complaints (Pl.'s Exs. 5, 13, and 22). Admitted that DOJ's OIG received Nance's complaint dated August 28, 2020. DOJ denies that Nance's cite to the record supports the remaining allegations in this paragraph.

32. Plaintiff submitted his August 29, 2020 Whistleblower complaint online (Ex.9) and mailed it to the Office of the OIG (Ex.34), along with his April 17, 2020 Whistleblower complaints that the OIG did not reference in his letter of October 13, 2020. (Ex.8)

**Response:** DOJ denies that Nance's cite to record supports his allegation that he submitted his August 29, 2020 complaint to DOJ's OIG. Pl.'s Ex. 9. *See* responses to paragraphs 1, 27 and OIG letter (declining to open a whistleblower reprisal investigation based on Nance's complaint because his complaint "fail[ed] to allege that [he] made a protected disclosure" and "significant doubt surrounds whether [Plaintiff's] complaint alleges that [he] suffered a personnel action, as contemplated under [41 U.S.C.] § 4712(a)."). Pl.'s Ex. 8.

33. On March 21, 2020 DOJ presented exceptions for all grants during Covid-19 further negating defendant Hattie's letter (Ex.28) submitted to DOJ for her false reasoning giving thegrant back. (Ex.5,27,28)

**Response:** Disputed. DOJ denies that Nance's cite to the record supports this allegation. *See* response to paragraph 20.

34. OIG Assistant Inspector General, Mr. O'Neill, received all 3 Whistleblower complaints via USPS (Ex.34) and via the OIG Hotline. (Ex.8,9)

**Response:** Disputed, in part. Nance's complaint dated August 28, 2020, received a response from DOJ's OIG, which declined to open an investigation. OIG's letter was dated October 13, 2020, which is subsequent to Nance's second OIG complaint dated August 29, 2020, but the response only references Nance's complaint dated August 28, 2020. *See also* responses to paragraphs 1, 27 and OIG letter (declining to open a whistleblower reprisal investigation based on Nance's complaint because his complaint "fail[ed] to allege that [he] made a protected disclosure" and "significant doubt surrounds whether [Plaintiff's] complaint alleges that [he] suffered a personnel action, as contemplated under [41 U.S.C.] § 4712(a)."). Pl.'s Ex. 8; Def.'s Ex. I.

35.     OIG Assistant Inspector General, Mr. O'Neill, declined to open a Whistleblower complaint (Ex. 8) and once finished with the investigation, Mr. O'Neill submitted a report to the agency head and other relevant parties within 180 days of receiving the complaint. (Ex.29, p.4)

**Response:** Disputed in part. See responses to paragraphs 1, 27, and 34. DOJ admits that its OIG evaluated Nance's complaint, found it deficient, and declined to open an investigation. *Id.* DOJ disputes that OIG submitted a 180-day report because OIG was not required to submit a report when it timely responded to Nance and made a determination that it did "not believe that [Plaintiff has] alleged that [he] suffered a reprisal in violation of [41 U.S.C.] § 4712(a)." Pl.'s Ex. 8. The 180-day report would only apply if the OIG had not made the determination that Nance failed to allege a violation of 41 U.S.C. § 4712(a). *See* 47 U.S.C. § 4712(b)(1)("*Unless* the Inspector General determines that the complaint…fails to allege a violation of the prohibition in [41 U.S.C. § 4712(a)]…the Inspector General shall investigate the complaint and, upon completion of such investigation, submit a report of the findings of the investigation to the person, the contractor or grantee concerned, and the head of the agency.") (emphasis added).

36.     OIG Assistant Inspector General, Mr. O'Neill, thoroughly investigated plaintiff's Whistleblower Complaints dated April 17, 2020, August 28, 2020, and September 13, 2020 as stated "We do not believe that you have alleged that you suffered a reprisal in violation of § 4712(a)" in his letter dated October 13, 2020. (Ex.8,13,34)

**Response**: Admitted in part. DOJ's OIG letter references Nance's complaint dated August 28, 2020, and it investigated and responded to that complaint but the letter does not reference Nance's complaints dated April 17, 2020, and September 13, 2020. The complaint dated April 17, 2020, was addressed to the DOJ's Bureau of Justice Assistance (which, as discussed above in

responses to paragraphs 17, 18, 24, and 27, will conduct an in-depth financial and programmatic review of the EMAGES award; *see* Pl.'s Ex. 30) and contains allegations similar to the OIG complaint. DOJ's OIG letter does not reference Nance's complaint dated September 13, 2020, and DOJ denies that Nance's cite to the record supports the allegation that the OIG investigated this September complaint, although the OIG letter that found his complaint deficient was issued subsequently on October 13, 2020. *See* Def.'s Ex. I. DOJ denies that Nance's cite to the record supports the remaining allegations in this paragraph.

37. OIG Assistant Inspector General Mr. O'Neill investigated all protected disclosures under NDAA, which the employer knew or was reasonably on notice that the whistleblower engaged inprotected activity, that there was an adverse action occurred under NDAA, and a causal connection between the disclosure and the personnel action happened. (Ex.29, p.2; 13,34)

**Response:** Disputed. DOJ denies that Nance's cite to the record supports these allegations. See response to paragraph 36.

38. OIG Assistant Inspector General Mr. O'Neill acknowledges the reasonable belief clause pursuant to NDAA that an employee need not prove that the matter disclosed actually was unlawful, gross mismanagement, a gross waste of funds, an abuse of power, or a danger to public health or safety. (Ex.29, p.3)

**Response**: Admit, in part, that Nance's Exhibit 29 (a Thomson Reuters Practical Law Practice Note) states that an "employee must…show that a person standing in the employee's shoes could reasonably believe, given the information available to the employee, that the disclosed information evidences one of the statutory types of wrongdoing." DOJ denies that Nance's cite to the record supports the remaining allegations in this paragraph.

39. A whistleblower need not demonstrate the existence of a retaliatory motive to establish that protected conduct was a contributing factor in a personnel action. (Ex.29, p.3)

**Response:** DOJ admits that Nance's Exhibit 29 (a Thomson Reuters Practical Law Practice Note) contains a statement in conformance with Nance's statement. DOJ denies that Nance's cite to the record supports the remaining allegations in this paragraph.

40. Upon receipt of the OIG's report, the agency head issued an order either denying relief or requiring the contractor to take affirmative action to abate the reprisal or reinstate the whistleblower to the same position with the same terms, conditions, and employment benefits that the whistleblower held pre-retaliation. (Ex.29, p.4)

**Response:** DOJ disputes that the OIG issued the referenced report. As discussed in response to paragraph 35, OIG is not obligated to issue a report where it determined that it did not believe that Nance alleged that he suffered a reprisal in violation of 41 U.S.C. § 4712(a). DOJ denies that Nance's cite to the record supports the remaining allegations in this paragraph.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Kurt N. Lindland
    KURT N. LINDLAND
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-4163
    kurt.lindland@usdoj.gov