Exhibit 24

## MEMORANDUM OF AGREEMENT BETWEEN
## C.L.I.C.K. SERVICES, NFP AND
## THE COOK COUNTY SHERIFF'S OFFICE

This Memorandum of Understanding (hereinafter "MOU") is entered into by and between Counseling Linkages Interventions and Community Kare Services (C.L.I.C.K Services, NFP, hereinafter "C.L.I.C.K."), and the Cook County Sheriff's Office (hereinafter "CCSO"). CCSO and C.L.I.C.K. are referred to herein collectively as the "Parties," and individually as a "Party."

### I. RECITALS

**WHEREAS**, pursuant to 55 ILCS 5/3-6021 the Sheriff shall be conservator of the peace in his or her county, and shall prevent crime and maintain the safety and order of the citizens of that county; and

**WHEREAS**, the CCSO manages and operates the Cook County Department of Corrections (hereinafter "CCDOC"), located at 2700 S. California, Chicago, Illinois, 60608, which houses and provides services to detainees remanded to CCSO custody; and

**WHEREAS**, C.L.I.C.K. Services NFP is a 501c3 not-for-profit organization that provides non-traditional, multicultural, and culturally specific treatment services; and

**WHEREAS**, C.L.I.C.K. upon receipt of funding under the FY2021 Second Chance Act Comprehensive Community-Based Adult Re-Entry Program to provide a twenty-four (24) week mentoring and trauma-informed curriculum paired with digital literacy programming aimed toward workforce development at the CCDOC; and

**WHEREAS**, C.L.I.C.K. intends to provide programming for up to a total of one hundred and fifty (150) CCDOC detainees who have experienced trauma and are currently housed on a CCDOC program tier, starting in October 2021 and for a period of three (3) years; and

**WHEREAS,** C.L.I.C.K. and CCSO desire to collaborate in order to offer mentoring and trauma-informed programming paired with digital literacy programming funded by the FY2021 Second Chance Act Comprehensive Community-Based Adult Re-Entry Program in CCDOC;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements set forth herein, the parties hereby agree as follows:

### II. INCORPORATION OF RECITALS

The abovementioned recitals, as contained in the paragraphs constituting the preambles to this MOU, are full, true and correct and are hereby incorporated into this MOU as if fully restated herein.

### III. SCOPE OF SERVICES

This MOU sets forth the respective obligations of the parties hereto. The Parties agree to collaborate in order to offer programming funded by the FY2021 Second Chance Act Comprehensive Community-Based Adult Re-Entry Program grant (hereinafter the "Program") on-site at CCDOC to custodial detainees who have experienced trauma and are currently housed on a CCDOC program tier. Programming provided to CCDOC detainees may include, but is not limited to, mentoring and trauma-informed curricula, as well as digital literacy programming aimed toward workforce development, in accordance with the terms set forth

herein. As such, this MOU governs all programs offered by C.L.I.C.K. at the CCDOC.

**C.L.I.C.K.:**

1. C.L.I.C.K. agrees to collaborate with CCDOC Program Department staff on all matters pertaining to Program operations and logistics. This includes, but is not limited to, the following: eligibility and selection criteria for Program participation, Program length, Program size, Program scheduling, Program syllabus, and content of any waivers or intake forms to be completed by Program participants. The length, scheduling, and size of the Program may be modified in the course of this MOU by mutual agreement of the Parties.

2. C.L.I.C.K. shall provide the CCSO reports, upon request, that contain the following information about services C.L.I.C.K. has provided under the Program: number of detainees served, number of hours per week of programming, Program highlights, Program evaluations, and any other information requested by the CCSO in order to assess and improve the Program.

3. C.L.I.C.K. shall attend quarterly Program Review meetings with CCDOC administration. These meetings are to be scheduled collaboratively and attended by C.L.I.C.K. staff.

4. C.L.I.C.K. shall provide sufficient staff to oversee and manage each program, including sufficient on-site staff to supervise and lead all program sessions.

5. C.L.I.C.K. a designate a dedicated agent or staff member to coordinate and act as its liaison to the CCSO. The curriculum for each program shall be mutually agreed upon by this liaison and the CCSO a regular exchange of information shall be maintained by both Parties. C.L.I.C.K. shall notify the CCSO in writing of any change or proposed change of the person(s) responsible for coordinating the Program.

6. C.L.I.C.K. represents that all relevant staff members are appropriately qualified, certified and/or licensed to perform the services set forth in this MOU. C.L.I.C.K. will provide the CCSO with copies of evidence of such qualifications, certifications and/or licensures, upon request.

