## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FRED L. NANCE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 6316 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| UNITED STATES DEPARTMENT | ) | |
| OF JUSTICE, BUREAU OF | ) | |
| ASSISTANCE, OFFICE OF JUSTICE | ) | |
| PROGRAMS, EMAGES, INC., | ) | |
| HATTIE WASH, and | ) | |
| THOMAS BRADLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Believing he had been squeezed out of a grant for having blown a whistle, plaintiff Fred

L. Nance filed this suit against the government and three private defendants. Before the Court

are two motions, one filed by the private defendants and one by the government defendants. For

the reasons set forth below, the Court grants the government's motion and grants in part and

denies in part the private defendants' motion.

## I.    BACKGROUND

The following facts are from plaintiff's complaint, and the Court takes them as true for

purposes of the motions to dismiss.

Plaintiff Fred L. Nance ("Nance"), who has a Ph.D. in human services, is employed by

C.L.I.C.K. Services, NFP, where he is President and Chief Executive Officer. (Complt. p. 5).

Plaintiff was involved with the three private defendants in connection with a federal grant,

namely #2018-CY-BX-0025 (the "Grant"). Defendant Hattie Wash ("Wash"), who is the

President and CEO of EMAGES, Inc., was the fiduciary partner on the Grant, and defendant Thomas Bradley ("Bradley") was the certified public accountant for the Grant.

The Grant came about in the fall of 2018. In May of that year, plaintiff and Wash had submitted a proposal under the Second Chance Act Comprehensive Community-based Adult Reentry Program. In September 2018, Wash and plaintiff learned they had been awarded the Grant, which would run from October 1, 2018 through September 20, 2021.

Plaintiff and Bradley then participated in an online training program on financial management. There, plaintiff learned that grant awardees were expected to ensure that they did not draw down more federal funds than they could spend within the following ten days. By February 2020, defendants were approved to draw down federal funds for the Grant.

Plaintiff quickly grew concerned about how the funds were being drawn down. On or about February 26, 2020, plaintiff received a copy of the monthly drawdown and learned that Wash had drawn down funds to pay Dorothy Collins, who was no longer working on the Grant. Plaintiff later noticed that Wash had also drawn down funds on March 30, 2020 to pay Dorothy Collins. Plaintiff complained to Wash, who told him to stay in his own lane. Plaintiff complained to Bradley, who said he would not discuss the matter except in a meeting with both plaintiff and Wash.

Plaintiff was not through complaining. Plaintiff next complained to a member of Congress. Then, on April 17 or 18, 2020 (plaintiff uses both dates at different places in his complaint), plaintiff sent the first of three of what he describes as whistleblower complaints. Specifically, plaintiff wrote a letter addressed to the Bureau of Justice Programs and stated, among other things:

> I want to report possible fraud or misappropriation of funds regarding Grant #2018-CY-BX-0025. . . .

* * *

> The reasoning for writing this report at this time is because of what I discovered in April of 2020 and having working knowledge of the event being described. I am not part of any fraudulent scheme. I received a copy of our Second Chance Act drawdown report, dated March 30, 2020, which listed Dorothy Collins, a clerk who resigned on or about January 16, 2020. When I inquired of Dr. Wash about drawing down monies for someone who did not work for the program, she insulted and demeaned me as she stated I knew nothing about accounting.

[Docket 33-6].[1]

On August 21, 2020, Wash told plaintiff (by email) that she was willing to give up the Grant on account of plaintiff's whistleblowing complaints. At some point (the date is not clear from plaintiff's complaint), Wash gave back the Grant and told the Department of Justice and the Bureau of Prisons that she was giving it back due to the coronavirus pandemic.

On August 28, 2020, plaintiff submitted what he labels his second whistleblower complaint. Specifically, plaintiff sent to the Department of Justice's Office of Inspector General a letter in which he stated, in relevant part:

> Dr. Nance receives a copy of the drawdown every month. On January 21st, February 26th, and March 30, 2020 Dr. Wash drew down funds for a person who was not employed. The person, Dorothy Collins resigned on the 1st week of January 2020. When I brought this issue to Dr. Wash she threatened me with giving up the grant if I told our Grant Manager. I informed the Grant Manager and Mr. Andre Bethea, Senior Policy Advisor for the Second Chance Act. I informed the Grant Manager and Mr. Bethea I was reporting this incident pursuant to the Whistleblower Act. I did not receive a response from them.

