# Exhibit D

1          IN THE UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
3

4    FRED L. NANCE, JR.,              )
                                      )
5                   Plaintiff,        )
                                      )
6          vs                        )   No. 1:20-cv-06316
                                      )
7    EMAGES, INC., and HATTIE WASH,   )
                                      )
8                   Defendants.       )

9

10

            **The DEPOSITION of FRED L. NANCE, JR.,**
11
**Ph.D.**, called by the Defendants for examination, taken
12
pursuant to notice and pursuant to the Rules of the Code
13
of Civil Procedure for the United States District Courts
14
pertaining to the taking of depositions, taken before
15
CYNTHIA M. STIFTER, Certified Shorthand Reporter and
16
Notary Public within and for the County of Cook and
17
State of Illinois, at 111 East Wacker Drive, Suite 2600,
18
Chicago, Illinois, on Monday, the 8th day of May, A.D.,
19
2023, at 10:20 o'clock a.m.
20

21

22

23

24

A P P E A R A N C E S:


            DR. FRED L. NANCE, JR., Ph.D.
            (17239 Evans Avenue
             South Holland, Illinois  60473-3436
             (708) 921-1395
             frednance@clickservices.org),

                Appeared pro se;



            TAFT STETTINIUS & HOLLISTER LLP
            BY:  MR. ADAM W. DECKER
            (111 East Wacker Drive
             Suite 2600
             Chicago, Illinois  60601
             (312) 527-4000
             adecker@taftlaw.com),

                Appeared on behalf of the Defendants.




    REPORTED BY:  CYNTHIA M. STIFTER, C.S.R.

<u>**I N D E X   O F   E X A M I N A T I O N S**</u>

                                          <u>**PAGE**</u> <u>**LINE**</u>

Examination by Mr. Decker...................... 4    7

* * * * * *

<u>**C E R T I F I E D   Q U E S T I O N S**</u>

                                          <u>**PAGE**</u> <u>**LINE**</u>

Number 1...................................... 5    12
Number 2...................................... 13   10

* * * * * *

<u>**E X H I B I T S**</u>

(No exhibits were marked.)

1                    (Witness duly affirmed.)

2

3              FRED L. NANCE, JR., Ph.D.,

4     called as a witness herein, having first duly affirmed,

5     was examined and testified as follows:

6

7                         EXAMINATION

8                             BY

9                         MR. DECKER:

10

11         Q.    Good morning.  Could you, please, state your

12     name, and spell your last name for the record?

13         A.    Dr. Fred L. Nance, Junior, N-a-n-c-e.

14         Q.    Good morning, Dr. Nance.  Today we're here for

15     your deposition in the case you filed against EMAGES and

16     Dr. Hattie Wash.  Have you ever been deposed before?

17         A.    Yes.

18         Q.    How many times approximately?

19         A.    It's not relevant to this case.

20         Q.    Dr. Nance, so today relevance objections are

21     not a valid basis to object.  You can object for the

22     purposes of the record, but I'm still going to ask that

23     you answer the question.

24         A.    I object.

1       Q.      Approximately how many times have you been

2       deposed before?

3       A.      I object.

4       Q.      Are you refusing to answer the question?

5       A.      I object.  I can't recall.

6       Q.      Are you refusing?

7       A.      I can't recall.  I'm not going to answer it

8       the way you want me to answer it.  That's not how this

9       is going to happen today.

10      Q.      Dr. Nance --

11      A.      I can't recall.  That's it.

12      Q.      I'm asking you how many times you've        ***

13      been deposed before?

14      A.      I can't recall.

15      Q.      Can you actually not recall, or are you

16      refusing to answer?

17      A.      What did I say?

18      Q.      Dr. Nance --

19      A.      What did I say?  I can't recall.

20      Q.      Dr. Nance, this is my opportunity to ask you

21      questions.

22      A.      And it's my opportunity to answer.

23      Q.      Correct.  And you just took an oath to tell

24      the truth and nothing but the truth.

1          A.    I can't recall.

2          Q.    If you're refusing to answer, I would like to

3    call Magistrate Judge Jantz right now.

4          A.    I don't care.  I can't recall.  You're not

5    going to get -- I'm not answering the way you want me to

6    answer.  That's not getting ready to happen.

7          Q.    Dr. Nance, this is a very basic, introductory

8    question I ask of every single witness.

9          A.    That's a basic answer, and that's the answer

10   you're going to get for the rest of the day if it

11   doesn't pertain to this (indicating).

12         MR. DECKER:  All right.  Cindy, can you mark

13   that question for the record, please?

14   BY MR. DECKER:

15         Q.    Dr. Nance, if this continues, though, we're

16   going to have to stop and call Magistrate Judge Jantz.

17         A.    I don't care what you do.  I don't about you

18   calling no judge.  You know what, they're corrupt

19   anyway, all of them.  I'm writing a book about it now.

