UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Fred L. Nance Jr. | ) | |
| | ) | Case No. 20 CV 06316 |
| Plaintiff, | ) | |
| | ) | Honorable Judge: LaShonda A. Hunt |
| vs. | ) | |
| | ) | Honorable Magistrate Judge: |
| | ) | Beth W. Jantz |
| EMAGES, Inc., Hattie Wash, Thomas Bradley, et al. | ) | |
| | ) | Courtroom: 1903 |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SANCTIONS AND RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS**

NOW COMES pro se plaintiff responding to defendant's ridiculous motion for sanctions and response to plaintiff's motion for sanctions. Plaintiff submits the following:

Defendant's attorney Adam Decker (hereinafter, "Decker") wants this court to go along with violating plaintiff's 1st Amendment Rights to Free Speech and Freedom of Expression. Decker describes and uses plaintiff's social media posts reporting plaintiff has a disdain for the judiciary. Plaintiff can write about whatever he fancies and can have an opinion on all matters, including the judiciary. Decker has violated plaintiff's 1st Amendment Rights in his writing requesting this court use plaintiff's social media writings as support to sanction plaintiff for alleged deposition errors. Decker has given the plaintiff access to the United States Supreme Court. This has always been a public interest case.

Not only has Decker violated plaintiff's 1st Amendment Rights to Free Speech and Freedom of Expression, but he also uses terms like plaintiff's disdain for the judiciary to sway this court into violating plaintiff's 1st Amendment Rights and to suggests his writing and thinking about the judiciary gives claim to his obsession with plaintiff violating the rules for taking a

deposition. Plaintiff posted this on his Twitter account regarding Decker's violation of his 1st Amendment Rights.

https://drive.google.com/file/d/1MBrT4sPR1oVrA_w6YDPiCAI61cX2-0J8/view
@TaftLaw #AdamDecker violates and wants the federal court to violate my 1st Amendment right to Freedom of speech and expression. #AdamDecker cites my social media posts to get sanctions. https://drive.google.com/file/d/13yhLunpSHEUcMjL6PfjYygpg3L9SLNrx/view?usp=sharing
https://drive.google.com/file/d/1W7cIiN06FgHsqzFxqEgLOrfcNJdnbOsU/view?usp=sharing

Decker suggested plaintiff move into settlement talks. Plaintiff engaged Attorney Calvita Frederick to conduct settlement talks with Decker. Plaintiff's settlement Attorney, Calvita Frederick, sent the following email message to Decker, Derrick Thompson, and plaintiff on May 30, 2023 at 3:52 pm:

> "Good afternoon all: I have received a copy of Counsel's response to the Confidential Settlement Demand submitted on behalf of Dr. Nance last week. Obviously I misunderstood the expressed desire to engage in settlement negotiations and defendants' request for a good faith settlement demand. I therefore opt out. Thanks and well wishes to all." (Ex.1)

Once Decker entered into negotiations with Attorney Frederick on settlement talks, Decker should have informed or communicated with Attorney Frederick on how he felt about her Confidential Settlement Demand. Instead, Decker decided to threaten and intimidate the plaintiff. Plaintiff forwarded Decker's threatening and intimidating response email to Attorney Frederick. Attorney Frederick sent her email to Decker, Derrick Thompson (Decker's Co-Counsel), and plaintiff reporting she was opting out of settlement talks with Decker because Decker was not negotiating in good faith. Decker violated LR 16(1)(5).

Deception, threats, intimidation, and privilege best describe Decker. When Decker asked plaintiff about previous cases he was involved in, plaintiff answered "I don't recall" to most of his initial questions. Decker would not accept "I don't recall" from plaintiff. It appears Decker believes because he is white, he is right. The plaintiff is black so whatever he is talking about

does not matter. All Decker has done is talk down to plaintiff. Plaintiff knows what privilege and racism looks like. Plaintiff addresses it everyday on social media. Racism is alive and well in America, and in parts of our judiciary.