7. A criminal background check and a drug screen will be required of all C.L.I.C.K. personnel involved in the Program prior to the commencement of the Program. No C.L.I.C.K. staff or personnel with a failed criminal background check or drug screening will be allowed to participate in the services provided by C.L.I.C.K. at CCDOC.

8. C.L.I.C.K. staff and agents shall complete all required training hours provided by the CCSO in order to maintain annual access to the CCDOC.

9. C.L.I.C.K. agrees to comply with all CCSO requirements, policies, rules and regulations during performance of services for the Program and at all times while in CCDOC.

10. C.L.I.C.K. understands and agrees that detainee participation in the Program will not influence current or future court proceedings, nor shall participation entitle detainees to sentencing credit. At no time shall Program personnel communicate or promise any false benefits of the Program to detainees, including by providing a certificate of program completion without prior approval from the CCSO.

**CCSO:**

1. CCSO agrees to make CCDOC facilities available to C.L.I.C.K. staff members at the CCDOC in order to facilitate the planning and execution of the Program for the course of the term of this MOU and any subsequent Amendments.

2. CCSO shall provide basic orientation and required training, including information on CCDOC Policies & Procedures, to C.L.I.C.K. employees, Program partner staff, interns, and volunteers.

3. C.L.I.C.K. staff will remain subject to the authority, policies, and regulations imposed by C.L.I.C.K. and, during periods of practical performance of services for the Program, C.L.I.C.K. staff will be subject to all rules and regulations of the CCDOC and imposed by the CCDOC on its employees and agents with regard to any applicable administrative policies, standards, and practices of the CCDOC.

4. While at the CCDOC, C.L.I.C.K. staff shall not replace CCDOC staff, and are not to render services except as identified and as authorized by the CCSO pursuant to this MOU. Any such direct contact between C.L.I.C.K. staff and a detainee shall be under the proximate supervision and oversight of the CCDOC.

5. CCSO shall designate a liaison responsible for coordinating the Program within CCDOC. That person shall maintain regular contact with the C.L.I.C.K. designated liaison to assure mutual participation in and oversight of the Program. The CCSO shall notify C.L.I.C.K. in writing of any change or proposed change of the person(s) responsible for coordinating the Program.

6. CCSO shall conduct required background checks for any C.L.I.C.K. potential employee, intern, or volunteer as well as any/all necessary operational matters related to access to the CCDOC.

IV. **ADDITIONAL RESPONSIBILITIES**

A. **Resources and Supplies.** C.L.I.C.K. will provide all funding for the Program. C.L.I.C.K. agrees to provide financial, material, and labor resources for the Program, and agrees to provide the following financial, material and labor resources for the Program delivery: (1) General operating expenses, (2) funding for classroom materials, and (3) Hiring of C.L.I.C.K. staff. CCSO shall bear no cost or financial responsibility for maintenance of the Program.

B. **Publicity.** Requests for media contact will be evaluated by the CCSO on a case-by-case basis. C.L.I.C.K. agrees to refrain from publication of any press release or other announcement with respect to this MOU or the transactions contemplated hereby without the consent of the CCSO, unless a press release or announcement is required by law. The Parties agree to an open exchange of information, and the CCSO agrees that consent to publicize shall not be unreasonably withheld.

C. **Compliance with Privacy Laws.** C.L.I.C.K. agrees to abide by and require that its staff and agents abide by all applicable state and federal laws, rules and regulations regarding detainee/patient privacy. C.L.I.C.K. staff and agents shall be required to comply with the CCSO's policies and procedures regarding the confidentiality of detainee information and the use of all such information. The parties will notify one another if there are known breaches of

this confidentiality. C.L.I.C.K. staff and/or agents shall obtain prior written approval of CCSO before publishing any material relative to the Program. Further, if approved by CCSO in writing prior to use, C.L.I.C.K. shall require that staff and/or agents de-identify all documents created and/or utilized for purposes outside of CCDOC. This shall include, at a minimum, removal of detainee name, date of birth, address, medical record number, insurance information, social security number and other personal information that could be used to identify a detainee/patient.

    D. **Removal of C.L.I.C.K. Personnel.**  The CCDOC may immediately remove any C.L.I.C.K. personnel from the CCDOC's premises for behavior that the Facility deems at its sole discretion to be a threat to the security, health, and/or welfare of its detainees, staff members, visitors, or operations. In such event, the CCDOC shall notify C.L.I.C.K. in writing of its actions and the reasons for its actions as soon as practicable. If the CCDOC desires to remove a staff member for any other reason, it shall notify C.L.I.C.K. in writing of the reasons for the removal and shall consult with C.L.I.C.K. before removing the staff member.