> We provide 7 groups with a trauma informed and mentoring curricula with this grant. When the COVID 19 crisis hit, we lost 2 groups, which were with the Cook County Jail and the Illinois Department of Corrections Special Needs Unit. We budgeted 10 mentors for $2800.00 a month. The groups we lost were budgeted for 4 mentors at around $500.00 a month. The payroll I submitted for

---

[1] Plaintiff alleges the existence of his three whistleblower complaints in his complaint. Plaintiff did not attach these documents to his complaint, but the government filed the first two in connection with its motion to dismiss. The Court may consider those documents without converting the motion to dismiss to a motion for summary judgment, because they are referred to in plaintiff's complaint and are central to plaintiff's claims. *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 778 (7th Cir. 2007).

March $2600.00; April $2100.00; May $1800.00; June $2300.00; and July $2100.00. Dr. Wash drew down $2800.00 for each of these months. Dr. Wash drew down $1160.00 from October of 2019 thru July of 2020 for our evaluator without receiving an invoice from her. Dr. Wash would ask her for an invoice when we talked to her, which was after she drew down money for her. I informed Dr. Wash she could not draw down funds for a particular month and not spend everything she drew down. Dr. Wash told me to mind my business and stay in my lane. I reminded Dr. Wash, several times, I am peer reviewer and know how this system works. I informed her there can be no money left over in her bank account. Dr. Wash continued to threaten me stating if I reported it she would give up the grant. I told her I would take it up.

I informed our Technical Assistant, Joseph Williams, providing him emails and documentation. Mr. Williams informed me via email he would send all of my documentation to the Grant manager and his higher ups. I informed our Grant Manager and Mr. Bethea. Dr. Wash continued to retaliate against me telling me I cannot supervise the Support Clerk for our Grant. Our Support Clerk's job description clearly states the clerk reports to me. This Support Clerk handles Dr. Wash's financial records.

On August 26, 2020 Dr. Wash submitted a GAN stating she wanted to take me off the Grant as one of the Point of Contact (POC). On August 28, 2020 our Grant Manager, Tracey Willis, approved Dr. Wash's GAN taking me off as POC. Taking me off as POC limits me from performing my duties. Dr. Wash retaliated against me for filing my complaints with our Grant Manager, the Technical Assistant, and Mr. Bethea. I have detailed emails and documents to support my complaint. I have been litigating for over 20 years. I am not a lawyer.

[Docket 33-8].

On September 13, 2020, plaintiff sent what he labels his third whistleblower complaint. (Complt. at p. 6). He did not attach the document to his complaint or include other details about his September 13, 2020 complaint.

Plaintiff alleges that once Wash gave back the Grant, plaintiff could no longer work on it. Plaintiff asserts that "all defendants" retaliated against him in violation of the National Defense Authorization Act, 41 U.S.C. § 4712, and 740 ILCS 174. Plaintiff also asserts that he "files suit" against the government defendants "under the FTCA," i.e., the Federal Tort Claims Act. (Complt. at p. 1).

The following facts are related to the government's motion for summary judgment.[2]

The parties dispute whether plaintiff filed an administrative complaint before filing this case under the Federal Tort Claims Act. The government put forth evidence that a search of its computerized database of administrative tort claims did not reveal any administrative claim by plaintiff. Plaintiff, who asserts that each of his whistleblower complaints was an administrative tort claim, submitted evidence that, on September 13, 2020, he submitted an online complaint (i.e., his third whistleblower complaint) to the United States Department of Justice, Office of the Inspector General. That complaint stated, among other things:

> Dr. Wash, and others, are retaliating against me for filing Whistleblower complaints. The retaliation prompting this 3rd Whistleblower complaint is Dr. Wash demanding I copy her on every email I send out to staff and our network partners **after** I sent an email on September 9, 2020 to her copying the OJP Grant Manager, Senior Policy Advisor, and Division Chief. As you will see in the emails and responses, I was glad she wanted to re-engage but she must respond/reply to my emails, if for no other reason having professional respect for me and the Grant. . . .
>
> During this Coronavirus episode and the Illinois Stay at Home Order, along with Dr. Wash not opening her facility for all staff and participants for this grant, I

---

[2] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules."). Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Furthermore, the Court does not consider facts that parties failed to include in their statements of fact, because to do so would rob the other party of the opportunity to show that the fact is disputed.