20                I don't care about the rules and stuff

21   that they make.  I understand that I got to follow it.

22   I can't recall.  Why don't you go talk to Trump in there

23   and see about their answers, and the Republican Senate,

24   and the Republicans, period.  Why don't you go ask them

1    about that?  I can't recall.

2          MR. DECKER:  All right.  Can we go off the

3    record for a second, Cindy?

4

5                              (A discussion was had

6                               off the record.)

7

8          MR. DECKER:  Back on the record, Cindy.

9                So just to clarify the record, we just

10   called Judge Jantz's chambers.  She is not going to

11   intervene at this time, but her clerk informed us that

12   we could file a motion if we run into further issues as

13   far as answering depositions (sic) are concerned.

14   BY MR. DECKER:

15       Q.    So, Dr. Nance, just to clarify the record, are

16   you refusing, or can you not recall how many times

17   you've been deposed before?

18       A.    I can't recall.

19       Q.    Have you been a party to a federal or state

20   lawsuit before?

21       A.    I can't recall.  The only thing I'm talking

22   about is this (indicating).  I'm not talking about your

23   formalities and all that.  The only thing I'm here for

24   is to talk about my complaint, period.  Not my history;

1   not my birth date; not my sex; nothing; only this

2   complaint.  So you can ask your questions, and I don't

3   recall.

4        Q.   Dr. Nance, I know you're an experienced

5   litigator at this point.  That is not how depositions

6   work.  I ask the questions, and you can object for the

7   record, but I still need you to answer them.

8        A.   Go ahead.  I'm going to object, though.  I'm

9   going to say I don't recall if it doesn't pertain to

10  this (indicating).

11       Q.   Do you have any other currently pending

12  lawsuits right now?

13       A.   I object.

14       Q.   You can object, but I'd still need you to

15  answer.

16       A.   I don't recall.  I did the same thing -- wait

17  a minute.  You just told me I can object, or I don't

18  recall.  It ain't going to be both ways.  You're not

19  going to have it both ways.  You're only going to have

20  it one.

21       Q.   No, no, no.  Dr. Nance, so during a

22  deposition, formal objections can be made, but unless

23  it's on the basis --

24       A.   It's formal to me.  Formal to who?  File your

1     motion.  Formal to who?  And we'll answer it in writing

2     with the ascribed law that applies to it.

3          Q.    Dr. Nance, so just for the record, unless any

4     of my questions do not directly relate to what is

5     alleged in your complaint, you are going to not answer

6     them today; is that correct?

7          A.    I'm not going to answer that question.

8          Q.    You won't answer the question about whether or

9     not you will answer the question?

10         A.    I've got a mental health degree.  Don't throw

11    that aside.  I know what you're doing.  I'm not going to

12    answer no circling questions.  You got my answer.

13    That's it.  I don't care which way you try to couch it.

14         Q.    You just said you wouldn't answer.

15         A.    I don't care which way you try to couch it,

16    and how you want to interpret my language.  File your

17    motion, and we'll do it that way in writing.

18         Q.    Dr. Nance, if this is going to go on all day,

19    I think we should probably just terminate the deposition

20    right now, and bring this issue to Judge Jantz through a

21    motion.

22         A.    You can do what you want to do.  I'm not going

23    to tell you which way to go.  I'm going to answer

24    questions according to what this is (indicating); what's

1   written here in my document. And it's voluminous. I

2   got -- everything I said in this complaint is true.

3   It's facts. That's what I'm going to respond to. I'm

4   not going to respond to my personal life, the things

5   that have happened in my life. I'm not doing that. Now

6   take that wherever you want to take it.

7       Q.   Dr. Nance, I am not trying to dig into your

8   personal life.

9       A.   Yes, you are.

10      Q.   No, I am not.

11      A.   Yes, you are. You're asking me questions that

12  don't pertain to this (indicating).

13      Q.   So my understanding is that anything that

14  doesn't relate to your complaint is considered your

15  personal life?

16      A.   That's right.

17      Q.   I'm asking about your litigation history.

18      A.   You're asking about my personal life, just as

19  if you had asked me for my driver's license. I was

20  already here to tell you no, you ain't getting that.

21      Q.   I'm not asking for your driver's license.

22      A.   Okay. I'm just letting you know where this is

23  going. I'm only going to respond to what's in this

24  complaint. Now bring your motion, and let's deal with

1    it legally.  Let's do it in writing, so I have it on

2    that record; not this record (indicating).  I want to

3    have it on that record.  You're not going to make me or

4    try to persuade me to answer questions that you want me

5    to answer to try to negate what I have written in my

6    complaint.

7        Q.    Dr. Nance, that's exactly the point of the

8    deposition.