Decker gives no valid reason for this court to deny plaintiff's motion for sanctions. Everything written in Decker's email dated May 28, 2023 tells the story. Decker intentionally and purposely attempted to intimidate and threaten plaintiff into a settlement agreement he wanted. Decker misled Attorney Calvita Frederick. Decker made us think he really wanted to act in good faith settlement but has demonstrated he only wanted to toy with us, as he sent his email message of intimidation and threats trying to make us bring our monetary demand down. Decker's conduct is egregious and sanctionable.

Decker misrepresents the truth. He purposely uses language to suggest to the court that plaintiff will resist taking a deposition. This is untrue. Does Decker read minds. Both parties have to agree to a scheduled time. (Ex.2) Decker is a lawyer, assigned to this case by the Taft Law Firm. This is all he has to do. Plaintiff has a life.  On the other hand, plaintiff has other things going on in his life and must make plans and appointments accordingly. Just because plaintiff could not meet certain dates Decker wanted does not mean there would be no deposition. Decker presents smoking mirrors to this court.

On March 24, 2023, Decker and plaintiff discussed scheduling a date for the deposition. (Ex.2) Plaintiff responded to Decker's request for a deposition date. Plaintiff stated he could meet on April 6, 2023 at 11:00 am. Decker never responded. (Ex.2) This email chain demonstrates plaintiff's adherence and agreement with the scheduling for the deposition processes. Plaintiff did express his adamancy toward answering questions only pertaining to the complaint. An expression does not violate the deposition processes. Decker lies in his motion for

sanctions and response when he tells this court he had difficulties scheduling a deposition date. The March 24, 2023 et seq email chain demonstrates there was no difficulties scheduling a deposition date. (Ex.2) Counsel must cooperate in the scheduling of depositions. Counsel who serve deposition notices must make reasonable efforts to accommodate the schedules of the witness and other counsel. If the date proposed in a deposition notice is problematic for counsel or the witness, then the counsel or witness with the scheduling conflict must propose several reasonable alternate dates, and do so promptly (*i.e.,* within a few days). There is no pocket veto when it comes to scheduling. This was done by the plaintiff. (Ex.2)

Decker again violates plaintiff's 1st Amendment Rights to Free Speech and Freedom of Expression in his motion for sanctions and response (p.4, 7) when he reports plaintiff's tweet on social media regarding plaintiff's opinion on the judicial system. Again, Decker attacks plaintiff use of language, which has nothing to do with the deposition Rules.

Decker discusses plaintiff being late for the deposition. (p.4) Plaintiff contacted Decker before 10:00 am stating he would be late because of the CTA "L" train. Decker did not have a problem with the plaintiff being late when he arrived. The plaintiff asked to be accommodated with the rest room when he arrived. Plaintiff used the rest room and sat at the table for the deposition. When plaintiff informed Decker he did not recall, Decker refused to adhere to the answer and started badgering plaintiff asking the same questions over and over again when plaintiff reported he did not recall. Decker threatened plaintiff with calling the Magistrate Judge. Plaintiff told Decker he did not care who he called. Plaintiff then told Decker what he thought about the judicial system. As a side note of importance, plaintiff has not experienced corruption in Judge Jantz's court at this time.

Plaintiff has a Ph.D. in Human Services with a focus on Social Policy Analysis and Planning. Plaintiff reports all law, local, state, and federal, which is derived from policy. Sometimes our judiciary legislates from the bench. Nevertheless, we do have a corrupt judicial system. Plaintiff has examples: look at our Supreme Court Justices Alito and Thomas. It is alleged Alito's office may have leaked the *Roe v Wade* decision taking away the rights of women. How can a man tell a woman what to do with her body? Should women rule men and make laws about our bodies, such as stating we should become Eunuchs? Thomas received money and gifts from a billionaire and did not report it.

In this Northern District Court Judge Feinerman was accused of discriminatory practices. Judge Feinerman resigned. Plaintiff can attest to the discriminatory practices of Judge Feinerman because plaintiff had him as a judge too. Plaintiff can draw analogies and similarities from *Outley vs Judge Feinerman et al*. (2022) to this case, which can be used on appeal. (Ex.4) Look at our Illinois State Courts, specifically, the Estate of Otha Nance where plaintiff is the petitioner. Plaintiff reported to the Probate Court that the *Estate of Otha Nance* was comprised of drug money, which brings fraud and wire transfer violations. The Probate Court did not address it. Plaintiff took the case to the Appellate Court.