V. **SECURITY TERMS AND CONDITIONS**

CCSO reserves the right to cancel or postpone access to CCDOC facilities at any time due to the determination of an emergency situation in any part of the CCDOC complex, solely at the discretion of the CCSO.  C.L.I.C.K. agrees to obey directives from identified sworn CCSO personnel at all times while at on the CCDOC complex. Violation of this provision will terminate this MOU immediately.

VI. **EMPLOYMENT STATUS**

No C.L.I.C.K. employee, staff member, or agent of C.L.I.C.K. under this MOU shall in any way be considered an employee or agent of the CCSO nor shall any such student, staff, C.L.I.C.K. employee or agent be entitled to any fringe benefits, Worker's Compensation, disability benefits or other rights normally afforded to employees of the CCSO.

VII. **INDEMNIFICATION**

C.L.I.C.K. covenants and agrees to indemnify and hold harmless the CCSO and its commissioners, officials, employees, agents, representatives, heirs, successors and assigns, from and against any and all claims, losses, damages, causes of action, costs, expenses, attorney's fees and expenses, losses, and liabilities incurred or suffered directly or indirectly from or attributable to any claims arising out of or incident to the performance or nonperformance of this MOU by C.L.I.C.K., or any claims arising out of the acts or omissions of the officers, agents, or employees of C.L.I.C.K..

VIII. **TERM AND TERMINATION**

This MOU shall become effective upon the date of written acceptance by all parties hereto ("Effective Date") and shall terminate one (1) year from the Effective Date ("Initial Term"). This MOU may be extended for an additional one (1) year term (a "Renewal Term") as agreed by the parties in writing. Either party may terminate this agreement at any time, with or without cause, for any reason by providing a thirty (30) day written notice of termination to the other party.

IX. **GENERAL NOTICE**

All notices required pursuant to this MOU shall be in writing and addressed to the parties at their respective addresses set forth below. All such notices shall be deemed duly given if hand delivered or if deposited in

the United States mail, postage prepaid, registered or certified, return receipt requested. Notice as provided herein does not waive service of summons or process.

        **CCSO:**        Cook County Sheriff's Office
                            50 W Washington St. Ste. 704
                            Chicago, Illinois 60602
                            Attn: General Counsel

        **C.L.I.C.K.:**      C.L.I.C.K., Inc.
                            17239 Evans Ave.
                            South Holland, IL 60473
                            Attn: Dr. Fred Nance Jr.

**X.    GENERAL CONDITIONS**

    A. **Governing Law.** This Memorandum shall be construed in accordance with the laws of the State of Illinois.

    B. **Compliance with Laws.** C.L.I.C.K. shall comply with all applicable laws, ordinances, rules and regulations and executive orders of the federal, state and local government now existing or later in effect, that may in any manner affect the performance of this MOU.

    C. **Assignment.** Neither party may assign or transfer the responsibilities or agreement made herein without the prior written consent of the non-assigning party, which approval shall not be unreasonably withheld.

    D. **Amendment.** This Memorandum may be amended or supplemented in writing, if the writing is signed by both of the parties obligated under this Memorandum.

    E. **Severability.** To the extent that a court of competent jurisdiction shall determine that any part or provision of this MOU is unenforceable as a matter of law, the portion deemed unenforceable shall be severable and the remainder of the MOU shall survive.

    F. **Waiver.** No term or provision of this MOU shall be deemed waived and no breach shall be deemed consented to unless such waiver or consent is set forth in writing signed by the party claimed to have waived or consented. No waiver or consent shall be deemed a waiver of, or consent to, a subsequent breach.

    G. **Entire Memorandum.** This Memorandum constitutes the entire agreement between the Parties, merges all discussion between them and supersedes and replaces any and every other prior or contemporaneous Memorandum, negotiation, understanding, commitments and writing with respect to such subject matter here.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**IN WITNESS THEREOF, the Parties hereto have caused this MOU to be executed by their authorized representatives.**

For C.L.I.C.K.:

_____  
Dr. Fred Nance Jr., President & CEO  
C.L.I.C.K.

Date: 4/23/2021

For CCSO:

_____  
Nicholas Scouffas, General Counsel  
Cook County Sheriff's Office

Date: 4/30/2021