The Court notes that plaintiff requested, pursuant to Rule 56(d), an opportunity to take discovery before responding to defendant's motion for summary judgment. The Court denied the motion in open court, because the only relevant facts (namely, whether plaintiff had been a government employee and whether plaintiff had filed an administrative claim) were within the plaintiff's personal knowledge.

have been working from home as other staff of EMAGES and staff for this grant. Dr. Wash has not issued a plan for opening her facility as required in Illinois so all staff and participants will know we are in a safe environment, as she has promised.  . . .

I am in the protected class of individuals susceptible to the Coronavirus.  Dr. Wash is aware I had a heart attack in July of 2011; I have hypertension and abdominal issues; I have a registered Emotional Support Animal (Oakley, 5-year old Chihuahua), which I had before writing the proposal for this grant and which I brought with me during the proposal writing processes and every day at work when we received the grant on October 1, 2018; and I have a Doctor's prescribed Nurse visiting me at home weekly as of July 31, 2020.  Due to my blood pressure levels and other issues contained in my Whistleblower complaints, I have shared with my Nurse the trauma I am experiencing due to the harassment, intimidation, and the nefarious behavior of Dr. Wash and others who may be encouraging her behaviors.  My Nurse's progress notes reflect the anxiety and trauma suffered under this emotional distress.

[Docket 49-16 at 7-8].  At no point in the September 13, 2020 complaint does plaintiff request money.  [Docket 49-16 at 7-13].

It is undisputed that plaintiff has never been an employee of the Department of Justice.

## II.    STANDARD

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.  To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Allegations that are as consistent with lawful conduct as

they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

## III.    DISCUSSION

### A.    Private defendants' motion

The three private defendants, EMAGES, Inc., Wash and Bradley, filed a joint motion.

#### 1.    Bradley

Defendant Bradley argues that plaintiff's claims against him should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, because plaintiff has not alleged that plaintiff was Bradley's employee or that Bradley was plaintiff's employer.

Bradley's point is well taken. Plaintiff brings Counts I and II under the National Defense Authorization Act (NDAA), 41 U.S.C. § 4712. That statute states, in relevant part:

> An *employee* of a contractor, subcontractor, grantee, or subgrantee or personal service contractor *may not be discharged, demoted, or otherwise discriminated against* as a reprisal for disclosing to a person or body described in paragraph (2) information that the *employee* reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of federal funds . . .

41 U.S.C. § 4712(a)(1) (emphasis added).  The plain language of the statute makes clear that *only* an *employee* has a claim under that provision.  The statute does not, by its terms, extend its protection to an independent contractor, and the Court is not aware of any case that held the statute's protections extend to non-employees.  Plaintiff does not allege that he is an employee of Bradley.  Instead, plaintiff alleges in his complaint (Complt. at p. 5) and confirms in his brief [Docket 51-1 at 5] that he is an employee of C.L.I.C.K Services, NFP.

Nor does plaintiff allege that Bradley is his employer.  What plaintiff alleges about Bradley is that Bradley is an independent contractor of EMAGES.  [Docket 51-1 at 12].  Even if plaintiff had alleged himself to be an employee of EMAGES (which he did not), he still could not sue Bradley without alleging that Bradley had the power to discharge, demote or otherwise discriminate against him.  *Delebrau v. Danforth*, 743 Fed. Appx. 43, 44 (7th Cir. 2018) ("The Oneida Housing Authority is Delebrau's employer, but she sued only its employees in their personal capacities.  The statute does not reach them because in the *personal* capacities they cannot discharge, demote, or discriminate in employment.").  Plaintiff has not alleged (plausibly or otherwise) that he is Bradley's employee or that Bradley is his employer.  Accordingly, Counts I and II are dismissed without prejudice as to Bradley.