9        A.    I know.

10       Q.    Your complaint --

11       A.    I know.

12       Q.    Your complaint is merely allegations at this

13   point.

14       A.    Okay.

15       Q.    You need to provide actual evidence, and as

16   the --

17       A.    And I did.  I gave you -- I answered your

18   production of documents and everything else.

19       Q.    Correct.  But --

20       A.    Okay.  Let's talk about that.

21       Q.    Dr. Nance, that's another thing, we can't be

22   speaking over one another during the deposition.

23       A.    Okay.

24       Q.    Because our court reporter needs to take

1    everything down, and it's very difficult for her to

2    take --

3        A.    You're correct.

4        Q.    -- simultaneous talk down.

5        A.    Okay.  My bad.

6        Q.    Right.  But this is my opportunity to ask you

7    questions in order to figure out whether the allegations

8    in your complaint are actually what you claim them to

9    be.

10       A.    Okay.  Let's talk about my complaint then.

11       Q.    Sure.

12       A.    That has -- what happened in my life has

13   nothing to do with my complaint.  That's my language,

14   and that's the language I'm going to use in any motion

15   you file.  What happened in my personal life has nothing

16   to do with this complaint, besides the things that

17   happened in this complaint.  Because that's my personal

18   life, and you have no right to that.  The court has no

19   right to that.  And I'll fight them all the way to the

20   Supreme Court for it.

21       Q.    Would you consider personal health conditions

22   to be your personal life?

23       A.    That's right.

24       Q.    Would you look in the complaint and see

1    whether or not you've alleged any issues with your

2    personal health that have arose after the alleged

3    retaliatory discharge?

4      A.    No, I won't have a problem -- if it's in this

5    complaint, I will talk about it. If it's in this

6    complaint.

7      Q.    What about Answers to Interrogatories that you

8    filed in this action?

9      A.    I'll answer those according to what they are.

10      Q.    Are there any other areas of inquiry     ***

11    you'd refuse to answer?

12      A.    Sir, let's go. Continue with your questions.

13    That's an irrelevant question that you're asking because

14    we aren't there.

15      Q.    Again, relevancy isn't a basis to object

16    today.

17      A.    Well, you can say what you want to say.

18    That's what I'm going to do. If it isn't relevant, I'm

19    not going to do it.

20        MR. DECKER: All right. Again, I'd just ask

21    you to certify this for the record, Cindy.

22    BY MR. DECKER:

23      Q.    And to try and get things going today, would

24    you at least answer questions about your history with

1   EMAGES, even if they predate the 2018 grant?

2       A.   No.  We're going to talk about this

3   (indicating).  And that's in here, too.  That's in my

4   original complaint.

5       Q.   Okay.  So --

6       A.   So you can ask whatever is in my original

7   complaint that involves the Department of Justice,

8   because that's how I started with EMAGES, even though

9   the judge dismissed that in June of whatever year that

10  was -- 2018.  That's a recall issue; ain't it?

11               Anyway, and then this amended complaint

12  that I filed when the judge said I can file it just

13  against EMAGES.  You can ask any questions in there

14  because all I'm going to repeat is what's here

15  (indicating).  So let me know what page it's on when

16  you're asking it to me, so I can go to it and see what

17  you're saying.

18      Q.   Are you going to refuse to answer questions

19  about the exhibits I've included?

20      A.   Ask your question, sir, and we're going to

21  see.

22      Q.   Well, Dr. Nance, that's the thing.  So you can

23  only include so much in the complaint, but then

24  documents that are produced in a lawsuit also become

1 evidence. Answers to Interrogatories also become

2 evidence. This is directly related to what's in your

3 complaint.

4     A. Well, let's see.

5     Q. All right. So when did you and Dr. Wash make

6 the decision that you were going to apply for the 2008

7 Second Chance Act grant that is the issue of this

8 lawsuit?

9     A. 2018, maybe January, something like that,

10 2018.

11     Q. Had you worked with EMAGES previously?

12     A. Yes.

13     Q. On how many occasions?

14     A. I've been working with EMAGES since 2001.

15     Q. And approximately how many grants had been

16 awarded to EMAGES throughout the time that you were

17 working with them?

18     A. I don't have any idea.

19     Q. How many grants had you personally worked on

20 when you were also collaborating with EMAGES?

21     A. Two.

22     Q. Two? When was the first occasion?

23     A. 2010.

24     Q. And what was the subject of that grant, or

1    what services were you providing pursuant to it?

2        A.    Mentoring with sex offenders.

3        Q.    So similar to what the 2018 grant was?

4        A.    Yes.

5        Q.    Why did you decide to work with EMAGES

6    specifically?

7        A.    Because I was working with the sex offenders.

8        Q.    Could you have worked with other nonprofit

9    organizations?