Our judicial system needs reformation. Plaintiff writes about these issues on his social media platforms because he is an advocate for the socially disenfranchised and disadvantaged; and because plaintiff has a 1st Amendment Right to do it. One of the reasons we have so much violence and crime in our nation is because people are disenfranchised, and they do not know how to address their issues. They know it will not be addressed with a corrupt judicial system. Plaintiff gives them a voice, it is legal, and it is protected by the 1st Amendment. Decker violated plaintiff's 1st Amendment rights and should be held accountable for it by this court.

Decker reports "Counsel called chambers and requested the Court's guidance on how to proceed." Decker did not call Judge Jantz's chambers to get guidance. Decker called Judge Jantz's chambers to threaten and intimidate plaintiff. Decker's demeanor, attitude, and behavior illustrated his anger and disgust because he could not get his way. Decker acted like a child.

Decker is supposed to be a trained attorney. Decker knows the Rule and extreme circumstances needed for calling the court during a deposition. Decker did not call the Magistrate Judge's chambers to get guidance. Decker stopped the deposition recording. Then Decker told plaintiff, in so many words, the Judge will take care of you. As if the judge was going to punish me like a kid because of what this white man reported.

Plaintiff makes this statement because, at times relevant to the May 8, 2023 deposition, Decker carried himself, his demeanor and character, as if he was a privileged white man and plaintiff as a black man better not say anything about it. Plaintiff spoke and may have said so what. Plaintiff has a Master degree in Mental Health. With plaintiff's long history of providing therapy and understanding the therapeutic process, he can make this analysis.

There was nothing "extreme" going on at the deposition. Decker acted with impunity and privilege. The Court expects that attorneys will almost never need to enlist the Court's assistance during depositions themselves. If necessary, parties should raise disputes by filing a motion after the deposition. In extreme cases, counsel can call Chambers during depositions. The Court's Standing Order is not an invitation to call the Court anytime an attorney or a person being deposed acts improperly. Unless things get truly out of hand, a written motion is a more effective way to present a dispute to the Court.

Decker is a trained lawyer, held to all the standards of a trained lawyer. Decker should know Rule 30. This was an intimidation tactic by Decker telling plaintiff he was going to call the judge instead continuing with the deposition as Rule 30 dictates.

Decker provides, what he calls excerpts, to prove his point. This court should listen to the whole transcript, not what Decker wants the court to hear to prove his baseless point. Look at the tone of Decker's questions submitted to the court, such as "Dr. Nance, I know you're an experienced litigator at this point…." Decker is suggesting plaintiff does not have pro se status and all the protections of this status. Decker seems obsessed with making the stating "Amended Complaint". Plaintiff intends to answer all questions asked about his complaint as a whole. This is not just about an Amended Complaint.

Decker reports "Dr. Nance, so just for the record, unless any of my questions do not directly relate to what is alleged in your complaint, you are going to not answer them today; is that correct." According to Decker's statement plaintiff stated "I'm not going to answer that question." Then Decker reports "You won't answer the question about whether or not you will answer the question?" This is badgering a witness. Plaintiff answered Decker's question. Plaintiff informed Decker he has a mental health degree. Plaintiff informed Decker he knew what he was doing when badgering a witness.

**LEGAL STANDARD**

Counsel must behave professionally at all times during depositions. Depositions must be civil, and attorneys must be respectful to witnesses, to the court reporter, and to other attorneys. Counsel must conduct themselves as if the Court were present, and as if the jury were watching. *See* Fed. R. Civ. P. 30(c)(1). Don't be rude. Don't fight. Don't obstruct. A questioning attorney should not ask the same question over and over again. But if the attorney does so, the remedy is

to invoke the rule of completeness at summary judgment or trial. *See* Fed. R. Civ. P. 32(a)(6). If necessary, counsel for the witness can seek a protective order if the questioning attorney "unreasonably annoys" or "oppresses" the witness. *See* Fed. R. Civ. P. 30(d)(3)(A). Decker violated these rules. Decker provided false information to this court stating he called Judge Jantz's chambers to get guidance on how to proceed. You call the court during an emergency. There was no emergency, just privilege.The Rules suggest you should file a motion, not stop the deposition. Rule 30 gives Decker guidance on how to proceed with a deposition.