In Count III, plaintiff asserts a claim under the Illinois Whistleblower law.  That statute provides:

> An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

740 ILCS 174/15(b). Under the statute, employer is defined as "any individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State . . .; and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees." 740 ILCS 174/5. That definition leaves room for individual liability under the statute when the individual is acting within the scope of authority on behalf of an employer.

Plaintiff, though, has not alleged that Bradley was acting on behalf of plaintiff's employer, so this claim, too, must be dismissed for failure to state a claim. Count III is dismissed without prejudice as to defendant Bradley.

In Count IV, plaintiff asserts a claim for retaliation. Under Illinois law, "an *employer* may discharge an *employee*-at-will for any reasons or for no reason . . . except for when the discharge violates a clearly mandated public policy." *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 19 (Ill. 1998) (emphasis added) (quoting *Barr v. Kelso-Burnett Co.*, 106 Ill.2d 520, 525 (Ill. 1985)). Bradley argues that such claims can be made only against an employer, and the Court agrees. *Buckner*, 182 Ill.2d at 21 ("Logically speaking, only 'the employer' has the power to hire or fire an employee. Obviously, an agent or employee may carry out that function on the employer's behalf, but it is still the authority of *the employer* which is being exercised. If the discharge violated public policy, it is the employer who is rightly held liable for damages."). Because plaintiff has not alleged (plausibly or otherwise) that Bradley was his employer, Count IV is dismissed without prejudice as to Bradley.

In Count V, plaintiff asserts a claim for "hostile environment." Plaintiff clarifies in his brief [Docket 51-1 at 18-19] that he brings this claim under Title VII of the Civil Rights Act of 1964. The problem with this claim, again, is that plaintiff has not alleged that Bradley was his

employer.  Plaintiff can bring a Title VII claim against only an employer.  Supervisors and co-workers are not liable under Title VII.  *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) ("[A] supervisor does not, in his individual capacity, fall within Title VII's definition of employer[.]"); *see also Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017) ("[T]here is no individual liability under Title VII.").  Accordingly, Count V is dismissed without prejudice as to Bradley.

Finally, in Counts VI and VII, plaintiff claims emotional distress and special damages, respectively.  As Bradley points out, these are prayers for relief, not causes of action.  Because plaintiff has not stated a claim against Bradley, these prayers for relief, too, are dismissed as to Bradley.

For these reasons, plaintiff's claims against Bradley are dismissed without prejudice and with leave to amend.

### 2.    Wash and EMAGES, Inc.

Wash and EMAGES, Inc. move, pursuant to Rule 12(e), for a more definite statement. Rule 12(e) of the Federal Rules of Civil Procedure allows a party to "move for a more definite statement of a pleading" when that pleading "is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed.R.Civ.P. 12(e).

In their motion, Wash and EMAGES, Inc. argue that plaintiff's complaint was vague, because it seemed to be alleging both that plaintiff was an employee of Wash and EMAGES, Inc. and also that he was not an employee of Wash and EMAGES, Inc.  In response, plaintiff "state[d], emphatically, that he is an employee of C.L.I.C.K. Services, NFP."  (Plf. Brief at 28/Docket 51-1 at 28).  Plaintiff also said, "Plaintiff does not claim defendants . . . EMAGES,

Inc, Hattie Wash, or Thomas Bradley terminated his employment as related to an employee/employer relationship."  (Plf. Brief at 5/Docket 51-1 at 50).

Given those statements, Wash and EMAGES, Inc. replied that their motion for more definite statement is moot (which is to say, they already have the clarification they need). Accordingly, that portion of the motion is denied as moot.  Wash and EMAGES, Inc. request leave to file a motion to dismiss (now that they understand plaintiff's claims).  Leave is granted: these defendants may file a motion to dismiss, but they should wait until *after* plaintiff files an amended complaint.