10       A.    Possibly.

11       Q.    And are you currently employed by C.L.I.C.K.

12   Services NFP?

13       A.    Yes.

14       Q.    And are you also the CEO of that entity?

15       A.    Yes.

16       Q.    Okay.  Was C.L.I.C.K. Services formed in the

17   2010 time frame?

18       A.    Yes.

19       Q.    Was there a decision that you made to

20   collaborate with EMAGES as opposed to seeking to just

21   have the grant issued to C.L.I.C.K.?

22       A.    Yeah, I collaborated with EMAGES because we

23   were working with the sex offenders, and she -- and

24   Dr. Wash had the sex offenders program.

1      Q.    Could you not have done that directly through

2   your own entity, C.L.I.C.K., though?

3      A.    I wasn't working with the sex offenders.  I

4   helped write the Second Chance Act bill that President

5   Bush signed in -- April 10, 2008, I think, 2009, maybe.

6   So I know what's in that legislation, and so I decided

7   to work with EMAGES because it was a better route than

8   going through my agency.

9      Q.    Could you have done so independently, though,

10  if you chose to apply for the grant?

11     A.    Working with sex offenders?

12     Q.    Yes.

13     A.    Spell that question out.

14     Q.    Sure.  And that's also perfectly fine.  If at

15  any point today, you don't understand a question --

16     A.    I understand.

17     Q.    If you don't understand a question --

18     A.    No, no, no.  Wait a minute.  Excuse me, sir.

19  Excuse me.  Let me interrupt a second, so we can be real

20  clear.  I really -- just like my complaint, I deal with

21  cultural issues, and us -- and me understanding your

22  culture, and you understanding mine.

23              So be very careful about the questions

24  you ask me that are cultural, racial, or any of that

1    because I will definitely address that.  It ain't

2    personal.  But sometimes other cultures don't understand

3    the language of some cultures, and they say things that

4    are offensive; may not know that they're offensive, but

5    they are.  So I just want to say that as you ask me

6    these questions.

7         Q.    And I appreciate that.  All I was trying to

8    say is if you don't understand a question that I ask --

9    I ask plenty of bad questions in depositions all the

10   time.  Please just let me know that.  I'll try and

11   rephrase it.  But if you answer a question after I ask

12   you one, I'm going to assume that you understood it; is

13   that fair?

14        A.    Okay.

15        Q.    Okay.  That's all I was trying to get across.

16        A.    Okay.

17        Q.    So my question had to deal with if you chose

18   to apply for a federal grant to work with sex offenders

19   independently through your entity C.L.I.C.K., could you

20   have done so?

21        A.    What does that matter?  How does that matter?

22   No, no, how does that matter?  It doesn't matter.

23        Q.    Dr. Nance, I'm not being deposed today.  So I

24   ask the questions.  You can let me know if you don't

1 understand them.

2     A.    I object to the question.

3     Q.    Yes, you can object, but you still have to

4 answer.

5     A.    I object to the question.  I don't have to

6 answer if I object to it.  Are you kidding me?  Take it

7 to court.  Let's put it in writing, man.  I'm not doing

8 that.

9     Q.    Dr. Nance --

10     A.    This ain't my rodeo -- this ain't my first

11 rodeo.

12     Q.    Trust me, I know.  And actually now that you

13 say this isn't your first rodeo, you can't recall how

14 many lawsuits you've been involved with previously?

15     A.    No, because it ain't my first rodeo.  I've

16 been in a whole lot of them.

17     Q.    Okay.  So now you can remember?

18     A.    No.

19     Q.    You couldn't recall previously, though?

20     A.    That wasn't the same thing.

21     Q.    And now you've been in a lot of them?

22     A.    It wasn't the same thing.  I've been in a lot

23 of rodeos.

24     Q.    Now you're talking about actual rodeos?

1     A.    What rodeos are we talking about?  Are we

2  talking about horses?  Are we talking about trains?

3  What are we talking about here?  You can keep on with

4  your trick questions because I got trick statements for

5  you, too.

6     Q.    Dr. Nance, you told me off the record that

7  this is just business.

8     A.    I'm through talking about that.

9     Q.    You're making it personal right now.

10     A.    Of course.

11     Q.    Why?

12     A.    When you attack me, that's what I'm going to

13  do.

14     Q.    I am not attacking you.

15     A.    Yes, you are.  That's your perception.  That's

16  your cultural issue.

17     Q.    Dr. Nance, you recognize that you are the

18  Plaintiff in a federal lawsuit that is seeking $500,000

19  in damages from my clients; is that correct?

20     A.    I object because it's a trick question.

21     Q.    That is in your complaint.

22     A.    Okay.  If it's in my complaint, why are you

23  asking me?

24     Q.    Because apparently that's all I can ask you

1    about today.