**c)** E**XAMINATION AND** C**ROSS-**E**XAMINATION**; R**ECORD OF THE** E**XAMINATION**; O**BJECTIONS**; W**RITTEN** Q**UESTIONS**.

(2) *Objections.* An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3). Plaintiff objected but Decker ignored his objections.

**(d)** D**URATION**; S**ANCTION**; M**OTION TO** T**ERMINATE OR** L**IMIT.**

(3) *Motion to Terminate or Limit.*

(A) *Grounds.* At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

**Questioning a Witness**

Treat the witness with respect at all times. Counsel must not interrupt a witness who is answering the question. By asking a question, counsel has passed the baton (and the microphone) to the witness. Let the witness finish. If the questioning attorney interrupts, the attorney for the witness can insist that the witness be allowed to complete his or her answer. If the witness repeatedly filibusters, the witness may become eligible for extra deposition time. *See* Fed. R. Civ. P. 30(d)(1). So, there is no reason to interrupt. Decker interrupted constantly.

**Plaintiff Motion for Sanctions**

The last several years have seen a significant rise in the use of sanctions to curb deposition misconduct in federal courts. Rule 30 was amended in 1993 to include express authorization for the court to sanction a lawyer whose misconduct impeded, delayed or frustrated the fair examination of a deponent. Fed. R. Civ. P. 30(d)(2).

More than 98% of all civil cases filed in the federal courts result in disposition by way of settlement or pretrial adjudication. Very often, these results turn on evidence obtained during depositions. Thus, depositions play an extremely important role in the American system of justice. *See e.g. GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 185 (E.D. Penn. 2008)(internal citations omitted).

Rule 30 articulates the standard for proper deposition conduct and authorizes the court to impose sanctions for misbehavior. Lawyers must conduct the examination and cross-examination of a deponent in the same manner, and with the same level of decorum, "as they would at trial." Fed. R. Civ. P. 30(c)(1). Objections "must be stated concisely in a nonargumentative and nonsuggestive manner," and a witness may be instructed not to answer "<u>only</u> when necessary to

preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2)(emphasis added). Rule 30(d)(2) states that the "court may impose an appropriate sanction, including the reasonable expenses and attorney's fees incurred by any party, on a person who impedes, delays or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). This describes Decker's actions.

The text of Rule 30 suggests that a court employ a two-fold analysis in deciding whether to impose sanctions for deposition misconduct. "First, the movant must identify language or behavior that impeded, delayed or frustrated the fair examination of the deponent. Second, the movant must identify "an appropriate sanction." *Dunn v. Wal-Mart Stores, Inc.*, No. 2:12-cv-01660-GMN-VCF, 2013 WL 5940099, at *5 (D. Nev. Nov. 1, 2013). Naturally, in conducting this analysis a court will consider both the frequency and severity of the objectionable conduct. *Craig*, 384 F. App'x. at 533.

While courts will sometimes consider whether deposition misconduct was undertaken in bad faith, bad faith is not a requirement for the imposition of sanctions under Rule 30(d)(2). *Hylton v. Anytime Towing*, No. 11CV1039 JLS (WMc), 2012 WL 3562398, at *2 (S.D. Cal. Aug. 17, 2012); *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-2381-JWL-GLR, 2011 WL 6934112, at *2 (D. Kan. Dec. 30, 2011)(holding that Rule 30(d)(2) does not require a finding of bad faith before sanctions may be imposed); *see also GMAC Bank*, 248 F.R.D. at 196.