### B.  Government's motion

#### 1.  Exhaustion

The government argues that plaintiff's FTCA claim must be dismissed, because plaintiff failed to exhaust his administrative remedies.  Failure to exhaust is generally an affirmative defense.  *Jones v. Bock*, 549 U.S. 199 (2007).[3]  A plaintiff need not plead around an affirmative defense, and the Court may not dismiss under Rule 12(b)(6) on the basis of an affirmative defense unless the plaintiff alleges, and thus admits, the elements of the affirmative defense. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014); *United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003).  The government seeks dismissal or, in the alternative, summary judgment.

---

[3]The exhaustion requirement of the Federal Tort Claims Act is a limitation on the waiver of sovereign immunity.  It is not clear that it is a true affirmative defense, around which a plaintiff need not plead.  *Compare Chronis*, 932 F.3d 544 (dismissing for failure to exhaust); *with Gray v. United States*, 723 F.3d 795, 798 & 799 n. 1 (7th Cir. 2013) (describing exhaustion as "a condition on the government's waiver of sovereign immunity" and as an "affirmative defense").  The court need not decide, because the outcome is the same whether the claim is dismissed under Rule 12(b)(6) or 56.

Title 28 U.S.C. § 2675(a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency in writing* and sent by certified or registered mail.

28 U.S.C. § 2675(a) (emphasis added). By regulation, a claim is "deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident*, accompanied by a claim for money damages in a sum certain* for an injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident . . ." 28 C.F.R. § 14.2(a); *see also Kanar v. United States*, 118 F.3d 527, 530 (7th Cir. 1997) ("[W]e treat 'claim' as a statutory term that needs a definition, and we see no reason why that definition may not come from a regulation issued under statutory authority."). A claimant need not "comply with 'every jot and tittle'" as "long as the proper agency had the opportunity to settle the claim for money damages before the point of suit[.]" *The Smoke Shop, LLC v. United States*, 761 F.3d 779, 787 (7th Cir. 2014). "[A] claimant who *neither* makes it clear that she is demanding money from the agency *nor* says how much she is demanding thwarts the settlement process envisioned by the FTCA," and, thus, his claim must be dismissed. *Chronis v. United States*, 932 F.3d 544, 547 (7th Cir. 2019).

Here, the parties dispute whether plaintiff exhausted. The government has no record of receiving a proper claim. Plaintiff, for his part, argues that his three whistleblower complaints constituted claims under the FTCA. The Court cannot agree with plaintiff. Even assuming the appropriate agency had received those three documents in the appropriate manner, not one of those documents included a demand for money, let alone for a sum certain. Without that, none

of his letters qualifies as a claim under the FTCA, and plaintiff failed to exhaust his remedies before filing suit.

Accordingly, plaintiff's FTCA claim is dismissed.[4]

## 2. Remaining claims

The government moves to dismiss the remaining claims, because, among other things (like sovereign immunity), plaintiff has not alleged that the government was his employer. The Court agrees. As the Court explained above, an entity cannot be liable on those claims unless it was plaintiff's employer. Plaintiff has not alleged that, so the claims must be dismissed for failure to state a claim. Furthermore, as plaintiff notes in his brief, [Docket 49-2 at 46], plaintiff admitted in open court that he was not an employee of the Department of Justice. Thus, plaintiff cannot cure this defect by amendment. The remaining claims against the government are dismissed with prejudice.

---

[4] This dismissal is without prejudice to plaintiff's right to file an administrative claim with the appropriate agency, *see Chronis*, 932 F.3d at 549, to the extent the statute of limitations has not run. Plaintiff may not, however, replead the claim in this case.

## IV.    CONCLUSION

For the reasons set forth above, the Court grants the government's motion [31] to dismiss. Plaintiff's FTCA claim is dismissed without prejudice (and without leave to amend).  The remaining claims against the government are dismissed with prejudice.  The Court grants in part and denies in part the private defendants' motion [40] to dismiss.  The Court dismisses without prejudice all claims against defendant Bradley.  Plaintiff is granted leave to file by July 9, 2021 an amended complaint against defendants Wash, EMAGES, Inc. and Bradley, should he so choose.  Defendants' deadline to answer or otherwise plead is August 6, 2021.

SO ORDERED.                                   ENTERED:   June 8, 2021

_____
JORGE L. ALONSO
United States District Judge