2         A.    Okay.

3         Q.    Is that correct?

4         A.    I object.

5         Q.    All right.

6         A.    Ask the question like it is on the paperwork.

7         Q.    Dr. Nance, this is not how a deposition is

8    going.  If this is how it's going to go the rest of the

9    day, I'd rather just not waste our time.

10        A.    Don't waste my time.  Don't waste yours.  Do

11   what you got to do.

12        Q.    So we're calling to call it then.

13        A.    Yeah, I don't care what you do.

14             MR. DECKER:  So, Cindy, I'd like to have all of

15   those issues certified, and we'll bring this through

16   motion practice with Judge Jantz.

17             THE WITNESS:  Thank you.

18             MR. DECKER:  And we'll terminate.

19

20                                (The deposition was

21                                 terminated sine die.)

22

23

24

1    STATE OF ILLINOIS )
                      )  SS:
2    COUNTY OF C O O K )

3

4            CYNTHIA M. STIFTER, being first duly

5    sworn, on oath says that she is a Certified Shorthand

6    Reporter, that she reported in shorthand the proceedings

7    at the said terminated deposition, and that the

8    foregoing is a true and correct transcript of her

9    shorthand notes so taken as aforesaid.

10

11

12

13

14                          _____
                            Certified Shorthand Reporter
15                                  Notary Public
                                Cook County, Illinois
16                         C.S.R. License No. 084-003054

17

18

19

20

21

22

23

24

------------
0
------------
000 20:18
084-003054
 22:22
------------
1
------------
1 3:25
10 3:27; 17:
 5
10:20 1:28
111 1:26; 2:
 21
12 3:25
13 3:27
17239 2:8
1:20-cv-
 06316 1:11
------------
2
------------
2 3:27
2001 15:14
2008 15:6;
 17:5
2009 17:5
2010 15:23;
 16:17
2018 14:1,
 10; 15:9,
 10; 16:3
2023 1:28
2600 1:26;
 2:22
------------
3
------------
312 2:24
------------
4
------------
4 3:9
------------
5
------------
5 3:25
500 20:18
527-4000 2:
 24

------------
6
------------
60473-3436
 2:9
60601 2:23
------------
7
------------
7 3:9
708 2:10
------------
8
------------
8th 1:27
------------
9
------------
921-1395 2:
 10
------------
A
------------
A.D. 1:27
a.m 1:28
according 9:
 24; 13:9
across 18:15
Act 15:7;
 17:4
action 13:8
actual 11:
 15; 19:24
actually 5:
 15; 12:8;
 19:12
ADAM 2:20
address 18:1
adecker 2:25
affirmed 4:
 1,4
aforesaid
 22:11
agency 17:8
ahead 8:8
ain't 8:18;
 10:20; 14:
 10; 18:1;
 19:10,15
allegations
 11:12; 12:7

alleged 9:5;
 13:1,2
already 10:
 20
amended 14:
 11
another 11:
 21,22
answer 4:23;
 5:4,7,8,16,
 22; 6:2,6,
 9; 8:7,15;
 9:1,5,7,8,
 9,12,14,23;
 11:4,5; 13:
 9,11,24;
 14:18; 18:
 11; 19:4,6
answered 11:
 17
answering 6:
 5; 7:13
answers 6:
 23; 13:7;
 15:1
anyway 6:19;
 14:11
apparently
 20:24
Appeared 2:
 14,28
applies 9:2
apply 15:6;
 17:10; 18:
 18
appreciate
 18:7
approximatel
 y 4:18; 5:
 1; 15:15
April 17:5
are. 10:11
areas 13:10
aren't 13:14
arose 13:2
ascribed 9:2
aside 9:11
assume 18:12
attack 20:12
attacking
 20:14

Avenue 2:8
awarded 15:
 16
------------
B
------------
Back 7:8
bad 12:5;
 18:9
basic 6:7,9
basis 4:21;
 8:23; 13:15
become 14:
 24; 15:1
behalf 2:28
besides 12:
 16
better 17:7
bill 17:4
birth 8:1
book 6:19
both 8:18,19
bring 9:20;
 10:24; 21:
 15
Bush 17:5
business 20:
 7
------------
C
------------
C.L.I.C.K.
 16:11,16,
 21; 17:2;
 18:19
call 6:3,16;
 21:12
called 1:20;
 4:4; 7:10
calling 6:
 18; 21:12
care 6:4,17,
 20; 9:13,
 15; 21:13
careful 17:
 23
case 4:15,19
CEO 16:14
Certified 1:
 24; 21:15;
 22:7,19

certify 13:
  21
chambers. 7:
  10
Chance 15:7;
  17:4
Chicago 1:
  27; 2:23
chose 17:10;
  18:17
Cindy 6:12;
  7:3,8; 13:
  21; 21:14
circling 9:
  12
Civil 1:22
claim 12:8
clarify 7:9,
  15
clear 17:20
clerk 7:11
clickservice
  s.org 2:11
clients 20:
  19
Code 1:21
collaborate
  16:20
collaborated
  16:22
collaboratin
  g 15:20
complaint 7:
  24; 8:2; 9:
  5; 10:2,14,
  24; 11:6,
  10,12; 12:
  8,10,13,16,
  17,24; 13:
  5,6; 14:4,
  7,11,23;
  15:3; 17:
  20; 20:21,
  22
concerned 7:
  13
conditions
  12:21
consider 12:
  21
considered