Courts will sanction lawyers for discourtesy during a deposition, making speaking objections, and excessive interruptions. A recent case from the Seventh Circuit provides a good example of growing judicial intolerance for this sort of conduct. *Redwood v. Dobson*, 476 F.3d 462 (7th Cir. 2007). In *Redwood*, the lawyer taking the deposition asked largely irrelevant, and at times harassing, questions. *Id*. at 468-469. The defending lawyer did not suspend the

deposition to seek a protective order under Rule 30(d)(3), but instead engaged in speaking objections and improperly instructed the witness not to answer. *Id*. The deponent, who was himself a lawyer, feigned the inability to remember or understand basic questions. *Id*. The trial court found that counsel for all the parties had behaved badly, and therefore declined to sanction either side. *Id*. at 469-470. The Seventh Circuit reversed, finding that "mutual enmity does not excuse a breakdown in decorum" and that the district court should have used its authority to maintain standards of civility and professionalism. *Id*.

Courts have wide discretion to tailor sanctions to each specific case. Despite the inclination toward monetary sanctions, courts are free under Rule 30(d)(2) to fashion "an appropriate sanction." This may include the requirement that the deposition be continued at the courthouse in the presence of a judicial officer. *GMAC Bank*, 248 F.R.D. at 193. It could include censure or disbarment. *Redwood*, 476 F.3d at 470.

In order to impose case-ending sanctions, a court must consider five criteria: 1) the public interest in prompt conclusion of litigation; 2) the need to manage the court's docket; 3) the risk of prejudice to the party asking for the sanction; 4) the policy favoring disposition of disputes on their merits; and 5) the suitability of less drastic sanctions. *Feuerstein v. Home Depot, U.S.A., Inc.*, 2:12-cv-1062 JWS, 2013 WL 4507612, at *4 (D. Ariz. Aug. 23, 2013) *citing Con. Gen Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Decker's claims do not meet the criteria here.

Cases like *Redwood v. Dobson*, *supra*, make clear that there is no "unclean hands" defense to a motion for sanctions. In that case, the Seventh Circuit imposed sanctions on all counsel for misconduct even though only one party was seeking sanctions, reasoning that mutual enmity does not excuse a breakdown in decorum. *Redwood*, 476 F.3d at 469.

Generally, "in the face of irrelevant questions, the proper procedure is to answer the questions, noting them for resolution at pretrial or trial, unless the questions are so pervasive that a motion under Rule 30(d)(3) is appropriate." *Luangisa*, 2011 WL 6029880, at *10. Rule 30(d)(3) provides a mechanism by which an attorney may move to terminate or limit a deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses or oppresses a deponent or a party." Fed. R. Civ. P. 30(d)(3).

In *Brincko*, the court encouraged the parties to take advantage of the availability of emergency conferences and noted that neither party had availed themselves of this opportunity. *Id*. at 584. Parties should avail themselves the opportunity presented, which will at a minimum show the court you are trying to exhaust the remedies available in order to continue with the deposition, and it may result in an immediate order limiting the conduct of the opposing lawyer without the expense and delay of a suspension and motion under Rule 30(d)(3).

**Conclusion**

At the beginning of this litigation, plaintiff filed a motion for sanctions against defendant EMAGES lawyer Janica A. Pierce Tucker of Taft Stettinius & Hollister LLP, for demanding his laptop computer, which contained plaintiff's work product on it. The EMAGES lawyer threatened plaintiff with a lawsuit if he did not give them his laptop computer. Judge Alonso dismissed the plaintiff's motion without saying anything to the EMAGES lawyers. This action signaled to the EMAGES' lawyers they could act with impunity against the plaintiff. This court prejudiced the plaintiff from the beginning of this litigation. The email chain between Decker and plaintiff was not confrontational or dismissive of scheduling a deposition date as Decker wants to describe it to this court. (Ex.2)

Attorney Calvita Frederick acted in good faith with Decker as she authored and proposed a Settlement Demand Letter. Due to Decker acting in bad faith for settlement, Attorney Frederick withdrew her Settlement Demand Letter and her representation for plaintiff. (Ex.1) Decker received a Settlement Demand Letter from Attorney Calvita Frederick. Decker should have responded to Attorney Frederick instead of responding to plaintiff. Decker responded to the plaintiff with the intent to threaten and intimidate plaintiff. Decker did not act in good faith. Decker told plaintiff he could send the response to Attorney Frederick. Plaintiff sent the response to Attorney Frederick. Attorney Frederick recused herself from the case, basically stating Decker was not acting in good faith.