10:14
Continue 13:
  12
continues 6:
  15
Cook 1:25;
  22:21
Correct 5:
  23; 9:6;
  11:19; 12:
  3; 20:19;
  21:3; 22:10
corrupt 6:18
couch 9:13,
  15
couldn't 19:
  19
County 1:25;
  22:3,21
course 20:10
Courts 1:22
cultural 17:
  21,24; 20:
  16
culture 17:
  22
cultures 18:
  2,3
currently 8:
  11; 16:11
CYNTHIA 1:
  24; 2:36;
  22:6
------------
     D
------------
damages 20:
  19
date 8:1
day 1:27; 6:
  10; 9:18;
  21:9
deal 10:24;
  17:20; 18:
  17
decide 16:5
decided 17:6
decision 15:
  6; 16:19
DECKER 2:20;
  4:9; 6:12,

14; 7:2,8,
  14; 13:20,
  22; 21:14,
  18
Decker. 3:9
Defendants
  1:15,20; 2:
  28
definitely
  18:1
degree 9:10
Department
  14:7
deposed 4:
  16; 5:2,13;
  7:17; 18:23
DEPOSITION
  1:19; 4:15;
  8:22; 9:19;
  11:8,22;
  21:7,20;
  22:9
depositions
  1:23; 7:13;
  8:5; 18:9
die. 21:21
difficult
  12:1
dig 10:7
directly 9:
  4; 15:2;
  17:1
discharge
  13:3
discussion
  7:5
dismissed
  14:9
DISTRICT 1:
  2,3,22
DIVISION 1:4
do. 21:11
document 10:
  1
documents
  11:18; 14:
  24
doing 9:11;
  10:5; 19:7
done 17:1,9;
  18:20

down 12:1,4
Drive 1:26;
  2:21
driver's 10:
  19,21
duly 4:1,4;
  22:6
during 8:21;
  11:22
------------
     E
------------
East 1:26;
  2:21
EASTERN 1:4
EMAGES 1:13;
  4:15; 14:1,
  8,13; 15:
  11,14,16,
  20; 16:5,
  20,22; 17:7
employed 16:
  11
entity 16:
  14; 17:2;
  18:19
Evans 2:8
even 14:1,8
everything
  10:2; 11:
  18; 12:1
evidence 11:
  15; 15:1,2
exactly 11:7
examination
  1:20; 3:9;
  4:7
examined 4:5
Excuse 17:
  18,19
exhibits 3:
  39; 14:19
experienced
  8:4
------------
     F
------------
facts 10:3
fair 18:13
far 7:13
federal 7:

19; 18:18; 20:18
fight 12:19
figure 12:7
file 7:12; 8:24; 9:16; 12:15; 14:12
filed 4:15; 13:8; 14:12
fine 17:14
first 4:4; 15:22; 19:10,13,15; 22:6
follow 6:21
follows 4:5
foregoing 22:10
formal 8:22,24; 9:1
formalities 7:23
formed 16:16
frame 16:17
FRED 1:7,19; 2:7; 4:3,13
frednance 2:11
further 7:12

G

gave 11:17
getting 6:6; 10:20
got 6:21; 9:10,12; 10:2; 20:4; 21:11
grant 14:1; 15:7,24; 16:3,21; 17:10; 18:18
grants 15:15,19

H

happen 5:9;

6:6
happened 10:5; 12:12, 15,17
HATTIE 1:13; 4:16
health 9:10; 12:21; 13:2
helped 17:4
herein 4:4
history 7:24; 10:17; 13:24
Holland 2:9
HOLLISTER 2:19
horses 20:2

I

idea 15:18
ILLINOIS 1:3,26,27; 2:9,23; 22:1,21
INC. 1:13
include 14:23
included 14:19
independently 17:9; 18:19
indicating 6:11; 7:22; 8:10; 9:24; 10:12; 11:2; 14:3,15
informed 7:11
inquiry 13:10
interpret 9:16
Interrogatories 13:7; 15:1
interrupt 17:19
intervene 7:11

introductory 6:7
involved 19:14
involves 14:7
irrelevant 13:13
isn't 13:15, 18; 19:13
issue 9:20; 14:10; 15:7; 20:16
issued 16:21
issues 7:12; 13:1; 17:21; 21:15