Decker misused Rule 408 as to why he did not respond to Attorney Frederick but rather thought to respond to plaintiff intimidating and threatening him. (Ex.3) Rule 408 is a rule of admissibility, not a rule of confidentiality. The rule says nothing about disclosing an opposing party's settlement communication to a third party, or to the general public. Rule 408 on its face talks about whether evidence is "admissible." It doesn't say that the evidence is "privileged or confidential." It says nothing about making the statement privileged from disclosure.

Throughout Decker's "Defendant's Cross-Motion for Sanctions and Response to Plaintiff's Motion for Sanctions", he attacks plaintiff's social media to support his motion. Decker violated plaintiff's 1st Amendment right to free speech and freedom of expression. Decker wants this court to punish plaintiff for reporting negative things about the judiciary on social media, which violates plaintiff's 1st Amendment rights.

Is this a new theory to where a person can be punished for writing about a failed judiciary in America? Decker also challenges plaintiff's pro se status. Retired 7th District Court Judge

Richard Posner had something to say about the 7th District Court judges' treatment of pro se individuals and the failed judiciary in America. Judge Posner reports:

> In 2017 Judge Richard Posner, 78, told the Chicago Daily Law Bulletin that he decided to retire because of conflicts with his colleagues over the treatment of pro se litigants, who represent themselves. In a new interview with the New York Times, Posner elaborated on his concerns about the treatment of such litigants. "The basic thing is that most judges regard these people as kind of trash not worth the time of a federal judge," Posner said. In the 7th Circuit, staff lawyers review appeals from pro se litigants, and their recommendations are generally rubber-stamped by judges, he noted.

Judge Richard Posner notes the disparities and treatment of pro se litigants. Decker follows suit by violating plaintiff's 1st Amendment rights seeking to support his baseless claims for violations of Rule 30.

No matter how many cases a plaintiff has litigated as a pro se litigant, he does not lose his pro se status at the door of the court. As this court knows and understands, every case is different. Whether plaintiff remembers each case, and all the dynamics of the case, does not conclude the plaintiff is a trained lawyer losing his pro se status. Plaintiff does not know every aspect of depositions. Plaintiff learned from his legal classes in the late 90s, there are no winners in litigation. There are only losers. The issue may be to what degree do you want to lose. In the alternative, when you lose, you win. You win because you learn how to win. Plaintiff knows this sounds like an oxymoron but there is some wisdom here. Decker has disrespected plaintiff in so many ways. Plaintiff can only surmise Decker believes he is privileged.

For the reasons cited in this writing, plaintiff respectfully requests that Attorney Adam Decker be sanctioned for violating plaintiff's most sacred 1st Amendment right; and that the court sanction Attorney Adam Decker by ordering him to pay plaintiff reasonable attorney fees and costs associated with the May 8, 2023 deposition; and that Attorney Adam Decker's "Defendant's Cross-Motion for Sanctions and Response to Plaintiff's Motion for Sanctions" be denied; and that since Attorney Adam Decker initially encouraged Settlement Talks, he should continue these talks in good faith immediately rather than in bad faith as reported by Attorney Calvita Frederick; and whatever else this court deems necessary and appropriate to move past the nonsense in Decker's "Defendant's Cross-Motion for Sanctions and Response to Plaintiff's Motion for Sanctions".

Respectfully submitted,

/s/Fred L Nance Jr.
Pro se plaintiff
17239 Evans Avenue
South Holland, Illinois 60474-3436
708-921-1395
frednance@clickservices.org

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 12, 2023, the foregoing PLAINTIFF RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SANCTIONS AND RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to the parties listed on the electronic service list.

Adam Decker
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2800
Chicago Illinois 60601
adecker@taftlaw.com

Derrick M. Thompson
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2800
Chicago Illinois 60601
dthompson@taftlaw.com

Janica A. Pierce Tucker
Taft Stettinius & Hollister LLP
65 East State Street, Suite 1000
Columbus, Ohio 43215
614-221-2838
jpierce@taftlaw.com

Respectfully submitted,

/s/Fred L Nance Jr.
Pro se plaintiff
17239 Evans Avenue
South Holland, Illinois 60474-3436
708-921-1395
frednance@clickservices.org