J

Jantz 6:3, 16; 9:20; 21:16
Jantz's 7:10
January 15:9
JR. 1:7,19; 2:7; 4:3
Judge 6:3, 16,18; 7:10; 9:20; 14:9,12; 21:16
June 14:9
Junior 4:13
Justice 14:7

K

keep 20:3
kidding 19:6
know. 11:9

L

language 9:16; 12:13, 14; 18:3
last 4:12
law 9:2
lawsuit 7:20; 14:24;

15:8; 20:18
lawsuits 8:12; 19:14
least 13:24
legally 11:1
legislation 17:6
letting 10:22
license 10:19,21; 22:22
life 10:4,5,8,15,18; 12:12,15,18,22
LINE 3:6,22
litigation 10:17
litigator 8:5
LLP 2:19
look 12:24
lot 19:16, 21,22

M

made 8:22; 16:19
Magistrate 6:3,16
man 19:7
many 4:18; 5:1,12; 7:16; 15:13, 15,19; 19:14
mark 6:12
marked. 3:39
matter 18:21,22
matter. 18:22
me. 17:19
mental 9:10
Mentoring 16:2
merely 11:12
mine 17:22
minute 8:17;

17:18
Monday 1:27
morning 4:14
morning. 4:
  11
motion 7:12;
  9:1,17,21;
  10:24; 12:
  14; 21:16
MR 4:9
much 14:23

------------
      N
------------

N-a-n-c-e 4:
  13
name 4:12
NANCE 1:7,
  19; 2:7; 4:
  3,13,14,20;
  5:10,18,20;
  6:7,15; 7:
  15; 8:4,21;
  9:3,18; 10:
  7; 11:7,21;
  14:22; 18:
  23; 19:9;
  20:6,17;
  21:7
need 8:7,14;
  11:15
needs 11:24
negate 11:5
NFP 16:12
no. 17:18
nonprofit
  16:8
NORTHERN 1:3
Notary 1:25;
  22:20
notes 22:11
nothing 5:
  24; 8:1;
  12:13,15
notice 1:21
Number 3:25,
  27

------------
      O
------------

o'clock 1:28

oath 5:23;
  22:7
object 4:21,
  24; 5:3,5;
  8:6,8,13,
  14,17; 13:
  15; 19:2,3,
  5,6; 20:20;
  21:4
objections
  4:20; 8:22
occasion 15:
  22
occasions
  15:13
offenders
  16:2,7,23,
  24; 17:3,
  11; 18:18
offensive
  18:4
Okay 11:14,
  23; 12:5,
  10; 18:14,
  16; 20:22;
  21:2
Okay. 10:22;
  11:20; 14:
  5; 16:16;
  18:15; 19:
  17
one 8:20;
  11:22; 18:
  12
only 7:21,
  23; 8:1,19;
  10:23; 14:
  23
opportunity
  5:20,22;
  12:6
opposed 16:
  20
order 12:7
organization
  s 16:9
original 14:
  4,6
other 8:11;
  13:10; 16:
  8; 18:2

out 12:7;
  17:13
over 11:22
own 17:2

------------
      P
------------

PAGE 3:6,22;
  14:15
paperwork
  21:6
party 7:19
pending 8:11
perception
  20:15
perfectly
  17:14
period 7:24
period. 6:24
personal 10:
  4,8,15,18;
  12:15,17,
  21,22; 13:
  2; 18:2;
  20:9
personally
  15:19
persuade 11:
  4
pertain 6:
  11; 8:9;
  10:12
pertaining
  1:23
Ph.D. 1:20;
  2:7; 4:3
Plaintiff 1:
  9; 20:18
please 4:11;
  6:13; 18:10
plenty 18:9
point 8:5;
  11:7,13;
  17:15
Possibly 16:
  10
practice 21:
  16
predate 14:1
President
  17:4

previously
  15:11; 19:
  14,19
pro 2:14
probably 9:
  19
problem 13:4
Procedure 1:
  22
proceedings
  22:8
produced 14:
  24
production
  11:18
program 16:
  24
provide 11:
  15
providing
  16:1
Public 1:25;
  22:20
purposes 4:
  22
pursuant 1:
  21; 16:1
put 19:7

------------
      Q
------------

question 4:
  23; 5:4; 6:
  8,13; 9:7,
  8,9; 13:13;
  14:20; 17:
  13,15,17;
  18:8,11,17;
  19:2,5; 20:
  20; 21:6
questions 5:
  21; 8:2,6;
  9:4,12,24;
  10:11; 11:
  4; 12:7;
  13:12,24;
  14:13,18;
  17:23; 18:
  6,9,24; 20:
  4
------------

R
------------
racial 17:24
rather 21:9
ready 6:6
real 17:19
really 17:20
recall 5:5,
  7,11,14,15;
  6:1,22; 7:
  1,16,18,21;
  8:3,9,16,
  18; 14:10;
  19:13,19
recall. 5:
  19; 6:4
recognize
  20:17
record 4:12,
  22; 6:13;
  7:3,6,8,9,
  15; 8:7; 9:
  3; 11:2,3;
  13:21; 20:6
refuse 13:
  11; 14:18
refusing 5:
  4,6,16; 6:
  2; 7:16
relate 9:4;
  10:14
related 15:2
relevance 4:
  20
relevancy
  13:15
relevant 4:
  19; 13:18
remember 19:
  17
repeat 14:14
rephrase 18:
  11
REPORTED 2:
  36; 22:8
Reporter 1:
  24; 11:24;
  22:8,19
Republican
  6:23
Republicans

6:24
respond 10:
  3,4,23
rest 6:10;
  21:8
retaliatory
  13:3
right. 7:2
rodeo 19:10,
  11,13
rodeo. 19:15
rodeos 19:
  23,24; 20:1
route 17:7
Rules 1:21;
  6:20
run 7:12
------------
S
------------
same 8:16;
  19:20,22
saying 14:17
says 22:7
se 2:14
second 7:3;
  15:7; 17:4,
  19
see 6:23;
  12:24; 14:
  16,21; 15:4
seeking 16:
  20; 20:18
Senate 6:23
services 16:
  1,12,16
sex 8:1; 16:
  2,7,23,24;
  17:3,11;
  18:18
Shorthand 1:
  24; 22:7,8,
  11,19
sic 7:13
signed 17:5
similar 16:3
simultaneous
  12:4
since 15:14
sine 21:21
single 6:8

Sir 13:12;
  14:20
sir. 17:18
something
  15:9
sometimes
  18:2
South 2:9
speaking 11:
  22
specifically
  16:6
spell 4:12;
  17:13
SS 22:2
started 14:8
State 1:26;
  4:11; 7:19;
  22:1
statements
  20:4
STATES 1:2,
  22
STETTINIUS
  2:19
STIFTER 1:
  24; 2:36;
  22:6
still 4:22;
  8:7,14; 19:
  3
stop 6:16
stuff 6:20
subject 15:
  24
Suite 1:26;
  2:22
Supreme 12:
  20
sworn 22:7
------------
T
------------
TAFT 2:19
taftlaw.com
  2:25
terminate 9:
  19; 21:18
terminated
  21:21; 22:9
testified 4:

5
that. 20:8
them. 19:1
thing 7:21,
  23; 8:16;
  11:21; 14:
  22; 19:20,
  22
things 10:4;
  12:16; 13:
  23; 18:3
though 6:15;
  8:8; 14:8;
  17:2,9; 19:
  19
throughout
  15:16
throw 9:10
Today 4:14,
  20; 5:9; 9:
  6; 13:16,
  23; 17:15;
  18:23; 21:1
took 5:23
trains 20:2
transcript
  22:10
trick 20:4,
  20
true 10:2;
  22:10
Trump 6:22
Trust 19:12
truth 5:24
truth. 5:24
try 9:13,15;
  11:4,5; 13:
  23; 18:10
trying 10:7;
  18:7,15
Two 15:21,22
------------
U
------------
understand
  6:21; 17:
  15,16,17;
  18:2,8; 19:
  1
understandin
  g 10:13;

| 17:21,22 | 14,17; 16: |
| understood | 7,23; 17:3, |
| 18:12 | 11 |
| UNITED 1:2, | write 17:4 |
| 22 | writing 6: |
| unless 8:22; | 19; 9:1,17; |
| 9:3 | 11:1; 19:7 |
| ------------ | written 10: |
| V | 1; 11:5 |
| ------------ | ------------ |
| valid 4:21 | Y |
| voluminous | ------------ |
| 10:1 | year 14:9 |
| vs 1:11 | |
| ------------ | |
| W | |
| ------------ | |
| Wacker 1:26; | |
| 2:21 | |
| wait 8:16; | |
| 17:18 | |
| WASH 1:13; | |
| 4:16; 15:5; | |
| 16:24 | |
| waste 21:9, | |
| 10 | |
| way 5:8; 6: | |
| 5; 9:13,15, | |
| 17,23; 12: | |
| 19 | |
| ways 8:18 | |
| ways. 8:19 | |
| whatever 14: | |
| 6,9 | |
| wherever 10: | |
| 6 | |
| whether 9:8; | |
| 12:7; 13:1 | |
| whole 19:16 | |
| will 9:9; | |
| 13:5; 18:1 | |
| within 1:25 | |
| Witness 4:1, | |
| 4; 6:8; 21: | |
| 17 | |
| work 8:6; | |
| 16:5; 17:7; | |
| 18:18 | |
| worked 15: | |
| 11,19; 16:8 | |
| working 15: | |